UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION No. 1:23-cv-10063

DERRICK WASHINGTON,

    *Plaintiff,*

v.

MASSACHUSETTS DEPARTMENT OF
CORRECTIONS, et. al.,

    *Defendants.*

## DOC DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO PARTIALLY DISMISS THE AMENDED COMPLAINT

Defendants Massachusetts Department of Correction ("DOC"), Steve Kenneway, Robert Deschene, Arthur Forget, Ryan Hillis, Thomas Tooci, Anthony Catalano, Joshua Gagnon, Arthur Barnes, Joseph Cummings, Nicholas Dumont, Zachary Fonseca, Daniel Hollenbach, Eric Lawson, Nathan Owen, Cory Shepherd, Jeffrey Pepoli, Brian Rayner, Robert Bashaw, Ramond Simula, Sergio Cacioppo, Thomas Membrino, David Gilman, and Ryan Kalriess (collectively "DOC Defendants"), submit this memorandum of law in support of their Motion to Partially Dismiss the Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6).

## PROCEDURAL BACKGROUND

On January 10, 2023, Plaintiff filed his original Complaint. Dkt. No. 1. The original complaint in this case alleges a civil rights violation from uses of force that occurred on January 21, January 23-24, and March 5, 2020. On November 15, 2023, Plaintiff filed his initial Motion to Amend. Dkt. No. 68. On November 19, 2025, Plaintiff filed a Notice of Withdrawal of Motion for Leave to Amend the Complaint, noting the requirement under Local Rule 15.1(b) to serve proposed new

parties with notice at least 14 days before filing. Dkt. No. 103. On January 9, 2026, Plaintiff filed a Motion to Amend Complaint seeking to add Officer Doe Defendants whose identities were unknown at the time of the filing of the Complaint, as well as adding new claims. Dkt. No. 116. On January 23, 2026, DOC Defendants filed an Opposition to Plaintiff's Motion to Amend. Dkt. No. 120. On January 27, 2026, the Court allowed Plaintiff's Motion to Amend the Complaint. Dkt. No. 125. On January 28, 2026, Plaintiff filed his Amended Complaint. Dkt. No. 126.

## INTRODUCTION

Derrick Washington is an incarcerated individual lawfully incarcerated with DOC currently housed at the Massachusetts Correctional Institution at Shirley, Massachusetts ("MCI-Shirley"). During the time of the incidents alleged in the Amended Complaint ("AC"), Plaintiff was housed at Massachusetts' maximum-security facility, Souza Baranowski Correction Center ("SBCC").

Plaintiff brings this AC against DOC Defendants and Wellpath Defendants asserting violations of the 42 U.S.C. § 1983, Eighth Amendment, excessive use of force, deliberate indifference, Fourteenth Amendment, failure to intervene, intentional torts, assault and battery, intentional infliction of emotional distress, First Amendment, retaliation, 42 U.S.C. §12102, Americans with Disabilities Act, and 29 U.S.C. § 794a, Section 504 of the Rehabilitation Act. The individual DOC Defendants are sued in their individual capacities only. Plaintiff claims that DOC Defendants, on three separate incidents in January and March 2020, brutally beat and tased him, causing lacerations and contusions to his face and body, breathing problems, and loss of consciousness on several occasions. AC, ¶ 4. Plaintiff claims that he was specifically targeted as retaliation for his participation in the Black, Latino, Asian Cultural Coalition ("BLACC") that he founded in October 2019 and for speaking out against SBCC staff for their mistreatments of incarcerated individuals. AC, ¶¶ 3-4. Plaintiff asserts Count VII against DOC alleging violations of the Americans with Disabilities Act, Title II, and Count VIII against DOC alleging violation of

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a, claiming that his asthma makes him "substantially limited" in "one or more of his major life activities" and thus qualifying him as an individual with a disability. Plaintiff's allegations fail to establish any plausible entitlement to relief against any of the DOC Defendants on Counts VII and VIII. Accordingly, these counts should be dismissed.

