## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

DERRICK WASHINGTON,

     *Plaintiff*,

v.

MASSACHUSETTS DEPARTMENT OF
CORRECTION et al.

     *Defendants*.

Case No. 1:23-cv-10063-MRG

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT CAPOCCIA'S
## <u>MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

RELEVANT BACKGROUND .................................................................................................. 2

    I.      Mr. Washington's Medical Condition and the Retaliatory Campaign at SBCC ..... 2

    II.     The January 23, 2020 Chemical Agent Exposure ...................................................... 3

    III.   Defendant's Deliberate Indifference ......................................................................... 3

    IV.   Mr. Washington Filed Medical Grievances Seeking Care for His Asthma Needs ............................................................................................................................ 4

    V.    Plaintiff's Diligent Efforts to Serve Defendant and Pending Rule 4(m) Motion .... 5

ARGUMENT ............................................................................................................................. 5

    I.      Defendant Moves to Dismiss on Improper Grounds ................................................. 5

    II.     Mr. Washington Sufficiently States a Claim for Deliberate Indifference Under the Eighth Amendment ............................................................................................... 6

          A.    Defendant Makes No Argument on the Objective Prong ............................ 7

          B.    The Allegations in the Amended Complaint Meet the Subjective Prong ............................................................................................................ 9

    III.   Plaintiff Satisfied the PLRA's Exhaustion Requirements, or Alternatively, Remedies Were Rendered Unavailable ................................................................... 11

          A.    Exhaustion Is an Affirmative Defense Mr. Washington Need Not Allege in His Pleadings ............................................................................. 11

          B.    Plaintiff Filed Medical Grievances Seeking Care for His Asthma Needs ........................................................................................................ 13

    IV.   Defendant's Motion to Dismiss for Insufficient Service of Process Under Rule 12(b)(5) is Moot .................................................................................................... 15

CONCLUSION ....................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Weiner*,
  841 F. Supp. 2d 486 (D. Mass. 2012) ...................................................................... 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 6

*Battista v. Clarke*,
  645 F.3d 449 (1st Cir. 2011) .................................................................................... 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................ 6

*Board v. Farnham*,
  394 F. 3d 469 (7th Cir. 2005) .................................................................................. 7

*Braxton v. Ross*,
  No. 00–10981–RWZ, 2010 WL 1713614 (D. Mass. Apr. 27, 2010) .................... 14

*Cintron v. Bibeault*,
  148 F.4th 37 (1st Cir. 2025) .................................................................................... 9

*DeLong v. Nelson*,
  No. CV 17-11783-PBS, 2019 WL 4193423 (D. Mass. Sept. 3, 2019) .............. 8, 10

*DuPont v. Silva*,
  71 F. App'x 862 (1st Cir. 2003) ............................................................................. 12

*Farmer v. Brennan*,
  511 U.S. 825 (1994) ................................................................................................ 9

*Ferranti v. Moran*,
  618 F.2d 888 (1st Cir. 1980) .................................................................................... 8

*Jones v. Bock*,
  549 U.S. 199 (2007) ......................................................................................... 11, 14

*Layne v. Vinzant*,
  657 F.2d 468 (1st Cir. 1981) ................................................................................ 8, 9

*Lee v. Young*,
  533 F.3d 505 (7th Cir. 2008) ................................................................................... 7

*Perry v. Roy*,
  782 F.3d 73 (1st Cir. 2015) ........................................................................ 6, 8, 9, 10

*Pietrafeso v. Lawrence Cnty.*,
  452 F.3d 978 (8th Cir. 2006) ................................................................................. 11

*Porter v. Scurry*,
  No. 20-cv-1210-JL, 2025 WL 3096823 (D.N.H. Nov. 6, 2025) ........................... 14

*Reaves v. Dep't of Corr.*,
    195 F. Supp. 3d 383 (D. Mass 2016) ................................................................ 6, 7

*Rodi v. S. New England Sch. of Law*,
    389 F.3d 5 (1st Cir. 2004) .............................................................................. 12, 13

*Ross v. Blake*,
    578 U.S. 632 (2016) ............................................................................................ 14

*Rua v. Glodis*,
    No. 10–40251–FDS, 2012 WL 4753279 (D. Mass. Oct. 3, 2012) ...................... 10

*Sepulveda v. UMass Corr. Health Care*,
    160 F. Supp. 3d 371 (D. Mass. 2016) ................................................................ 10

