**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| DERRICK WASHINGTON, | |
| Plaintiff, | |
| v. | Civ. Case No. 1:23-cv-10063 |
| MASSACHUSETTS DEPARTMENT OF CORRECTIONS, et al., | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DOC DEFENDANTS' MOTION
TO PARTIALLY DISMISS PLAINTIFF'S AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

I.    INTRODUCTION ...................................................................................................... 1

II.   FACTUAL BACKGROUND ...................................................................................... 3

  A.   Mr. Washington Was Cruelly Subjected to Chemical Agents on Multiple Occasions,
       Despite His Known Asthma .................................................................................. 3

III.  LEGAL STANDARD ................................................................................................. 5

IV.   ARGUMENT ............................................................................................................... 6

  A.   Mr. Washington's FAC Properly Asserts a Cause of Action Against the DOC Under Title
       II of the ADA ......................................................................................................... 6

    1.   Mr. Washington Plausibly Alleges That His Asthma Was a Qualifying Disability
         Under the ADA. ................................................................................................. 6

      a.   Asthma is a Qualifying Disability, as Pled by Mr. Washington. ................. 7

      b.   DOC Defendants Misuse Authority and Misguide the Court. .................... 9

    2.   Mr. Washington Asserts His Title II Claims Against DOC, Not Individual-Capacity
         Defendants. ..................................................................................................... 10

    3.   DOC is Not Entitled to Sovereign Immunity ................................................. 11

      a.   DOC's Authority Does Not Support Its Position That It Is Entitled to Sovereign
           Immunity. ..................................................................................................... 12

      b.   Even as a Stand-Alone Claim, Mr. Washington's Title II Claim Warrants Abrogation
           of Sovereign Immunity ................................................................................ 13

  B.   Mr. Washington's Rehabilitation Act Claim is Properly Alleged ..................... 15

V.    CONCLUSION .......................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................................ 5

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................ 5

*Butler v. Balolia,*
    736 F.3d 609 (1st Cir. 2013) .............................................................................. 5

*Calero-Cerezo v. U.S. Dep't of Justice,*
    355 F.3d 6 (1st Cir. 2004) ................................................................................ 15

*Cox v. Mass. Dep't. of Corr.,*
    No. CV 13-10379-FDS, 2018 WL 1586019 (D. Mass. Mar. 31, 2018) ............................ 13, 14

*Doe v. City of Boston,*
    145 F.4th 142 (1st Cir. 2025) ............................................................................. 5

*Durham v. Kelley,*
    82 F.4th 217 (3rd Cir. 2023) ............................................................................ 11

*Ellis v. Georgetown Univ. Hosp.,*
    723 F. Supp. 2d 42 (D.D.C. 2010) ..................................................................... 9

*Heilweil v. Mount Sinai Hosp.,*
    32 F.3d 718 (2nd Cir. 1994) ............................................................................ 10

*In re Nexium (Esomeprazole) Antitrust Litig.,*
    968 F. Supp. 2d 367 (D. Mass. 2013) ............................................................... 5

*Kiman v. N.H. Dep't of Corr.,*
    451 F.3d 274 (1st Cir. 2006) ......................................................................... 6, 13

*Lima v. Middlesex Sheriff's Off.,*
    No. CV 19-11372-RGS, 2020 WL 823088 (D. Mass. Feb. 19, 2020) ................... 2, 8, 9, 10

*Mancini v. City of Providence by & through Lombardi,*
    909 F.3d 32 (1st Cir. 2018) .............................................................................. 7

*Mercado v. Puerto Rico,*
    814 F.3d 581 (1st Cir. 2016) ............................................................................ 7

*Mitchell v. Mass. Dep't of Corr.,*
    190 F. Supp. 2d 204 (D. Mass. 2002) ............................................................. 11

*Mulloy v. Acushnet Co.*,
    460 F.3d 141 (1st Cir. 2006)..................................................................................... 9

*Mulloy v. Acushnet Co.*,
    No. CIV.A. 03-11077-DPW, 2005 WL 1528208 (D. Mass. June 20, 2005)........................... 10

*Navedo v. Maloney*,
    172 F. Supp. 2d 276 (D. Mass. 2001) ...................................................................... 11

*Ocasio-Hernandez v. Fortuno-Burset*,
    640 F.3d 1 (1st Cir. 2011)....................................................................................... 5

*Parker v. Universidad de Rico*,
    225 F.3d 1 (1st Cir. 2000)........................................................................ 2, 11, 15, 17

*Poirier v. Mass. Dep't of Corr.*,
    F.3d 92 (1st Cir. 2009)........................................................................................... 12

*Rhoads v. F.D.I.C.*,
    257 F.3d 373 (4th Cir. 2001) ................................................................................... 9

*Robinson v. California*,
    370 U.S. 660 (1962)............................................................................................... 11

*Roman-Oliveras v. P.R. Elec. Power Auth.*,
    655 F.3d 43 (1st Cir. 2011)...................................................................................... 7

*Sepulveda v. UMass Corr. Health Care*,
    160 F. Supp. 3d 371 (D. Mass. 2016) ................................................................. 12, 13

