**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DERRICK WASHINGTON,<br><br>    *Plaintiff*,<br><br>v.<br><br>MASSACHUSETTS DEPARTMENT OF<br>CORRECTION et al.<br><br>    *Defendants*. | Case No. 1:23-cv-10063-MRG |

**FIRST JOINT DISCOVERY DISPUTE STATEMENT**

Plaintiff Derrick Washington ("Plaintiff" or "Mr. Washington") and Defendants Massachusetts Department of Correction ("MDOC"), Steven Kenneway, Robert Deschene, Arthur Forget, Ryan Hillis, Thomas Tocci, Anthony Catalano, Joshua Gagnon, Arthur Barnes, Sergio Cacioppo, Nicholas Dumont, Zachary Fonseca, David Gilman, Daniel Hollenbach, Ryan Kalriess, Eric Lawson, Thomas Membrino, Nathan Owen, Jeffrey Pepoli, Brian Rayner, Cory Shepherd, Raymond Simula, Robert Bashaw, and Joseph Cummings (collectively, "DOC Defendants") submit this First Joint Discovery Dispute Statement pursuant to this Court's order dated February 11, 2026 (ECF No. 139).

The parties submit this First Joint Discovery Statement to resolve several critical disputes that remain following their meet-and-confer efforts on March 10, 2026.[1] This statement will specifically address the parties' conflicting positions regarding (i) the appropriate number and total hours of depositions necessary for this litigation, and (ii) the sufficiency of DOC Defendants' response to Plaintiff's Second Set of Requests for Production ("RFPs") to the DOC Defendants, specifically Request Nos. 1, 11, 12, 13, 14, 27, 28, 29, 30, 33, and 34. A copy of Plaintiff's Second Set of RFPs is attached as <u>Exhibit A</u>. A copy of DOC Defendants' responses and objections to Plaintiff's Second Set of RFPs is attached as <u>Exhibit B</u>. The parties hereby reserve all rights to raise further discovery disputes as the litigation progresses, including those related to previously served requests for production.

**A. Number of Depositions**

    **a. Plaintiff's Position**

Plaintiff's case primarily concerns three incidents of targeted excessive force deployed by groups of MDOC employees (between five and ten guards per incident). Plaintiff's claims are not generic; each incident (January 21, January 23, or March 5, 2020) was a distinct, high-intensity uses of force. Each identified Defendant was personally involved in these specific assaults, and their testimony is essential to determining individual liability, particularly where use-of-force

---

[1] DOC Defendants disagree as to the categorization of "critical disputes" noting that the majority of the "disputes" have been agreed upon.

reports conflict or are missing. Plaintiff alleges direct liability for constitutional violations against each individual defendant based on their personal involvement in the excessive force incidents.[2] Plaintiff anticipates that he will need to depose each defendant to prepare adequately for trial because each defendant was personally involved in the use of force incidents and the uses of force against Plaintiff were not specifically litigated in the other matters arising from the campaign of violence at Souza Baranowski Correctional Center ("SBCC") in 2020.

Additionally, Plaintiff anticipates he will need to depose fact witnesses identified in the limited documents produced by DOC Defendants thus far including, but not limited to: MDOC staff members who interacted with Mr. Washington leading up to the excessive force events; nurses, mental health professionals and other health care staff who saw Mr. Washington immediately before or after the excessive force events; correctional officers stationed in the units where the excessive force events took place who witnessed the events; and investigatory staff who subsequently reviewed the excessive force events or adjudicated Mr. Washington's grievances. Finally, Plaintiff intends to take one 30(b)(6) deposition of the designated representative(s) for Defendant MDOC.

Plaintiff will make every effort to efficiently use the deposition hours allotted and complete discovery as expeditiously as possible. For example, Plaintiff may conduct many of these depositions in a half day. However, without access to key evidence yet to be produced by Defendants (e.g. video and audio recordings of the uses of force), Plaintiff cannot determine with certainty which defendant depositions may be accomplished in a half day and which will require a full day. For purposes of setting these ex-ante limits on deposition hours, Plaintiff assumes that all defendants will require a full-day deposition, but that witnesses will require only a half day.

