# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Derrick Washington,<br><br>     Plaintiff,<br><br>v.<br><br>Massachusetts Department of Corrections, Superintendent Kenneway, Lieutenant Deschene, Lieutenant Forget, Sergeant Hellis, Sergeant Tocci, Officer Catalano, Officer Gagnon, Nurse Capoccia, Officer Does 1–23, Medical Director Doe, and Nurse Doe,<br><br>     Defendants. | Civ. Case No. 1:23-cv-10063 |

## <u>PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION DIRECTED TO ALL DEFENDANTS</u>

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Derrick Washington, by and through undersigned counsel, hereby requests that the Defendants Massachusetts Department of Corrections, Superintendent Kenneway, Lieutenant Deschene, Lieutenant Forget, Sergeant Hellis, Sergeant Tocci, Officer Catalano, Officer Gagnon, Nurse Capoccia (collectively "Defendants") produce the following documents, electronically stored information ("ESI"), and tangible things that are in Defendants' possession, custody, or control, to Plaintiff within thirty (30) days of service in accordance with the definitions and instructions below.

## DEFINITIONS

In addition to the definitions set forth in the Federal Rules of Civil Procedure, the following definitions apply to each of the Requests and are deemed to be incorporated into each of said Requests.  Notwithstanding any definition set forth below, each word, term, or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

1. **"Person," "Persons," or "Individual"** means, unless otherwise specified, any natural person, firm, corporation, labor organization, partnership association, joint venture, group or association, and any other form of business organization, entity, or arrangement.

2. **"You," "Your," or "Yourself"** means each of the Defendants or any of their agents, servants, employees, or other Individuals acting on their behalf.

3. **"Plaintiff"** refers to Derrick Washington and any Person acting or purporting to act on behalf of Derrick Washington.

4. **"Defendants"** refers to all Defendants in this action as well as those named in Plaintiff's pending Motion to Amend the Complaint [Dkt. No. 68] and proposed First Amended Complaint [Dkt. No. 68-1], specifically Massachusetts Department of Correction, Wellpath LLC, Superintendent Steve Kenneway, Lieutenant Robert Deschene, Lieutenant Arthur Forget, Sergeant Ryan Hillis, Sergeant Thomas Tocci, Officer Anthony Catalano, Officer Joshua Gagnon, Nurse Christian Capoccia, Sergeant Arthur Barnes, Officer Joseph Cummings, Officer Nicholas Dumont, Officer Zachary Fonseca, Officer Daniel Hollenbach, Officer Eric Lawson, Sergeant Nathan Owen, Officer Cory Shepherd, Officer Jeffrey Pepoli, Sergeant Brian Rayner, Officer Robert Bashaw, Officer Raymond Simula, Officer Sergio Cacioppo, Officer Thomas Membrino, Officer David Gilman, Officer Ryan Kalreiss, any Defendants who have not yet been identified, and their present or former agents, subordinates and employees, unless the context indicates or specifies otherwise, and shall be deemed to mean each and every legal representative, agent, employee, attorney, accountant, advisor and all other Persons acting or purporting to act on Your/their behalf or under Your/their control to the extent that any of those Persons have knowledge of or participated in any of the matters related to the allegations in the Complaint or to any of Your defenses.

5. **"Corrections Officer" or "Officer"** refers to any staff member or agent of the DOC regardless of rank or assignment and regardless of whether the staff member is a regular employee of the DOC or is working under a contract or by special arrangement from another agency.

6. **"Department of Correction(s)," "Department," and "DOC"** refer to the Massachusetts Department of Correction and each and every one of its internal departments, divisions, units, or facilities; present or former employees, officers, partners, directors, agents, representatives, consultants, contractors, predecessors, attorneys, or consultants; any Persons acting or purporting to act on behalf of the foregoing; and any parents, subsidiaries, affiliates, segments, or divisions both presently existing and those that previously existed.

