# EXHIBIT I

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss

SUPERIOR COURT
NO. 2185CV00101 *A*

MACARTHUR DENSON,
Plaintiff,

v.

CAROL A. MICI,
STEPHEN KENNEWAY,
Defendants.



FILED
JUN 30 2021
ATTEST: _____ CLERK

## AMENDED VERIFIED COMPLAINT

### Introduction

This is a civil action brought pursuant to 42 U.S.C. § 1983 for violation of rights under the First, Eighth and Fourteenth Amendment to the United States Constitution, G.L.c. 12 § 11H and § 11I for violation of civil rights, G.L.c. 231A seeking Declaratory Judgment, and G.L.c. 127 38H seeking Judicial review of an administrative decision.

### Jurisdiction

This Court has jurisdiction pursuant to 42 U.S.C. § 1983, G.L.c. 12 § 11H and § 11I, G.L.c. 231A and G.L.c. 127 § 38H.

### Parties

1. Plaintiff, MacArthur Denson, is a prisoner confined at Souza Baranowski Correctional Center ("SBCC") located in Shirley, Massachusetts.

2. Defendant, Carol A. Mici, is the Commissioner of the

1

Massachusetts Department of Corrections and is sued in her official and individual capacity.

3. Defendant, Stephen Kenneway, was the Superintendent of SBCC and is sued in his official and individual capacity.

### Facts

4. On January 10, 2020, there was a disturbance in the N-1 housing unit, at SBCC, resulting in several correctional officers being injured.

5. The disturbance did not occur in Plaintiff's housing unit and it is not alleged that Plainitff participated in the disturbance.

6. As a result of the disturbance the prison was placed on lockdown.

7. On or about January 21, 2020, and with the approval of Defendant Mici and Defendant Kenneway four correctional officers, who were part of the tactical team, came to Plaintiff's cell armed with weapons and a dog and ordered Plaintiff to strip or be shot.

8. After plaintiff was sripped He was allowed to dress in a pair of boxers, a t-shirt, and a pair of shower slippers. All of the remaining property was confiscated.

9. Included in Plaintiff's property were his high blood pressure medications and all of his religious books.

10. Plainitff was subsequently cuffed behind the back and brought to the gym and made to stand facing the wall.

11. While in the gym Plainitff made repeated requests

to use the bathroom which was located approximately 50 feet away.

12. Plaintiff's requests to use the bathroom were denied.

13. During major shakedowns defendants have a practice/policy of not allowing prisoners to use the bathroom.

14. As a result of not being allowed access to the bathroom Plaintiff urinated on himself.

15. Plaintiff was forced to stand in his urine for approximately 1½ hours.

16. At the time of the being 56 years old and his documented medical issue - degenerative arthritis in the knees, shoulders, back, neck and carpal tunnel syndrome - Plaintiff was was experiencing severe pain.

17. Plaintiff repeatedly ask the officer behind him, who was not wearing any identifying information, to be allowed to sit, or in the alternative, that something be done to ease his pain.

18. Plaintiff was told to "turn around and face the wall or [he] would be shot."

19. After approximately three hours Plaintiff was brought back to his cell.

20. Later that evening correctional officers brought Plaintiff bedding and cosmetics.

21. Plaintiff requested that he be given a pair of scrubs so that he could make his mandatory prayers as he is and was a practicing Muslim.

22. Plaintiff was told that that was all of the property

3

that he was going to receive.

23. Plaintiff was not allowed to shower until January 24, 2020, three days after urinating on himself.

23A. Plaintiff was not given adequate clothes to pray in until January 24, 2020.

24. At the following medication round Plaintiff explained to the nurse that prison officials had confiscated his blood pressure medications and something needed to be done.

25. Nurse Brittany explained that the Medical departemnt had contacted the Department of Correction regarding the matter.

26. Plaintiff's medication was issued to him "Keep On Person ("KOP").

27. When medications are issued KOP the prisoner has his medications in his cell and no extra sets are kept on the medication cart.

28. When Plaintiff was issued his medications the provider cautioned Plaintiff against abruptly stopping or skipping taking his medication as it could lead to stroke, heart attack and/or heart damage.

29. For the duration that Plaintiff was denied his medcations he lived in constant fear of having a stroke or heart attack.

30. On January 24, 2020, Plaintiff's medications were returned.

31. On January 24, 2020, Plaintiff was moved from the northside of the prison to the south side and place in a cell

4

by himself.

32. For the approximately nine years that Plaintiff had been at SBCC he has, prior to this incident, not had a cell-mate and had been granted single cell status by 3 previous administrations.

