# EXHIBIT L





*The Commonwealth of Massachusetts*
*Executive Office of Public Safety & Security*
*Department of Correction*
*Legal Division*
*70 Franklin Street, Suite 600*
*Boston, MA 02110*
*Tel: (617) 727-3300*
*www.mass.gov/doc*

**MAURA T. HEALEY**
*Governor*

**KIMBERLEY DRISCOLL**
*Lieutenant Governor*

**GINA K. KWON**
*Secretary*

**SHAWN P. JENKINS**
*Commissioner*

Delivered via Email

March 16, 2026

Sabina Mariella, Esq.
Katherine Zhang, Esq.
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY 10001

Derrick Luster, Esq.
Jayden Rush, Esq.
Rights Behind Bars
1800 M Street NW
Front 1 #33821
Washington, DC 20033

RE:    Washington v. Department of Correction, et. al.; USDC 1:23-cv-10063 (MRG); DOC
       Defendants' Response to Plaintiff's March 6, 2026 and March 12, 2026 Letters

Attorneys Mariella, Zhang, Luster, and Rush;

DOC Defendants respond to your letters dated March 5, 2026 and March 12, 2026 as well as the
parties meet and confer on March 10, 2026.

**1. Second Set of RFPs, Request No. 1**

In your March 5, 2026 letter, you stated the following:

This request seeks:

      All Documents You produced in the following matters:

    a. *Silva-Prentice, et al. v. Turco, et al.*, 21-cv-11580-PBS (D. Mass.);
    b. *Diggs, et al. v. Mici et al.*, 22-cv-40003-ADB (D. Mass.);
    c. *Molinari v. Frink, et al.*, 20-cv-11922 (D. Mass);
    d. *Burrell v. Kenneway, et al.*, 20-cv-11776-ADB (D. Mass);
    e. *Graulau, et al. v. Turco et al.*, 23-cv-10129-PBS (D. Mass.);
    f. *Monahan v. Mici, et al.*, No. 2384-cv-00261(Mass. Super. Jan. 23, 2023);
    g. *Denson v. Mici, et al.*, No. 2185-cv-00101A (Mass. Super. Jan. 25, 2021);
    h. *Gibson v. Commonwealth, et al.*, No. 2084-cv-02663 (Mass. Super. Nov. 16, 2020);
    i. *Gaskins et al. v. Mici, et al.*, No. 2085-cv-00415 (Mass. Super. Mar. 24, 2020).

DOC Defendants failed to produce any documents responsive to this request.

In your March 12, 2026 letter, you further stated that:

DOC Defendants advised that no discovery had occurred in at least one of the other matters, namely *Monahan v. Mici, et al.*, No. 2384-cv-00261 (Mass. Super.) (i.e., Request No. 1(f)). With respect to depositions in other matters, DOC Defendants raised the issue that they would consider whether they would be able to run proposed search terms over (i) document discovery in the non-*Monahan* cases, and (ii) deposition transcripts in those same cases. To facilitate the tailoring of discovery, DOC Defendants agreed to provide a list of the deponents in *Diggs, et al. v. Mici et al.*, 22-cv-40003-ADB (D. Mass.), to include the dates of the deposition and the stenography company used, and to run search terms against documents produced in the *Diggs* matter only.

Hearing Defendants' position concerning the potential high volume of responsive documents, Plaintiff proposes that the following search terms be run against the document discovery in the *Diggs* matter, in addition to each of the other cases:

