**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **DERRICK WASHINGTON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil No. 1:23-cv-10063-MRG** |
| ) | |
| **MASSACHUSETTS DEPARTMENT** ) | |
| **OF CORRECTIONS, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**ORDER ON DEFENDANTS' PARTIAL MOTION TO DISMISS (ECF No. 152)**

**GUZMAN, J.**

This case arises, in part, from Plaintiff Derrick Washington's ("Plaintiff") incarceration at Souza Baranowski Correctional Center ("SBCC"), where he alleges that correctional officers used chemical agents against him despite their knowledge that he suffers from asthma. The First Amended Complaint asserts claims under the First, Eighth, and Fourteenth Amendments, Title II of the Americans with Disabilities Act ("ADA"), § 504 of the Rehabilitation Act ("RA"), and Massachusetts law. [First Am. Compl. ("FAC"), ECF No. 126].

Before the Court is a motion to partially dismiss Plaintiff's Amended Complaint filed by Defendants Massachusetts Department of Correction ("DOC"), Steve Kenneway, Robert Deschene, Arthur Forget, Ryan Hillis, Thomas Tocci, Anthony Catalano, Joshua Gagnon, Arthur Barnes, Joseph Cummings, Nicholas Dumont, Zachary Fonseca, Daniel Hollenbach, Eric Lawson, Nathan Owen, Cory Shepherd, Jeffrey Pepoli, Brian Rayner, Robert Bashaw, Raymond Simula, Sergio Cacioppo, Thomas Membrino, David Gilman, and Ryan Kalriess (collectively "DOC Defendants"). [ECF No. 152]. For the reasons stated below, the motion is **DENIED**.

## I.     BACKGROUND

The following relevant facts are taken from the allegations in Plaintiff's First Amended Complaint and are accepted as true for purposes of this motion. Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014) (explaining that a reviewing court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)").

### A.     Relevant Facts

Plaintiff is a 38-year-old Black man in DOC custody who was housed at SBCC from September 9, 2018, to June 1, 2023. [FAC ¶ 41]. Plaintiff has asthma and uses a Keep-On-Person inhaler daily to manage his symptoms; this condition was known and documented at SBCC. [Id. ¶¶ 43–45]. On January 10, 2020, several SBCC guards were injured in an altercation with a group of prisoners. [Id. ¶ 62]. There was no suspicion that Plaintiff was involved. [Id. ¶ 73]. As a result of this incident, SBCC officials implemented increased security measures and began reorganizing prisoners. [Id. ¶¶ 64–65]. Plaintiff was involved in three incidents during this reorganization process, two of which are relevant to this motion. [Id. ¶ 4].

On January 23, 2020, Plaintiff and his cellmate were moved to a new housing assignment by "tactical officers." [Id. ¶ 113]. During the night, Plaintiff's cellmate began yelling and throwing his mattress. [Id. ¶ 114]. In response, an SBCC guard entered the cell with a canister of chemical agent. [Id. ¶ 116]. Plaintiff told the guard not to deploy the chemical agent on account of his asthma. [Id.] It was nevertheless deployed on both Plaintiff and his cellmate. [Id. ¶ 117]. Plaintiff subsequently experienced "consecutive asthma attacks and severe difficulty breathing." [Id. ¶ 121]. Plaintiff was then taken to the SBCC hospital where he was examined and discharged without decontamination and without his inhaler. [Id. ¶ 126]. The next morning, Plaintiff was

2

examined again and once more was neither decontaminated nor provided with an inhaler. [Id. ¶¶ 140–41].

On March 5, 2020, Plaintiff was to be moved to a new housing assignment with a new cellmate. [Id. ¶ 150]. Plaintiff instead requested to be placed alone in the Restrictive Housing Unit ("RHU") and was placed in a strip cage[1] in the RHU. [Id. ¶¶ 151–53]. While Plaintiff was in the strip cage, several officers approached with one officer holding a canister of chemical agents. [Id. ¶ 157]. Plaintiff told the gathered officers he had asthma multiple times. [Id. ¶¶ 158–60]. The officer deployed the chemical agent on Plaintiff. [Id. ¶ 161]. Officers then entered the cage, detained Plaintiff, removed most of his clothing, and moved him using a gurney to the SBCC hospital. [Id. ¶¶ 164–67]. At the hospital, Plaintiff's breathing was restored using a nebulizer and Plaintiff was moved to a new cell, again by gurney. [Id. ¶¶ 167–69].

