**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DERRICK WASHINGTON,<br><br>    *Plaintiff*,<br><br>v.<br><br>MASSACHUSETTS DEPARTMENT OF<br>CORRECTION et al.<br><br>    *Defendants*. | Case No. 1:23-cv-10063-MRG |

**SECOND JOINT DISCOVERY DISPUTE STATEMENT**

Plaintiff Derrick Washington ("Plaintiff" or "Mr. Washington") and Defendants Massachusetts Department of Correction ("MDOC"), Steven Kenneway, Robert Deschene, Arthur Forget, Ryan Hillis, Thomas Tocci, Anthony Catalano, Joshua Gagnon, Arthur Barnes, Sergio Cacioppo, Nicholas Dumont, Zachary Fonseca, David Gilman, Daniel Hollenbach, Ryan Kalriess, Eric Lawson, Thomas Membrino, Nathan Owen, Jeffrey Pepoli, Brian Rayner, Robert Bashaw, Cory Shepherd, Raymond Simula, and Joseph Cummings (collectively, "DOC Defendants") submit this Second Joint Discovery Dispute Statement pursuant to this Court's Order dated February 11, 2026 (ECF No. 139).

The parties submit this Second Joint Discovery Statement regarding several critical disputes that remain unresolved after their meet-and-confer efforts on May 12, 2026 and various email communications. Specifically, this statement addresses the parties' conflicting positions regarding: (i) DOC Defendants' professional communications using personal emails; (ii) DOC Defendants' outstanding production of video evidence of the assaults on Mr. Washington; (iii) Defendant Kenneway's reorganization plan; (iv) requested video evidence from the *Silva-Prentice* matter; (v) the disciplinary history of Defendant Robert Deschene, and (vi) DOC Defendants' other outstanding document production. The parties reserve all rights to raise additional discovery disputes as the litigation progresses, including those related to previously served requests for production.

**I.      Professional Communications in the DOC Defendants' Personal Emails**
*Responsive to Request for Production Nos. 27, 28, 29, 30, and 33*

**A.      Plaintiff's Position**

Mr. Washington requests that the Court order the DOC Defendants to search and provide responsive documents from their personal email addresses and cell phones. On April 24, 2026, the Court ordered that Mr. Washington must "make a showing that directly relevant and probative correspondence exists on personal devices or accounts before the Court will entertain searches of those sources." ECF No. 188. Mr. Washington can now make such a showing.

1

DOC's recent document production includes a February 19, 2020 email sent from Defendant Catalano's official DOC email address (Anthony.CatalanoJr@doc.state.ma.us) to several recipients, including but not limited to other defendants in this action. *See* Exhibit B.[1] The email instructs recipients to enter hand-written use-of-force reports concerning Mr. Washington into the Inmate Management System (IMS), in relation to the use-of-force incidents at the heart of this litigation. *Id.* The email lists several recipients in the following format: an officer's name, followed by a DOC email address in some instances or a redacted entry designated as "PII" in others. Specifically, Defendant Jeffrey Pepoli, Defendant Arthur Barnes, and Defendant Zachary Fonseca appear as recipients with email addresses their counsel redacted as "PII." *Id.* At the bottom of the same email, Defendant Catalano provides his own contact information, listing a "Spec Ops" number and a separately redacted "PII (Cell)" number.[2] Notably, DOC email addresses and phone numbers are not redacted as such; the only reasonable inference is that the information redacted as "PII" includes personal contact information for each individual. *Id. See also* ECF No. 130 ¶ 3(d) (Protective Order) (defining "Private Personal Information" subject to PII redaction as including "personal telephone numbers" and "personal email addresses" of DOC employees). This email is, on its own, dispositive: individual DOC Defendants used their personal email addresses and cell phones to correspond about official, relevant DOC business. As even further evidence that individual DOC Defendants used personal devices to discuss DOC business, Defendant Catalano testified at his deposition that he used *his* personal cell phone to text several named individual DOC Defendants at *their* personal cell phones *about DOC-related business*. Mariella Decl. ¶ 18.

Further, Defendant Barnes confirmed at his June 30, 2026 deposition that he used his personal email address for DOC-related work. *See* Exhibit D at 14:10–22 (when asked if he used his personal email address to communicate about work, Mr. Barnes said "No. Well, yes"; when asked if he used his personal phone to communicate about work he said "yes"; and when asked if he had a DOC-issued phone he said "no")). Notably, Defendant Barnes acknowledged that, as of January 2020, when the first assaults against Plaintiff occurred, he was not issued a DOC email address, and he admitted that he would have had to use his personal email account to communicate about official DOC business. *Id.* at 15:2–5. That admission, combined with the email from Defendant Catalano that was directed to his personal email address, *see* Exhibit B, confirms that Defendant Barnes' personal email account contained work-related correspondences directly relevant to this litigation.[3] The same is likely true for Defendants Dumont, Bashaw, and Fonseca, as DOC has stated that they, too, did not have DOC email addresses at the time of the incidents underlying this case, *see* Exhibit A at 12, and Defendant Fonesca's personal email address appears to have been included in Catalano's email. *See* Exhibit B at 1.

Based on this evidence, Mr. Washington sent the DOC Defendants a letter on July 2, 2026, requesting that each Defendant search their personal email account and personal cell phone and produce documents responsive to the provided search terms. *See* Exhibit E. The DOC Defendants

---

[1] All exhibits cited herein are attached to the Declaration of Sabina Mariella dated August 1, 2026, submitted herewith.

