# EXHIBIT H

Page 1

Volume:  I

Pages:  1-190

Exhibits: 1-21

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

Case No. 1:23-cv-10063

---------------------------------

DERRICK WASHINGTON,

Plaintiff,

v.

MASSACHUSETTS DEPARTMENT OF

CORRECTIONS, ET AL.,

Defendants.

---------------------------------

VIDEOTAPED VIDEOCONFERENCE DEPOSITION of

STEVEN KENNEWAY

Friday, June 5, 2026, 9:02 a.m.-2:06 p.m.

WITNESS LOCATION:  Ocala, Florida

Court Reporter:  Paulette Cook, RPR/RMR



Page 2

A P P E A R A N C E S (via Zoom):


     BOIES SCHILLER FLEXNER, LLP

     By Katherine Zhang, Esq.

     Julia A. Bevan, Esq.

     Jayden Rush, Esq.

     55 Hudson Yards

     New York, New York 10001

     212-446-2300

     kzhang@bsfllp.com

     jbevan@bsfllp.com

     jrush@bsfllp.com

              and

     RIGHTS BEHIND BARS

     By Derrick Luster, Esq.

     416 Florida Ave NW #26152

     Washington, D.C. 20001

     202-455-4399

     derrick@rightsbehindbars.org

     Counsel for the Plaintiff




              [appearances continued]



Page 3

A P P E A R A N C E S (via Zoom):


      MASSACHUSETTS DEPARTMENT OF CORRECTION

      LEGAL DIVISION

      By Stephanie Caffrey, Esq.

      Brittni Wipper, Esq.

      Yasmine Bailey, Esq.

      70 Franklin Street, Suite 600

      Boston, Massachusetts 02110

      Stephanie.m.caffrey@doc.state.ma.us

      Counsel for the DOC Defendants

      and the Deponent


      ADLER COHEN HARVEY WAKEMAN

      GUEKGUEZIAN, LLP

      By Matthew D. Medoff, Esq.

      2 Oliver Street

      Boston, Massachusetts 02109

      617-423-6674

      mmedoff@adlercohen.com

      Counsel for Christian Capoccia


      ALSO PRESENT:   Vicki Pineda, Paralegal

                      Ron Corbin, Videographer



Page 4

                        I N D E X

Examination of:                                    Page

STEVEN KENNEWAY

 By Ms. Bevan                                        7

                        E X H I B I T S

No.                                                Page

Exhibit 1    Bates R1 P4575                          25

Exhibit 2    Bates R27 P14                           29

Exhibit 3    Bates R1 P2240                          39

Exhibit 4    Bates R1 5114                           49

Exhibit 5    Bates R1 P424                           53

Exhibit 6    Bates R1 P 567                          58

Exhibit 7    Bates R23 P80                           60

Exhibit 8    Bates R1 P2112                          84

Exhibit 9    Bates R5 P3                             95

Exhibit 10   Bates R23 P44                          103

Exhibit 11   Bates R9 712                           118

Exhibit 12   Bates R23 P27                          128

Exhibit 13   Bates R10 P19                          151

Exhibit 14   Bates R11 P78                          152



Page 5

Exhibit 15   Bates R9 P609              155

Exhibit 16   Bates R15 P8               157

Exhibit 17   Bates R10 P56              167

Exhibit 18   Bates R11 P46              172

Exhibit 19   Bates R10 P56              176

Exhibit 20   Bates WASH 0001054         178

Exhibit 21   Bates R23 P135             183



go to the north side?

MS. CAFFREY:  Objection.  You can answer.

A.  I don't know.

The only --

Q.  You stated --

A.  Yes?

Q.  No, go ahead.

A.  The only possibility would be that he had received another ticket for something, or that one was dismissed and it was rewritten.

Um, I mean I'd have to ask the disciplinary officer, Tony De Tomaso.

Q.  But even if he had gotten another ticket in that time --

A.  Hm hm?

Q.  -- that still would have been a pending ticket, correct?

MS. CAFFREY:  Objection.  You can answer.

A.  Yes.

Q.  And it would not -- it was not the practice to transfer someone to the north side that had a pending ticket, correct?



MAGNA
LEGAL SERVICES

Page 101

MS. CAFFREY:  Objection.

A.  I can't say that with certainty.  I'd have to read my initial proposal.

Q.  Okay.

A.  Yeah.

Q.  I am good to take a break here, if the videographer needs to, um, switch out the pack as well.

A.  Sounds good.

THE VIDEOGRAPHER:  The time is now 11:04.  Going off video record at the end of media one.

(A recess was taken.)

THE VIDEOGRAPHER:  Time is now 11:14.  We're back on video record at the beginning of media 2.

CONTINUED EXAMINATION BY MS. BEVAN:

Q.  Okay.

So you mentioned earlier your initial proposal for the reorganization plan. Was that a written document?

A.  It should have been, uh, typed and sent to DOC legal.

Q.  Okay.



Page 102

Did you receive feedback on that document?

MS. CAFFREY:  Objection to the extent it goes into attorney/client privilege.

A.  Yes.

Q.  To the extent you can answer, what feedback did you receive on that document?

MS. CAFFREY:  Objection.  I'm going to instruct my client not to answer.

MS. BEVAN:  Yes, understood.

MS. CAFFREY:  (Inaudible).

THE REPORTER:  I'm sorry, I couldn't hear you, Miss Caffrey.

MS. CAFFREY:  I'm going to instruct my client not to answer as it is attorney/client privilege.

THE WITNESS:  Okay.

BY MS. BEVAN:

Q.  And then, to clarify, based on your recollection of the plan, it was only category 1 or 2 offenses that warranted transfer to the north side?

A.  As I recall --

MS. CAFFREY:  Objection.



Page 148

A.  I -- I don't recall if there was a specific discussion about that.

Q.  Okay.

Okay, I think I'm good for now if we want to take a break.

A.  Cool, okay.

THE VIDEOGRAPHER:  The time is 12:13.  Going off video record.

(A lunch recess was taken.)

THE VIDEOGRAPHER:  Time estimate is now 1:02.  We're back on video record.

CONTINUED EXAMINATION BY MS. BEVAN:

Q.  Okay.  Circling back briefly to the reorganization plan.

After you sent the plan to DOC legal and presumably the plan was finalized, did you send the plan to anyone else?

A.  I don't recall.

Q.  Was the plan distributed to anyone else?

A.  I honestly don't recall.

Q.  So from my understanding of the process, after you sent it to DOC legal, it was out of your hands?


MAGNA
LEGAL SERVICES

Page 149

MS. CAFFREY: Objection. You can answer.

A. Um...

Q. The document itself.

A. Yes. With the document, it was electronic I thought that... yeah.

Q. How was -- I guess I'm just trying to understand if the plan was then implemented, how was the plan circulated to people to be implemented?

A. I honestly don't remember that, um -- that part of the process.

Q. Okay.

But it's your understanding that you didn't do that; DOC legal would have done that?

MS. CAFFREY: Objection.

A. Yeah -- no.

MS. CAFFREY: You can answer.

A. It's not that DOC legal would have been. I think DOC legal was just an approval or denial. Then once that was done, I believe I would have sent it to the commissioner or to my boss, the ADC Butch Ferreira -- well, James

