# EXHIBIT K

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Case No. 1:23-cv-10063

-----------------------------------x

DERRICK WASHINGTON,

       Plaintiff,

 v.

MASSACHUSETTS DEPARTMENT OF
CORRECTIONS, WELLPATH LIQUIDATING
TRUST, MATTHEW J. DUNDON AS TRUSTEE
OF THE WELLPATH LIQUIDATING TRUST,
SUPERINTENDENT STEVE KENNEWAY,
LIEUTENANT ROBERT DESCHENE,
LIEUTENANT ARTHUR FORGET,
SERGEANT RYAN HILLIS, SERGEANT
THOMAS TOCCI, OFFICER ANTHONY
CATALANO, OFFICER JOSHUA GAGNON,
NURSE CHRISTIAN CAPOCCIA, SERGEANT
ARTHUR BARNES, OFFICER JOSEPH
CUMMINGS, OFFICER NICHOLAS DUMONT,
OFFICER ZACHARY FONSECA, OFFICER
DANIEL HOLLENBACH, OFFICER ERIC
LAWSON, SERGEANT NATHAN OWEN,
OFFICER CORY SHEPHERD, OFFICER
JEFFREY PEPOLI, SERGEANT BRIAN
RAYNER, OFFICER ROBERT BASHAW,
OFFICER RAYMOND SIMULA, OFFICER
SERGIO CACIOPPO, OFFICER THOMAS
MEMBRINO, OFFICER DAVID GILMAN,
OFFICER RYAN KALRIESS, MEDICAL
DIRECTOR DOE, AND NURSE DOE,
       Defendants.
-----------------------------------x

VIDEOTAPED DEPOSITION OF ROBERT DESCHENE
June 9, 2026



Page 2

VIDEOTAPED DEPOSITION OF ROBERT DESCHENE

Conducted Remotely

70 Franklin Street

Boston, Massachusetts

June 9, 2026

9:17 a.m. to 3:43 p.m.

Reporter:  Laurie J. Berg, LCR, RPR, CRR



A P P E A R A N C E S

Derrick Luster, Esquire

RIGHTS BEHIND BARS

1800 M Street NW FNT 1 #33821

Washington, DC   20033

202.455.4399

derrick@rightsbehindbars.org

(Present via video conference.)

        -and-

Katherine Zhang, Esquire

Jayden Rush, Esquire

BOIES SCHILLER FLEXNER LLP

55 Hudson Yards

20th Floor

New York, New York   10001

212.446.2300

kzhang@bsfllp.com

jrush@bsfllp.com

(Present via video conference.)

COUNSEL FOR PLAINTIFF



Page 4

A P P E A R A N C E S

(continued)


Stephanie M. Caffrey, Esquire

Yasmine D. Bailey, Esquire

Brittni Wipper, Esquire

Sean P. Riley, Esquire

MASSACHUSETTS DEPARTMENT OF CORRECTION

70 Franklin Street

Suite 600

Boston, Massachusetts   02110

617.727.3300

stephanie.m.caffrey@doc.state.ma.us

yasmine.d.bailey@doc.state.ma.us

brittni.wipper@doc.state.ma.us

sean.p.riley@doc.state.ma.us

(Present via video conference.)

COUNSEL FOR MASSACHUSETTS DEPARTMENT OF

CORRECTION DEFENDANTS


Also Present:

Peter Berg, Legal Video Specialist

(Present via video conference.)



Page 5

                        I N D E X


WITNESS:  ROBERT DESCHENE

           (Present via video conference.)


EXAMINATION                                      PAGE

(BY ATTORNEY LUSTER)                               10


                     E X H I B I T S

NO.                                              PAGE

Exhibit 1   Black, Latino, Asian Cultural Coalition

            Materials (ten pages)                  84

Exhibit 2   Shift Briefing, Thursday,

            January 23, 2020, Confidential -

            Subject to Protective Order

            (three pages)                          89

Exhibit 3   Use of Force Package, 01/23/2020,

            Confidential - Subject to Protective

            Order (nine pages)                     92

Exhibit 4   Disciplinary Report, 1/23/2020,

            Confidential - Subject to Protective

            Order (one page)                      118


MAGNA
LEGAL SERVICES

Page 6

E X H I B I T S

(continued)

NO.                                                      PAGE

Exhibit 5    Inmate Grievance Appeal Form, 1/30/2020,

             Confidential - Subject to Protective

             Order (12 pages)                            127

Exhibit 6    Inmate Grievance Form, 2/3/2020,

             (five pages)                                143

Exhibit 7    Disciplinary Report, 2/10/2020,

             (one page)                                  145

Exhibit 8    Inmate Grievance Form, 2/10/2020,

             Confidential - Subject to Protective

             Order (two pages)                           149

Exhibit 9    Inmate Grievance Appeal Form, 2/10/2020,

             (ten pages)                                 153

Exhibit 10   Disciplinary Report, 2/1/2020,

             (one page)                                  155

Exhibit 11   Inmate Grievance Form, 2/14/2020,

             Confidential - Subject to Protective

             Order (one page)                            167

Exhibit 12   Inmate Grievance Appeal Form, 2/14/2020,

             (one page)                                  171



Page 7

E X H I B I T S

(continued)

NO.                                                        PAGE

(Original exhibits marked electronically

and retained with the transcript.)