## STATEMENT OF RELEVANT FACTS

Plaintiff was incarcerated and housed at SBCC from September 2018 to June 2023. AC ¶ 3. Plaintiff alleges that during his time at SBCC, he was an outspoken advocate for better treatment and racial justice in the prison and found BLACC in October 2019. Id. Plaintiff has asthma, a condition whose symptoms include difficulty breathing and when he is experiencing his symptoms of asthma, he is unable to participate in recreation time, sleep, or do almost anything, including breathe. AC ¶ 43. Plaintiff's condition requires that he regularly use an inhaler and have immediate access to an inhaler at all times. AC ¶ 44.

On January 23, 2020, Plaintiff was moved to cell 13 in the M-2 Housing Unit with a cellmate who became agitated and apparently began experiencing a mental health crisis and began yelling, and threw his mattress around the cell, which resulted in Defendant Deschene bursting into the cell with a canister of chemical agent. AC ¶¶ 113-116. Plaintiff alleges that he told Defendant Deschene that he had asthma and chemical agent should not be used, but that Defendant Deschene nonetheless aimed the canister at Plaintiff and his cellmate and deployed chemical agents for a prolonged period. AC ¶¶ 116-117. Plaintiff alleges that due to his exposure to the chemical agents, he suffered consecutive asthma attacks and severe difficulty breathing and suffered burning sensation on his skin. AC ¶¶121-122.

Upon discharge from the medical unit, Plaintiff was placed back in the M-2 Housing Unit in an empty cell and claims that he was not permitted to shower and left wearing the same clothes

that were contaminated with chemical agent. AC ¶ 128. He alleges that he was still experiencing asthma attacks from having been sprayed with chemical agents. AC ¶¶ 129

On March 5, 2020, Plaintiff alleges he was subjected to another use of force when he refused a housing assignment. AC ¶ 149-155. During this incident, Plaintiff alleges that Defendant Rayner pointed a canister of chemical agent at Plaintiff. AC ¶ 157. Plaintiff alleges that Defendant Rayner deployed chemical agent through the gate, hitting the back of his head and body and that it pooled on the ground. AC ¶ 161. Plaintiff alleges that "[o]n information and belief," Defendant Kenneway and Medical Director Doe ordered Defendant Raynor to use chemical agents. AC ¶ 162. Plaintiff alleges that his head was in a pool of chemical agent, his lips were contaminated, and he could not breathe. AC ¶ 164. Plaintiff's clothes were removed and he was taken to the medical unit where he was treated with a nebulizer for his breathing. AC ¶¶ 165-167.

## STANDARD OF REVIEW

In considering a motion to dismiss, the court may consider allegations in the Complaint, as well as public documents and records or documents incorporated in the Complaint by reference or necessity. Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 16-17 (1st Cir. 1998); Coyne v. Cronin, 386 F.3d 280, 286 (1st Cir. 2004); Watterson v. Page, 987 F.2d 1, *3 (1st Cir. 1993); Fudge v. Penthouse International, Ltd., 840 F.2d 1012, 1015 (1st Cir. 1988). The court may also consider matters subject to judicial notice, such as proceedings and papers filed in other cases or courts if they have relevance to the issues at hand. See e.g., Centro Medico del Turabo v. Feliciano de Melecio, 406 F.3d 1, 5 (1st Cir. 2005); In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15–16 (1st Cir. 2003); E.I. Du Pont De Nemours & Co., Inc. v. Cullen, 791 F.2d 5, 7 (1st Cir. 1986).