*United States v. Derbes*,
    369 F.3d 579 (1st Cir. 2004) ................................................................................ 7

**Statutes**

42 U.S.C. § 1983 .......................................................................................................... 5

**Rules**

Fed. R. Civ. P. 12 ....................................................................................................... 12

Fed. R. Civ. P. 4 .......................................................................................................... 5

## PRELIMINARY STATEMENT

This case arises from a straightforward and deeply troubling constitutional violation. After being sprayed with chemical agents, despite repeatedly warning officers that he suffers from severe asthma, Plaintiff Derrick Washington ("Plaintiff" or "Mr. Washington") was left overnight in contaminated clothing without access to his prescribed Keep-On-Person ("KOP") rescue inhaler. When Defendant Nurse Christian Capoccia ("Defendant") examined him the following morning, Mr. Washington was still visibly struggling to breathe and he had not been decontaminated. Mr. Washington asked Defendant for his KOP inhaler and the opportunity to shower. Defendant provided no treatment at all. He did not provide the prescribed KOP inhaler. He did not permit decontamination. He did not initiate alternative care. He administered no treatment at all. He simply returned Mr. Washington to his contaminated cell to continue suffering, including coughing, wheezing, choking, and a skin burning sensation for days afterward, as well as difficulty breathing, recurrent asthma attacks, and sleep loss for weeks. *See* ECF No. 126, Amended Complaint ("FAC") ¶¶ 5, 22, 141, and 255–57. These allegations state a textbook claim of deliberate indifference under the Eighth Amendment.

Rather than confront the well-pleaded allegations, Defendant's brief (ECF No. 143-1, or "Motion" or "Mot.") attacks claims Mr. Washington did not bring, misstates the governing legal standard, and demands proof that is not required at the pleading stage. Regardless, the FAC pleads facts more than sufficient to satisfy both the objective and subjective components of that claim. At this stage, Mr. Washington need only allege a plausible entitlement to relief. He has done so.

Defendant's remaining arguments fare no better. Exhaustion under the Prison Litigation Reform Act (PLRA) is an affirmative defense that Mr. Washington was not required to plead in his complaint. Nevertheless, Mr. Washington pleaded, and the record demonstrates, that he filed

numerous medical grievances, over threats and interference from SBCC officials, seeking his inhaler and relief. Even if exhaustion were incomplete—which it is not—Mr. Washington has plausibly alleged remedies were unavailable due to explicit intimidation and interference by prison officials.

Finally, Defendant's service argument is moot: he has now been personally served, Mr. Washington moved for a Rule 4(m) extension supported by good cause, *see* ECF No. 160, and the Court granted that motion on March 2, 2026, s*ee* ECF No. 161.

The FAC plausibly alleges that Defendant knowingly refused to provide necessary medical care to an asthmatic prisoner suffering from chemical exposure. The motion should be denied.

## RELEVANT BACKGROUND

### I.    Mr. Washington's Medical Condition and the Retaliatory Campaign at SBCC

Plaintiff Derrick Washington is currently a 41-year-old Black man who was incarcerated at the Souza Baranowski Correctional Center ("SBCC") during the events alleged in the complaint. FAC ¶ 11. It is well-documented that Mr. Washington suffers from severe asthma, a condition that causes significant difficulty breathing and requires him to have immediate, daily access to a KOP inhaler. *Id*. ¶¶ 41, 43–45.

During his time at SBCC, Mr. Washington was an outspoken advocate for racial justice and better treatment for incarcerated individuals, which included founding a cultural program called the Black, Latino, Asian Cultural Coalition ("BLACC") and filing formal grievances against staff. *Id.* ¶ 54. In retaliation for his advocacy, SBCC guards targeted Mr. Washington as part of a broader campaign of vindictive violence in early 2020. *Id.* ¶ 4. On January 21, 2020, guards forcibly moved Mr. Washington to a new cell and explicitly refused to permit him to bring his prescribed KOP inhaler with him. *Id*. ¶ 79. During this move, multiple guards severely beat and

tased Mr. Washington while shouting racial slurs, causing injuries so severe that he had to be transported to an outside hospital. *Id.* ¶ 103.