*Smith v. Pub. Schs. of Northborough-Southborough*,
    133 F. Supp. 3d 289 (D. Mass 2015) ...................................................................... 15

*Sosa v. Mass. Dep't of Corr.*,
    728 F. Supp. 3d 187 (D. Mass. 2024) ..................................................................... 13

*Sutherland v. Peterson's Oil Serv., Inc.*,
    126 F.4th 728 (1st Cir. 2025).................................................................................... 9

*Theriault v. Flynn*,
    162 F.3d 46 (1st Cir. 1998)...................................................................................... 2

*Toledo v. Sanchez*,
    454 F.3d 24 (1st Cir. 2006) .................................................................................... 14

*United States v. Georgia*,
    546 U.S. 151 (2006).................................................................... 11, 12, 13, 14

*Valentine v. Collier,*
    993 F.3d 270 (5th Cir. 2021) ................................................................. 12

*Wis. Cmty. Servs., Inc. v. City of Milwaukee,*
    465 F.3d 737 (7th Cir. 2006) ................................................................. 16

*Wofsy v. Palmshores Ret. Cmty.,*
    285 Fed. App'x 631 (11th Cir. 2008) ................................................... 10

**Statutes**

28 C.F.R. § 35.108 ........................................................................................ 7, 8

42 U.S.C. § 12101 ............................................................................................ 14

42 U.S.C. § 12102 ........................................................................................ 7, 8

42 U.S.C. § 12132 .............................................................................................. 6

ADA Amendments Act ................................................................................ 2, 7

**Rules**

Federal Rule of Civil Procedure 12 .................................................................. 1

Federal Rule of Civil Procedure 8 .................................................................... 5

Plaintiff Derrick Washington hereby submits this memorandum of law in opposition to the Motion to Partially Dismiss the Amended Complaint filed by Defendants Massachusetts Department of Correction ("DOC"), Steve Kenneway, Robert Deschene, Arthur Forget, Ryan Hillis, Thomas Tocci, Anthony Catalano, Joshua Gagnon, Arthur Barnes, Joseph Cummings, Nicholas Dumont, Zachary Fonseca, Daniel Hollenbach, Eric Lawson, Nathan Owen, Cory Shepherd, Jeffrey Pepoli, Brian Rayner, Robert Bashaw, Raymond Simula, Sergio Cacioppo, Thomas Membrino, David Gilman, and Ryan Kalriess (collectively "DOC Defendants"[1]) (Dkt. 152).[2] Because Plaintiff's allegations state plausible claims under Title II of the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA"), DOC Defendants' motion should be denied.

## I.      INTRODUCTION

DOC Defendants move to partially dismiss Mr. Washington's First Amended Complaint ("FAC" or "Complaint"), challenging only his claims brought under Title II of the ADA and Section 504 of the RA, pursuant to Rule 12(b)(6) for failure to state a claim. DOC Defendants offer three arguments with respect to Mr. Washington's ADA claim: (1) asthma is not a qualifying disability under the ADA; (2) DOC Defendants cannot be sued in their individual capacities under Title II of the ADA; and (3) state sovereign immunity bars the claim. DOC Defendants also argue that Mr. Washington's RA claim should be dismissed because "Plaintiff makes no factual allegations showing that any seeming denial of benefits . . . was made by reason of his disability."

---

[1]    These movants include both the state agency defendant, the Massachusetts Department of Corrections, and twenty-three DOC employees sued in the individual capacity. *See* First Amended Complaint, Dkt. 126 ¶¶ 15–38.

[2]    Plaintiff cites the documents and orders on this Court's electronic docket using the abbreviation "Dkt." and the docket number provided on CM/ECF.

*Id.* at 8. These arguments are neither supported by fact nor law.

First, the FAC sufficiently pleads that Mr. Washington has a qualifying disability within the meaning of the ADA. Asthma, which by its very nature affects one's ability to breathe, clearly falls within the ADA's definition of disability, as clarified by the ADA Amendments Act ("ADAAA") passed by Congress in 2008. *See Lima v. Middlesex Sheriff's Off.*, No. CV 19-11372-RGS, 2020 WL 823088, at *5 (D. Mass. Feb. 19, 2020) (occupational asthma is a disability under the ADA if alleged to substantially limit major life activities, including breathing).

Second, Mr. Washington's FAC does <u>not</u> assert a claim under Title II of the ADA against any prison official in their individual capacity. Rather, the FAC properly pleads this claim against the DOC, a public entity.

Third, the DOC is not entitled to sovereign immunity because Mr. Washington's Title II claim arises from conduct that violates the Fourteenth Amendment.

Lastly, with respect to his RA[3] claim, Mr. Washington's FAC sufficiently alleges that he was denied the benefits of the prison's safe use of force *because of* his disability. *See, e.g.*, *Parker v. Universidad de Rico*, 225 F.3d 1, 5 (1st Cir. 2000) (causation established where the plaintiff alleged that a loose gravel pathway prevented him from using his wheelchair to access the garden safely). Mr. Washington's FAC meets this standard.