Plaintiff's anticipated deposition plan is as follows:

| DEPONENT | APPROX. HOURS REQUIRED |
|---|---|
| All identified individual defendants (24 individuals) | **168** (24 depositions @ 7 hours each) |
| Not-yet identified individual defendants (2 individuals) | **14** (2 depositions @ 7 hours each) |
| 30(b)(6) deposition of MDOC representative(s) (at least 1 individual) | **7** (1 deposition @ 7 hours each) |
| Fact witnesses identified from MDOC productions to date (approx. 12 individuals) | **42** (12 depositions @ 3.5 hours each) |
| Additional hours for yet-to-be-identified fact witnesses (approx. 5 individuals) | **17.5** (5 depositions @ 3.5 hours each) |

---

[2] None of the individual defendants are sued solely in their role as a supervisor or policy maker.

| TOTAL:<br>27 full-day depositions and<br>17 half-day depositions | TOTAL:<br>248.5 hours |
| --- | --- |

### b. DOC Defendants' Position

Fed. R. Civ. P. 30 governs depositions by oral examination and limits the number of depositions to no more than ten (10) depositions, each limited to one day of 7 hours. Plaintiff is proposing forty-four (44) depositions, 27 of which will be full day depositions, which far exceeds the federal limitations allowed without leave of court. This case is not a class action, and while it concerns three separate incidents on January 21, January 23, and March 5, 2020, does not amount to 248.5 hours of depositions. Furthermore, as a practical matter, fact discovery cannot be completed by August 15, 2026 if Plaintiff's anticipated deposition plan is adopted.

## B. Request No. 1

### a. Plaintiff's Position

RFP No. 1 seeks documents produced by MDOC in nine other lawsuits arising out of the campaign of retaliatory violence at SBCC following the staff altercation on January 10, 2020. The DOC Defendants object, claiming that discovery produced in these other actions is irrelevant because this is not a class action. Plaintiff maintains that these records are highly relevant, share substantial factual overlap, and involve many of the same individual Defendants. *See Costa v. Wright Med. Tech., Inc.*, 2019 WL 108884, at *1 (D. Mass. Jan. 4, 2019) ("Materials produced and deposition testimony given in other litigation is generally discoverable upon a showing of substantial similarity between the prior and current actions" and "[s]o-called cloned discovery is often attractive to litigants because it can reduce the burden and expense of obtaining relevant information and help the parties narrow the issues in dispute more rapidly than they otherwise could").

The relevance of these cases to Mr. Washington's specific experience is reinforced by multiple critical factors. *First*, notwithstanding that the related cases arise from the same campaign of violence at SBCC in January 2020, there is significant overlap between the Defendants in this case and the named parties in the related matters. Copies of each complaint for the nine related cases are attached as Exhibits C through K.[3] For instance, Superintendent Steven Kenneway is a Defendant in this action and all nine related cases alleging similar conduct; Lieutenant Robert Deschene is named in *Diggs*; Officer Anthony Catalano is named in *Graulau*; Cory Shepherd, Sergio Cacioppo, and Nicholas Dumont are named in *Molinari*; and pre-bankruptcy Wellpath LLC is named in *Monahan*. Discovery regarding these Defendants' conduct during the same 2020 lockdown is directly relevant to proving a pattern of behavior and supervisory notice.

*Second*, one of the related plaintiffs, Damante Burrell, was Mr. Washington's bunkmate in cell #13 of the M-2 unit on the night of January 23, 2020. MDOC officers forced Mr. Washington

---

[3] The complaint for *Silva-Prentice v. Turco* is Exhibit C; *Diggs v. Mici*, Exhibit D; *Molinari v. Frink*, Exhibit E; *Burrell v. Kenneway*, Exhibit F; *Graulau v. Turco*, Exhibit G; *Monahan v. Mici*, Exhibit H; *Denson v. Mici*, Exhibit I; *Gibson v. Commonwealth*, Exhibit J; and *Gaskins v. Mici*, Exhibit K.

to bunk with Mr. Burrell, who was experiencing a mental health crisis at the time. Mr. Washington's grievances specifically mention Mr. Burrell's requests to move, and Mr. Burrell's own lawsuit challenges MDOC's retaliatory policy of placing "enemies" together without waivers during the 2020 lockdown.