7. **"SBCC"** refers to the Souza-Baranowski Correctional Center and each and every one of its internal departments, divisions, units, or facilities; present or former employees, officers, partners, directors, agents, representatives, consultants, contractors, predecessors, attorneys, or consultants; any Persons acting or purporting to act on behalf of the foregoing; and any parents, subsidiaries, affiliates, segments, or divisions both presently existing and those that previously existed.

8. **"Document(s)" or "Record(s)"** mean all writings, of any form, kind, character or description including, but not limited to: the original and all non-identical copies, whether different from the original by reason of any notation made on such copies or otherwise;

2

correspondence; letters; memoranda; notes; diaries; statistics; telegrams; minutes; transcripts; contracts; agreements; reports; studies; checks; statements; receipts; returns; summaries; pamphlets; books; inter-office and intra-office communications; offers; notations of any sort of conversation, telephone calls, meetings or other communications; bulletins; printed matter; invoices; worksheets; pleadings; motions, legal memoranda; all drafts, alterations, modifications, changes, and amendments of any of the foregoing; questionnaires; opinions; statements; graphic and oral representations of any kind, including without limitation photographs, charts, microfilm, computer software, and electronic recordings, such as tapes, diskettes, or cassettes or any tangible thing, however produced or reproduced.  A draft or non-identical copy is a separate Document within the meaning of this term.  Where there is any question about whether a tangible item otherwise described in this request falls within the definition of Document or Documents, such tangible item shall be produced.  The terms "Document(s)" and "Record(s)" include any Documents or Records on Defendants' personal devices, including but not limited to Defendants' personal cellular phones, tablets, and computers.

9. **"Employed," "Employment," or "Employee"** means any worker, work, or services provided or performed in connection with any direct employment, indirect employment, contract employment, independent contractor relationship, outsourcing employment, temporary employment and/or staffing services employment with the DOC and/or any other state, local, or privately contracted agency. It also means any volunteer work and workers.

10. **"Communication"** means, without limitation, any oral, written, or electronic transmission of information, including but not limited to: (1) any written letter, memorandum, handbill, leaflet, brochure, note, e-mail, telegram, telecopy, facsimile, text message, or other document, including in electronic form; (2) any telephone call by or with You, or between You and two or more Persons, or between You and any other Person, whether or not such call was by chance or prearranged, formal or informal; and (3) any meeting by or with You, or between You and two or more Persons, or between You and any other Person, whether or not such contact was by chance or prearranged, formal or informal.  The term "Communication" includes any Communication on Defendants' personal devices, including but not limited to Defendants' personal cellular phones, tablets, and computers.

11. **"Relate," "Related," "Relating to"** or any variation thereof are to be used in their broadest sense and shall mean to: concern, contain, embody, describe, explain, mention, refer to, discuss, involve, support, evidence, reflect, deal with, consist of, represent, constitute, emanate from, be directed at, or in any way pertain, in whole or in part, to the subject.

12. **"Complaint"** refers to the complaint filed in the above-captioned case.

13. **"The Incident(s)"** refers to the use(s) of force on Plaintiff Derrick Washington on January 21, 2020, January 23–24, 2020, and March 5, 2020, as alleged in the complaint.

3

14. **"The Altercation"** refers to the altercation between prisoners and Officers in the N1 unit on January 10, 2020, as alleged in the complaint.

15. "**Special Operations Unit**" or "**Special Operations Division**" refers to the Special Operations Response Unit or similar unit by whatever name, and any or all teams, sub-units, or divisions thereof.

16. **"Use of Force"** refers to any application of force including take-downs, control-techniques, blows to the body, beatings, assaults, use of Electric Control Devices (ECD), chemical agents, weapons, batons, or any other equipment.

17. **"Taser"** refers to any ECD regardless of manufacturer or brand as described in 103 DOC 509. The terms taser, ECD, Stun Guns, and Probe Cartridges may be used interchangeably.

18. **"Chemical Agent"** refers to any chemical compound as referenced in 103 DOC 509 that may cause tearing of the eyes, involuntary eye closure, and respiratory issues. It includes any chemical compound referred to as Oleoresin Capsicum (OC) spray, chlorobenzylidene malononitrile (tear gas), mace, or pepper balls, and these terms may be used interchangeably with "Chemical Agent."