33. Approximately fifteen minutes after being placed in the cell Plaintiff was told to move to the back of the cell to allow another prisoner to be placed in the cell.

34. Plainitff explained that he was single cell status and was not supposed to have a cellmate.

35. Plaintiff was told to move to the back of the cell or he would be shot.

36. Plaintiff moved to the back of the cell and another prisoner, who Plaintiff did not know, was placed in the cell.

37. On the evening of January 24, 2020, Plaintiff went on an attorney visit.

38. On returning to his housing unit Plaintiff informed the unit officer that he was refusing his housing assignment, that he was going into crisis, needed to see mental health and medical as he was experiencing heart palpations.

39. The tactical team forced moved Plaintiff into the cell.

40. In the course of the forced move Plaintiff passed out.

41. According to Plaintiff's cellmate Plainitff was dragged into the cell and left lying face-down on the dirty floor.

5

42. According to Plaintiff's cellmate medical staff and guards came to Plaintiff's cell and attempted to get a response from Plaintiff while he was lying on the floor.

43. After noting that the Plaintiff was breathing the nurse and guards left.

44. Plaintiff subsequently regained consciousness to find himself lying face down on the floor.

45. While sitting on the floor medical staff and guards came to Plaintiff's cell and asked him if he wanted to see medical staff.

46. While being checked by medical staff Plaintiff complained of heart palpations and dizzziness.

47. After checking Plaintiff's vitals the nurse noted that Plaintiff's blood pressure was high.

48. After contacting the on call doctor Plaintiff's medications were reordered so he could get them off of the cart if need be.

49. During the course of being forced to have a cellmate Plaintiff could not sleep, eat and suffered severe anxiety and stress.

50. Plaintiff's religious books were summarily disposed of.

51. Plaintiff filed a grievance regarding the confiscation of his books.

52. The grievance was denied.

53. Plaintiff appealed the denial which in turn was denied.

54. Plaintiff's ability to properly study his religion and practice it has been severly hampered since January 21, 2020.

55. Plaintiff has exhausted all administrative remedies.

## Claims For Relief

### Count One

55. Plaintiff restates paragraphs 7, 8, 9, 21, 22 23A, 50 an 54.

56. Defendants knew, or should have known, that their approval of such actions and failure to implement protocols to prevent the violations described above would in fact lead to the violation of Plaintiff's State and Federal rights to practice his religion

### Count Two

57. Plaintiff restates paragraphs 7, 8, 9, 21, 22, 23A, 50, and 54.

58. Defendants knew, or should have known, that their approval of such actions and failure to implement protocols to prevent the violations described above would in fact lead to the violation of Plaintiff's Civil Rights under G.L.c. 12 § 11H and § 11I.

### Count Three

59. Plaintiff restates paragraphs 7 through 54.

60. Defendants knew, or should have known, that their approval of such actions and failure to implement protocols to prevent the violations described above would in fact lead

to the violation of Plaintiff's rights under the Eighth Amendment to the United States Constitution.

### Count Four

61. Plaintiff restates paragraphs 11 through 15.

62. Defendants practice/policy of not allowing prisoners access to the bathroom during searches of the prison violates prisoners' State and Federal Constitutional Rights and Plaintiff is entitled to Declaratory relief pursuant to G.L.c. 231A.

### Count Five

63. Plaintiff restates paragraphs 9, 24, 25, 26, 27, 28, 29, and 30.

64. Defendants knew, or should have known, that their approval of such actions and their failure to implement protocols to prevent the actions described above would violate rights under the Eighth Amendment to the United States Constitution. Plaintiff also entitled to relief under G.L.c. 231A.

**WHEREFORE,** Plaintiff requests that the Court grant the following relief:

1. Grant compensatory damages,

2. Grant punitive damages.

3. Grant Plaintiff declaratory relief,

4. Award attorney fees pursuant to 42 U.S.C. § 1988,

5. Award Cosrs pursuant to Mass Rules of Civ. P. Rule 54(d), and

8

6. Grant further relief pursuant to G.L.c. 231A § 5.


Dated: April 4, 2021                    Respectfully Submitted,

                                        MacArthur Denson W38621
                                        SBCC
                                        P.O. Box 8000
                                        Shirley, MA 01464
                                        pro se

### Verification

I, MacArthur Denson, hereby verify that the above statements are true and accurate and I do so under the pain and penalty of perjury.


Dated: April 4, 2021                    MacArthur De.nson

9