Search Terms: "Target"; "employee misconduct"; "staff misconduct"; "discipline"; "BLACC"; "black"; "gang"; "Special Operations Command Group"; "spec ops"; "special operations"; "SOCG"; "bias"; "race"; "racial"; "slur"; "discriminate"; "discrimination"; "lockdown"; "shakedown"; "threat"; "Washington"; "W89316"; "investigate"; "investigation"; "grievance"; "findings"; "STG"; "security threat"; "report"; "excessive"; "OC"; "retaliate"; "retaliation"
Plaintiff maintains that it seeks relevant documents produced in the nine identified matters, including but not limited to *Diggs*. Each of these actions arises from the January 2020 lockdown at Souza-Baranowski Correctional Center (SBCC) and are related to the allegations in Mr. Washington's complaint. DOC's responses to any discovery in those actions and any admissions made with respect to the officers' conduct are well within the scope of permissible discovery.
Plaintiff proposed that DOC Defendants provide a list of deponents in each of the nine cases to reduce any potential burden. Plaintiff believes this proposal will maximize efficiency by reducing the number and length of depositions Plaintiff would otherwise take and minimize any redundancy in questioning.

**DOC Defendants' Response:**

As noted in DOC Defendants' responses, this request is overbroad, unduly burdensome, seeks information that is irrelevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence Fed. R. Civ. P. 26(b). The discovery produced in other civil actions is irrelevant to the present action. As discussed during the March 10, 2026 call, DOC Defendants agree to conduct searches of the discovery produced in the class action, Diggs, et al. v. Mici, et al.; USDC 4:22-cv-40003 as it pertains to discovery relevant to Mr. Washington, noting that there were significant amounts of discovery produced in the class action that does not pertain to Mr. Washington. Mr. Washington was one of approximately 160 class members in Diggs. In Diggs, there were over 99,000 pages of documents as well as more than 450 GB of video data containing hundreds of hours of video footage that was produced, much of which does not pertain to Mr. Washington. DOC Defendants agree to provide Plaintiff with a list of deponents and stenographer information of parties deposed in Diggs.

### 2. Second Set of RFPs, Request No. 4

In your March 5, 2026 letter, you stated:

This request seeks, *inter alia*:
> All Documents relating to grievances, complaints, and requests
> Plaintiff submitted to You from September 1, 2019 through the
> present, including but not limited to: ... (b) Grievances and related
> documentation pursuant to 103 CMR 491.

Plaintiff filed a grievance related to the assault against him that occurred on January 23, 2020. However, DOC Defendants have not produced any documents related to Plaintiff's grievance, not least the grievance itself.

In your March 12, 2026 letter, you further stated:

DOC Defendants stated that they have produced all grievances relating to the January 23, 2020 incident. While Plaintiff has reviewed the production and has found a single grievance report related to the January 23, 2020 incident (Grievance No. 106977; Bates R4 P1), Plaintiff filed additional grievances regarding that incident (e.g., Grievance No. 106965). DOC Defendants have not produced Grievance No. 106965 nor any other documentation related to that grievance. Please confirm whether you have any additional documents responsive to this request, and if so, produce them.

**DOC Defendants' Response:**

DOC Defendants agree to produce Grievance No. 106965 and the grievance packets.

3

**3. Second Set of RFPs, Requests No. 7 and 8**

In your March 5, 2026 letter, you stated:

Request 7 seeks:

> All Employee and personnel files for the following Individuals, including but not limited to a complete record of training materials (both initial and continuing training), certificates, continuing education Records, hiring Records, disciplinary Records, reprimands, promotions, demotions, awards, and termination Records:
>> A. All Defendants;
>> a. Captain Jason Lanpher;
>> b. Officer Harvey Vachon;
>> c. Officer Jay Hurlbrink;
>> d. LPN Jennifer Robles;
>> e. RN Karen Steinmetz;
>> f. RN Alyssa Bond;
>> g. Dr. Petros;
>> h. Director of Nursing Kelly Ryder.

Request 8 seeks:

> All Documents concerning grievances, informal complaints, formal complaints, confidential Incident Reports, or any report in any form whatsoever made by prisoners, DOC staff, or contract health care provider staff alleging any form of misconduct by the following Individuals from September 1, 2019 through the present, including but not limited to grievances, reports, emails, letters, complete investigation files, decisions and recommendations resulting from any investigation relating to the complaints, arbitration and hearing transcripts relating to the complaints, and any lawsuits:
>> A. All Defendants;
>> a. Captain Jason Lanpher;
>> b. Officer Harvey Vachon;
>> c. Officer Jay Hurlbrink;
>> d. LPN Jennifer Robles;
>> e. RN Karen Steinmetz;
>> f. RN Alyssa Bond;
>> g. Dr. Petros;
>> h. Director of Nursing Kelly Ryder.