### B. Procedural History

Plaintiff commenced this action on January 10, 2023. [ECF No. 1]. On March 31, 2024, the action was stayed pending the resolution of a proposed class action lawsuit containing overlapping factual and legal allegations. [ECF No. 83]. The stay was lifted on October 17, 2025. [ECF No. 98]. On January 28, 2026, Plaintiff filed an Amended Complaint with leave of this Court. [FAC]. In response, DOC Defendants filed an answer to the Amended Complaint on February 20, 2026, along with a Motion to Partially Dismiss the Plaintiff's Amended Complaint. [ECF Nos. 152, 154].

## II. LEGAL STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

[1] A type of room with metal bars instead of a door. [ECF No. 126 ¶ 153].

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). On a motion to dismiss made pursuant to Rule 12(b)(6), the factual allegations in the complaint are accepted as true, and the Court draws "all reasonable inferences in favor of the plaintiff." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008) (citing Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992)). The plausibility standard does not impose a probability requirement; it requires only enough facts to allow the Court to reasonably infer liability. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 556.

Bare allegations and legal conclusions and/or a "formulaic recitation of the elements of a cause of action" will not suffice. Twombly, 550 U.S. at 555. Although a complaint "does not need detailed factual allegations, a plaintiff's obligations to provide the grounds of [their] entitlement to relief requires more than labels and conclusions." Id. (internal quotations omitted). While a plaintiff is entitled to all reasonable inferences from the facts alleged, their legal conclusions are not entitled to deference, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

## III.    DISCUSSION

### A.    COUNT VII – Americans with Disabilities Act, Title II Claim

Defendants first argue that Plaintiff fails to state a claim under Title II of the Americans with Disabilities Act because Plaintiff's asthma is not a disability under the ADA. [ECF No. 153 at 6]. At the pleading stage, the Court disagrees.

Title II of the ADA "provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" Toledo v. Sanchez, 454 F.3d 24, 30 (1st Cir. 2006) (quoting 42 U.S.C. § 12132). When seeking

relief under Title II, a plaintiff "must establish . . . that he is a qualified individual with a disability." Kiman v. New Hampshire Dep't of Corr., 451 F.3d 274, 283 (1st Cir. 2006) (citing Parker v. Universidad de Puerto Rico, 225 F.3d 1, 5 (1st Cir. 2000)). "An individual is disabled for purposes of the ADA if he (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." Roman-Oliveras v. Puerto Rico Elec. Power Auth., 655 F.3d 43, 48 (1st Cir. 2011) (citing Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 82 (1st Cir. 2008); 42 U.S.C. 12102(2)).

While Defendants assert that asthma is not typically found to be a disability under the ADA, "[w]e must determine the existence of a disability 'on a case-by-case basis.'" Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 33 (1st Cir. 2010) (quoting Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 566 (1999)). As alleged in the FAC, Plaintiff's asthma qualifies as an impairment. See Peeples v. Clinical Support Options, Inc., 487 F. Supp. 3d 56, 62 (D. Mass. 2020). Plaintiff alleges that when experiencing symptoms, his asthma causes him to be "unable to participate in recreation time, sleep, or do almost anything else—including, most importantly, breathe." [FAC ¶ 43]. Plaintiff's impairment therefore has at least some effect on the major life activity of breathing. See Ramos-Echevarria v. Pichis, Inc., 659 F.3d 182, 187 (1st Cir. 2011) ("Major life activities are basic activities of daily life . . . 'such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working'") (quoting 29 C.F.R. § 1630.2(i)).

Whether Plaintiff's asthma substantially limits his breathing "calls for a comparison between the plaintiff's limitations and those of the majority of people in the general population." Mancini v. City of Providence by & through Lombardi, 909 F.3d 32, 42 (1st Cir. 2018). The ADA provides that "[t]he determination of whether an impairment substantially limits a major life

5

activity shall be made without regard to the ameliorative effects of mitigating measures such as . . . medication." 42 U.S.C. § 12102. Plaintiff alleges that his asthma requires daily use of an inhaler to manage his symptoms. [FAC ¶¶ 44–45]. Construing the allegations in Plaintiff's favor, the Complaint plausibly alleges that, without mitigating measures, Plaintiff's asthma substantially limits his ability to breathe. [Id. ¶¶ 43–45]; see Garita Hotel Ltd. P'ship, 958 F.2d at 17 ("we take the factual averments contained in the complaint as true, indulging every reasonable inference helpful to the plaintiff's cause."). While Defendants cite Lima v. Middlesex Sheriff's Office in support of their proposition that asthma is typically not found to be a disability,[2] this reliance is misplaced as the court in Lima explicitly acknowledged that the plaintiff's allegation of being out of work following an asthma attack demonstrated a substantial limitation.[3] No. CV 19-11372-RGS, 2020 WL 823088, at *5 (D. Mass. Feb. 19, 2020).