[2] What's more, during his deposition in the *Diggs* action, Defendant Catalano confirmed that he did not have a DOC issued cellphone. Exhibit C at 66: 9–12.

[3] Similarly, Defendant Hillis admitted in his deposition that he used his personal cell phone to communicate with other Defendants in this case. Mariella Decl. ¶ 19.

responded 18 days later by refusing to conduct such a search, without meaningfully rebutting any of Mr. Washington's contentions. *See* Exhibit F at 4–5.[4]

This situation is not unprecedented in this District. As Mr. Washington discussed in the First Joint Discovery Dispute Statement, discovery in related matters has already revealed that SBCC staff used their personal devices to exchange text messages about official DOC business, including staff coordination on use-of-force reports. In *Silva-Prentice v. Turco*, the very same pattern emerged where SBCC officers texted each other about the subject incidents,[5] and the Court acted decisively. Magistrate Judge Dein explicitly ordered that defense counsel "require the current defendants . . . to search for any responsive emails or text messages . . . on any phone, DOC-issued or personal, on which these individuals conducted DOC business." *See* Order on Plfs.' Mot. to Compel, *Silva-Prentice v. Turco*, No. 1:21-cv-11580-PBDS, ECF No. 147 (D. Mass. Jan. 26, 2024) ¶ 1(b); *see also State Farm Mut. Auto. Ins. Co. v. Previous Physical Therapy, Inc.*, 2021 WL 1122415, at *6 (E.D. Mich. Mar. 24, 2021) (ordering production of "responsive emails sent and/or received by current employees or independent contractors' email accounts" where "employees and independent contractors used their own personal email accounts for business emails").

Mr. Washington reaffirms his willingness to limit his inquiry to targeted identifiers and substantive terms. Specifically, Mr. Washington requests that the Court order each individual DOC Defendant to search their personal email accounts and personal cell phones (including text messages and messaging applications such as Facebook Messenger and WhatsApp) for communications containing:

- "Derrick Washington" OR "Washington" OR "DW" OR "W89316" OR "BLACC" OR "Black, Latino, Asian Cultural Coalition"

Such communications are in each individual Defendant's "possession, custody, or control," are highly relevant, and are subject to discovery. *See* Fed. R. Civ. P. 26(b) & 34.

Defendants offer only to "inquire" of the individual officers as to whether such documents exist, maintaining that these records are not in the "care, custody or control of the DOC." *See infra* I.B. Plaintiff maintains that this "inquiry-only" approach is insufficient for Defendants sued in their individual capacities. *See Da Veiga v. Standard Bank*, No. 22-11364-NMG, 2024 WL 5668161, at *3 (D. Mass. Dec. 13, 2024) ("Abdicating completely the discovery search, collection

---

[4] In so doing, the DOC Defendants mischaracterized Barnes's deposition testimony. And no matter what he testified, the presence of Defendant Barnes' personal email address in the Catalano email proves that he used his personal email address for work-related communications that directly bear on this case.

[5] *See, e.g.*, Declaration of Bridget A. Zerner in Support of Motion to Compel, *Silva-Prentice v. Turco*, No. 1:21-cv11580-PBDS, ECF No. 95–1 (D. Mass. Apr. 12, 2023) ¶ 7 ("Defendants' own documents indicated at least some of the defendants were texting each other during the relevant time"); Memo. of Law in Support of Plfs.' Mot. to Compel, *Silva-Prentice v. Turco*, No. 1:21-cv-11580-PBDS, ECF No. 132 (D. Mass. Dec. 12, 2023) at 11 ("at least some Defendants—including [defendant], whose cell phone was forensically searched by DOC investigators earlier this year—had used text messages to discuss long overdue use of force reports specific to [plaintiffs]").

and production to a layperson or interested client without the client's attorney having sufficient knowledge of the process . . . does not meet an attorney's obligation under our discovery rules and case law," noting that "the perils of client self-collection are abundant" and ordering a search "overseen by counsel"). Individual DOC Defendants—represented by counsel and sued in their individual capacities for their own conduct—cannot be permitted to unilaterally self-select what is or is not responsive on their own personal devices without any attorney oversight of the search itself.

### B.    DOC Defendants' Position

DOC Defendants strongly contest Plaintiff's mischaracterizations and misrepresentations regarding this specific issue, especially since DOC Defendants have on multiple occasions agreed to have the individual DOC Defendants search their personal accounts for any communications related to Mr. Washington.  This was reiterated to Plaintiff's Counsel, in writing, on March 16, 2026 and again on July 20, 2026 yet Plaintiff continues to misrepresent to this Court that DOC Defendants are unwilling to conduct this search.

DOC Defendants also disagree with the assertion the Defendant Barnes confirmed that he used his personal email address for DOC-related work. During his deposition, when asked whether he used his personal email to communicate about work, he answered that he did not "know if he [had] a DOC email back then." See Deposition of Arthur Barnes, p. 14, line 24; p. 15, line 1. He was then asked, if he did not have a DOC e-mail, whether he would have used his personal e-mail address to communicate about work, to which he confirmed.  See Deposition of Arthur Barnes, p. 15, lines 2-14. When asked what the emails to his personal email address would have entailed, he responded "just where to report, where [he] would be assigned to, and a time and date to show up." Id.