Page 21

Q. Okay. Did you have to have any specific trainings in order to serve as administrative captain at SBCC?

A. In regards to what particular part of that job? That's kind of a vague question.

Q. The question is aimed at gauging whether there are any trainings that are required in order to acquire the position, so any trainings that, in their absence, would disqualify you from serving as administrative captain?

A. Nothing specific to that particular job.

Q. Okay.

A. But I have countless other trainings, so it's -- that are relevant to my position, but nothing's required, if that's -- if I -- if I'm understanding this question correctly.

Q. Okay. So let's go back a little bit to the time period I described earlier, which is between November of 2019 and -- excuse me -- August of 2020, at that time, you said that you were serving as lieutenant, correct?

A. Correct.

Q. What -- what ro -- responsibilities did you have as lieutenant?


MAGNA
LEGAL SERVICES

Page 22

A. At that period of time, I didn't have an assigned post, so every day I worked somewhere different.

Q. And when you were working in any given post, what were your primary responsibilities?

A. My primary responsibilities varied depending upon the post.

Q. Okay. When you were serving as lieutenant between November of 2019 and August of 2020, did you aid with cell extractions?

A. Yes.

Q. Okay. And did you aid with searches as well?

A. Yes.

Q. How about using force?

A. As needed, yes.

Q. Okay. And did you have to seek approval from any person in order to use force?

A. Planned or spontaneous?

Q. Well, I'm assuming spontaneous uses of force would be a little less coordinated, so let's go with planned uses --

A. Yes.

Q. -- of force.

Did you have to seek approval?



Page 52

the consequences be for you?

MS. CAFFREY:  Objection.

You can answer.

A.   There would be consequences.  Exactly what, that's determined by upper management and people outside of my ranks.

Q.   Have you -- have you ever been reprimanded in any fashion for inappropriate use of OC spray?

A.   In 18 years and nine months, I've never been reprimanded for anything.  I have a clean disciplinary record in every fashion to include use of force.

Q.   Okay.  Do you know anyone that has been reprimanded for an inappropriate use of OC spray?

MS. CAFFREY:  Objection.

You can answer.

A.   I know of situations broadly.

But what's the question?  Does that answer it?

Q.   No.

The answer -- or the question was, do you know any officers who have been reprimanded for an inappropriate use of OC spray?

A.   No, I know that there --

MS. CAFFREY:  Objection.


MAGNA
LEGAL SERVICES

You can answer.

A.  Alleged, yes.

Q.  And how many times you have participated in investigatory hearings alleging that you engaged in misconduct?

MS. CAFFREY:  Objection.

You can answer.

A.  I'd have to guess and I'm not going to.

Q.  Would you have to guess because you can't recall the number of times you've participated in investigatory hearings alleging that you engaged in misconduct?

MS. CAFFREY:  Objection.

You can answer.

A.  What's the question?

Q.  You testified that you would have to guess and that you're not going to guess.

My question is, would you have to guess because you can't recall the number of times that you've participated in investigatory hearings relating to allegations of your misconduct?

MS. CAFFREY:  Objection.

You can answer.

A.  I think that's the only explanation I can



Page 140

give.  I couldn't tell you what I had for breakfast this morning, let alone -- it's -- there's -- it's a highly litigious environment.  It's -- I can't remember particulars of what I was investigated -- investigated for and when.  It's all contained within my personnel file.

MR. LUSTER:  Okay.  After this deposition, we'll follow up with counsel if we need that information, but for now we'll move forward.

BY MR. LUSTER:

Q.  And you said you couldn't recall what categories of your conduct would have been the subject of those investigatory hearings; is that accurate?

MS. CAFFREY:  Objection.

You can answer.

A.  Are you asking me for one example?

Q.  Do you have an example to provide?

A.  There's one that stands out to me.  When I was getting promoted to lieutenant, I was investigated for an inmate's allegation during a pat search.

Would you like me to continue?

Q.  Yes.

A.  Okay.  He said I grabbed his penis and credit-card swiped his anus.  That one stands out to



me.

Q. What was the outcome of that investigatory hearing?

MS. CAFFREY: Objection.

A. I was questioned and it was cleared because it didn't happen.

Q. We can move forward on that.

Mr. Washington has filed grievances about your alleged conduct, too, right?

MS. CAFFREY: Objection.

You can answer.

A. Beyond what you just showed me, that's the first knowledge I had of a grievance being filed against me because then, as I said, we're not informed on when an inmate files a grievance.

Q. Okay.

A. (Witness coughs.) Excuse me.

Q. Okay. Let's -- let's move forward.

At any point between the period of November 2019 to August of 2020, were you made aware that Mr. Washington was in communication with elected officials?

A. There was -- mmm, I'm trying to remember. I thought I wrote a report on something in Michael 2 on