A complaint must contain factual allegations "enough to raise a right to relief above the speculative level...." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

> [A] complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'... A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged....The plausibility standard ... asks for more than a sheer possibility that a defendant has acted unlawfully....Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief'....[T]he tenet that that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Twombly, 550 U.S. at 570, 556, 557. The complaint must contain "factual allegations direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Centro Medico del Turabo Inc., 406 F.3d at 6. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'...Nor does a complaint suffice if it tenders 'naked assertion[s] devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678, quoting Twombly, 550 U.S. at 555, 557. "It is not enough to allege a general scenario which could be dominated by unpleaded facts, O'Brien v. DiGrazia, 544 F.2d 543, 546 n.3 (1st Cir. 1976); nor merely to allege without specification that defendants used their powers generally with respect to various governmental bodies to plaintiff's prejudice...." Dewey v. University of New Hampshire, 694 F.2d 1, 3 (1st Cir. 1982), cert. denied, 461 U.S. 944 (1983).[1] Rather, the plaintiff must "set forth minimal facts, not subjective characterizations, as to who did what to whom and why." Id. at 3. The deferential standard at the motion to dismiss stage "does not force a[]... court to swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic

---

[1] Additionally, prison officials may not "be held personally responsible simply because [they were] in a high position of authority in the prison system." Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994). See also McKinnon v. Patterson, 568 F.2d 930, 934 (2nd Cir. 1978).

5

circumlocutions, and the like need not be credited." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).

## ARGUMENT

### I. PLAINTIFF'S ASTHMA IS NOT A DISABILITY UNDER THE AMERICANS WITH DISABILITIES ACT.

Plaintiff alleges that he has "asthma, a condition whose symptoms include difficulty breathing." AC, ¶261. Plaintiff claims that he is "denied equal access to the safe use of force." Id. To establish a prima facie case of disability discrimination under Title II of the Americans with Disabilities Act (ADA), a plaintiff must prove that "(1) [they were] disabled within the meaning of the ADA, (2) they were excluded from participation in or denied benefits of a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of their disability." Sosa v. Massachusetts Department of Correction, 80 F.4th 15, 30 (1st Cir. 2023). Typically, courts find that asthma does not make an individual disabled for purposes of the ADA. Mulloy v. Acushnet Co., 460 F.3d 141, 156 (1st Cir. 2006) (holding that occupational asthma does not make an individual qualified as disabled under the ADA); see also Mulloy v. Acushnet Co., 2005 WL 1528208 (D. Mass. 2005) (holding that individual with asthma is not a qualified individual with a disability under the ADA); Lima v. Middlesex Sheriff's Office, CV 19-11372-RGS 2020 WL 823088 (D. Mass. Feb. 19, 2020) (dismissing case where individual asserted asthma as a disability). This is seen in other jurisdictions as well. Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 723 (2nd Cir. 1994) (finding no ADA disability where asthma prevented plaintiff from working); Ellis v. Georgetown University Hosp., 723 F.Supp.2d 42 (D.D.C. 2010) (finding that asthma was not a disability within the meaning of the section of the ADA defining disability as "a physical or mental impairment that substantially limits one or more major life activities"); Rhoads v. F.D.I.C., 257 F.3d 373 (4th Cir. 2001) (finding that asthma and migraines do not substantially

6

limit a person to be disabled within meaning of ADA); Wofsy v. Palmshores Retirement Community, 285 Fed.Appx. 631 (11th Cir. 2008) (finding that asthma is not a substantial limitation on a major life activity).

Federal courts have also uniformly held that neither Title II nor other provisions found within the ADA provide individual liability against defendants being sued in their personal or individual capacity. Navedo v. Maloney, 172 F.Supp.2d 276, 288 (D. Mass. 2001) (dismissing Title II ADA claims against prison officials being sued in their individual capacity); Garcia-Hicks v. Vocational Rehabilitation Administration, 148 F.Supp.3d 157, 161 (D.P.R. 2015) ("individual capacity suits are not permitted under the ADA"); Fantini v. Salem State Coll., 557 F.3d 22, 28-31 (1st Cir. 2009) ("[I]t is inconceivable that Congress intended to allow civil liability to run against individual employees"). Every single DOC Defendant is being sued in their individual capacity, and not their official capacity. AC ¶15 – 38. Plaintiff attempts to create a loophole, by stating "DOC (by and through the individual Defendants acting in their official capacities)"; but only alleges each DOC Defendant as being sued in their individual capacity only when listing out the respective parties in the instant lawsuit. AC ¶260.  As such, Plaintiff's claims against DOC Defendants must fail as a matter of law. Mitchell v. Massachusetts Dept. of Correction, 190 F.Supp.2d 204 (D. Mass. 2002) (dismissing claims against prison officials under Title II of the ADA).