## II.    The January 23, 2020 Chemical Agent Exposure

Mr. Washington was returned to SBCC, still recovering from his injuries and without his rescue inhaler. *Id.* ¶ 111. On the night of January 23, 2020, Mr. Washington's cellmate began experiencing a severe mental health crisis. *Id.* ¶ 114. Although Mr. Washington was lying idly on his bunk and posed no threat, Defendant Lt. Deschene burst into the cell and deployed a canister of chemical agents. *Id.* ¶¶ 115–16. Although Mr. Washington repeatedly yelled that he was asthmatic, Lt. Deschene continued to spray the chemical agents for a prolonged period. *Id.* ¶ 116.

The exposure to the chemical agents triggered consecutive, severe asthma attacks, leaving Mr. Washington gasping for air, dizzy, and experiencing intense burning on his skin. *Id.* ¶¶ 121–22. Mr. Washington was taken to the SBCC medical unit where he explicitly requested his KOP inhaler and a shower to decontaminate, but an unidentified nurse (Nurse Doe) refused his requests and discharged him. *Id.* ¶ 252. Defendants then moved Mr. Washington to a freezing, empty cell in his contaminated clothing. *Id.* ¶ 128. Later that night, guards subjected him to further positional torture by tightly handcuffing his hands behind his back for over five hours. *Id.* ¶ 132. Throughout the night, Plaintiff suffered from continuous asthma attacks, shortness of breath, and chemical burns without any medical relief. *Id.* ¶ 137.

## III.    Defendant's Deliberate Indifference

On the morning of January 24, 2020, at approximately 7:00 AM, Plaintiff's handcuffs were finally removed, and he was examined by Defendant Nurse Christian Capoccia. *Id.* ¶ 140. At the time of this examination, Plaintiff had been suffering from untreated chemical exposure for hours. *Id.* ¶¶ 116–17, 121–22, 126,128–29, and 137.

3

Defendant was fully aware that Mr. Washington was asthmatic, both because his medical history was well-documented and because he was actively exhibiting obvious symptoms of an asthma attack, including visible difficulty breathing. *Id.* ¶ 141. Defendant also knew that Mr. Washington had been exposed to chemical agents the night before and had not yet been decontaminated. *Id.* ¶ 263. Despite Mr. Washington's obvious distress, serious medical need, and express requests for help, Defendant completely failed to provide him with a KOP inhaler, and further failed to provide a shower or any other means to wash off the chemical agents. *Id*. ¶ 255.

As a direct result of Defendant's deliberate indifference and complete failure to treat him, Mr. Washington continued to suffer from recurrent asthma attacks, coughing, choking, dizziness, and skin burns for over a week and a half. *Id.* ¶ 257. Mr. Washington alleges that Defendant's unconstitutional failure to act was undertaken pursuant to the defective policies and customs of his employer, Wellpath LLC. *Id*. ¶¶ 257–58.

## IV.    Mr. Washington Filed Medical Grievances Seeking Care for His Asthma Needs

Mr. Washington filed a Wellpath medical grievance (#106965) on January 25, 2020. *See* ECF No. 80-1, Wellpath Medical Grievance Form; *see* FAC ¶¶ 145-146. He stated: "Lt. [Deschene] sprayed me with chemical agents on 1/23/2020 after I told him I'm an asthmatic. At 10:45 P.M. they said I could not keep my asthma inhaler on my person. Then returned me to the M-2 Unit without my asthma inhaler. My inhaler is now missing and lost as of 1/25/2020." *Id*. He requested: "I need my asthma inhaler / monetary compensation." *Id.* The Health Services Administrator ("HSA") granted a partial approval on February 10, 2020. *See* ECF No. 80-2, DOC Medical Grievance Form. HSA David Mburu stated: "I have reviewed your medical record and noted that you were given your inhaler on 2/5/2020. Your request for an inhaler is approved. Please note that compensatory damages are beyond the scope of the grievance process. Your request for monetary compensation is hereby denied." *Id.*

4

**V.      Plaintiff's Diligent Efforts to Serve Defendant and Pending Rule 4(m) Motion**

From the outset of this litigation, Plaintiff diligently attempted to identify and properly serve Defendant. Because Plaintiff originally knew him only as "Nurse Capoccia," the initial January 2023 Complaint (ECF No. 1) named him as such. Acting on advice from DOC's legal department, Plaintiff dispatched a process server to Defendant's last known workplace, SBCC, but prison security prohibited the process server from entering the facility to personally serve him, instead routing the summons to an inner perimeter security agent. *See* ECF No. 160, at ¶¶ 4–5. Without a first name, Plaintiff could not locate Defendant's residential address despite exhaustive searches of professional licensing databases, public records, and internet sources. *Id.* ¶ 6.