For the foregoing reasons, this Court should deny DOC Defendants' motion for partial dismissal and permit these claims to proceed against them.

---

[3]    "Title II of the ADA was expressly modeled after Section 504 of the Rehabilitation Act, and is to be interpreted consistently with that provision." *Theriault v. Flynn*, 162 F.3d 46, 48 n.3 (1st Cir. 1998).

## II.    FACTUAL BACKGROUND

### A.  Mr. Washington Was Cruelly Subjected to Chemical Agents on Multiple Occasions, Despite His Known Asthma

Mr. Washington is currently a 41-year-old Black man who has been in the custody of the Massachusetts Department of Correction ("DOC") since February 2007, and was housed at the Souza Baranowski Correctional Center ("SBCC") at all times relevant. Dkt. 126 ¶ 41. He has asthma, a condition that makes it difficult for him to breathe. *Id.* ¶¶ 43–45. DOC officials were aware of this condition: Mr. Washington's medical history is well-documented in his DOC records, and he has been prescribed, among other things, a Keep-On-Person ("KOP") inhaler to use on a daily basis to manage his symptoms. *Id.* ¶ 45. Mr. Washington previously sued DOC officials for improperly using chemical agents against him, which, in that case, also aggravated his asthma and put his health at risk. *See id.* ¶¶ 268, 281.

On January 21, 2020, officers at SBCC moved many prisoners, including Mr. Washington, to new units in the prison. The officers who moved Mr. Washington did not permit him to bring his KOP inhaler with him. *Id.* ¶ 79.

Two days later, staff assaulted him with chemical agents. On January 23, 2020 at about 10:45 PM, Defendant Lt. Deschene burst into the cell with a canister of chemical agents, *id.* ¶ 116. Mr. Washington shouted that he had asthma and that the Lieutenant should not use the chemical agents. *Id.* Lt. Deschene aimed the canister at Mr. Washington and his cellmate anyway, and deployed chemical agents for a prolonged period, even as Mr. Washington yelled repeatedly that he was asthmatic. *Id.* ¶ 117. Predictably, the chemical agents aggravated Mr. Washington's asthma, provoking consecutive asthma attacks and causing him severe difficulty breathing; he was left gasping for air. *Id.* ¶ 121.

Thereafter, DOC Defendants repeatedly failed to take any steps to mitigate the

3

disproportionate impact that the chemical agents had on Mr. Washington due to his asthma. *Id.* ¶¶ 126–29. For example, Defendants denied Mr. Washington the KOP inhaler he was already prescribed. *Id.* ¶ 126. Although DOC policy directs that a person who has been exposed to chemical agents be immediately decontaminated, DOC Defendants denied Mr. Washington's request for a shower to decontaminate himself and left him in the same clothing that were contaminated by chemical agents. *Id.* ¶¶ 128, 186. Defendants then returned Mr. Washington to his contaminated cell, where he continued to suffer from asthma attacks, difficulty breathing, and a burning feeling on his skin from the exposure to the chemical agents lingering on his blankets and pillow. *Id.* ¶ 143.

DOC Defendants repeated nearly the same course of conduct on March 5, 2020. Mr. Washington was in a strip cage asking to speak with a mental health worker. *Id.* ¶ 156. Shortly afterward, DOC Officers gathered outside of the strip cage. *Id.* ¶ 157. Sgt. Rayner was holding a cannister of chemical agents and aimed it at Mr. Washington's face. *Id.* Mr. Washington again repeatedly announced that he had asthma. *Id.* ¶¶ 159–60. Sgt. Rayner, following orders from Superintendent Kenneway and other DOC agents, deployed chemical agents against Mr. Washington for so long that the spray pooled on the ground. *Id.* ¶¶ 161–62. The officers then clobbered Mr. Washington and left his head in the pool of chemical agents. *Id.* ¶ 164. His lips were contaminated and he was unable to breathe. *Id.*

After both incidents, Mr. Washington struggled to breathe for weeks, struggled to sleep, and continued to cough, wheeze, and choke for numerous days afterwards. *Id.* ¶¶ 5, 180, 269, 282.

Mr. Washington's claims against DOC arise from their refusal to accommodate his asthma when applying force, and their failure to mitigate the effects of this inappropriate force after permitting officers to spray him with chemical agents on January 23, 2020 and March 5, 2020.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement "needs only enough detail to provide a defendant with fair notice of what the . . . claim is and the grounds upon which it rests." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (internal citations and quotation marks omitted).

Therefore, to defeat a motion to dismiss under Rule 12(b)(6), a Plaintiff is only required to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This is not a high bar. Mr. Washington's complaint only needs to "raise a reasonable expectation that discovery will reveal evidence" of the claim and include facts that are sufficient to "raise a right to relief beyond the speculative level." *Twombly*, 550 U.S. at 555–56.