*Third*, these cases share profound thematic similarities evidencing a widespread campaign of unconstitutional violence. Common themes include retaliatory bunking with known enemies or prisoners in mental health crises (*Gibson*, *Burrell*), improper use of chemical agents (*Gibson*, *Denson*, *Molinari*), and Wellpath's improper administration of medical care (*Monahan*). These matters also allege and demonstrate a pattern of racialized violence (*Diggs*, *Gibson*), the intentional failure to record operations or wear identifying nametags (*Diggs*, *Graulau*), and sham investigations used to conceal staff misconduct (*Gibson*, *Graulau*). These commonalities corroborate essential facts underlying Plaintiff's claims. This request is reasonably calculated to lead to the discovery of admissible evidence that is vital to establishing DOC Defendants' liability in this action. *See Waters v. Earthlink, Inc.*, No. 01–11887–REK, 2004 WL 6000237, at *3 (D. Mass. Dec. 1, 2004) ("[P]laintiff requests deposition transcripts and related exhibits from [another] case. Since this testimony relates to a case involving similar claims and facts to the case at bar, it meets the low relevance standard.").

*Fourth*, a court has already recognized that discovery parallel SBCC cases are relevant in other actions arising from the January 2020 SBCC lockdown. In *Diggs v. Mici*, the Court granted a motion to compel discovery from the *Silva-Prentice* matter, finding that because the cases arose from the same events and shared a substantial overlap of claims, the discovery was relevant.[4] The Court further noted that other judges in the District had similarly granted such motions for cases arising out of the same SBCC lockdown.[5] DOC Defendants attempt to argue that discovery is "irrelevant" because this case is not a class action and plaintiff opted out of *Diggs*. DOC Defendants misunderstand Rule 26(b)(1). Rule 26 authorizes discovery of nonprivileged matter relevant to claims or defenses and proportional to the needs of the case, and the Advisory Committee specifically identifies "other incidents of the same type" and impeachment material as potentially discoverable. The question is not whether plaintiff is a class member; it is whether the requested SBCC materials bear on disputed issues such as DOC's notice and knowledge or the credibility of DOC Defendants.

*Fifth*, since Plaintiff is merely requesting the discovery DOC Defendants have already collected and produced in the related cases, there is minimal burden. Plaintiff simply requests re-production. Insofar as the Court believes there is the potential for undue burden, Plaintiff has also proposed a targeted search of the related cases using specific identifiers and a limited list of substantive terms, to be run across documentary discovery in the related cases:

---

[4] Memorandum and Order, *Diggs v. Mici*, No. 4:22-cv-40003-MRG, ECF No. 75 (D. Mass. Apr. 12, 2024) (Guzman, J.) at 3 (crediting plaintiffs argument that "the two cases arise out of the same events—the SBCC incident in January 2020 and the subsequent Lockdown Period—and because there is substantial overlap of the claims and allegations in each case, the discovery provided by the defendants in that case is relevant to this matter").

[5] *Id.* (noting that "other courts in this District have also granted motions to compel where a party sought discovery from separate cases arising out of the same SBCC January 2020 incident") (citing *Graulau v. Turco*, No. 1:23-cv-10129-PBS (D. Mass.)).

- Identifiers: "Derrick Washington," "Washington," "W89316," and the names of all named Defendants as well as the following key witnesses: Raymond Turcotte, Michael Thomas, Logan Davell, David Reniere, Charles Primack, James Gerardi, David Shaw, Terrance Fougere, Andrew St. Peter, James Ferreira, Joe Freitas, Jason Lanpher, Christopher Almeida, and Dean Gray.
- Substantive Terms: "Target," "employee misconduct," "staff misconduct," "discipline," "BLACC," "black," "gang," "Special Operations Command Group," "SOCG," "bias," "race," "racial," "slur," "discriminate," "discrimination," "lockdown," "shakedown," "threat," "investigate," "investigation," "grievance," "findings," "STG," "report," "excessive," "OC," and "retaliation."

Because video and audio recordings cannot be subjected to text searches, Plaintiff requests all video and audio recordings produced in these nine matters. These recordings are essential to understanding the environment of violence and the practices demonstrated by the SBCC tactical teams during the period Mr. Washington was assaulted.