19. **"Disability"** refers to any physical or mental impairment that substantially limits one or more major life activities as defined in 103 DOC 206.

20. **"Contraindication" or "Previous Medical Issue"** refers to a documented medical condition that may present an unreasonable hazard for certain activities.

21. **"Restraints"** refers to any equipment or device that restricts the movement of a prisoner. This encompasses any and all types of restraints including flex cuffs, handcuffs, leg irons, waist chains, and four-point restraints and may be used interchangeably.

22. **"Tactical Team Member(s)"** refers to DOC Employees who serve on a Special Operations Response Unit as referenced in 103 DOC 561.

23. **"Institutional Search"** refers to the SBCC-wide search and reassignment conducted by the SBCC staff, members of the Special Operations Unit, and other DOC staff, on or about January 21 to 24, 2020 in which SBCC divided the facility into a "North Side" and "South Side" as alleged in the Complaint.

24. **"Policy"** shall include any formal or informal directives, instructions, training materials, memoranda, or practices issued by DOC, SBCC, or contracting agencies/companies and their Employees.

**INSTRUCTIONS**

The following instructions apply to each of the Requests and are deemed to be incorporated in each of them:

4

1. This request calls for the production of all responsive Documents in Your possession, custody, or control, or in the possession, custody, or control of Your Employees, accountants, attorneys, representatives, agents, or other Persons acting on Your behalf, without regard to the physical location of such Documents.  Without limiting the term "control," a document is deemed to be within Your control if You have any ownership, possession, or custody of the document, or the right to secure the document or a copy thereof.

2. Any alteration of a responsive document, including any marginal notes, handwritten notes, underlining, date stamps, received stamps, endorsed or filed stamps, drafts, revisions, modifications, or other versions of a document, is a responsive document in its own right and must be produced.

3. In responding to this request, produce all responsive Documents prepared, forwarded, considered, or reviewed.

4. In responding to this request, include Documents obtained on Your behalf by Your counsel, Employees, experts, agents, or any other Persons acting on Your behalf.

5. If Your response is that the Documents are not within Your possession or custody, describe in detail the unsuccessful efforts You made to locate each such document.

6. If Your response is that the Documents are not under Your control, identify who has control and the location of the Documents.

7. If Your response is that the Documents are no longer under Your control, identify the Documents by name, number, form or description, and by date made, and state when the document was most recently in Your possession, custody, or control, the disposition made of the document, and the identity of the Person or Persons now in possession, custody, or control of such document. If the document has been destroyed, state the reason for its destruction and the identity of the Person or Persons who destroyed the document and/or who directed that the document be destroyed.

8. For the purposes of reading, interpreting, or construing the scope of these Requests, the terms used shall be given their most expansive and inclusive interpretation.  This includes, without limitation, the following:

   a. The terms "all," "any," and "each" shall each be construed as encompassing any and all;

   b. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

   c. The use of the singular form of any word includes the plural and vice versa;

   d. The masculine, feminine, or neuter pronoun shall not exclude other genders;

e.  The word "including" shall be read to mean including without limitation;

f.  The present tense shall be construed to include the past tense and vice versa;

g.  References to Employees, officers, directors, or agents shall include both current and former Employees, officers, directors, and agents.

9.  Any reference to a Person that is a business entity and is not otherwise defined includes that Person's predecessors (including any preexisting Person that at any time became part of that entity after merger or acquisition), successors, parents, divisions, subsidiaries, affiliates, franchisors and franchisees; each other Person directly or indirectly owned or controlled by any of them; each partnership or joint venture to which any of them is a party; all present and former directors, officers, Employees, agents, consultants, controlling shareholders (and any entity owned by any such controlling shareholder), and attorneys of any of them; and any other Person acting for or on behalf of any of them.

10. Unless words or terms have been given a specific definition herein, each word or term used herein shall be given its usual and customary dictionary definition except where such words have a usual custom and usage definition in Your trade or industry, in which case they shall be interpreted in accordance with such usual custom and usage definition of which You are aware.