For both Requests 7 and 8, DOC Defendants failed to produce any of the requested categories of documents pertaining to any of the Defendants added in Plaintiff's First Amended Complaint (FAC), which was accepted by the Court on January 27, 2026 (over two weeks prior to when DOC Defendants served this production). Plaintiff therefore requests that DOC Defendants immediately produce records sought in this request for the FAC defendants, specifically: Sergeant Arthur Barnes, Officer Joseph Cummings, Officer Nicholas Dumont, Officer Zachary Fonseca, Officer Daniel Hollenbach, Officer Eric Lawson, Sergeant Nathan Owen, Officer Cory Shepherd, Officer Jeffrey Pepoli, Sergeant Brian Rayner, Officer Robert Bashaw, Officer Raymond Simula, Officer Sergio Cacioppo, Officer Thomas Membrino, Officer David Gilman, and Officer Ryan

4

Kalriess. Additionally, Captain Jason Lanpher, Officer Harvey Vachon, or Officer Jay Hurlbrink. These individuals are potential witnesses to and/or agents of DOC whose acts contribute to DOC's liability in the subject incidents.

In your March 12, 2026 letter, you further stated:

DOC Defendants agreed to produce responsive documents for the newly named defendants from the Amended Complaint. DOC Defendants' counsel maintained that DOC does not intend to produce any documents concerning Wellpath employees responsive to Request Nos. 7 and 8 on the basis that DOC is not in possession of any such records. The DOC's recent production tells a different story. Specifically, DOC's Inmate Grievance Procedure, 103 CMR 491.11 indicates that, although "the medical contractor is required to maintain its own grievance procedure . . . matters concerning access to medical or mental health care are grievable" through the DOC grievance system. *See* R9 P581-82 (emphases added). Furthermore, DOC's recent production confirms that, in relation to the January 21, 2020 use-of-force incident, Plaintiff submitted a grievance to DOC, alleging that medical personnel failed to provide him with access to his inhaler. *See* R4 P3 ("After being brought to medical, I remember asking about my asthma inhaler.").

Therefore, Plaintiff requests that the Defendants produce the categories of records sought in Request Nos. 7 and 8 for LPN Jennifer Robles, RN Karen Steinmetz, RN Alyssa Bond, Dr. Petros, and Director of Nursing Kelly Ryder consistent with DOC's Inmate Grievance Procedure, 103 CMR 491.11.

DOC Defendants also indicated they do not intend to produce responsive documents concerning three officers listed in Request Nos. 7 and 8—Harvey Vachon, Jay Hurlbrink, and Jason Lanpher— on the grounds that they are not named defendants and that information about them, including disciplinary records, is not relevant. But DOC Defendants' recent production suggests otherwise. Each of the three officers listed in Request Nos. 7 and 8 noted their personal involvement in the use-of-force incident against Plaintiff on January 21, 2020, either physically or as a reporting officer.

Plaintiff therefore requests that, in addition to the defendants newly named in the Amended Complaint, DOC Defendants immediately produce all records responsive to this request for Captain Jason Lanpher, Officer Harvey Vachon, and Officer Jay Hulbrink, as these individuals are witnesses to the subject incidents and/or agents of DOC whose conduct is relevant to the incidents at issue.