Accordingly, at the pleading stage, the Court concludes that Plaintiff's asthma qualifies as a disability under the ADA. See Murtha v. New York State Gaming Comm'n, No. 17 CIV. 10040 (NSR), 2019 WL 4450687, at *10 (S.D.N.Y. Sept. 17, 2019) ("Whether a plaintiff with asthma is substantially limited in his ability to . . . breathe is a fact specific question.").

In reaching this conclusion, the Court is mindful of Congress's instruction that the definition of disability "shall be construed in favor of broad coverage of individuals . . . to the maximum extent permitted[.]" 42 U.S.C. § 12102(4)(A). Whether the evidence ultimately

---

[2] Defendants also cite to several pre-ADA Amendments Act ("ADAAA") cases. [ECF No. 153 at 6–7]. "Congress enacted the ADAAA as an express rejection of [an] overly strict interpretation of 'disability.'" Sutherland v. Peterson's Oil Serv., Inc., 126 F.4th 728, 738 (1st Cir. 2025). The Court has considered Defendants' cited authority in light of the ADAAA's statutory changes.

[3] The court in Lima considered asthma's status as a disability in an employment context. 2020 WL 823088, at *6. Although Lima arose in the employment context, Title I and Title II share the same statutory definition of "disability." See 42 U.S.C. § 12102(1).

establishes that Plaintiff's asthma substantially limits a major life activity is a question for summary judgment or trial. Defendants remain free to renew their argument.

Defendants next contend that the individually-named officer DOC Defendants cannot be sued in their individual capacities under Title II of the ADA. [ECF No. 153 at 7–8]. Plaintiff does not assert Count VII against any of the individual defendants named in this order; his Title II claim is properly asserted against the DOC. [FAC at 49–50; ECF No. 163 at 15–16]; see Unitt v. Bennett, No. CV 17-11468-RGS, 2019 WL 3432440, at *4 (D. Mass. July 30, 2019) ("the only proper defendant in a claim under Title II of the ADA is a 'public entity'").

Finally, Defendants argue that the DOC is shielded by sovereign immunity. State sovereign immunity is expressed in "the Eleventh Amendment [and] bars federal suits by citizens against the state or state agencies . . . ." O'Neill v. Baker, 210 F.3d 41, 47 (1st Cir. 2000). However, "Title II of the ADA validly abrogates sovereign immunity as to (1) state conduct that actually violates the Constitution, and (2) some classes of state conduct that do not facially violate the Constitution but are prohibited by Title II in order to 'prevent and deter unconstitutional conduct.'" Toledo, 454 F.3d at 31 (citation omitted) (first citing United States v. Georgia, 546 U.S. 151, 158–59 (2006), and then quoting Tennessee v. Lane, 541 U.S. 509, 518 (2004)). Whether sovereign immunity is abrogated is to be determined claim-by-claim, looking at:

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

Georgia, 546 U.S. at 159.

The alleged conduct underlying Plaintiff's Title II claim is part of the same conduct underlying his Eighth Amendment excessive-force claim—namely the alleged deployment of chemical agents despite Defendants' knowledge of Plaintiff's asthma. [FAC ¶¶ 194–97, 202–04]. At the pleading stage, Plaintiff has plausibly alleged that this conduct violated both Title II and the Fourteenth Amendment. See Jones v. Mississippi, 593 U.S. 98, 105 (2021) ("the Fourteenth Amendment incorporates the [Eighth Amendment's] Cruel and Unusual Punishments Clause against the States.") Under Georgia, sovereign immunity is therefore abrogated as to those claims.

**B.      COUNT VIII – Rehabilitation Act, Section 504 Claim**

Defendants argue that Plaintiff's Rehabilitation Act claim must be dismissed because Plaintiff failed to plead that the alleged discrimination was "by reason of the plaintiff's disability." [ECF No. 153 at 8]. For the reasons discussed below, the Court finds that Plaintiff's pleading adequately states a claim under the RA.