DOC Defendants also disagree with Plaintiff's characterization of Defendant Hillis' deposition. DOC Defendants note that his deposition occurred on July 24, 2026, and they have not yet received a copy of the transcript of his deposition testimony. Nonetheless, at his deposition, Defendant Hillis testified that to the extent he communicated with anyone who works for DOC, those communications were not about work at all or in any way related to his employment at DOC. Moreover, when asked about each individual Defendant in this matter, Defendant Hillis only identified one Defendant (Rayner) as an individual he communicates with on his personal phone, but again stated that the communications were personal and had nothing to do with his employment with DOC.

Additionally, the email Plaintiff attached here as an exhibit clearly shows the email was also sent to Arthur.B.Barnes@doc.state.ma.us, Defendant Barnes' DOC email address, which was provided in discovery production. Defendant Catalano simply providing his personal contact information should the email recipients have any questions, does not automatically provide that Defendant Catalano used his personal device. As previously noted, personal devices are not permitted within correctional institutions.

At bottom, DOC Defendants have agreed to inquire of the individual DOC Defendants as to the existence of responsive documents on their personal email, personal phone data including text messages, and online messaging services such as Facebook Messenger and WhatsApp. DOC

Defendants maintain that these records are not in the care, custody or control of the DOC but will nonetheless produce any responsive documents to Plaintiff. Answering further, DOC Defendants do not agree to inquire as to the personal email, personal phone data including text messages, and online messaging services such as Facebook Messenger and WhatsApp of any individuals **who are not named as Defendants** in the present action.

## II.    All Relevant Video Footage of Assaults on Mr. Washington
*Responsive to Request for Production Nos. 11, 12, 13, and 14*

### A.    Plaintiff's Position

Mr. Washington requests that the Court order the DOC Defendants to (1) confirm in writing by August 7, 2026 whether any additional video footage relating to the January 21, January 23–24, and March 5, 2020 incidents exists and whether any footage is being withheld; and (2) once the March 5 footage is available in an accessible format, permit Mr. Washington to take short, supplemental depositions of officers appearing in the January 21, January 23–24, and March 5 footage, limited to one-hour each and to the events depicted therein.

After more than six months of requests, and only in response to Mr. Washington's direct inquiries, DOC produced additional video footage for the January 21, January 23–24, and March 5, 2020 incidents. *See* Exhibit M. This footage was received at Plaintiff's counsel's offices on Friday, July 24, 2026.

Plaintiff's counsel is presently reviewing the January 21 and January 23–24 footage and reserves rights pending identifying any deficiencies. However, the footage from the security camera inside the strip cell where Mr. Washington was held on March 5, 2020 is inaccessible and cannot be played using the Bosch media player software provided.

Furthermore, DOC has not confirmed whether this reflects the entirety of available footage, whether any additional footage exists, or whether footage is being withheld.

This pattern of piecemeal, eleventh-hour disclosure is prejudicial. Mr. Washington agreed to take depositions before document discovery was complete in reliance on DOC's representations that it was diligently producing all relevant material. He has now deposed six priority deponents involved in the March 5 and January 23–24 incidents without access to video that was in DOC's possession all along—video from inside the cell where the use-of-force occurred. DOC must not be permitted to benefit from that cooperation while continuing to withhold or obscure key evidence. Accordingly, Mr. Washington requests that DOC confirm in writing by August 7, 2026— one week before the close of fact discovery—whether its video production is complete and whether any footage is being withheld. Courts in this District have ordered precisely this relief and sanctioned parties whose later-discovered footage proved their attestations of completeness false. *See Red Wolf Energy Trading, LLC v. Bia Cap. Mgmt., LLC*, 626 F. Supp. 3d 478, 481 (D. Mass. 2022) (entering default judgment after sworn assurances of completeness proved untrue and additional highly relevant material surfaced after deponents had already been questioned).

Additionally, because the March 5, 2020 footage is currently defective and inaccessible, Mr. Washington has had no opportunity to review what it shows or examine any witnesses or

defendants about its contents. The additional January 21 and January 23–24 footage was also produced too late to be shown to the DOC Defendants deposed to date. Therefore, Mr. Washington respectfully requests that once DOC produces the March 5, 2020 footage in a viewable format, and the Plaintiff has had the chance to thoroughly review all the additional footage, that the Court permit short, supplemental depositions of officers appearing in the January 21, January 23–24, and March 5 footage, limited to one-hour per officer and to the events depicted therein.[6] This modest relief is necessary and appropriate given that the footage was produced just three weeks before the close of fact discovery and remains unavailable through no fault of Mr. Washington.

### B.    DOC Defendants' Position

DOC Defendants maintain that all relevant video regarding the three (3) incidents described in Plaintiff's Complaint have been produced to Plaintiff.  With regards to the March 5, 2020 video that Plaintiff's counsel cannot access, DOC Defendants do not know why Plaintiff's counsel cannot access it but have nonetheless sent a new disc to Plaintiff's Counsel on July 30, 2026 with the same video. The March 5, 2020 video from inside the holding cell must be played using the Bosch VMS Archive Player by opening the player and uploading the export file.

Moreover, the videos from use of force incidents on January 21, 2020, January 23, 2020 and March 5, 2020 were sent to Plaintiff via certified mail on February 10, 2026 and in hand on April 22, 2026. The video recently sent to Plaintiff's counsel via certified mail on July 20, 2026 includes video from inside the cell on March 5, 2020. The additional video produced is surveillance video of Plaintiff on January 23, 2020 receiving legal mail from an officer at 2:39PM, which DOC Defendants contend is irrelevant to the present matter but nonetheless produced it anyways. Plaintiff's Amended Complaint references allegations later at night on January 23, 2020 into the early morning hours of January 24, 2020. See Amended Complaint, paragraphs 129-140. There is no additional video footage pertaining to Mr. Washington that exists. As such, all video footage has been produced and none has been withheld.