DOC itself is a state entity and guarded by sovereign immunity. AC, ¶260. "Title II of the ADA abrogates state sovereign immunity only to the extent that state conduct violates the Fourteenth Amendment." Sosa v. Massachusetts Department of Corrections, 728 F.Supp.3d 187, 200 (D. Mass. 2024); Poirier v. Mass. Dep't of Corr., 558 F.3d 92, 97 (1st Cir. 2009) ("states and their agencies are entitled to sovereign immunity 'regardless of relief sought'"). Courts have dismissed ADA claims against DOC based on sovereign immunity grounds. Sepulveda v. UMass

7

Correctional Health, Care, 160 F.Supp.3d 371, 396 (D. Mass. 2016) ("all remaining claims [including an ADA claim] against the DOC …must also be dismissed on sovereign immunity grounds").

Since Plaintiff's asthma is not a recognized disability under the ADA, DOC Defendants cannot be sued in their individual capacities under Title II of the ADA, and as DOC itself is protected by sovereign immunity, Count VII must be dismissed.

## II. PLAINTIFF DOES NOT MAKE A VALID CLAIM UNDER SECTION 504 OF THE REHABILITATION ACT.

Plaintiff alleges that he was "denied equal access to the safe use of force" and that "programs and activities that DOC and Wellpath provide to prisoners in its custody include, but are not limited to, safe use of force." AC, ¶273-274. The ADA and Rehabilitation Act use the same elements when determining if there has been a prima facie claim of disability discrimination. Connolly v. Woburn Public Schools, 659 F.Supp.3d 92, 110 (D. Mass 2023). To state a claim against a public entity under the Rehabilitation Act, a plaintiff must plead "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." Cavitt, 512 F.Supp.3d at 156. In the case at hand, Plaintiff makes no factual allegations showing that any seeming denial of benefits, here safe use of force, was made by reason of his disability. See Complaint, ¶ 270 – 282.; see also Cavitt v. Department of Corrections, 512 F.Supp.3d 149 (D. Mass 2021) (dismissing Rehabilitation Act claim for failure to allege discrimination was because of disability). Plaintiff failed to plead that this alleged discrimination "was by reason of the plaintiff's disability"; and instead, the Amended Complaint makes it clear that certain decisions made by DOC Defendants were made for other reasons. AC, ¶116 ("in

response to the cellmate's actions … [DOC Defendant] burst into the cell with a canister of chemical agent"); ¶179 ("believing that "this punishment [was] in retaliation for his participation in the BLACC program and the grievances he had filed against SBCC staff").

Plaintiff failed to adequately plead all of the required elements to state a claim under the Rehabilitation Act and as such, Count VIII should dismissed.

## CONCLUSION

For the foregoing reasons, DOC Defendants request that their Motion to Partially Dismiss the Amended Complaint, specifically as to Counts VII and VIII, be **ALLOWED.**

Dated: February 20, 2026

Respectfully submitted,

DOC Defendants,
By their Attorneys,

NANCY ANKERS WHITE
Special Assistant Attorney General

*/s/ Stephanie M. Caffrey*
Stephanie M. Caffrey (BBO # 697075)
Department of Correction, Legal Division
70 Franklin Street, Suite 600
Boston, MA 02110-1300
(617) 727-3300, ext. 1154
Stephanie.M.Caffrey@doc.state.ma.us

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)

I hereby certify that I have attempted to confer with Plaintiff's counsel in this matter, in a good faith attempt to resolve or narrow the issues of dispute raised in the accompanying motion, in accordance with Local Rule 7.1.

/s/ Stephanie M. Caffrey
Stephanie M. Caffrey

## CERTIFICATE OF SERVICE

I, Stephanie M. Caffrey, counsel for DOC Defendants, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on February 20, 2026.

/s/ Stephanie M. Caffrey
Stephanie M. Caffrey