To cure this, Plaintiff proactively sought early discovery from the DOC. *Id.* ¶ 9. On July 21, 2023, the DOC finally produced use-of-force records revealing Defendant's full name as Christian Capoccia. *Id.* ¶ 10. Shortly thereafter, however, the Court stayed the case on March 31, 2024, halting further efforts to perfect service. ECF No. 83.

The stay was ultimately lifted on October 17, 2025. ECF No. 98. After the Court lifted the stay and Mr. Washington filed the FAC—which properly names Christian Capoccia, *see* FAC ¶ 22—Mr. Washington successfully located Defendant's residence and completed personal service upon him. *See* ECF No. 159. Consequently, on February 27, 2026, Mr. Washington filed a Motion for Extension of Time to Perfect Service pursuant to Fed. R. Civ. P. 4(m) (ECF No. 160). The Court granted that motion. *See* ECF No. 161.

## ARGUMENT

**I.      Defendant Moves to Dismiss on Improper Grounds**

As a threshold matter, Defendant asks this Court to dismiss this claim on the grounds that it fails to state a claim for "denial of due process." This argument attacks a straw man. Count VI of the FAC is explicitly titled "42 U.S.C. § 1983 – Eighth Amendment – Deliberate Indifference."

5

Defendant analyzes Count VI under the wrong constitutional framework at the outset. This argument should be rejected. Nevertheless, Mr. Washington states a valid claim under the Eighth Amendment.

## II.    Mr. Washington Sufficiently States a Claim for Deliberate Indifference Under the Eighth Amendment

Defendant moves to dismiss Mr. Washington's complaint under Rule 12(b)(6) for failure to state a claim. However, Mr. Washington properly states a claim for deliberate indifference under the Eighth Amendment.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mr. Washington only needs to plead facts plausibly suggesting liability, which he does.

"To succeed on a claim of deliberate indifference based on inadequate or delayed medical care, a plaintiff must satisfy both a subjective and objective inquiry." *Perry v. Roy*, 782 F.3d 73, 78 (1st Cir. 2015) (citation and internal quotation marks omitted). A plaintiff alleging an Eighth Amendment violation based on inadequate medical care "must satisfy two elements: (1) an objective prong that requires proof of a serious medical need, and (2) a subjective prong that mandates a showing of prison administrators' deliberate indifference to that need." *Reaves v. Dep't of Corr.*, 195 F. Supp. 3d 383, 407 (D. Mass 2016) (citation and internal quotation marks omitted); *Brison v. Wellpath, LLC*, 662 F.Supp.3d 67, 72 (D.Mass 2023) (citing *Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014)). The risk of harm must have been obvious to the particular defendants to

satisfy the second element. *Brison,* 662 F.Supp.3d at 72 (citing *Ruiz-Rosa v. Rullan*, 485 F.3d 150,

157 (1st Cir. 2007). Mr. Washington's complaint satisfies both prongs.

### A.    Defendant Makes No Argument on the Objective Prong

"To satisfy the objective prong of the deliberate-indifference inquiry, a prisoner must have

a serious medical need and must show that the medical care provided by the prison is not adequate,

as measured against prudent professional standards." *Reaves,* 195 F.Supp.3d at 409 (internal

quotation marks omitted).

First, Defendant does not argue that Mr. Washington did not have a serious medical need,

and therefore concedes that he did. Mr. Washington experienced numerous asthmatic attacks and

struggled to breathe because of exposure to the chemical agents, *see* FAC ¶¶ 43–44, 255, 257,

creating a serious medical need. Courts have recognized that asthma qualifies as an objectively

serious medical need under the Eighth Amendment. *See Lee v. Young*, 533 F.3d 505, 510 (7th Cir.

2008) (citing *Board v. Farnham*, 394 F. 3d 469, 485 (7th Cir. 2005) ("As a general matter, asthma

can be, and frequently is, a serious medical condition for the purposes of deliberate indifference");

*Farnham*, 394 F.3d at 484 ("viewing Duke's testimony in the light most favorable to him, we hold

that he has sufficiently shown that his asthma was a serious medical condition under the

circumstances, threatening both his health at the time and his future health"). Mr. Washington's

asthma was a serious medical need, and Defendant does not argue otherwise.

Second, Mr. Washington adequately pled that he received inadequate care. "Defendants

must provide medical services that are on a level reasonably commensurate with modern medical

science and of a quality acceptable within prudent professional standards." *Reaves*, 195 F. Supp.