On the other hand, a "defendant's burden is a heavy one when a motion to dismiss is filed." *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 385 (D. Mass. 2013) (internal citation and quotation marks omitted); *see also Butler v. Balolia*, 736 F.3d 609, 616 (1st Cir. 2013) ("Plausibility does not demand a showing that the claim is likely to succeed. It does, however, demand a showing of more than sheer possibility of success.") (citation omitted). In its consideration of a motion to dismiss, the Court must "accept as true all well-pleaded facts alleged" in the complaint "and draw all reasonable inferences" in favor of the plaintiff. *Doe v. City of Boston*, 145 F.4th 142, 149 (1st Cir. 2025).

## IV.    ARGUMENT

### A.  Mr. Washington's FAC Properly Asserts a Cause of Action Against the DOC Under Title II of the ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A public entity violates Title II when a plaintiff shows "(1) that he is a qualified individual with a disability; (2) that he was excluded from participating in, or denied the benefits of a public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of his disability." *Kiman v. N.H. Dep't of Corr.*, 451 F.3d 274, 283 (1st Cir. 2006).

The DOC Defendants do not dispute that Mr. Washington's ADA claim properly alleges that he was denied the benefits of the DOC's services, programs, or activities because of his disability.[4] *Id.* at 6–8 (arguing only that "asthma does not make an individual disabled for purposes of the ADA."). As set forth below, Plaintiff properly asserts a claim under Title II of the ADA against DOC.

### 1.  *Mr. Washington Plausibly Alleges That His Asthma Was a Qualifying Disability Under the ADA.*

Asthma qualifies as a disability under the ADA. Congress has been clear that the definition of disability under the act is capacious. In 2008, after several U.S. Supreme Court decisions

---

[4]    DOC Defendants do argue that the Complaint fails to set forth factual allegations establishing that the discrimination occurred *because of* Mr. Washington's disability. *See* Dkt. 153 at 8–9. However, DOC Defendants' Motion to Partially Dismiss only raises this argument with respect to Mr. Washington's RA claim, not his ADA claim. *Id.* For this reason, Plaintiff addresses this argument in defense of his RA claim (Part B, *infra*) though Plaintiff's argument and the factual allegations in support thereof apply to both his RA and ADA claims.

advanced an overly narrow interpretation the ADA's definition of qualifying disability, Congress

passed the ADAAA and explicitly abrogated them, clarifying that courts should construe the

definition of disability broadly in favor of expansive coverage. *See* 42 U.S.C. § 12102(4)(A); *see*

*also Mercado v. Puerto Rico*, 814 F.3d 581, 589 (1st Cir. 2016) (the ADAAA "clearly created new

rights and liabilities."). Indeed, "the question of whether an individual's impairment is a disability

under the ADA should not demand extensive analysis." Pub. L. No. 110-325, 122 Stat. 3553

(2008); *see also* 28 C.F.R. § 35.108(d)(ii). For purposes of the ADA, a person has a qualifying

disability if a physical or mental impairment substantially limits one or more major life activities,

or has a record of such an impairment. *Roman-Oliveras v. P.R. Elec. Power Auth.*, 655 F.3d 43,

48 (1st Cir. 2011); 42 U.S.C. § 12102(1). The term "substantially limits" is not demanding and

simply asks for "a comparison between the plaintiff's limitations and those of the majority of

people in the general population." *Mancini v. City of Providence by & through Lombardi*, 909

F.3d 32, 42 (1st Cir. 2018). The FAC alleges facts sufficient to establish that Mr. Washington's

asthma was a qualifying disability during the alleged incidents and that DOC had record of it. DOC

Defendants arguments to the contrary lack merit, as they rely almost entirely on caselaw abrogated

by the ADAAA.

a. *Asthma is a Qualifying Disability, as Pled by Mr. Washington.*

Mr. Washington plausibly alleged that asthma is a physical impairment that substantially

limited at least one major life activity. A physical impairment includes "any physiological disorder

or condition, ... affecting one or more body systems, such as: . . . respiratory." 28 C.F.R. §

35.108(b)(1)(i). Even "[a]n impairment that is episodic or in remission is a disability if it would

substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D); 28 C.F.R. §

35.108(d)(iv).

The ADA defines major life activities to include "sleeping, walking, . . . breathing," § 12102(2)(A), as well as the operation of "major bodily function[s]" like "functions of the . . . respiratory [system]," *id*. § 12102(2)(B). Whether an impairment substantially limits a major life activity is "not meant to be a demanding standard," and must "be construed broadly in favor of expansive coverage." 28 C.F.R. § 35.108(d)(1)(i).