The requested discovery is narrowly tailored to evidence that is central to Plaintiff's claims of a widespread, racially motivated retaliatory campaign. Given the overlapping Defendants and the direct involvement of related plaintiffs like Mr. Burrell, and minimal burden to the DOC Defendants, Plaintiff respectfully requests that the Court order the production of all documents responsive to the requested search parameters and all video/audio data.

### b. DOC Defendants' Position

The discovery produced in other civil actions is irrelevant to the present action. The present case is not a class action. In fact, Mr. Washington was a class member who opted out of the class action. DOC Defendants have agreed to conduct searches of the discovery produced in the class action, Diggs, et al. v. Mici, et al.; USDC 4:22-cv-40003 as it pertains to discovery relevant to Mr. Washington. Plaintiff's remark that DOC Defendants misunderstand Fed. R. Civ. P. 26(b)(1) is unnecessary, particularly since DOC Defendants have agreed to produce relevant discovery from Diggs. However, Plaintiff's continuously changing substantive terms and identifiers broaden the discovery beyond what is proportional to the needs of this case. There were significant amounts of discovery produced in the class action that do not pertain to Mr. Washington. Mr. Washington was one of approximately 160 class members in Diggs. In Diggs, there were over 99,000 pages of documents as well as more than 450 GB of video data[6] containing hundreds of hours of video footage that was produced, much of which does not pertain to Mr. Washington and include reports and information concerning other incarcerated individuals' medical records and materials from personnel files of individuals who are not Defendants in this action. DOC Defendants also agreed to provide Plaintiff with a list of deponents and stenographer information of parties deposed in Diggs.

---

[6] As discussed below, video provided in Diggs was provided in the Bosch Archive format.

### C.  Request Nos. 11, 12, 13, and 14

#### a.  Plaintiff's Position

Video and audio recordings are the heart of any excessive use-of-force case. In this litigation, Mr. Washington alleges three separate instances of brutal assaults by MDOC staff while he was in various states of restraint and vulnerability. Plaintiff cannot effectively prepare for depositions, identify unnamed "Doe" defendants, or properly engage a use-of-force expert until Defendants provide workable, viewable footage of these incidents.

Defendants have been remarkably dilatory in providing workable video footage. Despite the centrality of this evidence, the production process has been plagued by delays and technical obstacles:

- February 10: DOC Defendants served their second production but failed to include its Responses and Objections ("R&Os").
- February 11: At a court hearing, DOC Defendants claimed they had transmitted the R&Os; Plaintiff reiterated they were never received.
- February 12: Following a follow-up email from Plaintiff, DOC Defendants finally attached the R&Os and stated that videos had been sent via certified mail.
- February 18: Plaintiff received the physical discs.
- February 26: Plaintiff notified DOC Defendants that only 6 out of 46 transmitted files could be opened. DOC Defendants did not respond.
- March 5: Plaintiff sent a deficiency letter detailing that the discs contained broken or unplayable files.
- March 6: DOC Defendants communicate for the first time that an outdated software (Bosch Divar Archive Player 3.35) was required to view the footage. This software is not readily available online and was purportedly included on the discs.
- March 6–12: Plaintiff's counsel spent a week attempting to access the files. These efforts failed because: (1) modern laptops lack physical disc drives; (2) the Bosch software is incompatible with Apple/macOS operating systems; and (3) even with the software, many files remain unable to be opened.
- March 12: Plaintiff reiterated his request for all video and audio to be produced in a universally playable format, such as .mp4.

Plaintiff's request that the videos be produced in .mp4 format is reasonable and practical. DOC Defendants have already produced a subset of the videos (i.e., related to the March 5, 2020 incident) in .mp4 format, so DOC Defendants have already demonstrated its internal capability to provide converted files without compromising the integrity of the evidence.