11. If any document is withheld, in whole or in part, for any reason, including a claim of privilege, whether work-product or attorney-client privilege, confidential source privilege, or any other privilege, You shall set forth separately with respect to each such document a log in compliance with Fed. R. Civ. P. 26(b)(5)(A).

12. To the extent a document subject to an assertion of privilege, a work-product claim, or other objection contains any responsive information not subject to such assertion or objection, the information must be produced. Claimed irrelevance is not a lawful basis for redacting or failing to produce part of a document the balance of which contains responsive material.

13. Any Documents or other items requested concerning a certain subject matter shall also include Documents or other items tending to support, contradict, rebut, or relate to statements made and conclusions drawn concerning such subject matter.

14. To the extent that there are no Documents responsive to a particular request, You shall state so in writing.

15. If You object to a part of a Request and refuse to respond or provide Documents responsive to that part, state Your objections and provide the information or Documents requested in the remaining portion of the Request.  If You object to the scope or time period of a Request and refuse to respond for that scope or time period, state Your objection and respond to the Request for the scope and time period You believe is appropriate.

16. This request is continuing, and Your response to this request must be promptly supplemented when necessary or appropriate.

6

17. All Requests include any responsive Documents not already produced in response to Plaintiff's request for emergency discovery.

**REQUESTS FOR PRODUCTION**

1. All Documents You produced in the following matters:
   a. *Silva-Prentice, et al. v. Turco, et al.*, 21-cv-11580-PBS (D. Mass.);
   b. *Diggs, et al. v. Mici et al.*, 22-cv-40003-ADB (D. Mass.);
   c. *Molinari v. Frink*, *et al.*, 20-cv-11922 (D. Mass);
   d. *Burrell v. Kenneway, et al.*, 20-cv-11776-ADB (D. Mass);
   e. *Graulau, et al. v. Turco et al.*, 23-cv-10129-PBS (D. Mass.);
   f. *Monahan v. Mici, et al.*, No. 2384-cv-00261(Mass. Super. Jan. 23, 2023);
   g. *Denson v. Mici, et al.*, No.  2185-cv-00101A (Mass. Super. Jan. 25, 2021);
   h. *Gibson v. Commonwealth, et al.*, No. 2084-cv-02663 (Mass. Super. Nov. 16, 2020);
   i. *Gaskins et al. v. Mici, et al.*, No. 2085-cv-00415 (Mass. Super. Mar. 24, 2020).

2. Plaintiff's complete DOC six-part folder, as described in 103 CMR 155.

3. All Documents indicating Plaintiff as pertaining to a Security Threat Group from the first date of his incarceration within DOC through the present.

4. All Documents relating to grievances, complaints, and requests Plaintiff submitted to You from September 1, 2019 through the present, including but not limited to:
   a. Documentation from the Informal Complaint Resolution Process pursuant to 103 CMR 491;
   b. Grievances and related documentation pursuant to 103 CMR 491;
   c. Emergency grievances and related documentation pursuant to 103 CMR 491;
   d. Appeals of denials of grievances and related documentation pursuant to 103 CMR 491;
   e. Grievance suspension notifications and related documentation pursuant to 103 CMR 491;
   f. Staff misconduct allegations and related documentation under 103 DOC 522; and
   g. All Documents relating to inquiries by the Office of Investigative Services as a result of any grievances, complaints, and requests made by Plaintiff.

5. All Records of disciplinary actions relating to Plaintiff from September 1, 2019 through the present, including but not limited to:
   a. All disciplinary reports or tickets (D tickets) and any documentation about investigations related to those disciplinary reports or tickets pursuant to 103 CMR 430;
   b. All informal Sanctions Forms pursuant to 103 CMR 430;
   c. All Documents related to the record of disciplinary proceedings and hearings pursuant to 103 CMR 430.17, including but not limited to evidence, testimony, decisions or dispositions, and audio and video recordings;
   d. All Documents related to disciplinary reports that were dismissed or not prosecuted;

e. All Documents related to Plaintiff's appeals of disciplinary reports, dispositions, decisions, and restrictive housing placements;

f. All Documents related to sanctions imposed on Plaintiff following disposition or decisions from disciplinary reports and hearings;

g. All Documents related to sanctions recommended for Plaintiff, including for Plaintiff to be placed in disciplinary detention pursuant to 103 CMR 430.22;

h. Documents from departmental segregation unit or restrictive housing proceedings pursuant to 103 CMR 11 and 103 CMR 423, including any referrals, board records, assessments, placement review documents and screenings, witness documents, statements, recommendation, reports, audio and video recordings, written decisions, monthly evaluations and reviews, and appeals.