**<u>DOC Defendants' Response:</u>**

DOC Defendants agree to produce the disciplinary history and training records in their care, custody and control for the DOC Defendants and additional employees, Captain Jason Lanpher, Officer Harvey Vachon, and Officer Jay Hulbrink. DOC Defendants also note that Plaintiff's statement that DOC Defendants indicated they do not intend to produce responsive documents concerning those three officers is an inaccurate description of the position taken during the March 10, 2026 meet and confer. DOC Defendants inquired as to the relevance of the individuals and agreed to review and discuss further. DOC Defendants maintain that they do not maintain

5

disciplinary history and training records for contract staff. DOC Defendants agree to produce any grievance pertaining to access to medical care for the relevant timeframe, if it exists. Grievances regarding the medical care provided are not in the care, custody, or control of DOC Defendants.

 **4. Second Set of RFPs, Request Nos. 11, 12, 13, and 14**

In your March 5, 2026 letter, you stated:

> Request 11 seeks, *inter alia*:
>
>> All Documents relating to the Incidents, including but not limited to: … k. Audio and/or video recordings of the Incidents or that You reviewed in connection with the Incidents;
>
> Request 12 seeks:
>
>> All video and audio recorded on handheld, surveillance, or body cameras on January 21, 2020, including but not limited to video and audio from following locations:
>>
>>> a. All sections of the L-2 unit;
>>> b. Inside all of the Plaintiffs cells in the L-2 cellblock or unit and surrounding areas;
>>> c. All sections of the M-2 unit;
>>> d. Inside all of the Plaintiffs cells in the M-2 cellblock or unit and surrounding areas;
>>> e. Inside cell #12 in the M-2 unit and surrounding areas;
>>> f. Inside cell #13 in the M-2 unit and surrounding areas; and
>>> g. Health Services Unit (HSU).
>
> Request 13 seeks:
>
>> All video and audio recorded on handheld, surveillance, or body cameras on January 23 and January 24, 2020, including but not limited to video and audio from following locations:
>>
>>> a. Health Services Unit (HSU);
>>> b. All sections of the M-2 unit;
>>> c. Inside cell #13 in the M-2 unit and surrounding areas; and
>>> d. Inside cell #15 in the M-2 unit and surrounding areas.
>
> Request 14: seeks:
>
>> All video and audio recorded on handheld, surveillance, or body cameras controlled by DOC, its agents, or assigns on March 5, 2020, including but not limited to video and audio from following locations:
>>
>>> a. All sections of the M-2 unit;

b. All sections of the L-2 unit;
c. All of Plaintiffs cells in the M-2 unit and surrounding areas;
d. All of Plaintiffs' cells in the L-2 unit and surrounding areas;
e. All noncontact visiting rooms and surrounding areas;
f. All areas in the Restrictive Housing Unit;
g. All strip cages in the Restrictive Housing Unit and surrounding areas;
h. Health Services Unit (HSU);
1. All sections of the K-3 unit; and
j. Inside cell #5 in the K-3 unit and surrounding areas.

DOC Defendants produced a set of video recordings in response to Request 11 and referenced their response to Request 11 in their responses for Requests 12, 13 and 14 (producing no additional material for these subsequent requests). In response to Request 11, DOC Defendants sent Plaintiff physical computer discs that contained four folders, purportedly containing video of four excessive force events (the folders are titled "UOF 7540 Video," "UOF 7683 Video," "UOF 7701 (Burrell) Video," and "UOF 7899 Video"). The folders contain forty-six (46) files. Only six (6) of the forty-six (46) files can be opened and played. The remaining forty files produce an "unsupported file" error and cannot be opened. *See* Appendix A (Table of Files Received on CD) Thus, Plaintiff has not received any video connected to the January 21, 2020 and January 23-24, 2020 incidents, and only partial video of the March 5, 2020 incident.

Further, it is not clear from DOC Defendants' production that this video, once produced in a viewable form, will be responsive to Plaintiff's request for surveillance video contained Requests 12-14. From what Plaintiff can view, Defendants appear to have produced only camcorder video of the March 5, 2020 incident and some video of staff interviews. Surveillance video of the identified areas is also relevant and must be produced.