Plaintiff brings claims under the ADA and the RA. [FAC at 49–52]. The Court agrees with the parties that the statutes need not be distinguished for purposes of this analysis and therefore will apply the ADA's analytical framework to Plaintiff's RA claim. [ECF No. 153 at 8; ECF No. 163 at 15]; see Kiman, 451 F.3d at 285 n.10 ("Because Title II of the ADA is modeled on § 504 of the Rehabilitation Act, we rely interchangeably on decisional law applying § 504") (internal quotation marks and citation omitted); Nunes v. Massachusetts Dep't of Correction, 766 F.3d 136, 144 (1st Cir. 2014) ("we need make no distinction between the two statutes for purposes of our analysis in this case.") Establishment of a claim under Title II of the ADA requires a plaintiff to show:

> (1) that [s]he is a qualified individual with a disability; (2) that [s]he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

8

Gray v. Cummings, 917 F.3d 1, 15 (1st Cir. 2019) (quoting Buchanan v. Maine, 469 F.3d 158, 170–71 (1st Cir. 2006)) (alterations in original). Defendants only challenge the sufficiency of Plaintiff's claim under the RA on the third element. [ECF No. 153 at 8–9].

A plaintiff can assert a claim for disability discrimination against a public entity under three theories: (1) "disparate treatment on account of disability"; (2) disparate impact that "cannot be justified by . . . necessity"; or (3) "refus[al] to affirmatively accommodate his or her disability where such accommodation was needed to provide 'meaningful access to a public service.'" Nunes, 766 F.3d at 144–45 (citations omitted). Here, Plaintiff pursues a claim under the third theory, alleging a failure to accommodate his asthma. [FAC ¶¶ 279, 282]. Under this theory, "[t]he third element of a Title II claim is . . . satisfied if the plaintiff can prove a failure to accommodate h[is] disability, without evidence (direct or indirect) of intent." Faller v. Two Bridges Reg'l Jail, No. 2:21-CV-00063-GZS, 2022 WL 3017337, at *5 (D. Me. July 29, 2022); see Cloutier v. City of Lowell, No. CV 15-12780-FDS, 2017 WL 11488633, at *20 (D. Mass. July 12, 2017) ("[u]nlike other discrimination claims, a failure-to-accommodate claim 'does not require that an employer's action be motivated by a discriminatory animus directed at the disability'") (quoting Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 264 (1st Cir. 1999)); Higgins, 194 F.3d at 264 ("any failure to provide reasonable accommodations for a disability is necessarily 'because of a disability'"). While claims under this theory may not require a showing of intentional discrimination, "where the alleged violation involves the denial of a reasonable modification/accommodation, 'the ADA's reasonable accommodation requirement usually does not apply unless triggered by a request.'" Kiman, 451 F.3d at 283 (quoting Reed v. LePage Bakeries, Inc., 244 F.3d 254, 261 (1st Cir. 2001)). Plaintiff alleges he previously filed "grievances alerting the prison to the impact that chemical agents had on his asthma," and that DOC employees

"deployed chemical agents against [him] . . . despite [his] documented disability and express request." [FAC ¶¶ 45, 275]. Accepting these allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Complaint plausibly alleges that Defendants were aware of Plaintiff's disability, were aware of his need for accommodation, and nevertheless failed to provide one.

Defendants point to alternative, non-disability-related causes alleged in the FAC such as "the cellmate's actions" and "retaliation for his participation in the BLACC program". [ECF No. 153 at 8–9]. As explained above, Plaintiff's failure-to-accommodate claim does not require a showing of "discriminatory animus directed at the disability[.]" Higgins, 194 F.3d at 264. Further, the Court is mindful of the need to "afford due deference to the facility's interest in 'maintaining security and order'" when assessing the reasonableness of alternative accommodation in a prison setting. Faller, 2022 WL 3017337, at *6 (quoting Snell v. Neville, 998 F.3d 474, 501 (1st Cir. 2021)). Nevertheless, such analysis raises significant questions of fact that are ill-suited for resolution at the pleading stage. See id. (identifying several issues of fact when evaluating an inmate's requested accommodation).

## IV.    CONCLUSION

For the reasons stated above, Defendants' Partial Motion to Dismiss, ECF No. 152, is **DENIED**. The denial of the Motion is without prejudice to Defendants raising any appropriate arguments at summary judgment.

**SO ORDERED.**

Dated: July 14, 2026

       /s/ Margaret R. Guzman
       Margaret R. Guzman
       United States District Judge