DOC Defendants do not agree to any supplemental depositions at this time particularly where counsel for Plaintiff concluded all the depositions that have taken place thus far rather than suspend the depositions given the alleged outstanding discovery concerns they now raise, particularly since all other video, including handheld video, pertaining to the March 5, 2020 use of force was previously provided and discussed during depositions.

### III.    Defendant Kenneway's SBCC Reorganization Plan
*Responsive to Request for Production Nos. 20, 22, 23, 24, and 31*

### A.    Plaintiff's Position

Mr. Washington requests that the Court enter an order compelling the DOC Defendants to produce Defendant Kenneway's plan for the reorganization of SBCC in January 2020 (the "Kenneway Plan"). Mr. Washington became aware for the first time during the deposition of

---

[6] Plaintiff has been economical in his use of deposition hours, having used less than 70 hours of total deposition runtime to date, which is a modest amount in a case with over twenty named individual defendants.

Defendant Kenneway on June 5, 2026 that he wrote a formal plan for the reorganization of SBCC in January 2020 and the corresponding classification of prisoners. The Kenneway Plan is relevant to this litigation because, in response to an altercation between prisoners and guards in early January 2020, SBCC was organized into a "North Side" and "South Side," placing the North Side into a punitive lockdown. *See* Am. Compl. (ECF No. 126) ¶¶ 62–66. Mr. Washington's unjustified placement on the North Side led to his exposure to staff violence. *Id.* ¶¶ 67–68. Therefore, the Kenneway Plan detailing the rationale and execution of the SBCC reorganization is directly relevant to Mr. Washington's claims.

On July 2, 2026, Mr. Washington requested that the DOC Defendants produce all plans relating to the reorganization of SBCC in January 2020, on the basis that these documents are responsive to RFP Nos. 20, 22, 23, 24, and 31, among others. *See* Exhibit A at 3. On July 20, 2026, the DOC Defendants responded that they "maintain the objections asserted in their responses" to those RFPs and at Defendant Kenneway's deposition, and that the Kenneway Plan is being withheld on the basis of attorney-client privilege. *See* Exhibit F at 3. Defendants' privilege claim fails for two independent reasons.

First, Defendants did not timely and specifically assert this privilege in their responses to RFP Nos. 20, 22, 23, 24, and 31. Indeed, the privilege assertion that the DOC Defendants must be referring to appears only in a generic "General Objections" section of Defendants' discovery responses, untethered to any specific request.[7] *See* Exhibit G at 2. Local Rule 34.1(e) requires that "[w]hen a claim of privilege is asserted in objection to any document request, or any subpart thereof, . . . the attorney asserting the privilege shall identify . . . the nature of the privilege that is being claimed with respect to each such document." A boilerplate, undifferentiated privilege objection buried in general objections does not satisfy this requirement and is deemed waived. *See Bryan Corp. v. Chemwerth, Inc.*, 296 F.R.D. 31, 41 n.6 (D. Mass 2013) (citing *In re Grand Jury Subpoena*, 274 F.3d 563, 576 (1st Cir. 2001)); *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) ("[B]oilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege.").

More importantly, the Kenneway Plan does not appear to be protected by the attorney-client privilege. Defendant Kenneway clearly testified that "DOC legal was just an approval or denial. Then once that was done, [he] would have sent it to the commissioner or to [his] boss." *see* Exhibit H at 149:19–24. If the Kenneway Plan exists and was sent to non-attorneys, the plan is not protected by attorney-client privilege, contrary to what the DOC Defendants assert.

Mr. Washington respectfully requests that the Court order the DOC Defendants to produce all documents relating to the January 2020 SBCC reorganization plan.

---

[7] To the extent the DOC Defendants contend that Defendant Kenneway's plan, or any other documents, are protected by the attorney-client privilege, Mr. Washington requests that the Court order them to produce a privilege log that complies with Federal Rule of Civil Procedure 26(b)(5). Though Mr. Washington maintains that the DOC Defendants have waived any such privilege claims by failing to specifically enumerate them in their discovery responses, Mr. Washington is entitled to know of the existence of *any* responsive documents and the basis for their nondisclosure.

### B.    DOC Defendants' Position

DOC Defendants maintain that the Kenneway plan is being appropriately withheld from discovery pursuant to both the attorney-work product doctrine and the attorney-client privilege. These objections were raised generally in DOC Defendants' responses to Plaintiff's Second Request for Production of Documents. Moreover, at the deposition of Defendant Kenneway, objections were made with regards to this line of questioning and Mr. Kenneway was instructed by counsel not to answer on the grounds of attorney-client privilege. Both of these objections have been properly raised by DOC Defendants in this matter and therefore are applicable.

Moreover, DOC Defendants disagree with Plaintiff's characterization of Defendant Kenneway's deposition testimony. Defendant Kenneway's testimony on this matter was that he drafted a plan, sent it to DOC Legal, and that it then was out of his hands. See Kenneway Deposition, p. 101, lines 19-24; p. 148, lines 13-24; p. 149, lines 1-6. Kenneway also noted that he did not recall if the plan was finalized or sent to anyone else. See Kenneway Deposition, p. 148, lines 15-21.

The only document that exists in DOC's possession is Kenneway's drafted plan that was sent to DOC Legal and has DOC Legal's edits and comments on the document. There is no other version of this document that exists. As such, DOC Defendants maintain that the Kenneway reorganization plan is appropriately withheld from production due to the attorney work-product doctrine and attorney-client privilege. DOC Defendants also agree to produce a privilege log for all documents that have been withheld from production.