3d at 409 (citing *United States v. Derbes*, 369 F.3d 579, 583 (1st Cir. 2004)) (quotation omitted).

Inadequate care can take multiple forms, including "a composite of delays, poor explanations,

missteps, changes in position and rigidities—common enough in bureaucratic regimes but here

7

taken to an extreme." *Battista v. Clarke*, 645 F.3d 449, 455 (1st Cir. 2011); *see also Alexander v. Weiner*, 841 F. Supp. 2d 486, 493 (D. Mass. 2012) (plaintiff's allegations that defendants repeatedly ignored prescribed treatment sufficient to satisfy the deliberate indifference standard on a motion to dismiss); *DeLong v. Nelson*, No. CV 17-11783-PBS, 2019 WL 4193423, at *10 (D. Mass. Sept. 3, 2019) (denying motion to dismiss where plaintiff plausibly alleged he had been prescribed medication, was in extreme pain, and defendant "refused to provide any pain medication that [would] assist [plaintiff] with his pain management").

Here, Defendant provided Mr. Washington with no treatment whatsoever in response to his obvious severe asthma symptoms. FAC ¶ 141. Defendant ignored and refused Mr. Washington's requests for an inhaler and to decontaminate himself. *Id*. Defendant attempts to rewrite Mr. Washington's allegations, arguing that Defendant "examined" Mr. Washington and that Mr. Washington merely "disagrees with the treatment he received." Mot. at 9. Mr. Washington, in fact, did not receive any treatment at all. The word "examination" merely references the fact that Plaintiff was *seen* by Defendant. *See Perry*, 782 F.3d at 80 (overturning district court's dismissal because "non-thorough examinations" could be basis for deliberate-indifference claim). Conducting a cursory exam—which can constitute the briefest clinical check—does not satisfy Defendant's constitutional obligation to provide adequate medical care. Mr. Washington needed, and requested, his inhaler and to decontaminate, but Defendant flatly denied him this needed—and, in the case of his KOP inhaler, prescribed—treatment.[1] *Id.* ¶ 255.

---

[1]    Defendant's reliance (*see* Mot. at 7) on *Ferranti v. Moran*, 618 F.2d 888 (1st Cir. 1980), and *Layne v. Vinzant*, 657 F.2d 468 (1st Cir. 1981), is misplaced: those cases address a prisoner's mere disagreement with treatment actually provided, not a wholesale failure to provide any treatment at all. *Compare* Am. Compl. ¶¶ 255, 257 (Defendant "failed to decontaminate" Plaintiff and "failed to provide" his inhaler despite observing his obvious respiratory distress), *with Ferranti*, 617 F.2d at 890 n.3 (plaintiff desired to be seen by specialist rather than general

### B.    The Allegations in the Amended Complaint Meet the Subjective Prong

To satisfy the subjective standard, the plaintiff must allege that the prison official possessed "a sufficiently culpable state of mind." *Cintron v. Bibeault*, 148 F.4th 37, 47 (1st Cir. 2025) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "In prison-conditions cases, that state of mind is one of deliberate indifference to inmate health or safety." *Id.* Deliberate indifference requires that "a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 48 (quoting *Farmer*, 511 U.S. at 842). "The subjective requirement poses a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* (cleaned up). Deliberate indifference occurs when "the absence or inadequacy of treatment is intentional," including with "wanton disregard," *Perry*, 782 F.3d at 79, or when an official makes medical decisions with "actual knowledge of impending harm, easily preventable," *id.* at 81 (citation omitted).

Here, Mr. Washington alleged that Defendant knew he required care, knew what kind of care was appropriate, and denied it to him anyway. FAC ¶ 255. Mr. Washington alleged that after being sprayed with chemical agents and brought to a medical unit, he was put back into a cell in the same contaminated clothing, with no access to his inhaler. *Id.* ¶¶ 116–17, 121–22, 126, 128–29, and 137. When Defendant saw him the next day, Mr. Washington still visibly needed care for his asthma: he was coughing, he complained about his asthma and his difficulty breathing, and he *explicitly requested treatment*—specifically, an inhaler and a shower to decontaminate himself. *Id.* ¶ 276. These statements sufficiently allege that Defendant had verbal and visible notice of Mr. Washington's obvious medical need, but disregarded the substantial risk to his health. *See Perry*,

---

practitioner), *and* Layne, 657 F.2d at 473 (plaintiff desired to be seen at private hospital instead of state hospital). Here, Plaintiff desired adequate medical treatment—he received no treatment at all—not a different provider or clinical setting.