Mr. Washington's asthma meets the standard for pleading a disability under the ADA. The FAC alleges that he suffered from asthma, which causes "difficulty breathing" and substantially limits his ability to "recreate, sleep," "breath[e], walk[], or do[] virtually anything else without significant pain." *See* Dkt. 126 ¶¶ 43, 261, 269; *see also Lima*, 2020 WL 823088, at *6 (alleging occupational asthma suffices to plead an impairment);[5] 42 U.S.C. § 12102(2)(A). His asthma and its limiting effects were well-documented at SBCC prior to the alleged incidents,[6] and DOC knew Mr. Washington relied on daily use of his KOP Inhaler to manage his symptoms. *Id.* ¶ 45. When DOC deployed chemical agents on Mr. Washington, *Id.* ¶¶ 116–17, Mr. Washington foreseeably "suffered consecutive asthma attacks and severe difficulty breathing," *id.* ¶ 121, experienced "recurrent asthma attacks" for at least a "week and a half" each time, *id.* ¶¶ 5, 126, and "significant dizziness because he was having such a hard time breathing," *id.* ¶ 137, among other substantial

---

[5]    DOC Defendants mischaracterize *Lima*. The case was not dismissed because the plaintiff asserted asthma as a disability. *Lima* was filed by a *pro se* litigant who failed to include the appropriate level of detail in the complaint he filed with the Court. *See Lima*, 2020 WL 823088, at *5 ("In addition, while Lima does not allege expressly that his occupational asthma substantially limits his ability to breathe, he suggests as much . . . Unobstructed breathing clearly qualifies as a major life activity."). In its review, the court also evaluated the allegations presented in the plaintiff's complaint filed with the administrative agency ("MCAD Complaint"). *Id.* at *6. The court found that the MCAD complaint "would [have sufficed] to survive a motion to dismiss." *Id.* The court granted the motion to dismiss without prejudice and instructed the plaintiff to "incorporate relevant allegations from [his] MCAD complaint." *Id.* at *9.

[6]    For example, Mr. Washington filed prior grievances alerting DOC that "the use of chemical agents exacerbated his asthma," causing him breathing troubles. *See* FAC ¶ 268.

limitations. These allegations are more than sufficient to establish that Mr. Washington's asthma was a disability for purposes of the ADA, as he was plainly more limited in the use of his respiratory system than the majority of the general population.

      b.  *DOC Defendants Misuse Authority and Misguide the Court.*

DOC Defendants mislead the Court with inaccurate parentheticals and authority applying a different law to a different context at a different stage in litigation. DOC Defendants cite almost exclusively to authority from before the ADAAA went into effect in 2009. *See* Dkt. 153 at 6–7 (citing exclusively pre-2009 caselaw on this issue with the exception of *Lima,* 2020 WL 823088 (distinguished in n.5, *supra*) and *Ellis v. Georgetown Univ. Hosp.*, 723 F. Supp. 2d 42, 48 n. 3 (D.D.C. 2010) (noting that because "[s]ignificant changes to the ADA and the [RA] took effect on January 1, 2009, after the events under review took place . . . this Court will apply the pre-amendment law to determine whether Ellis is an individual with a disability") (internal citation and quotation marks omitted). The First Circuit has reversed district court decisions on the express grounds that they relied on rulings and reasoning to define disability from before the ADAAA. *See, e.g.*, *Sutherland v. Peterson's Oil Serv., Inc.*, 126 F.4th 728, 739 (1st Cir. 2025). Even under pre-amendment standards, these courts <u>did not</u> hold that "asthma was not a disability within the meaning of the [ADA]," as argued by DOC. Dkt. 153 at 6–7; *see also Mulloy v. Acushnet Co.*, 460 F.3d 141, 147 (1st Cir. 2006) (holding the requested accommodation was unreasonable "without decid[ing] whether [asthmatic plaintiff] was disabled within the meaning of the ADA").

DOC Defendants also rely exclusively on employment disability discrimination cases where the critical inquiry was whether the alleged impairment substantially limited the plaintiffs' ability to work, which is a more specific inquiry under the circumstances of those actions. *See Rhoads v. F.D.I.C.*, 257 F.3d 373 (4th Cir. 2001) (no substantial limitation where evidence

established plaintiff's ability to work was only briefly limited in the presence of smoke); *see also Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723 (2nd Cir. 1994) (ability to work not substantially limited where evidence showed substantial limitation existed only in the blood bank where she worked); *Wofsy v. Palmshores Ret. Cmty.*, 285 Fed. App'x 631, 634 (11th Cir. 2008) (no substantial limitation where plaintiff's asthma was "well treated with medication"). The relevant inquiry here—whether Mr. Washington adequately alleges that his asthma substantially limited *any* major life activity—is broader and satisfied by Mr. Washington alleging his prolonged difficulty breathing.

Further, almost every case cited was decided at summary judgment. *See, e.g.*, *id.* (summary judgment upheld where evidence did not support that asthma substantially limited plaintiff's ability to perform fundamental job duties). Tellingly, DOC Defendants cite no authority categorically dismissing asthma as a disability under the ADA at the motion to dismiss stage, nor can they. *See, e.g.*, *Lima,* 2020 WL 823088, at *6 (allegations that asthma substantially limited the plaintiff's ability to breathe sufficient to survive a motion to dismiss). Instead, DOC presents summary judgment decisions, where plaintiffs failed to carry their evidentiary burden, as instructive on the legal sufficiency of the allegations in Mr. Washington's complaint. *See Mulloy v. Acushnet Co.*, No. CIV.A. 03-11077-DPW, 2005 WL 1528208, at *5 (D. Mass. June 20, 2005), *aff'd*, 460 F.3d 141 (1st Cir. 2006) ("I do not find on the present record that [plaintiff] has presented sufficient evidence to survive summary judgment").