Furthermore, the "native format" defense is a shield for non-production when the "native" software is obsolete, incompatible with standard legal hardware, and results in a 13% success rate (i.e., 6 out of 46) in opening files. Rule 34 is explicit that discoverable ESI includes "sound recordings, images, and other data" and that information must be obtainable "either directly or, *if necessary, after translation by the responding party into a reasonably usable form.*" Fed. R. Civ. P. 34(a)(1)(A) (emphasis added); *see also Swoope v. CSX Transp., Inc.*, No. 4:13-CV-0307-HLM,

2014 WL 12543864, at *4 (N.D. Ga. Aug. 13, 2014) (ordering that defendant "produce the video portion of the Recording to Plaintiff in a reasonably viewable form, such as .avi"); *Pero v. Norfolk So. Ry.*, No. 3:14–CV–16–PLR–CCS, 2014 WL 6772619, at *3 (E.D. Tenn. Dec. 1, 2014) ("[defendant] cannot use its choice to enter into a software agreement as a shield against producing a relevant piece of discovery, nor can it use the agreement as a basis for attaching burdensome conditions to the production of the recording"); *Frye v. CSX Transp., Inc.*, No. 14-cv-11996, 2016 WL 2758268, at *8 (E.D. Mich. May 12, 2016) (ordering "Defendants provide Plaintiff with a laptop computer loaded with a copy of the responsive data and the software necessary to review that data, to be used solely for the purposes of this litigation and to be returned to Defendants once the litigation is complete"). By producing broken files that require obsolete proprietary software, Defendants are effectively withholding the most critical evidence in this case. Plaintiff respectfully requests that the Court order Defendants to produce all video and audio responsive to Request Nos. 11 through 14 in .mp4 (or another universally playable) format, within seven days so that discovery may proceed. Alternatively, DOC Defendant can send Plaintiff a laptop loaded with the videos and the Bosch software necessary to review the videos, to be used solely for the purposes of this litigation and to be returned to DOC Defendants once the litigation is complete.

### b. DOC Defendants' Position

Plaintiff's position that DOC Defendants have been remarkably dilatory and are withholding critical evidence is inaccurate and without merit. Prior to the entry of the protective order and the lifting of the stay, in June 2025, counsel for DOC Defendants offered to facilitate a viewing of the videos at DOC Legal Division's office in Boston at a time that was convenient, which was declined due to their respective office locations. DOC Defendants provided videos and audio recordings to Plaintiff upon the execution of the protective order in the original format as is maintained by DOC, as has been produced in other cases, including the Diggs class action. Fed. R. Civ. P. 34(2)(E) outlines production of documents or electronically stored information. Specifically, Fed. R. Civ. P. 34(2)(E)(i) states that a party "must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Further, if a "request does not specify a form for producing electronically stored information, **a party must produce it in a form or forms in which it is ordinarily maintained** or in a reasonably usable form or forms" and that a party "need not produce the same electronically stored information in more than one form." Fed. R. Civ. P. 34(2)(E)(ii)-(iii).

Defendants produced three discs in response to Plaintiff's request, including surveillance video and handheld camera video. Surveillance video at DOC institutions utilizes Bosch security systems. Video is downloaded from a network computer to a digital file. The Bosch archive player from 2020 requires proprietary software to view all videos. All of the surveillance video provided in discovery in Diggs was provided in the exact same format with the software on a hard drive as opposed to discs due to the volume of video. The software is required to be on the disc for viewing and was provided to Plaintiff's counsel. Plaintiff's counsel emailed on February 26, 2026 regarding their inability to open two of eight mp4 files on one disc. They indicated that they had no issues with the remaining six files on that disc. It should be noted that all of the .mp4 files were from handheld cameras. Counsel for DOC Defendants requested another copy of the two identified .mp4 video files. On March 5, 2026, counsel for Plaintiff indicated only six of the forty-six total video files could be opened, almost all of which were Bosch surveillance video. On March 6, 2026,

counsel for DOC Defendants provided instructions on how to open the Bosch video files utilizing the software on the discs.