6. All medical and mental health Records relating to Plaintiff maintained by You and/or any DOC-contracted healthcare provider pursuant to 103 DOC 607, including but not limited to:

a. Logs of all sick slips submitted by Plaintiff at SBCC from September 1, 2019 through the present;

b. All Documents maintained by You and/or any contract health care provider pursuant to 103 DOC 607, that state that Plaintiff has asthma;

c. All Documents maintained by You and/or any contract health care provider pursuant to 103 DOC 607 stating that Plaintiff requires a Keep-On-Person inhaler or any other medication for asthma;

d. All Documents relating to medical care provided to Plaintiff at SBCC or outside hospitals (including Leominster Hospital) between January 1, 2020 and August 1, 2020;

e. All Documents relating to any decontamination that was conducted as to Plaintiff between January 1, 2020 and August 1, 2020;

f. All Documents relating to Your provision of Plaintiff's Keep-On-Person inhaler between January 1, 2020 and August 1, 2020;

g. All Documents relating to Plaintiff being put on suicide watch between January 1, 2020 and August 1, 2020;

h. All Documents relating to any special precautions that Plaintiff requires in situations involving Use of Force or use of Chemical Agents pursuant to 103 DOC 509 due to asthma; and

i. All mental health Records relating to Plaintiff.

7. All Employee and personnel files for the following Individuals, including but not limited to a complete record of training materials (both initial and continuing training), certificates, continuing education Records, hiring Records, disciplinary Records, reprimands, promotions, demotions, awards, and termination Records:

a. All Defendants;

a. Captain Jason Lanpher;

b. Officer Harvey Vachon;

c. Officer Jay Hurlbrink;

d. LPN Jennifer Robles;

e. RN Karen Steinmetz;

8

      f.  RN Alyssa Bond;
      g.  Dr. Petros;
      h.  Director of Nursing Kelly Ryder.

8.  All Documents concerning grievances, informal complaints, formal complaints, confidential Incident Reports, or any report in any form whatsoever made by prisoners, DOC staff, or contract health care provider staff alleging any form of misconduct by the following Individuals from September 1, 2019 through the present, including but not limited to grievances, reports, emails, letters, complete investigation files, decisions and recommendations resulting from any investigation relating to the complaints, arbitration and hearing transcripts relating to the complaints, and any lawsuits:

      a.  All Defendants;
      i.  Captain Jason Lanpher;
      j.  Officer Harvey Vachon;
      k.  Officer Jay Hurlbrink;
      l.  LPN Jennifer Robles;
      m. RN Karen Steinmetz;
      n.  RN Alyssa Bond;
      o.  Dr. Petros;
      b.  Director of Nursing Kelly Ryder.

9.  All Policies, procedures, memoranda, standard operating procedures, directives, training materials, lesson plans, and reports—whether DOC-wide, Special Operations Unit-specific, or SBCC-specific—in effect at any time between September 1, 2019 and the present, concerning any of the following:

      a.  Use of Force, including but not limited to:
          i.  Planned Use of Force, including factors and/or criteria to be reviewed or considered by the facility superintendent, shift commander, or captain prior to ordering any planned Use of Force upon a prisoner;
         ii.  Spontaneous Use of Force;
       iii.  Excessive Force;
       iv.  Reasonable Force;
        v.  Pyramid of Force;
       vi.  "Quick reaction(s) force" and "quick response force" (QRF);
      vii.  Hostage Rescue Teams;
    viii.  Critical Incident Response Teams (CIRT);
       ix.  Special Response Teams;
        x.  Use of Force on individuals with Disabilities or preexisting medical conditions;
       xi.  Use of Chemical Agents, including but not limited to all Documents concerning the use of Chemical Agents on a prisoner with Contraindications (e.g., asthma), Previous Medical Issues, and/or Disabilities;
      xii.  Requirements that Officers or medical staff check on or monitor prisoners after the Use of Force, especially after the use of Chemical Agents or ECDs;
    xiii.  Use of Force or Chemical Agents on prisoners with a Medical or Disability designation;