In your March 12, 2026 letter, you further stated:

Plaintiff's counsel has experienced ongoing difficulties accessing the videos produced by DOC Defendants, in disc format, related to the use-of-force incidents. These videos are in multiple file formats (e.g., .dxa, .vob, .mp4). Given that a subset of DOC Defendants' videos are already in .mp4 format (i.e., the videos of the March 5, 2020 incident), and that Plaintiff continues to experience difficulties opening the remaining files even with the Archive Player program that DOC Defendants have instructed Plaintiff to use, Plaintiff maintains that conversion to a universally playable format (such as .mp4) should be feasible. In response, DOC Defendants agreed to inquire internally to identify alternative methods available for producing the responsive videos.

**DOC Defendants' Response:**

DOC Defendants produced videos pertaining to the use of force incidents involving Plaintiff in their original format as downloaded on three separate discs. Surveillance video during the relevant timeframe was captured using Bosch Security Systems. Included on the discs is the Archive Player to open and play Bosch video. Handheld videos were captured on different cameras and also produced in the original format on the discs, where video exists. In response

7

to Plaintiff's notification of difficulties, DOC Defendants produced step-by-step instructions on how to open and play the videos from the Archive Player program. DOC Defendants agree to inquire about conversion, but note that if this can be accomplished, it will alter the original format of the discs produced as they will no longer be produced in their native format.

**5.      Second Set of RFPs, Request No. 15**

In your March 5, 2026 letter, you stated:

> This request seeks:
>
>> All Documents relating to the use of ECDs, Tasers, Stun Guns, or Probe Cartridges on Plaintiff from January 1, 2020 through August 1, 2020, including but not limited to the electronic control devices utilized by Officer Shepherd with serial number X30004N83 and Eric Lawson with serial number X30007D54 on January 21, 2020. For each deployment of a Taser, produce all data recorded by the Taser including but not limited to time of deployment, mode of deployment, and length of deployment.
>
> Medical records from James George Petros (MD) suggest that Plaintiff is tased approximately three to four times on January 21, 2020. Defendant Shepherd reports that he tased Plaintiff; however, his taser log shows only one activation ("trigger") for five seconds at approximately 12:49 PM. Dr. Petros's evaluation of Plaintiff notes Plaintiff was tased at least two additional times after Defendant Shepherd. However, no other reports of taser incidents other than Defendant Shepherd's are contained in the DOC Defendants' document production.

In your March 12, 2026 letter, you stated:

> Following the meet-and-confer, DOC Defendants agreed to consult with the FAC Defendants to: (1) identify the record-retention policy applicable to taser logs; (2) identify the missing information relating to the electronic control devices used during the January 21, 2020 incident; and (3) provide an explanation for why only Officer Shepherd's taser activation appears to have been included in the use-of-force package.

**DOC Defendants' Response:**

DOC Defendants agreed to inquire as to the existence of ECD logs for the other individuals involved in the use of force incident on January 21, 2020 and identify any of the missing information relating to ECD used during the January 21, 2020 incident. DOC Defendants Arthur Barnes, Joseph Cummings, Nicholas Dumont, Zachary Fonseca, Daniel Hollenbach, and Nathan Owens were members of CIRT at the time of this incident and were not issued or authorized to use ECDs during this incident. ECD logs for DOC Defendants Shepherd and Lawson were produced in response to this request.

**6.  Second Set of RFPs, Request No. 23**

In your March 5, 2026 letter, you stated:

This request seeks:

All SBCC Shift Briefings or daily briefings from January 1, 2020, through August 1, 2020.

DOC Defendants produced documents from only January 2, 2020 to March 5, 2020. While the last relevant assault against Plaintiff occurred on March 5, 2020, it could not have been discussed until the staff briefing on March 6, 2020. As a compromise position, Plaintiff requests that DOC Defendants produce all briefings from January 2, 2020 through March 15, 2020. This much narrower range covers the key events that form the basis of Plaintiff's claims.