### IV.    Video Footage from *Silva-Prentice*
*Responsive to Request for Production No. 1*

### A.    Plaintiff's Position

Mr. Washington requests that the Court enter an order compelling the DOC Defendants to produce all video and audio footage produced in *Silva-Prentice, et al. v. Turco, et al.*, No. 1:21-cv-11580-PBS (D. Mass.) captured between January 21 and January 24, 2020.

On January 22, 2020, audio footage was captured recording a SBCC officer explicitly planning a retaliatory attack on Plaintiff the next day. *See* Am. Compl. (ECF No. 126) ¶ 112. DOC Defendants claim that no such audio footage exists from January 22, *see* Exhibit F at 2; therefore, Plaintiff requests that DOC produce all footage from *Silva-Prentice*, so that Plaintiff's counsel can review the recordings themselves.

At the April 22, 2026 hearing, Mr. Washington's counsel represented that, because there is no protective order in *Silva-Prentice*, Mr. Washington was able to confirm directly with *Silva-Prentice* counsel that video footage produced in that case corroborates the allegations in Paragraph 112 of the Amended Complaint—namely, that officers were caught on audio planning their attack on Mr. Washington. *See* Exhibit I at 10:3–11.

The Court directed Mr. Washington to "put together, as quickly as" possible "some description of the discovery" sought, *id.* at 10:16–20, and Mr. Washington did exactly that. *See* Exhibit A at 29 (explicitly requesting "video footage or an audio recording from January 22"). Mr. Washington followed up repeatedly in the intervening three months and has provided DOC Defendants with all of the identifying information at Mr. Washington's disposal—including the approximate date, time window, and the names of officers involved in or who submitted reports for that incident, *id.* at 14, 24, 28, to help Defendants locate the footage. These were not definitive representations that the footage must fit those criteria, but rather a good faith effort to assist DOC in narrowing its search.

Despite these efforts, DOC Defendants did not substantively respond to Mr. Washington until July 20, 2026, when the DOC Defendants objected to producing the footage. They affirmed that they had reviewed only two hours of footage related to the Use of Force 7719 produced in *Silva-Prentice* and found it to be irrelevant. *See* Exhibit F at 2. Plaintiff clarified that his prior reference to UOF 7719 in correspondence was offered to help narrow DOC's search: it was not a definitive representation that the relevant footage is confined to that use of force. Plaintiff does not know how much audio footage was captured on January 22, 2020 or what was produced in *Silva-Prentice* more broadly.

Fact discovery is almost over. Mr. Washington cannot afford to continue guessing at the footage's whereabouts while the DOC Defendants sit on a request that has been pending, and squarely before this Court, for three months. Mr. Washington is willing to review the *Silva-Prentice* video and audio production from January 21 to January 24, 2020—two days before and after January 22, 2020—and requests that the Court order Defendants to produce that footage, in its entirety, without further delay.

### B.      DOC Defendants' Position

DOC Defendants object to producing the entire video from the Silva-Prentice/Paulino incident on the grounds that it is irrelevant and non-responsive to discovery requests in this matter. The video produced that contains audio in relation to Use of Force 7719 in <u>Silva-Prentice, et al. v. Turco, et al.</u>, USDC 21-cv-11580-PBS, is almost two hours of P2 Housing Unit tier footage from 1:09PM to 2:58PM. It does not have any mention whatsoever of Plaintiff, Mr. Derrick Washington, and involved other incarcerated individuals located in a completely separate housing unit from Mr. Washington at the time. Further, there is no mention of Mr. Washington in the audio.

Plaintiff continues to misrepresent to the Court that on January 22, 2020, there is an audio recording of SBCC officers planning an alleged retaliatory attack on Plaintiff. That simply is not true.

Seeking all video and audio footage from January 21, 2020 to January 24, 2020 that was produced in another action amounts to nothing more than a "fishing expedition." <u>See, e.g., Commonwealth v. Mitchell</u>, 444 Mass. 786, 792 (2005); <u>Ocean Semiconductor, LLC v. Analog Devices, Inc.</u>, No. 20-CV-12310-PBS, 2024 WL 3567350, at *4 (D. Mass. Apr. 19, 2024). As such, the lengthy video footage from different incidents that occurred at SBCC in January 2020 is not relevant to any of Plaintiff's claims in this matter. Counsel for DOC Defendants did review specific video with audio footage in a good faith effort to locate what Plaintiff claims, and was unable to

locate it in the almost two-hour video. As such, DOC Defendants did not produce the video as irrelevant and nonresponsive, particularly where Plaintiff was not involved in that other incident, was not housed in the same housing unit where that incident took place, and there is no mention of him at any point during the particular incident in Use of Force 7719.