782 F.2d at 80 (subjective prong satisfied where plaintiff's injury "was causing pain sufficient for him to announce that he thought [his jaw] was broken"); *DeLong*, 2019 WL 4193423, at *9 (denying motion to dismiss against nurses who denied treatment when "the plaintiff made repeated attempts to notify medical staff of his condition and his need for treatment"); *Sepulveda v. UMass Corr. Health Care*, 160 F. Supp. 3d 371, 386 (D. Mass. 2016) (plaintiff alleged sufficient facts to state a plausible Eighth Amendment claim where "[e]ach time that Mr. Sepulveda raises the [neck pain] issue with his providers" he receives no treatment "apart from being told to roll up a towel under his neck at night").

Despite having notice of Mr. Washington's active asthma symptoms, Defendant failed to provide him with any care whatsoever. In other words, Defendant ignored Mr. Washington's explicit requests for help (which would have made his medical need "so obvious that even a lay person would easily recognize the necessity for a doctor's attention," *Perry*, 782 F.3d at 78–79 (citation omitted)), or subsequently ordered no treatment whatsoever. To this effect, Mr. Washington's allegations, and the inferences that this Court may reasonably draw from those allegations, are enough to state a claim for deliberate indifference and survive a motion to dismiss.

Lastly, the sequelae of the inadequate treatment included extreme pain and long-term negative health effects, including difficulty breathing, wheezing, choking, and a skin burning sensation for days afterward, recurrent asthma attacks, and sleep loss for weeks. FAC ¶¶ 5, 22, 141, and 255–57. Mr. Washington also alleges that Defendant's inadequate treatment caused him serious and lasting suffering and damage, which was easily preventable. This further supports that Defendant had a sufficiently culpable state of mind when withholding treatment. *See Rua v. Glodis*, No. 10–40251–FDS, 2012 WL 4753279, at *4 (D. Mass. Oct. 3, 2012) (denying motion to dismiss

10

because, when "construed liberally," the amended complaint "appears to allege that defendant deliberately withheld medication and as a result plaintiff suffered increased pain").

For these reasons, Mr. Washington has pleaded facts sufficient to allege a deliberate indifference claim against Defendant. Thus, this Court should deny Defendant's motion to dismiss for failure to state a claim.[2]

### III.  Plaintiff Satisfied the PLRA's Exhaustion Requirements, or Alternatively, Remedies Were Rendered Unavailable

Defendant argues that the FAC must be dismissed because Mr. Washington "has not set forth any grievances filed related to the allegedly deficient care and treatment by Nurse Capoccia." Mot. at 13. This argument fails on the law and the facts.

### A.    Exhaustion Is an Affirmative Defense Mr. Washington Need Not Allege in His Pleadings

Under the Prison Litigation Reform Act (PLRA), the failure to exhaust is an affirmative defense; a plaintiff is not required to specially plead or demonstrate exhaustion in his complaint. *Jones v. Bock*, 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints"). It is the Defendant's burden to prove that exhaustion was not

---

[2]    Defendant relies on *Pietrafeso v. Lawrence Cnty.*, 452 F.3d 978 (8th Cir. 2006), an out-of-circuit case that is readily distinguishable. *See* Mot. at 10. First, in *Pietrafeso*, the Eighth Circuit reviewed the grant of judgment as a matter of law, not the grant of a motion to dismiss. *Pietrafeso*, 452 F.3d at 979. Thus, any conclusion that can be drawn from this case is not analogous to the procedural posture here. Second, the facts of that case are extremely different from the utter neglect Plaintiff faced. There, Rocco Pietrafeso died from an acute asthma attack. *Id*. In making decisions around the treatment of that attack, the "defendants were following the advice of medical professionals." *Id*. at 984 (Lay, J., concurring). The officers tried to treat him in various ways but did not seem to understand the difference between "maintenance drugs" and "rescue drugs." *Id*. at 982 (majority). By comparison, the nurses who interacted with Plaintiff did nothing—they did not even try to administer "maintenance" care, as the defendants in *Pietrafeso* did, and they certainly did not provide care for his acute conditions, as detailed above. *Pietrafeso* is neither factually nor procedurally analogous to Plaintiff's case.

satisfied. *DuPont v. Silva*, 71 F. App'x 862, 863 (1st Cir. 2003). To grant a Rule 12(b)(6) or Rule 12(c) motion based on an affirmative defense, the facts establishing that defense must: (1) be "definitively ascertainable from the complaint and other allowable sources of information," and (2) "suffice to establish the affirmative defense with certitude." *Rodi v. S. New England Sch. of Law*, 389 F.3d 5, 12 (1st Cir. 2004) (deferring ruling on affirmative defense to summary-judgment stage because "matters outside the pleadings are presented" (quoting Fed. R. Civ. P. 12(b)). Defendant has not carried this burden.