DOC Defendants cite no binding or persuasive authority that is analogous to this matter. For these and the foregoing reasons, Defendant's argument fails.

2.  *Mr. Washington Asserts His Title II Claims Against DOC, Not Individual-Capacity Defendants.*

DOC misrepresents that Mr. Washington seeks to bring his Title II claim against each DOC

Defendant in their individual capacities. Mr. Washington does not dispute that claims brought under Title II of the ADA are properly asserted against public entities and individuals in their official capacities. *See Parker*, 225 F.3d at 5 (vacating judgment against the plaintiff and permitting Title II claim to be brought against public university); *see also Navedo v. Maloney*, 172 F. Supp. 2d 276, 289 (D. Mass. 2001) (refusing to dismiss prisoner's Title II claim against the DOC or officers in their official capacities because such a claim "comports exactly with the 'public entity' language of Title II"); *see also Mitchell v. Mass. Dep't of Corr.*, 190 F. Supp. 2d 204, 211 (D. Mass. 2002) (recommending the dismissal of Title II claims brought against individual defendants in their individual capacities, but maintaining Title II claims brought against the DOC and defendants in their official capacities). Therefore, Mr. Washington properly pleads his Title II claim against DOC <u>only</u> and not any individual defendants in their individual capacities. Dkt. 126 at 49, 52.

3.   *DOC is Not Entitled to Sovereign Immunity.*

Title II of the ADA abrogates state sovereign immunity for conduct that violates the Fourteenth Amendment. *United States v. Georgia*, 546 U.S. 151, 154 (2006). The Fourteenth Amendment incorporates certain constitutional rights to the states, such as the right to be free from cruel and unusual punishments under the Eighth Amendment. *See Robinson v. California*, 370 U.S. 660 (1962). In *United States v. Georgia*, the Supreme Court held that Title II of the ADA validly abrogates state sovereign immunity where the claim is based on conduct that also violates the Eighth Amendment. 546 U.S. at 157. Courts have repeatedly rejected sovereign immunity arguments made in the face of claims brought under Title II of the ADA. *See, e.g.*, *Durham v. Kelley*, 82 F.4th 217, 228–29 (3rd Cir. 2023) (reversing sovereign immunity dismissal on the grounds that abrogation is valid where the alleged violations of both Title II and the Eighth Amendment arose from the same conduct).

DOC's motion makes no argument whatsoever that the FAC fails to allege conduct that violates the Fourteenth Amendment. The FAC clearly does so. Mr. Washington alleges that on at least two occasions, DOC used excessive and disproportionate force by deploying chemical agents on him for prolonged periods of time despite the known and substantial risk that doing so would aggravate his asthma and cause life-threatening harm. This conduct forms the basis of, in relevant part, Mr. Washington's Title II claim, his Eighth Amendment medical deliberate indifference claim, and his Eighth Amendment claim for excessive force. *See Valentine v. Collier*, 993 F.3d 270, 281 (5th Cir. 2021) ("Because the Eighth Amendment applies to the states through the Fourteenth Amendment, an ADA violation that is also an Eighth Amendment violation actually violates the Fourteenth Amendment."). Notably, DOC Defendants did not move to dismiss any of Mr. Washington's Eighth Amendment claims. Therefore, as a matter of law, the Defendants are not entitled to sovereign immunity while Eighth Amendment violations arising from the same conduct are live in his action. *See Georgia*, 546 U.S. at 151 (err to dismiss claims based on alleged conduct that violates the Eighth and Fourteenth Amendments).

      a. *DOC's Authority Does Not Support Its Position That It Is Entitled to Sovereign Immunity.*

In its brief treatment of the issue, DOC cites only three cases to support its argument that sovereign immunity bars Title II claims like Mr. Washington's. *See* Dkt. 153 at 7–8. But none of these cases hold as much. The only binding authority cited, *Poirier v. Mass. Dep't of Corr.*, is a First Amendment case considering the reach of *Ex Parte Young*, an issue that has nothing to do with the claims pursued here. 558 F.3d 92, 97 (1st Cir. 2009). To support its contention that "[c]ourts have dismissed ADA claims against DOC based on sovereign immunity grounds," Dkt. 153 at 7, it misrepresents the holding in *Sepulveda v. UMass Corr. Health Care*, 160 F. Supp. 3d 371 (D. Mass. 2016). That case dismissed the Plaintiff's medical deliberate indifference and

negligence claims against DOC on sovereign immunity grounds, and his ADA claim on different grounds entirely. *See Sepulveda*, 160 F. Supp. 3d at 396 (holding that "[a]ll remaining claims against the DOC itself [including ADA claim] must also be dismissed on sovereign immunity grounds") (emphasis added). Finally, DOC cites *Sosa v. Massachusetts Department of Correction*, a case in which the Title II claim arose from restraint techniques and cuffing procedures used in light of the plaintiff's shoulder condition. 728 F. Supp. 3d 187, 200 (D. Mass. 2024). That case did not involve the use of chemical agents, a plaintiff with asthma, or a claim that either—or both—constituted a Title II violation of the ADA, nor did the court consider such circumstances as part of any sovereign immunity analysis.