During the March 10, 2026 meet and confer and in the written response on March 16, 2026, DOC Defendants agreed to inquire about conversion to an alternative format, but noted that if this can be accomplished, it will alter the original format of the discs produced as they will no longer be produced in their native format. While current versions of the Bosch proprietary player permit the view to export surveillance to an .mp4 format, which can be played on other view platforms, this feature was not available in 2020. Despite this, DOC Defendants agreed to inquire about conversion, but sought to make clear that it would constitute an alteration of original evidence. In addition, such a task could incur additional cost that is currently unknown. Furthermore, Plaintiff is seeking all of the audio and video recordings produced in Diggs, which amounts to hundreds of hours of video footage, all while refusing to utilize the software that has been provided on the three current discs. Class counsel in Diggs did not report any issues playing video footage utilizing the same exact software. Plaintiff's argument that DOC Defendants produced handheld video in .mp4 format ignores the fact that they are two completely different camera systems.

### D. Request Nos. 27, 28, 29, 30, and 33

#### a. Plaintiff's Position

For these requests, the DOC Defendants have agreed to search official DOC email accounts, but they refuse to collect or produce data from the personal devices and private messaging accounts (e.g., personal email, text messages, Facebook Messenger, and WhatsApp) of the individual DOC Defendants. Instead, Defendants offer only to "inquire" of the individual officers as to whether such documents exist, maintaining that these records are not in the "care, custody or control of the DOC." *See* Exhibit L, Mar. 16, 2026 Ltr. from S. Caffrey to S. Mariella at 10. Plaintiff maintains that this "inquiry-only" approach is insufficient for Defendants sued in their individual capacities. *See Da Veiga v. Standard Bank*, No. 22-11364-NMG, 2024 WL 5668161, at *3 (D. Mass. Dec. 13, 2024) ("Abdicating completely the discovery search, collection and production to a layperson or interested client without the client's attorney having sufficient knowledge of the process . . . does not meet an attorney's obligation under our discovery rules and case law," noting that "the perils of client self-collection are abundant").

Under Federal Rules of Civil Procedure 26(b) and 34, every party has an independent obligation to produce relevant, non-privileged documents within their "possession, custody, or control." The fact that MDOC, as an agency, may not "control" an officer's personal cell phone is irrelevant to the legal obligation of the individual officers—who are named parties—to search their own devices for responsive data. This is particularly critical here, as discovery in related matters has already revealed that SBCC staff used personal text messages to communicate about official MDOC business, including the coordination of use-of-force reports.[7]

---

[7] *See, e.g.*, Declaration of Bridget A. Zerner in Support of Motion to Compel, *Silva-Prentice v. Turco*, No. 1:21-cv-11580-PBDS, ECF No. 95–1 (D. Mass. Apr. 12, 2023) ¶ 7 ("Defendants' own documents indicated at least some of the defendants were texting each other during the relevant time"); Memo. of Law in Support of Plfs.' Mot. to Compel, *Silva-Prentice v. Turco*, No. 1:21-cv-11580-PBDS, ECF No. 132 (D. Mass. Dec. 12, 2023) at 11 ("at least some

The Court has already addressed and resolved this exact issue in parallel litigation arising from the same 2020 SBCC lockdown. In *Silva-Prentice*, Magistrate Judge Dein explicitly ordered that defense counsel "require the current defendants . . . to search for any responsive emails or text messages . . . on any phone, DOC-issued or personal, on which these individuals conducted DOC business."[8] There is no reason here to deviate from this established discovery protocol.

To alleviate any privacy concerns for the individual Defendants, Plaintiff has proposed a highly targeted search limited to three specific identifiers. Plaintiff requests that the Court order the individual DOC Defendants to search their personal email and mobile communications for the following terms.

- Identifiers: "Derrick Washington," "Washington," "W89316," and the names of all named Defendants as well as the following key witnesses: Raymond Turcotte, Michael Thomas, Logan Davell, David Reniere, Charles Primack, James Gerardi, David Shaw, Terrance Fougere, Andrew St. Peter, James Ferreira, Joe Freitas, Jason Lanpher, Christopher Almeida, and Dean Gray.
- Substantive Terms: "Target," "employee misconduct," "staff misconduct," "discipline," "BLACC," "black," "gang," "Special Operations Command Group," "SOCG," "bias," "race," "racial," "slur," "discriminate," "discrimination," "lockdown," "shakedown," "threat," "investigate," "investigation," "grievance," "findings," "STG," "report," "excessive," "OC," and "retaliation."