9

xiv. Requirements for medical care after the Use of Force;
xv. Requirements for decontamination and medical care after the use of Chemical Agents;
xvi. Reporting requirements following Uses of Force, including the use of Chemical Agents and the process for reviewing whether Use of Force was reasonable;
xvii. Use of Tasers, Stun Guns, Probe Cartridges, or any other ECD;
xviii. Use of "Specialty Impact Devices";
xix. Disorder Management Policy;
xx. Special Operations Divisions Policies;
xxi. Duty to intervene;
xxii. Debriefing following uses of force; and
xxiii. De-escalation

b. The process for reviewing staff misconduct, including the process for reviewing staff misconduct by the Office of Investigative Services;
c. Disciplinary actions and proceedings;
d. Cell assignments;
e. Restraints and handcuffs;
f. Cell extractions including, but not limited to:
    i. "No knock" cell entries; and
    ii. Forced movement of prisoners, or "force moves"
g. Use of a handheld video camera to record the Use of Force or any other actions of or interactions between prisoners and/or staff;
h. Storage and retention of surveillance and handheld video footage;
i. Strip searches;
j. Medical and Disability screenings upon intake;
k. Mental healthcare access, including crisis care;
l. Medical access, including emergency medical care;
m. Use of solitary confinement, restrictive housing unit, departmental segregation unit, and administrative segregation;
n. Use of strip cages;
o. Security Threat Group identification and management;
p. Suicide watch;
q. Housing assignments;
r. Racial equity, unintentional bias, or racial discrimination;
s. Communication and interaction with incarcerated people;
t. Disorder control or management, including those Policies and training materials governing Special Operations Unit or Tactical Team Response;
u. Supervisory structure, organizational charts, and the duties of Corrections Officers, including but not limited to:
    i. Correctional Officer I;
    ii. Shift Commanders;
    iii. Lieutenants;
    iv. Critical Incident Response Team Commander;
    v. Hostage Rescue Team Commander;
    vi. DOC's Video Response Team.

10

    v.   Employee dress code and uniforms, including dress code and uniform for tactical unit Officers and specifically including requirements for name tags or other visible identification on uniforms.

10. All Documents relating to any Use of Force against Plaintiff from September 2019 through the present, including but not limited to:
   a. Use of Force packages;
   b. Comprehensive incident reports (including Confidential Incident Reports);
   c. Witness reports;
   d. Audio and/or video recordings of the Use of Force or that You reviewed in connection with the Use of Force;
   e. All Documents relating to any debriefings that occurred prior to, concurrently with, or following the Use of Force; and
   f. All Documents relating to any medical and/or mental health examination and/or treatment following the Use of Force.

11. All Documents relating to the Incidents, including but not limited to:
   a. Use of Force packages relating to the Incidents;
   b. Memoranda, correspondence, e-mail, text messages, or other Communications relating to the Incidents;
   c. Corrections requests relating to the Incidents;
   d. All Documents relating to any disciplinary actions or reprimands of any Officer relating to the Incidents;
   e. All Documents relating to any review or investigation of the Incidents, and any resulting notes, memoranda, comments, or reports by any DOC staff, administrator, or committee, including but not limited to the Use of Force Triage Committee;
   f. All written or recorded statements, interviews, or summaries of verbal statements made by Plaintiff, any Defendant, or any other Officer or contract healthcare provider personnel relating to the Incidents;
   g. All Documents relating to de-escalation or attempted de-escalation during the Incidents;
   h. All Documents, logs, orders, directives, or Communications relating to any status checks or medical checks of the Plaintiff by any Officer, including medical Officers, following the Incidents;
   i. All Documents, logs, orders, directives, or Communications relating to clothing, bedding, or basic hygienic products provided to Plaintiff following the Incidents;
   j. All Documents or Communications relating to instructions, orders, guidelines, or directives issued to members of the Tactical Teams in connection with the Incidents;
   k. Audio and/or video recordings of the Incidents or that You reviewed in connection with the Incidents;
   l. Photographs or other visual renderings relating to the Incidents;
   m. All attendant evidence relating to the Incidents.