In your March 12, 2026 letter, you further stated:

As a compromise position, DOC Defendants agreed to produce responsive shift briefings from January 14, 2020 through March 15, 2020.

**DOC Defendants' Response:**

DOC Defendants agree to produce responsive shift briefings from January 14, 2020 to March 15, 2020.

7.  **Second Set of RFPs, Request No. 27**

In your March 5, 2026 letter, you stated:

This request seeks:

All Communications relating to Plaintiff from November 1, 2019 through August 1, 2020.

DOC Defendants produced no responsive documents. To narrow the scope of the request, Plaintiff requests that DOC Defendants start by searching email accounts and text message conversations for the following search terms and custodians and producing the results.

- Search terms: "Derrick Washington," "Washington," and "W89316" (Plaintiff's DOC number)
- Custodians:
  - All individual DOC Defendants and witnesses Raymond Turcotte, Michael Thomas, Logan Davell, David Reniere, Charles Primack, and James Gerardi

In your March 12, 2026 letter, you further stated:

DOC Defendants agreed to run search terms for the newly named defendants in the Amended Complaint within the November 1, 2019 through August 1, 2020 date range. DOC Defendants also agreed that, after narrowing the scope to include responsive hits, they will report back to Plaintiff regarding their findings.

Plaintiff maintains that data must be collected from *all* the individual DOC Defendants (including personal email, personal phone data including text messages, and online messaging services such as Facebook Messenger and WhatsApp).

To facilitate this targeted search and narrow the scope of the request, Plaintiff proposes that DOC Defendants search the email accounts and mobile communications of the following custodians using the search terms listed below:

- <u>Custodians:</u> DOC, all individual DOC Defendants, and witnesses Raymond Turcotte, Michael Thomas, Logan Davell, David Reniere, Charles Primack, James Gerardi

- <u>Search terms:</u> "Derrick Washington," "Washington," and "W89316" (Plaintiff's DOC number)

**<u>DOC Defendants' Response:</u>**

DOC Defendants agree to conduct an inquiry of DOC email accounts of all individual DOC Defendants, and witnesses Raymond Turcotte, Michael Thomas, Logan Davell, David Reniere, Charles Primack, James Gerardi using the search terms listed above. DOC Defendants further agree to inquire of the individual DOC Defendants as to the existence of responsive documents on their personal email, personal phone data including text messages, and online messaging services such as Facebook Messenger and WhatsApp. DOC Defendants maintain that these records are not in the care, custody or control of the DOC. Answering further, DOC Defendants do not agree to inquire as to the personal email, personal phone data including text messages, and online messaging services such as Facebook Messenger and WhatsApp of any individuals who are not named as Defendants in the present action.

8. **Second Set of RFPs, Request No. 28 and 29**

In your March 5, 2026 letter, you stated:

> Request 28 seeks:
>
>> All Documents and Communications regarding the Black, Latino, Asian Cultural Coalition (BLACC) at SBCC from September 2019 through the present.
>
> Request 29 seeks:
>
>> All Documents and Communications regarding Plaintiff's political and social organizing activities, including advancing racial equity, voting rights, prisoner rights, or any other similar causes from the time Plaintiff was first incarcerated through the present.
>
>> DOC Defendants produced no responsive documents on the grounds that these requests exceed the scope of the Complaint. But DOC Defendants' responses were served over two weeks after the Court accepted and Plaintiff filed his First Amended Complaint

(FAC). These requests are clearly relevant to the FAC's First Amendment claim.

In your March 12, 2026 letter, you further stated:

DOC Defendants stated that they do not oppose producing email communications responsive to Request Nos. 28 and 29, but indicated that they would only possess email communications because the DOC does not issue cell phones to its employees and does not control officer conduct outside their official duties.

Plaintiff disagreed and maintained that these requests (like all requests contained within the Second Set of RFPs) cover the Documents and Communications broadly (as defined in the Second Set of RFPs at 2–3). Ms. Caffrey represents not only DOC but individual DOC Defendants and has an obligation to collect, review, and produce the individual DOC Defendants' documents held in their personal capacity.