## V.    Defendant Deschene's Professional Standards Records
*Responsive to Request for Production Nos. 4 and 7*

### A.    Plaintiff's Position

Mr. Washington requests that the Court enter an order compelling the DOC Defendants to produce Defendant Deschene's complete disciplinary record. The DOC Defendants' initial production of disciplinary records indicated that Defendant Deschene had no prior disciplinary history. However, in Defendant Deschene's deposition, he stated that he had been questioned, investigated and even participated in investigatory hearings multiple times in connection with alleged excessive uses of force. *See* Exhibit K at 22:7–23:1 ("Q: Were you ever investigated for engaging in . . . excessive force? A: I –I don't know the exact cases, but I – I've been questioned numerous times"). Defendant Deschene's history of alleged, investigated and/or confirmed misconduct is highly relevant to the claims in this action and were expressly sought in Request for Production No. 8. *See Fernandes v. Bouley*, 2022 WL 2915702, at *11 (D. Mass. July 25, 2022) ("[T]here is authority in this circuit to support the conclusion that personnel files of the subordinate officers who allegedly violated the plaintiff's constitutional rights, as well as the superior officers who allegedly failed to train or supervise, may be relevant and discoverable."). Mr. Washington explicitly requested these records after Defendant Deschene's deposition, but to no avail. *See* Exhibit A at 3. This pattern is also concerning because Mr. Washington has little confidence that the DOC Defendants have identified the full universe of each Defendant's disciplinary history, which is undoubtedly relevant to Mr. Washington's claims.

Accordingly, Mr. Washington requests that the Court order the DOC Defendants to produce all documents and communications relating to the investigative or disciplinary hearings for allegations of misconduct against Defendant Deschene, including but not limited to transcripts, notes, disposition, findings, witness statements, and parties involved in the disciplinary process.

### B.    DOC Defendants' Position

DOC Defendants reiterate the objections asserted in their responses to Plaintiff's Second Request for Production of Documents, specifically Requests Nos. 4 and 7. DOC Defendants also object to producing documents pertaining to allegations of misconduct as to Defendant Deschene on the grounds that the request is overbroad, unduly burdensome, not limited in scope or time and irrelevant to Plaintiff's claims in this case.

DOC Defendants also maintain the objections asserted during the deposition of Defendant Deschene during the line of questioning regarding allegations of misconduct. Specifically, DOC Defendants disagree with Plaintiff's characterization of Defendant Deschene's deposition testimony. Defendant Deschene testified that in his "18 years and nine months" of employment, he has "never been reprimanded for anything," noting that he has "a clean disciplinary record in every fashion to include use of force." See Deschene Deposition p. 52, lines 9-11. Defendant Deschene's deposition testimony  is further supported  by his  disciplinary record, which  DOC defendants

have already produced. See Deschene Disciplinary Record. Defendant Deschene testified that he did not know how many times he had been interviewed with regards to allegations of staff misconduct as the population is highly litigious. See Deschene Deposition, pp. 139-141.

Moreover, DOC Defendants contend that documents pertaining to any investigations regarding allegations of misconduct against Defendant Deschene are irrelevant to the current matter and are only sought by Plaintiff for improper character evidence to be used at trial. Even assuming *arguendo* that these documents have some relevancy, that relevancy is dependent on the closeness in time to the events of Plaintiff's Complaint. It strains credulity that unsubstantiated allegations from ten to fifteen years ago are somehow relevant to anything in this action, particularly where the allegations of misconduct concern other incarcerated individuals not currently parties to this matter, at different institutions, and under a completely different set of circumstances. To the extent Plaintiff seeks this information for impeachment purposes, he already has the disciplinary histories of each Defendant, including Defendant Deschene, which clearly indicates any discipline they have received and the general basis for that discipline.

## VI.    DOC Defendants' Incomplete Production of Documents

### A.    Plaintiff's Position

Mr. Washington requests that the Court order DOC to complete its document production in its entirety by August 14, 2026, and to extend the deadline to raise discovery disputes to September 11, 2026. By agreement of the parties, document discovery was supposed to be substantially completed by April 26, 2026; the Court ordered all fact discovery to be completed by August 14, 2026. *See* ECF No. 128 at 7; ECF No. 138. Now with only 14 days left until the fact discovery deadline of August 14, 2026, the DOC Defendants have still yet to complete document production and have given no indication of an anticipated completion date. Mr. Washington has made every effort to push discovery forward to meet the August 14, 2026 fact discovery deadline. Accordingly, Mr. Washington agreed to begin taking depositions before DOC Defendants completed document discovery. Despite Mr. Washington's good faith compromises, the DOC Defendants have failed to meet their obligations. Court intervention is necessary.

Mr. Washington timely propounded his Requests for Production of Documents, Set Two, on the DOC Defendants, to which the DOC Defendants responded with a series of objections, necessitating court intervention. *See* ECF No. 177 (First Joint Discovery Dispute Statement). After hearing argument on the dispute, on April 24, 2026, the Court issued a number of directives to facilitate the completion of discovery. *See* ECF No. 188. These directives included "reach[ing] agreement on a list of limited search terms and identifiers to be used in searching discovery produced by MDOC in the related actions identified in ECF No. 177, no later than May 1, 2026." *Id.* The Court also directed MDOC to provide Mr. Washington hit reports "as soon as practicable" and to next "search for and produce responsive discovery, including deposition transcripts, consistent with any applicable protective orders and confidentiality obligations." *Id.*

Immediately afterward, on April 27, 2026, Mr. Washington sent DOC Defendants a detailed email to "follow up" on the remaining issues and "propose a way to triage discovery" in light of the August discovery deadline. *See* Exhibit A at 29. The email included a list of discovery-related "priority items" in advance of beginning depositions, as well as a list of a request for a hit report

for previously supplied search terms. *Id.* at 29–30. Mr. Washington also requested to meet and confer. *Id.* at 30. The DOC Defendants refused to meaningfully respond or negotiate, simply insisting that they were proceeding "in accordance with their obligations." *Id.* at 21. Although Mr. Washington followed up six times, *id.* at 17, 18, 20, 22, 25, 30, the DOC Defendants failed to respond to Mr. Washington's request for a meet and confer until May 11, 2026. *Id.* at 16. The parties met and conferred on May 12, 2026, at which time the DOC Defendants committed to providing outstanding discovery.