It is not "definitively ascertainable from the complaint," *id*., that Plaintiff failed to exhaust his administrative remedies, as argued by Defendant. Mot. at 13. Defendant bases this argument on the following facts: (1) "The medical clinical grievance system is the appropriate mechanism by which an inmate can express concern relative to health services provided within the DOC facility," Mot. at 12; (2) "Mr. Washington has not alleged in his Amended Complaint that he has exhausted all of his administrative remedies which, in this particular case, would be a medical grievance and/or appeals," *id.* at 13; and (3) "The PLRA requires Mr. Washington to have exhausted all of his administrative remedies with respect to the care and treatment rendered by Nurse Capoccia," *id.*

Defendant did not carry his burden to establish his affirmative defense by simply pointing to the PLRA administrative exhaustion requirement and declaring that the FAC did not allege that Mr. Washington exhausted the administrative grievance process. Defendant does not base this claim in Mr. Washington's administrative record. Although Defendant ostensibly had access to records of Mr. Washington's grievance history, Defendant offers no facts or evidence to support his affirmative defense. Thus, Defendant has not met the burden to prove his affirmative defense. As argued below, Plaintiff did in fact file grievances using both Wellpath's clinical grievance

system, *see* ECF No. 80-1, and the Massachusetts Department of Corrections' (DOC's) grievance system, *see* ECF No. 80-2. This "other allowable . . . information," *Rodi*, 389 F.3d at 12, which was likely at Defendant's disposal as a Wellpath staff member, contradicts Defendant's affirmative defense. If Defendant did not conduct an inquiry into Mr. Washington's grievance history before filing his Motion, then he has raised this claim without any diligent effort to investigate the facts underlying it and has not offered facts that "suffice to establish the affirmative defense with certitude." *Id.* Defendant has thus failed to meet his burden of proving his affirmative defense.

### B.    Plaintiff Filed Medical Grievances Seeking Care for His Asthma Needs

Although he was not required to do so, Mr. Washington alleges that he exhausted his administrative remedies. *See* FAC ¶ 145 ("On January 30, 2020, Mr. Washington submitted a separate grievance regarding the January 23–24 incident. The grievance and the resulting appeal were again denied, and Mr. Washington was again informed that an internal investigation revealed no staff misconduct."). This is further corroborated by the grievances themselves. *See* ECF Nos. 80-1, 80-2. Mr. Washington did file a medical grievance (#106965) on January 25, 2020, *see* ECF No. 80-1, explicitly stating that he was sprayed with chemical agents, that his asthma inhaler was taken, and requesting his inhaler.  Mr. Washington's grievance was partially approved, *see* ECF No. 80-2: the Health Services Administrator confirmed Plaintiff's inhaler request was legitimate and that an inhaler was provided on February 5, 2020—but not until nearly two weeks after the incident—while denying only the request for monetary compensation. *Id.* These exhibits directly refute Defendant's claim that Mr. Washington did not file a medical grievance. Mot. at 12.

To the extent that Defendant argues—though he did not do so explicitly—that these grievances were insufficient as to Defendant's decision at 7:00 AM to delay Mr. Washington's access to a KOP inhaler, this argument fails. Mr. Washington clearly stated that he did not receive a KOP inhaler and needed one. *See* ECF Nos. 80-1, 80-2 ("I need my asthma inhaler"); *id.* ("they

said I could not keep my asthma inhaler on my person"); *id.* ("they returned me to the M-2 unit without my asthma inhaler"). As an initial matter, Mr. Washington does mention Defendant, even if not by name, *id.* ("they said" and "they returned me"). Further, even if the Court finds that Mr. Washington did not name Defendant in his medical grievance, it does not negate the fact that he requested his KOP inhaler from Defendant in a medical grievance and did not receive it until 15 days after it was taken from him on January 21, 2020, and 13 days after his asthma attack was triggered by the chemical agents—constituting deliberate indifference. *See* ECF No. 80-2; *see also Jones*, 549 U.S. at 219 ("Exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances."); *Braxton v. Ross*, No. 00–10981–RWZ, 2010 WL 1713614, at *2 (D. Mass. Apr. 27, 2010) (rejecting defendant's argument that plaintiff's grievance was inadequate because it "only referenced [defendant] in a limited manner and did not state that [defendant] himself beat plaintiff").[3] Thus, this Court should also deny Defendant's motion because the evidence disproves his affirmative defense.[4]