      b.   *Even as a Stand-Alone Claim, Mr. Washington's Title II Claim Warrants Abrogation of Sovereign Immunity.*

Although DOC fails to argue the point, abrogation of sovereign immunity would be appropriate for Mr. Washington's Title II claim even if he did not state valid Eighth Amendment claims. Title II contains "an unequivocal expression of Congress's intent to abrogate state sovereign immunity." *Georgia*, 546 U.S. at 154. The only question, therefore is whether such abrogation is constitutionally valid. If a constitutional violation is not simultaneously adequately pled, district courts should "determine[] on an issue-by-issue basis" whether "Congress's purported abrogation of sovereign immunity . . . is nevertheless valid" for claims arising from state conduct that "violated Title II but did not violate the Fourteenth Amendment." *Kiman v. N.H. Dep't of Corr.*, 451 F.3d at 291 (quoting *Georgia*, 546 U.S. at 159). For these claims, "Title II may nonetheless abrogate sovereign immunity if Congress's proscription of that class of conduct constitutes a valid exercise of its § 5 enforcement powers." *Cox v. Mass. Dep't. of Corr.*, No. CV 13-10379-FDS, 2018 WL 1586019, at *9 (D. Mass. Mar. 31, 2018) (internal citation and quotation marks omitted); *Georgia*, 546 U.S. at 159.

Abrogation of sovereign immunity under Title II requires a three-pronged inquiry for each alleged ADA violation: the conduct "(1) must violate Title II and (2) either (a) must violate the Fourteenth Amendment or (b) its proscription must bear congruence and proportionality to the rights protected under that Amendment." *Cox*, 2018 WL 1586019 at *9 (internal citations omitted). In the First Circuit, the analysis focuses "on the particular category of state conduct at issue," rather than on the full range of constitutional rights protected under the ADA. *Id.* (citing *Toledo v. Sanchez*, 454 F.3d 24, 35 (1st Cir. 2006)).

Here, DOC permitted the use of chemical agents on Mr. Washington despite knowing that doing so would likely cause him life-threatening harm due to his asthma, and failed to provide adequate medical treatment afterwards. Even assuming *arguendo* that the conduct violates Title II but is insufficient to plead an Eighth Amendment violation—which it is—these allegations would meet the other requirements for abrogation. In enacting the ADA, Congress recognized that "discrimination against individuals with disabilities persists in such critical areas as … health services . . . and access to public services." 42 U.S.C. § 12101(a)(3); *see also Georgia*, 546 U.S. at 162 (Stevens, J., concurring) ("cases involving inadequate medical care ... have perhaps been [the] most numerous" claims brought by disabled persons). Requiring prisons to avoid using methods of force that exploit prisoners' known disabilities is "a congruent and proportional response to this history and pattern of unconstitutional discrimination," as it prevents the administration of cruel and unusual punishment on people with disabilities. *Cox*, 2018 WL 1586019 at *13 (citing *Toledo*, 454 F.3d at 39). Therefore, the allegations would still be sufficient to justify abrogation of sovereign immunity as to Mr. Washington's Title II claim.

For these reasons, Mr. Washington has pleaded facts sufficient to allege a claim under Title II of the ADA against DOC and sovereign immunity is an improper ground for dismissal. This

14

Court should deny DOC Defendants' motion to partially dismiss.

### B. Mr. Washington's Rehabilitation Act Claim is Properly Alleged

DOC Defendants argue that Mr. Washington fails to allege facts showing that he was denied benefits by reason of his disability.[7] They argue that Washington's own allegations show that "certain decisions made by DOC Defendants were made for other reasons." *Id*. DOC Defendants misunderstand the causation standard for claims brought under Section 504 of the Rehabilitation Act.

As an initial matter, although there are slight differences in the text of the statutes, "identical claims brought pursuant to the ADA and Rehabilitation Act are subject to the same analysis." *Smith v. Pub. Schs. of Northborough-Southborough*, 133 F. Supp. 3d 289, 295 (D. Mass 2015) (citing *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004)); *see also* Dkt. 153 at 8 ("The ADA and Rehabilitation Act use the same elements when determining if there has been a prima facie claim of disability discrimination."). Mr. Washington's ADA and RA claims arise from the same conduct and are similarly pleaded in the FAC. DOC Defendants make no distinction in the analytical framework of these statutes, so neither does Mr. Washington. Dkt. 153 at 8 (applying ADA standards to Mr. Washington's RA claim). Thus, his RA claim is subject to the analytical framework of the ADA.