The individual Defendants cannot shield relevant communications regarding their official conduct solely because those conversations occurred on personal devices or private apps. Given the precedent in *Silva-Prentice* and the requirements of the Federal Rules, Plaintiff requests that the Court order the individual Defendants to conduct a thorough search of their personal accounts and devices and produce all responsive documents.

### b. DOC Defendants' Position

DOC Defendants have agreed to request responsive documents from individual DOC Defendants from their personal accounts and devices; therefore, an order requiring individual DOC Defendants to conduct a thorough search of their personal accounts and devices and produce all responsive documents is unnecessary. DOC Defendants maintain that these records, personal devices and accounts, are not in the care, custody or control of the DOC, as personal devices such as personal cell phones are not permitted inside DOC institutions. Only DOC issued devices are permitted inside DOC institutions. DOC Defendants have not refused to collect or produce responsive documents from individuals DOC Defendants as Plaintiff asserts, but cannot seize personal devices to conduct forensic examinations and any data is not in the care, custody, or control of DOC, but rather the respective providers and platforms. Both Fed. R. Civ. P. 26(b) and Fed. R. Civ. P. 34 do not require counsel for DOC Defendants to conduct investigations

---

Defendants—including [defendant], whose cell phone was forensically searched by DOC investigators earlier this year—had used text messages to discuss long overdue use of force reports specific to [plaintiffs]").

[8] Order on Plfs.' Mot. to Compel., *Silva-Prentice v. Turco*, No. 1:21-cv-11580-PBDS, ECF No. 147 (D. Mass. Jan. 26, 2024) ¶ 1(b).

independent of information provided by their clients, or to conduct searches for materials above and beyond those performed by the clients.

DOC Defendants do not agree to inquire as to the personal email, personal phone data including text messages, and online messaging services such as Facebook Messenger and WhatsApp of any individuals who are not named as Defendants in the present action.

Dated: March 24, 2026                                          Respectfully submitted,

/s/ Stephanie M. Caffrey                              /s/ Sabina Mariella
Stephanie M. Caffrey (BBO No. 697075)         Boies Schiller Flexner LLP
Department of Correction                              Sabina Mariella (*pro hac vice*)
Legal Division                                            John Lyons (BBO No. 569500)
70 Franklin Street, Suite 600                         Katherine Zhang (*pro hac vice*)
Boston, MA 02110-1300                                Julia Bevan (*pro hac vice* forthcoming)
(t) +1 617 727 3300 x1154                            Jayden Rush (*pro hac vice*)
stephanie.m.caffrey@doc.state.ma.us              55 Hudson Yards
                                                              New York, NY 10001
*Attorney for DOC Defendants*                      (t) +1 212 446 2300
                                                              (f) +1 212 446 2380
                                                              smariella@bsfllp.com
                                                              jlyons@bsfllp.com
                                                              kzhang@bsfllp.com
                                                              jbevan@bsfllp.com
                                                              jrush@bsfllp.com

                                                              Rights Behind Bars
                                                              Lillian Novak (*pro hac vice*)
                                                              Derrick Luster (*pro hac vice*)
                                                              1800 M Street NW FNT 1 #33821
                                                              Washington, DC 20033
                                                              (t) +1 202 455 4399
                                                              lily@rightsbehindbars.org
                                                              derrick@rightsbehindbars.org

                                                              *Attorneys for Plaintiff*

## L.R. 7.1(a)(2) AND L.R. 37.1(b) CERTIFICATION

In accordance with L.R. 7.1(a)(2) and L.R. 37.1(b), the undersigned counsel certifies that they had one conference to attempt to resolve these issues including the last meet and confer on the outstanding discovery disputes on March 10, 2026.

Dated: March 24, 2026

COUNSEL FOR PLAINTIFF                    COUNSEL FOR DOC DEFENDANTS
*/s/ Sabina Mariella*                    */s/ Stephanie Caffrey*
Sabina Mariella                          Stephanie Caffrey

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 24, 2026, I electronically filed the foregoing with the Clerk of the District of Massachusetts by using the CM/ECF system, which automatically sends an electronic notification with this filing to all counsel of record.

Dated: March 24, 2026

COUNSEL FOR PLAINTIFF
*/s/ Sabina Mariella*
Sabina Mariella