12. All video and audio recorded on handheld, surveillance, or body cameras on January 21, 2020, including but not limited to video and audio from following locations:

11

     a. All sections of the L-2 unit;
     b. Inside all of the Plaintiff's cells in the L-2 cellblock or unit and surrounding areas;
     c. All sections of the M-2 unit;
     d. Inside all of the Plaintiff's cells in the M-2 cellblock or unit and surrounding areas;
     e. Inside cell #12 in the M-2 unit and surrounding areas;
     f. Inside cell #13 in the M-2 unit and surrounding areas; and
     g. Health Services Unit (HSU).

13. All video and audio recorded on handheld, surveillance, or body cameras on January 23 and January 24, 2020, including but not limited to video and audio from following locations:
     a. Health Services Unit (HSU);
     b. All sections of the M-2 unit;
     c. Inside cell #13 in the M-2 unit and surrounding areas; and
     d. Inside cell #15 in the M-2 unit and surrounding areas.

14. All video and audio recorded on handheld, surveillance, or body cameras controlled by DOC, its agents, or assigns on March 5, 2020, including but not limited to video and audio from following locations:
     a. All sections of the M-2 unit;
     b. All sections of the L-2 unit;
     c. All of Plaintiff's cells in the M-2 unit and surrounding areas;
     d. All of Plaintiff's cells in the L-2 unit and surrounding areas;
     e. All noncontact visiting rooms and surrounding areas;
     f. All areas in the Restrictive Housing Unit;
     g. All strip cages in the Restrictive Housing Unit and surrounding areas;
     h. Health Services Unit (HSU);
     i. All sections of the K-3 unit; and
     j. Inside cell #5 in the K-3 unit and surrounding areas.

15. All Documents relating to the use of ECDs, Tasers, Stun Guns, or Probe Cartridges on Plaintiff from January 1, 2020 through August 1, 2020, including but not limited to the electronic control devices utilized by Officer Shepherd with serial number X30004N83 and Eric Lawson with serial number X30007D54 on January 21, 2020. For each deployment of a Taser, produce all data recorded by the Taser including but not limited to time of deployment, mode of deployment, and length of deployment.

16. All Documents relating to the authorization of planned Use of Force against Plaintiff from January 1, 2020 through August 1, 2020.

17. All Documents relating to the authorization for Officers to carry and use ECDs, Tasers, Stun Guns, or Probe Cartridges on Plaintiff between January 1, 2020 and August 1, 2020, including but not limited to the authorization that ADC Paul Henderson provided to Officer Shepherd to carry electric control device with serial number X30004N83 and authorization for Officer Eric Lawson to utilize electric control device with serial number X30007D54 on January 21, 2020.

18. All Documents relating to the use of Chemical Agents and Chemical Agent devices on Plaintiff from January 1, 2020 through August 1, 2020, including any notifications to the Deputy Commissioner or their designee pursuant to 103 DOC 509.

19. All Documents relating to the authorization for Officers to carry and use Chemical Agents pursuant to 103 DOC 509 between January 1, 2020 and August 1, 2020.

20. All Documents relating to cell extractions of Plaintiff from January 1, 2020 through August 1, 2020, including but not limited to memoranda, cover sheets, corrections requests, correspondence, electronic mail, texts, reviews, audio tapes, video tapes, interview notes, photographs or other visual renderings, all reports, and all attendant evidence.