**DOC Defendants' Response:**

DOC Defendants disagree with Plaintiff's description of DOC Defendants' position. DOC email accounts are in the care, custody and control of the Commonwealth and can be searched. DOC Defendants agree to inquire of individual DOC Defendants if they are in possession of any responsive documents.

### 9. Second Set of RFPs, Request No. 30

In your March 5, 2026 letter, you stated:

> This request seeks:
>
> > All Documents and Communications regarding the altercation between Officers and prisoners on January 10, 2020 in the N1 unit referenced in the Complaint.

DOC Defendants produced only one, partially responsive document and objected to the request as beyond the scope of the Complaint. This request is not beyond the scope of the FAC, which alleges that the uses of force against Mr. Washington occurred as part of the campaign of violence during the post-January 10, 2020 lockdown. Thus, these communications are directly relevant to the Defendants' mental states.

To narrow the scope of the inquiry, Plaintiff requests that DOC Defendants begin by producing all email and text communications regarding the altercation between Officers and prisoners on January 10, 2020 in the N1 unit made by any of the DOC Defendants named in the FAC.

In your March 12, 2026 letter, you further stated:

DOC Defendants did not oppose producing email communications responsive to Request No. 30 but requested that Plaintiff provide proposed search terms and a list of custodians.

As an initial step, Plaintiff requests that the DOC Defendants run the following search

parameters over their documents, collected both from the DOC and individual DOC Defendants:

- Custodians: DOC, all individual DOC Defendants, and witnesses Raymond Turcotte, Michael Thomas, Logan Davell, David Reniere, Charles Primack, James Gerardi

- Search Terms: "Target"; "punish"; "discipline"; "BLACC"; "black"; "gang"; "Special Operations Command Group"; "spec ops"; "special operations"; "SOCG"; "bias"; "race"; "racial"; "slur"; "racist"; "discriminate"; "discrimination"; "lockdown"; "shakedown"; "threat"; "Washington"; "Derrick"; "W89316"; "investigate"; "investigation"; "grievance"; "findings"; "STG"; "security threat"; "report"; "not comply"; "OC"; "plot"; "retaliate"; "retaliation"

**DOC Defendants' Response:**

DOC Defendants agree to produce email communications responsive to Request No. 30 as was produced in the Diggs class action. The search terms proposed by Plaintiff in his March 12, 2026 letter exceed the scope of the original request.

### 10. Second Set of RFPs, Request No. 33

In your March 5, 2026 letter, you state:

This request seeks:

Any and all posts, comments, private messages, or any other statement made by any Defendant on any social media platform including but not limited to Facebook (including in private Facebook groups), Instagram, Twitter and Reddit about:

> a. The Incidents alleged in the Complaint;
> b. The Altercation on January 10, 2020;
> c. The Institutional Search; or
> d. Plaintiff.

DOC Defendants produced no responsive documents and state that these documents are not in DOC's custody. Defense counsel represents twenty individual officers named in their individual capacity. These RFPs were directed to all defendants. Plaintiff thus requests any and all documents in those twenty individuals' custody.

In your March 12, 2026 letter, you further state:

DOC Defendants stated that they will consider collecting individual DOC Defendants' cell phone data responsive to Request No. 33. Plaintiff notes that Counsel's obligation to collect responsive information extends to both work and non-work communication channels; email and cell phone data; social media messaging across multiple platforms (Instagram, Facebook, Twitter, etc.); other messaging apps (WhatsApp, GroupMe, etc.).

12

**DOC Defendants' Response:**

DOC Defendants disagree with Plaintiff's recount of DOC Defendants' position that it will consider collecting individual DOC Defendants' cell phone data. DOC Defendants stated that DOC does not maintain care, custody or control of personal devices. Furthermore, personal devices are not permitted inside DOC institutions. DOC Defendants agree to inquire of the individual DOC Defendants about the existence of any responsive document on their personal devices and accounts.