Mr. Washington's efforts to negotiate with the DOC Defendants about outstanding discovery before, during, and after the May 12 meet and confer have largely been in vain. To date, the DOC Defendants have produced only a fraction of the responsive emails, have failed to produce other requested documents, and have declined to identify when they will complete said production.

### 1.  The DOC Defendants Have Failed to Complete Email Production.

Mr. Washington has tried at length to negotiate search terms to potentially narrow the scope of email production. *See* Exhibit A at 9, 12, 18; Exhibit J at 4. The DOC Defendants initially provided several hit reports at Mr. Washington's request. *See* Exhibit A at 23, 26–28. Recognizing that the search terms were yielding a high number of results, on May 6, 2026, Mr. Washington asked the DOC Defendants to run a few more searches that "include[] a unique hit count for the requested terms so that we can identify which if any terms are creating false hits." *Id.* at 18. The goal of Mr. Washington's request was to make an informed decision about how to modify and narrow the search terms. But on May 27, 2026, the DOC Defendants claimed that they could not provide additional hit reports, *id.* at 12 ("DOC Defendants cannot continue to request [sic] HIT reports that expand upon the search and are not the original terms sought during meet and confers and correspondence"), impeding the parties' ability to agree on search terms as ordered by the Court. The DOC Defendants nonetheless agreed to "review and produce relevant emails from the initial HIT reports of agreed upon terms in the meet and confers as noted in our March 16, 2026 letter." *Id.* at 12. By the DOC Defendants' own count, this entails approximately 2,400 items. *Id.* at 11 (totaling 2,346 hits and 82 hits respectively from an agreed-upon set of terms).

Despite this, the DOC Defendants did not make a single production between May 8 and June 2. Mariella Decl. ¶ 15. Still, the DOC Defendants have produced less than 300 emails since they began producing these emails at the beginning of June. *Id.* ¶ 16. The DOC Defendants have provided no explanation for the delay, nor have they indicated when—or whether—the remaining emails will be produced.

### 2.  The DOC Defendants Have Failed to Produce Other Outstanding Documents.

The DOC Defendants have also delayed their production of other documents. During a meet and confer on April 15, 2026, they agreed to produce the following categories of documents:

a. "statistics regarding the number of use-of-force incidents, hospitalizations of staff and inmates resulting from those incidents, and the severity and type of incidents from January 2015 to the present";
b. "policies relating to the use of K-9s and emergent use of force"; and

12

c.  all documents that indicate Mr. Washington is contraindicated for chemical agents.

DOC Defendants have yet to produce any of these documents, nor have they given Mr. Washington an anticipated date of production, despite numerous requests from Mr. Washington.

The sum of the DOC Defendants' failures to comply with the Court's directives and the Federal Rules is that they have yet to complete document discovery. Other than the specific items addressed in the sections above, Mr. Washington has no idea how much discovery is outstanding, or when to expect it. Courts in this District have repeatedly sanctioned exactly this kind of one-sided delay in completing document production, particularly where, as here, the delay is unexplained and threatens the discovery schedule. *See Novi Footwear Int'l Co. Ltd. v. Earth OpCo LLC*, 740 F. Supp. 3d 73, 77–79 (D. Mass. 2024) (awarding fees where defendants had "not finished their productions" months after the plaintiff completed its own production and after multiple discovery deadline extensions, explaining that the delays were "largely one-sided" and that the defendants' "molasses-slow approach to discovery" was not excused merely because gathering the information was difficult).

Fact discovery is rapidly coming to a close. Mr. Washington needs to receive *all* outstanding discovery in advance of the August 14, 2026 deadline. Otherwise, Mr. Washington risks receiving a last-minute production from the DOC Defendants—or no production at all—without a meaningful opportunity to dispute its sufficiency or question key actors about its contents.

Accordingly, Mr. Washington requests that the Court enter an order requiring the DOC Defendants to provide Mr. Washington a detailed list of all outstanding documents by August 7, 2026 (including any outstanding video footage, *see supra* Section II.A), and to produce all outstanding documents by August 14, 2026. Further, to ensure that Mr. Washington has the opportunity to challenge the deficiency of the DOC Defendants' forthcoming productions after review, Mr. Washington respectfully requests that the Court extend the deadline for raising discovery disputes to September 11, 2026. *Cf.* ECF No. 139 (requiring the parties to resolve any lingering discovery disputes with enough time for "the Court to decide [any discovery] motion before the deadline for the completion of discovery").

## B.    DOC Defendants' Position

DOC Defendants disagree with Plaintiff's statements that they have failed to produce other outstanding documents.  On May 1, 2026, DOC Defendants produced to Plaintiff the statistics regarding use of force incidents as well as several policies including the K9 policy, even though DOC Defendants maintain that the K9 policy is irrelevant in the present matter where none of the incidents described in the Amended Complaint involved a canine. Nonetheless, this policy along with the statistics were produced to Plaintiff over two months ago.  DOC Defendants do not understand what else Plaintiff is seeking as these documents have already been produced.