---

[3]    Nor must a grievance lay out specific details or legal theories beyond general misconduct. To exhaust his remedy "the grievant need not lay out the facts, articulate legal theories, or demand particular relief." *Porter v. Scurry*, No. 20-cv-1210-JL, 2025 WL 3096823, at *9 (D.N.H. Nov. 6, 2025) (citation omitted). Rather, "[a]ll the grievance need do is object intelligibly to some asserted shortcoming . . . . [I]nmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Id.* (citation omitted).

[4]    Moreover, the Amended Complaint plausibly alleges that the grievance process was not meaningfully available to Mr. Washington. Administrative remedies are "unavailable," and therefore need not be exhausted, where prison officials thwart inmates from using the grievance process through intimidation, interference, or other misconduct. *See Ross v. Blake*, 578 U.S. 632, 642 (2016) ("An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones."). The Amended Complaint alleges that correctional staff threatened and intimidated Mr. Washington after the incidents underlying this suit—conduct that plausibly supports an inference that the grievance process was effectively unavailable to him.

Mr. Washington pleaded in his FAC that the administrative officer to whom his grievances were to be directed—Sergeant Tocci, the appointed Inmate Grievance Coordinator and another defendant in this case—threatened Mr. Washington during a physical assault, "Now all your grievances will be denied." FAC ¶ 133. In fact, Defendant Tocci followed through on his threat

**IV.    Defendant's Motion to Dismiss for Insufficient Service of Process Under Rule 12(b)(5) is Moot**

Defendant's argument under Rule 12(b)(5) is now entirely moot. Following the lifting of the stay in this case, Mr. Washington successfully identified Christian Capoccia's full name and home residence. On February 24, 2026, Mr. Washington successfully completed personal service upon Defendant Capoccia. *See* ECF No. 159. Consequently, Mr. Washington filed a Motion for an Extension of Time to Perfect Service under Fed. R. Civ. P. 4(m) (ECF No. 160) seeking a retroactive extension to validate this service. Because this Court has granted Mr. Washington's Rule 4(m) motion (*see* ECF No. 161), extending the time for service and formally validating the personal service effectuated upon Defendant Capoccia, his argument for dismissal under Rule 12(b)(5) is now moot. Accordingly, the drastic remedy of dismissal is unwarranted, and the claims against Defendant Capoccia should proceed to the merits.

## CONCLUSION

Plaintiff respectfully requests that this Court deny the Motion.

---

and denied each of Mr. Washington's grievances. *Id.* ¶¶ 61, 74, 110, 145–46. Moreover, officials intimidated Mr. Washington through physical and verbal assaults, *id.* ¶¶ 76–77, which further served to prevent him from taking advantage of the grievance process. At minimum, these fact-intensive issues cannot be resolved on the pleadings.

Dated: March 6, 2026

Respectfully submitted,

*/s/ Sabina Mariella*
Boies Schiller Flexner LLP
Sabina Mariella (*pro hac vice*)
John Lyons (BBO No. 569500)
Katherine Zhang (*pro hac vice*)
Jayden Rush (*pro hac vice*)
55 Hudson Yards
New York, NY 10001
(t) +1 212 446 2300
(f) +1 212 446 2380
smariella@bsfllp.com
jlyons@bsfllp.com
kzhang@bsfllp.com
jrush@bsfllp.com

Rights Behind Bars
Lillian Novak (*pro hac vice*)
Derrick Luster (*pro hac vice*)
1800 M Street NW FNT 1 #33821
Washington, DC 20033
(t) +1 202 455 4399
lily@rightsbehindbars.org
derrick@rightsbehindbars.org

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 6, 2026, I electronically filed the foregoing with the Clerk of the District of Massachusetts by using the CM/ECF system, which automatically sends an electronic notification with this filing to all counsel of record.

Dated: March 6, 2026                              */s/ Sabina Mariella*
                                                  Sabina Mariella

                                                  *Attorney for Plaintiff*