Under this framework, a plaintiff shows that a failure to accommodate denied him access to public services "by reason of" his disability when he alleges that his disability was a but-for cause of his access barriers. *See Parker*, 225 F.3d at 5 ("To the extent that the alleged defect in the

---

[7]    Although DOC Defendants claim that the "ADA and Rehabilitation Act use the same elements when determining if there has been a prima facie claim of disability discrimination," Dkt. 153 at 8, they do not contest that Mr. Washington is a qualified individual with a disability or that he was denied the benefits of its services, programs, or activities with respect to his Rehabilitation Act claim.

path prevented [plaintiff] from using his wheelchair to access the [garden] safely, it is self-evident that [discrimination was] by reason of his disability") (internal quotation marks omitted); *see also Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 755 (7th Cir. 2006) ("[T]o satisfy Title II's necessity element, a plaintiff must show that, but for its disability, it would have received the ultimate benefit being sought"). A plaintiff is not required to show that the conduct was motivated by animus to meet this element. The ADA and RA create affirmative obligations on public entities to accommodate people with disabilities. When public entities fail to affirmatively accommodate those with disabilities—which will almost always result from "decisions made . . . for other reasons", Dkt. 153 at 8, rather than malicious intent—those failures violate disability law if a reasonable accommodation was available.

Mr. Washington's FAC meets this standard. He alleges that he suffers from asthma, which causes him difficulty breathing when he is experiencing symptoms. Dkt. 126 ¶ 43. He filed grievances alerting the prison that chemical agents exacerbate his breathing troubles, *id.* ¶ 45, and warned DOC Defendants during the relevant incidents that he was asthmatic so exposure to chemical agents would be especially harmful for him, *id.* ¶¶ 116–17. Still, DOC Defendants deployed the chemical agents. DOC Defendants subjected Mr. Washington to life-threatening force by deploying these chemical agents and disregarded his explicit requests to accommodate his asthma by either decontaminating him, *id* ¶¶ 275–76, providing his KOP inhaler, *id.*, or refraining from deploying any further chemical agents, *id.* ¶ 277. Mr. Washington's exposure to the chemical agents caused him to suffer "consecutive asthma attacks and severe difficulty breathing" and left him gasping for air, among other lasting symptoms. *Id.* ¶¶ 121, 126, 129, 164, 167.

The FAC makes clear that it was foreseeable that Mr. Washington would suffer the alleged

16

harms because Defendant deployed the chemical agents and refused to accommodate his asthma. *See* Dkt. 126 ¶¶ 45, 119, 281–282. Prior to any of the incidents, Mr. Washington had filed "grievances alerting the prison to the impact that chemical agents had on his asthma and ability to breathe." *Id*. ¶ 45. DOC Defendants knew Mr. Washington regularly relied on his KOP inhaler to manage his asthma. *Id*. ¶ 44. He was even granted a "court judgment that determined DOC had improperly used chemical agents against him despite his medical condition." *Id.* ¶ 119. Defendants, therefore, knew that Mr. Washington would experience more severe harms from the deployment of chemical agents, but deployed them anyway.[8] *Id.* ¶¶ 116–17, 119. These allegations, in the aggregate, are sufficient to allege that Mr. Washington was denied equal access "by reason of" his disability. *Parker*, 225 F.3d at 5.

For these reasons, the Court should deny DOC Defendants' motion to dismiss Mr. Washington's Rehabilitation Act claim for failure to state a claim.

## V.    CONCLUSION

For all these reasons, this Court should deny DOC Defendants' Motion to Partially Dismiss.

---

[8]    DOC Defendants' intention to deny Mr. Washington of the safe use of force is also evident from the allegations in the complaint. On at least one occasion, Defendants mockingly threatened further chemical agent deployment to force Mr. Washington's compliance. *See id*. ¶ 130 ("When Defendants then opened the cell gate [hours after Mr. Washington suffered asthma attacks from the chemical agents], Lt. Forget brandished a canister of chemical agents in Mr. Washington's face and ordered him to go to the back of the cell"). Further, Mr. Washington filed grievances relating to Defendants' premeditated and discriminatory use of chemical agents on January 23, 2020. *Id.* ¶ 145. Mr. Washington alleges that his grievances were shared with other SBCC staff. *Id.* There should be no dispute that the deployment of chemical agents on March 5, 2020, as alleged, was done in conscious disregard of the aggrieved effects of Mr. Washington's asthma.

Dated: March 6, 2026

Respectfully submitted,

/s/ Derrick L. Luster
Derrick Luster (*pro hac vice*)
Lillian Novak (*pro hac vice*)
RIGHTS BEHIND BARS
1800 M Street NW FNT 1 #33821
Washington, D.C. 20033
(t) +1 (202) 455-4399
derrick@rightsbehindbars.org
lily@rightsbehindbars.org

Sabina Mariella (*pro hac vice*)
John Lyons (BBO No. 569500)
Katherine Zhang (*pro hac vice*)
Jayden Rush (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
(t) +1 (212) 446 2300
(f) +1 (212) 446 2380
smariella@bsfllp.com
jlyons@bsfllp.com
kzhang@bsfllp.com
jrush@bsfllp.com

*Counsel for Plaintiff Derrick Washington*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on March 6, 2026, I electronically filed the foregoing with the

Clerk of the District of Massachusetts by using the CM/ECF system, which automatically sends

an electronic notification with this filing to all counsel of record.

Dated: March 6, 2026                            */s/ Sabina Mariella*
                                                Sabina Mariella

                                                *Attorney for Plaintiff*