21. All Documents relating to the use of Restraints on Plaintiff from January 1, 2020 through August 1, 2020, including but not limited to all authorizations by Shift Commanders to use Restraints for over two hours, and any authorizations by the Superintendent to use of Restraints for up to eight-hour intervals pursuant to 103 DOC 520.

22. All unit and activity logs for each shift from January 1, 2020 through August 1, 2020.

23. All SBCC Shift Briefings or daily briefings from January 1, 2020 through August 1, 2020.

24. All shift commander reports and climate reports concerning the SBCC from January 1, 2020 through August 1, 2020.

25. Color copies of any and all photographs taken on and between January 1, 2020 and August 1, 2020 of the following:

    a. Plaintiff;
    b. Plaintiff's injuries and/or appearances before and after the Incidents;
    c. Plaintiff's cells;
    d. Injuries to Defendants, DOC Employees, or DOC vendors and contractors related to the Incidents; and
    e. Any area of SBCC or DOC equipment or property alleged to have been damaged by Plaintiff between January 1, 2020 and August 1, 2020.

26. All Documents relating to any debriefing pursuant to 103 CMR 505.14 of any Defendant, Officer, or contract health care provider staff at SBCC from January 1, 2020 to August 1, 2020, and all documentation of resulting comments or instructions.

27. All Communications relating to Plaintiff from November 1, 2019 through August 1, 2020.

28. All Documents and Communications regarding the Black, Latino, Asian Cultural Coalition (BLACC) at SBCC from September 2019 through the present.

29. All Documents and Communications regarding Plaintiff's political and social organizing

13

activities, including advancing racial equity, voting rights, prisoner rights, or any other similar causes from the time Plaintiff was first incarcerated through the present.

30. All Documents and Communications regarding the altercation between Officers and prisoners on January 10, 2020 in the N1 unit referenced in the Complaint.

31. All Documents and Communications relating to Plaintiff's assignment to the "North Side," "NS", or any other term used to describe the north side/area of SBCC, in January 2020 and any disciplinary proceeding or hearing relating to this assignment.

32. All Documents and Communications relating to Plaintiff's potential involvement in any altercations or Use of Force on January 10, 2020.

33. Any and all posts, comments, private messages, or any other statement made by any Defendant on any social media platform including but not limited to Facebook (including in private Facebook groups), Instagram, Twitter and Reddit about:
    a. The Incidents alleged in the Complaint;
    b. The Altercation on January 10, 2020;
    c. The Institutional Search; or
    d. Plaintiff.

34. All Documents related to the monitoring of Plaintiff's CorrLinks, U.S. mail, and telephone Communications from September 1, 2019 through August 1, 2020.

35. All Documents and audio and video recordings of interviews of Steven Kenneway, Paul Henderson, Charles Primack, Thomas Turco, Kevin Fountaine, Sergeant Thomas, Captain Curtis Deveneau, Chief Davis Shaw, or Dean Gray in connection with investigations into allegations of staff misconduct at SBCC from January 1, 2020 through August 1, 2020, including but not limited to any interviews related to allegations of staff misconduct made by Plaintiff.

Dated: November 21, 2023

/s/ Sabina Mariella
Sabina Mariella (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
(t) +1 212 446 2300
(f) +1 212 446 2380
smariella@bsfllp.com

Miriam R. Nemeth (*pro hac vice*)
Oren N. Nimni
Amaris Montes (*pro hac vice*)
D. Dangaran
RIGHTS BEHIND BARS

14

416 Florida Ave NW #26152
Washington, DC 20001
Telephone: 202-455-4399
miriam@rightsbehindbars.org
oren@rightsbehindbars.org
amaris@rightsbehindbars.org
d@rightsbehindbars.org

*Attorneys for Plaintiff*

15

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the following counsel of record by email on November 21, 2023:

Margaret S. Melville
margaret.melville@massmail.state.ma.us
Department of Correction
Legal Division
70 Franklin Street, Suite 600
Boston, MA 02110-1300

Lori K. Vaulding
lvaulding@morrisonmahoney.com
Jeffrey S. Hangen
jhangen@morrisonmahoney.com
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210-1181

*/s/ Sabina Mariella*
Sabina Mariella