### 11. Second Set of RFPs, Request No. 34

In your March 5, 2026 letter, you state:

> This request seeks:
>
>> All Documents related to the monitoring of Plaintiffs CorrLinks, U.S. mail, and telephone Communications from September 1, 2019 through August 1, 2020.
>
> DOC Defendants produced no responsive documents on the grounds that these requests exceed the scope of the Complaint and cited security concerns. But DOC Defendants' responses were served over two weeks after the Court accepted and Plaintiff filed his First Amended Complaint (FAC). These requests are within the scope of FAC's First Amendment claim. Any security concerns can be remedied by producing the documents pursuant to the protective order entered in this case.

In your March 12, 2026 letter, you further state:

> DOC Defendants expressed uncertainty as to the existence of documents responsive to Request No. 34 relating to any monitoring protocol implemented for Plaintiff's communications. However, DOC's recent production suggests that staff *did* have monitoring systems and procedures in place that governed the inspection and recordkeeping of U.S. mail. *See* R9 P504 ("Any employee reading inmate mail . . . shall record such action in a log book maintained for such purpose.").

> For the avoidance of doubt, Request No. 34 seeks responsive documents showing the monitoring systems that governed the review of inmate electronic communications during the relevant period, including Plaintiff's communications through CorrLinks. Documents responsive to Request No. 34 include (1) policies governing electronic monitoring of inmate communication, as well as (2) logs reflecting when DOC Defendants reviewed Plaintiff's communications of any type (electronic, phone, or mail), by which staff member, and for what purpose.

**DOC Defendants' Response:**

DOC Defendants disagree with the summarization of the March 10, 2026 meet and confer. DOC Defendants expressed uncertainty related to the existence of documents pertaining to the

13

monitoring of Plaintiff's communications via electronic and telephone communications. DOC Defendants expressed that the regulation, 103 CMR 481, Inmate Mail, may contain responsive information pertaining to the implementation of monitoring of non-privileged mail. DOC Defendants agree to produce responsive policies as well as documents pertaining to mail monitoring of Plaintiff, if they exist.  DOC Defendants agree to produce responsive documents regarding electronic communications, such as CorrLinks Terms and Conditions.

During our March 10, 2026 meet and confer and in your March 12, 2026 letter, you also inquired of the following:

### 12. Second Set of RFPs, Request No. 9

DOC Defendants agreed to produce a list of all policies that were in effect from January to March 2020, including those governing the incidents alleged in the Amended Complaint. DOC Defendants also agreed to consider producing reports, insofar as they exist, that show the data and statistics regarding the number of use-of-force incidents, hospitalizations of staff and inmates resulting from those incidents, and the severity and type of incidents, at SBCC, from January 2015 to the present.

**DOC Defendants' Response:**

DOC Defendants previously provided policies in response to Plaintiff's Second Request for Production of Documents. During our meet and confer on March 12, 2026, you sought further clarification of what policies were in effect during the timeframe of January 2020 to March 2020. DOC Defendants agreed to provide a list of those policies in effect between January 2020 to March 2020.

DOC Defendants further agree to inquire as to the existence of data and statistics regarding the number of use-of-force incidents, hospitalization of staff and inmates resulting from those incidents, and the severity and type of incidents, at SBCC, for the relevant timeframe.

### 13. Second Set of RFPs, Request No. 18

DOC Defendants agreed to produce the brand name and type of chemical agent used against Plaintiff, as well as any manufacturing policies, instructions, or other manufacturer-issued documents relating to that chemical agent.

**DOC Defendants' Response:**

DOC Defendants agree to produce the manufacturing policies, instructions, or other manufacturer-issued documents relating to the chemical agent used in incidents with Plaintiff between January 2020 and March 2020.

Sincerely,

*/s/ Stephanie M. Caffrey*

14