With regards to documents regarding Plaintiff's contraindications to chemical agent, as an initial matter, DOC Defendants point out that Plaintiff never made a specific request for these documents in either his First or Second Request for Production of Documents. Nonetheless, DOC Defendants maintain that those documents would be in the care, custody, and control of Wellpath,

the Department's contracted medical vendor at the time of the incidents in this case. In their January 27, 2026 Responses to Plaintiff's Second Request for Production of Documents, DOC Defendants referred Plaintiff to the Keeper of Inmate Medical Records which is designated by the contractual clinical provider pursuant to 103 DOC 607.02, <u>Department of Correction Inmate Medical Records.</u>

Plaintiff and his attorneys have been made aware throughout discovery that medical personnel are responsible for making the decision that an incarcerated individual is contraindicated for the use of chemical agent. DOC staff do not make those decisions. As such, those documents Plaintiff seeks are better directed to Keeper of Records for the Department's contracted medical provider.

Moreover, DOC Defendants take great issue with Plaintiff's blatant misrepresentations to this Court regarding document production and DOC Defendants take great issue with Plaintiff misrepresenting to the Court that they have failed to comply with document discovery and that do contest Plaintiff's characterization that the Plaintiff has "no idea" how much discovery is remaining. DOC Defendants have responded to every single document request made by Plaintiff in both his First and Second Request for Production of Documents. DOC Defendants have made eleven (11) supplemental productions with the latest production on June 15, 2026. Those productions included all documents that identified Plaintiff Washington in <u>Diggs, et al. v. Mici, et al.</u> and <u>Silva-Prentice, et al. v. Turco, et al.</u> DOC Defendants also produced deposition transcripts of Anthony Catalano, Dennis Breslin, James Murphy, Joseph Freitas, Joseph Bellini, Nathan Owen, Paul Henderson, Raymond Turcotte, Charles Primack, and Dean Gray to satisfy Plaintiff's 30(b) inquiry and any discussion regarding Plaintiff Washington. DOC Defendants also produced responses to interrogatories of former Commissioner Carol Mici in the <u>Diggs</u> class action.

With respect to the emails, DOC Defendants disagree that they have only produced 300 emails from over 2,400 hits. This mischaracterizes the hit reports as responsive documents, which is an inaccurate representation of what the hit reports represent. While there may be over 2,400 hits on the search terms, this does not equate to over 2,400 responsive documents. DOC Defendants agreed to search terms "Derrick Washington," "Washington" and "W89316" for custodians including all DOC Defendants and Raymond Turcotte, Michael Thomas, Logan Davell, David Reniere, Charles Primack, and James Gerardi from November 1, 2019 through August 1, 2020. By including "Washington" as a search term, there were many non-responsive documents included in the hit report that do not pertain to Plaintiff Washington or events alleged in the Amended Complaint. In addition, DOC Defendants agreed to search terms "BLACC" and "Black, Latino, Asian Cultural Coalition" for all DOC Defendant custodians from September 1, 2019 to March 16, 2026. The remaining responsive documents have been submitted to the Executive Office of Technology Services and Security ("EOTSS") for production and will be produced in the near future. Moreover, DOC Defendants have been producing emails of deponents in advance of their deposition and continue to produce documents to date. Furthermore, Plaintiff's characterization that DOC Defendants have been delaying discovery or moving at a slow pace is disingenuous in light of the extensive discovery produced to date, the eleven depositions conducted thus far, and the additional Request for Interrogatories and Requests for Admissions recently served. DOC Defendants have been diligently producing discovery. At this juncture, it seems unreasonable for

Plaintiff to claim that he has no idea how much more outstanding discovery remains when he (and his attorneys) are in possession of nearly everything they have sought in their document requests.

DOC Defendants do not agree, at this time, to extend the discovery deadline.

Dated: August 1, 2026

Respectfully submitted,

/s/ Stephanie M. Caffrey
Stephanie M. Caffrey (BBO No. 697075)
Brittni Wipper (BBO No. 696783)
Department of Correction
Legal Division
70 Franklin Street, Suite 600
Boston, MA 02110-1300
(t) +1 617 727 3300 x1154
stephanie.m.caffrey@doc.state.ma.us
brittni.wipper@doc.state.ma.us

*Attorneys for DOC Defendants*

/s/ Sabina Mariella
BOIES SCHILLER FLEXNER LLP
Sabina Mariella (*pro hac vice*)
John Lyons (BBO No. 569500)
Katherine Zhang (*pro hac vice*)
Julia Bevan (*pro hac vice*)
Jayden Rush (*pro hac vice*)
55 Hudson Yards
New York, NY 10001
(t) +1 212 446 2300
(f) +1 212 446 2380
smariella@bsfllp.com
jlyons@bsfllp.com
kzhang@bsfllp.com
jbevan@bsfllp.com
jrush@bsfllp.com

RIGHTS BEHIND BARS
Sumayya Saleh (*pro hac vice*)
Derrick Luster (*pro hac vice*)
1800 M Street NW FNT 1 #33821
Washington, DC 20033
(t) +1 202 455 4399
sumayya@rightsbehindbars.org
derrick@rightsbehindbars.org

*Attorneys for Plaintiff*

15

## **L.R. 7.1(a)(2) AND L.R. 37.1(b) CERTIFICATION**

In accordance with L.R. 7.1(a)(2) and L.R. 37.1(b), the undersigned counsel certifies that they had multiple conferences to attempt to resolve these issues, including on April 15, 2026 and May 12, 2026, and most recently over correspondence in the week of July 27, 2026, leading up to the filing of this joint discovery statement.

Dated: August 1, 2026

| COUNSEL FOR PLAINTIFF | COUNSEL FOR DOC DEFENDANTS |
|---|---|
| */s/ Sabina Mariella* | */s/ Stephanie Caffrey* |
| Sabina Mariella | Stephanie Caffrey |

16