**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DERRICK WASHINGTON,<br>*Plaintiff*,<br>v.<br>MASSACHUSETTS DEPARTMENT OF CORRECTION et al.<br>*Defendants*. | Case No. 1:23-cv-10063-MRG |

**THIRD JOINT DISCOVERY DISPUTE STATEMENT**

Plaintiff Derrick Washington ("Plaintiff" or "Mr. Washington") and Defendants Massachusetts Department of Correction ("MDOC"), Steven Kenneway, Robert Deschene, Arthur Forget, Ryan Hillis, Thomas Tocci, Anthony Catalano, Joshua Gagnon, Arthur Barnes, Sergio Cacioppo, Nicholas Dumont, Zachary Fonseca, David Gilman, Daniel Hollenbach, Ryan Kalriess, Eric Lawson, Thomas Membrino, Nathan Owen, Jeffrey Pepoli, Brian Rayner, Robert Bashaw, Cory Shepherd, Raymond Simula, and Joseph Cummings (collectively, "DOC Defendants") submit this Third Joint Discovery Dispute Statement pursuant to this Court's Order dated February 11, 2026 (ECF No. 139).

The parties submit this Third Joint Discovery Statement regarding several critical disputes that remain unresolved after their meet-and-confer efforts on August 27, 2026, and various email communications. Specifically, this statement addresses the parties' conflicting positions regarding: (i) DOC's responses to Mr. Washington's Interrogatories; (ii) DOC Defendants' Responses to Mr. Washington's Requests for Admission; (iii) DOC's Redactions Log; (iv) DOC's production of key strip cell footage that is obstructed by a gray box; and (v) DOC's methodologies for locating responsive communications in the personal devices of DOC Defendants.

The parties reserve all rights to raise additional discovery disputes as the litigation progresses, including those related to previously served requests for production.

## I. DOC Defendants' Responses to Mr. Washington's Interrogatories.

### 1. Overarching Deficiencies

#### A. Plaintiff's Position

On August 14, 2026, DOC served its Responses to Mr. Washington's Interrogatories ("ROGs"). (Declaration of Julia A. Bevan ("Bevan Decl."), Ex. A (Mr. Washington's ROGs); Ex. B (DOC's Responses and Objections)). The Responses are rife with deficiencies.

First, DOC's Responses are clearly copy-and-pasted, boilerplate objections. Under Rule 33, all grounds for "[an objection] to an interrogatory must be stated with specificity." Fed. R. Civ. P. 33(b)(4); *see Cook v. Lynn and William, Inc.*, 344 F.R.D. 149, 155 (D. Mass. 2023)

("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all"). DOC begins each objection with the identical statement that the interrogatory is "overly broad, unduly burdensome, not limited in time and scope, and unlikely to lead to admissible evidence," without once explaining why. (*See* Bevan Decl. Ex. B at 1–12).

Further, DOC's "unlikely to lead to admissible evidence" objection relies on a standard excised from Rule 26 over a decade ago. *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment. DOC did not raise a relevancy objection under the current standard and therefore waived it. *See Katz v. Liberty Power Corp., LLC*, 2020 WL 3492469, at *2 (D. Mass. June 26, 2020) ("[A]ny objection that the Defendants did not raise in their initial response is deemed waived").

Moreover, DOC's objections are generally unclear and incomplete. For example, DOC's Response to ROG No. 19 directs Mr. Washington to an unspecified "Response to Plaintiff's Request for Production of Documents," which provides no insight into the interrogatory. (*See* ECF No. 177-2 at 5–6). Worse, DOC entirely failed to respond to ROG 23. (*Compare* Bevan Decl. Ex. A at 15 *with* Bevan Decl. Ex. B at 11).

Mr. Washington requested that DOC withdraw its boilerplate objections and respond in full or precisely articulate the basis for each objection. *See Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc.*, 319 F.R.D. 422, 427 (D.P.R. 2016) ("[t]he objecting party must show specifically how each interrogatory... is not relevant or how each question is overly broad, burdensome or oppressive"). DOC refused.

Therefore, Mr. Washington requests that the Court find DOC waived its objections by failing to articulate a basis for each, and order DOC to respond in full.

**2. Contention Interrogatories**

*Interrogatories 3, 10, and 11*

Some of DOC's specific objections also lack merit. For instance, DOC refused to answer Mr. Washington's contention interrogatories, claiming that asking for the factual basis of its defenses and injury denials solicits "mental impressions" and "legal analysis." (*See* Bevan Decl. Ex. B at 3, 6). DOC's objections are plainly improper.

Rule 33 explicitly permits contention interrogatories that ask for "an opinion or contention that relates to fact or the application of law to fact." Fed. R. Civ. P. 33(a)(2); *see In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 2015 WL 13715291, at *5 (D. Mass. Sept. 8, 2015) ("[c]ontention interrogatories are a perfectly permissible form of discovery and a response is required.") (overruling work-product objections). Mr. Washington's interrogatories seek only the principal or material facts supporting DOC's affirmative defenses and any contention that Mr. Washington was not injured. This information is discoverable and must be provided.

### 3. Misconduct and Prior Disciplinary Records

*Interrogatories 8, 9, and 21*

DOC also failed to substantively respond to ROGs 8, 9, and 21, and claims that prior allegations of unnecessary force, falsifying incident reports, or racial bias concerning these specific defendants are "beyond the scope of the Amended Complaint." (*See, e.g.*, Bevan Decl. Ex. B at 5). These assertions are unfounded and do not justify a wholesale withholding of information.

In civil rights litigation involving correctional facilities, prior disciplinary and Internal Affairs records involving excessive force, truthfulness, and racial animus are relevant to notice, intent, habit, absence of mistake, and pattern and practice. *See, e.g.*, *Voutour v. Vitale*, 761 F.2d 812, 820 (1st Cir. 1985) ("evidence to show a pattern of violent police behavior" evaluated to determine whether supervisors encouraged or acquiesced to such behavior); *Stone v. Caswell*, 963 F. Supp. 2d 32, 36 (D. Mass. 2013); Fed. R. Evid. 404(b)(2), 406. This information must be provided.

### 4. Metadata, Search Methods, and Third-Party Investigators

*Interrogatories 4 and 5*

DOC failed to respond to ROGs 4 and 5, claiming that describing its search efforts or naming third-party investigators violates the work-product doctrine. (*See* Bevan Decl. Ex. B at 3–4). This claim is unfounded.

The administrative facts of a document search (what repositories, servers, and date ranges were searched) are unprivileged "meta-discovery," as are the identities of persons with knowledge. *See, e.g.*, *Autoridad de Carreteras*, 319 F.R.D. at 430 (overruling privilege objections as "frivolous" where interrogatories sought identities of persons with knowledge and the basis for defenses).

Information relating to internal investigations is also "within the bounds of permissible discovery." *Hoyt v. Connare*, 202 F.R.D. 71, 77 (D.N.H. 1996) (use of force investigation records discoverable in excessive force case). And a party "may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." *Upjohn Co. v. U.S.*, 449 U.S. 383, 395-96 (1981) (internal citation omitted). DOC must furnish all facts underlying internal investigations and identify all reports from internal investigations conducted for any purpose other than obtaining legal advice or preparing for litigation.

Mr. Washington clarified that ROG 4 does not seek counsel's mental impressions or strategic advice, but DOC still refuses to respond. Mr. Washington asks that the Court order DOC to respond substantively to these interrogatories.

**5. Directions to Derive Responses from Outside Materials**

*Interrogatories 1, 10, 11, 14, 16, 19, 20, and 22*

DOC declined to answer several other interrogatories, instead directing Mr. Washington to find answers in other materials. DOC's responses violate the Federal Rules.

Rule 33 requires that each interrogatory "be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). A party may answer by referring to business records only "if the burden of deriving or ascertaining the answer will be substantially the same for either party," and only by "specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d). DOC did neither.

In response to ROG 16, a specific question about Defendant Tocci's grievance disclosures, DOC simply directs Mr. Washington to "refer to the deposition conducted of Defendant Tocci," without identifying any portion of that testimony. (*See* Bevan Decl. Ex. B at 8). In response to ROGs 19, 20, and 22, which seek identification of disciplinary reports, documents, and communications relating to Mr. Washington, DOC points to its unspecified, and themselves deficient, "Response to Plaintiff's Request for Production of Documents." (*See* Bevan Decl. Ex. B at 10). DOC's response to RFP No. 5, for instance, is merely a list of disciplinary report numbers with no time frame or other information. (*See* ECF No. 177-2 at 5–6).

Similarly, in response to ROGs 10 and 11, which ask whether DOC disputes that Mr. Washington suffered injuries as a result of the incidents, and to provide facts to support those disputes, DOC simply points to its Answer. And in response to ROG 14, which asks DOC to describe each contraindication screening of Mr. Washington, DOC states only that the information "would be contained in Plaintiff's medical file." (*See* Bevan Decl. Ex. B. at 7).

DOC cannot evade its duty to provide binding interrogatory responses under oath by pointing to unspecified sections of other documents. "[A]nswering an interrogatory by referring to pleadings or other discovery is insufficient." *Vazquez-Fernandez v. Cambridge Coll., Inc.*, 269 F.R.D. 150, 156 (D.P.R. 2010); *see also Stein v. Collins*, 2025 WL 1248916, at *7 (D. Mass. Apr. 30, 2025) (opining that a party relying on Rule 33(d) must show a burden justifying reliance on documents and specify "the actual documents in his production that he deems sufficient to provide an answer"); *see Mulero-Abreu v. Puerto Rico Police Dep't*, 675 F.3d 88, 93 (1st Cir. 2012) (opining that answering interrogatories by referring to a party's deposition was "manifestly inadequate" and "falls short of the obligations imposed by Rule 33").

Mr. Washington offered to limit ROGs 20 and 22 to documents not already produced, but DOC still refused to supplement. Mr. Washington asks that the Court order DOC to amend or supplement these responses.

**6. DOC's Other Evasive ROG Responses**

*Interrogatories 12, 13, and 15*

**A. Plaintiff's Position**

DOC's responses to ROGs 12, 13, and 15 are also evasive.

In response to ROG 12, which asks DOC to identify all personnel who had a role in or attended a BLACC meeting, DOC identifies only Steven Kenneway and speculates that "[s]ecurity staff would have been present." (*See* Bevan Decl. Ex. B at 6–7). This fails to identify anyone with specificity.

In response to ROG 13, which asks DOC to "describe in detail any and All procedures in place at SBCC... for screening for contraindications prior to using force on inmates," DOC quotes a CMR provision about a Medical Director form for chemical agents. (*See id.*) This response is incomplete: the inquiry is not limited to chemical agents, and DOC does not explain *how* file review occurs, identify any SOPs, General Orders, or local SBCC policies, or address screening during spontaneous uses of force "when time and circumstances [do not] permit" a file review.

In response to ROG 15, which asks for the criteria and processes used to assign Mr. Washington to the "North Side," DOC offers one sentence stating that classification staff decided housing "based on the internal risk assessment," with no criteria or procedures specific to Mr. Washington. (*Id.* at 8).

Each of these responses is evasive and incomplete, and thus non-compliant: "[A]n evasive or incomplete answer to an interrogatory is to be treated as a failure to answer." *Rickles, Inc. v. Frances Denney Corp.*, 508 F. Supp. 4, 7 (D. Mass. 1980). Mr. Washington requests that the Court order Defendants to supplement these responses.

**B. DOC's Position**

DOC Defendants strongly reassert their objections raised in their Answers to Interrogatories, and contend that the objections are appropriate and responsive. Moreover, Plaintiff's Interrogatories were incredibly overbroad, vague, ambiguous and sought information that seemed to be more directed at Counsel for DOC Defendants (*i.e.* Interrogatories Nos. 4 and 5) as opposed to actual named Defendants. This is also reinforced by DOC Defendants' objections to interrogatories that sought trial strategy and/or mental impressions of counsel or sought attorney-work product. Additionally, given that DOC Defendants have produced over 25,000 pages of documents in this matter, much of the information sought in the Interrogatories is contained in the documents produced and as such, Plaintiff was referred to those documents rather than have DOC Defendants restate this information in an interrogatory response. That is incredibly burdensome on DOC Defendants to go through thousands of documents and repeat or summarize information that has already been provided, especially where the documents speak for themselves. Specifically, with regards to Interrogatories Nos. 8, 9, and 21, DOC Defendants have turned over disciplinary histories for each and every individual Defendant in this matter. There is no need for DOC Defendants to reiterate each disciplinary history of each Defendant in an interrogatory response when Plaintiff is already in possession of that information. Further, Plaintiff has conducted numerous depositions in this matter, including the deposition of Defendant Tocci in

which he was asked questions, at length, regarding the grievance process. As such, DOC Defendants referred Plaintiff to Defendant Tocci's deposition testimony rather than parrot large portions of the testimony in an Interrogatory answer, as that would be unduly burdensome. DOC Defendants answered Plaintiff's incredibly overbroad, vague, and ambiguous Interrogatories and should not be required to provide additional responses.

### 7. Explaining Unqualified Admissions

*Interrogatory 23*

#### A. Plaintiff's Position

ROG 23 asks Defendants Gilman, Hollenbach, Cummings, Gagnon, Pepoli, Dumont, Simula, Cacioppo, Membrino, and Fonseca to explain each response to Mr. Washington's Requests for Admission that was not an unqualified admission. These Defendants neither objected, nor responded to this ROG at all. *Katz*, 2020 WL 3492469, at *2 ("[A]ny objection that the Defendants did not raise in their initial response is deemed waived").

Mr. Washington, therefore, asks that this Court deem all objections and privileges waived in response to ROG 23, and order these Defendants to respond to this ROG in full.

#### B. DOC's Position

DOC Defendants assert that Plaintiff's Interrogatory No. 23, which seeks to have individual DOC Defendants explain why they denied certain Requests for Admissions, is wildly inappropriate and beyond the rules of discovery. Requests for Admissions were served on several individual DOC Defendants, in which those Defendants provided truthful responses that included denials of certain admissions. It is beyond Fed. R. Civ. P. 33, 34, and 37 to now have certain individual Defendants respond to an interrogatory that requires them to explain another discovery answer. As such, DOC Defendants maintain that this interrogatory was inappropriate and did not require a response from Defendants.

## II. DOC Defendants' Responses to Requests for Admission

#### A. Plaintiff's Position

Some of the individual DOC Defendants' responses to Mr. Washington's Requests for Admission ("RFAs") are directly contradicted by DOC's own productions. (*See* Bevan Decl. Ex. C (Defendant Gagnon's, Cacioppo's, Simula's, and Membrino's Responses to Plaintiff's RFAs)). For example, in response to RFA 6, asking if Defendant Gagnon had received training on the use of chemical agents, he responded "[a]dmitted as I did receive use of force training, denied as to on the use of Chemical Agents." (*See id.* at 3). However, the training records, which DOC produced, indicate that Defendant Gagnon received training on the use of Chemical Agents on the following dates: July 27, 2007; May 7, 2012; and February 10, 2021. (*See* Bevan Decl. Ex. D at 3, 9, 14 (R7 P95–111)). Accordingly, Defendant Gagnon's response is false.

A provably false response to a request for admission is deficient and, if not corrected, is subject to "the imposition of sanctions under either or both Rules 11 and 37(c), Fed. R. Civ. P." *A*

*& V Fishing, Inc. v. Home Ins. Co.*, 145 F.R.D. 285, 288 (D. Mass. 1993). Mr. Washington asked Defendants to remedy these false responses, but they refused with respect to each. (*See* Bevan Decl. Ex. E (Email Correspondence Regarding DOC's Responses to Plaintiff's RFAs)).

Additionally, some Defendants failed to substantively respond to Mr. Washington's RFAs. For example, when asked in RFA 8 to "admit that, on March 5, 2020, Plaintiff told DOC Officers he was asthmatic before Chemical Agent was deployed against him in the Strip Cage," Defendant Cacioppo responded: "Following reasonable inquiry, Defendant can neither admit nor deny this request as he lacks the knowledge." (*See* Bevan Decl. Ex. C at 13). This same deficiency appears in Defendant Simula's response to RFA 9 (Bevan Decl., Ex. C at 22) and Defendant Membrino's response to RFA 9 (Bevan Decl., Ex. C at 32).

Rule 36(a)(4) permits an answering party to "assert lack of knowledge or information *only* if the party states that it has made a reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed. R. Civ. P. 36(a)(4). These responses fail that standard because each Defendant had the knowledge to admit or deny.

Each officer admits being present during the incident, and in DOC's own video of the March 5, 2020 use of force, Mr. Washington states "I'm an asthmatic" before chemical agent was deployed. That video was readily obtainable by each Defendant. (*See* Bevan Decl. ¶ 17)

Mr. Washington asked these Defendants to admit or deny the request, but each refused without explaining why a reasonable inquiry was insufficient. *See A & V Fishing*, 145 F.R.D. at 288 (party may not decline to respond "if, by 'reasonable inquiry', the party could have obtained the information needed to admit or deny the request").

Mr. Washington requests that the court order each defendant to affirmatively admit or deny this request. Mr. Washington notes that their failure to do so may be sanctionable. *See* Fed. R. Civ. P. 37(c)(2).

**B. DOC's Position**

DOC Defendants strongly disagree with Plaintiff's assertion that certain Defendants provided false response to their request for admissions. At the outset, Plaintiff's Requests for Admissions to various individual DOC Defendants across the board were overbroad, vague, and ambiguous. Nonetheless, with regards to Defendant Gagnon, the specific request for admission was "Admit that, as a DOC Officer, You received Use of Force training on the use of Chemical Agents." Defendant Gagnon responded by admitting that he had use of force training, but denied that he had any training on the use of chemical agents. Plaintiff then points to Defendant Gagnon's training records to imply that he provided a false response. This is simply not the case and stems from Plaintiff's misunderstanding of Defendant Gagnon's training records. Defendant Gagnon has had training generally in the overview of chemical agents and he has been exposed to chemical agents. However, he has had no training in the actual use of chemical agents and is not authorized to use chemical agents. As such, his response to Plaintiff's request for admission was truthful.

As to the other Requests for Admissions, DOC Defendants assert that the individual responses are appropriate and responsive to the request. These Defendants were asked to admit that they heard Plaintiff state he was an asthmatic during a use of force that occurred over six (6) years ago. These Defendants answered truthfully based on their current memory of the incident.

There is no requirement that these individuals go back and watch and/or listen to the video of the use of force before answering the admissions. Additionally, this video is in Plaintiff's possession as it was produced in discovery. Moreover, even if that statement is heard on the video, that does not change the individual Defendant's memory or recollection of the events. As such, these responses are accurate and truthful.

## III. DOC's Redactions Log

### 1. DOC's Privilege Claims Are Not Sufficiently Specific.

#### A. Plaintiff's Position

On August 21, 2026, the Court ordered DOC to "provide a privilege log compliant with Federal Rule 26(b)(5) and Local Rule 34.1(e) by September 8, 2026." (ECF No. 211). The Court further explained that "DOC's general or boilerplate privilege objection did not satisfy the rules." *Id.*

On September 8, 2026, in purported compliance with that order, DOC provided two privilege logs: one addressing withheld documents (Bevan Decl. Ex. F (the "Withholdings Log")) and one addressing redactions contained in documents already produced (Bevan Decl. Ex. G **(**the "Redactions Log"). The Redactions Log enumerates many fundamentally flawed privilege claims purporting to justify DOC's redactions of critical and discoverable information from the documents previously produced in this action.

Under Rule 26, a party withholding information behind a claim of privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5). DOC's Redactions Log fails to meet this standard.

Throughout the Redactions log, DOC makes minimal effort to describe the information redacted. For example, the log cites "HIPAA" for numerous redactions it describes as "Confidential," without enough detail for Mr. Washington to evaluate the claim (*see, e.g.*, Bevan Decl. Ex. G at 16, discussing R27 P703–728, R27 P731–733).

Similarly, DOC justifies its "attorney-client" privilege claims by merely describing each corresponding redaction as containing "Atty/Client Communication." (*See*, *e.g.*, Bevan Decl. Ex. G at 5-10, 16). These uniform descriptions do not supply enough information for Mr. Washington to assess whether these communications are properly redacted. However, the limited information provided by DOC casts doubt as to the validity of these privilege claims. For example, it is unclear how the contents of DOC's Senior Staff briefings constitute "communications that are confidential and are made for the purpose of seeking or receiving legal advice." *In re Keeper of Recs. (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003); *see, e.g.*, Bevan Decl. Ex. G at 7, discussing R23 P56, P61, P65, P68, P72, P76, P80, P83, P86, and P89.

Other entries in the "Information Redacted" column include descriptions like: "Personnel"; "Personal Information"; "Medical"; "STG"; and "Internal email to staff." (*See, e.g.*, Bevan Decl. Ex. G at 1, 5, 10–14). These descriptions are far too vague for any meaningful evaluation of DOC's privilege claims. *See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 386 F. Supp. 3d 175, 187

(D.P.R.), *objections overruled*, 392 F. Supp. 3d 244 (D.P.R. 2019) (holding that vague "description[s] in the privilege log" did not adequately demonstrate the privilege necessitating redaction).

By contrast, DOC's Withholdings Log identifies the document type, recipients, and subject matter of each entry, which at least permits Mr. Washington to assess the claims. (*See* Bevan Decl. Ex. F at 1). The Redactions Log does not.

On September 21, 2026, counsel for Mr. Washington served a conferral letter addressing the deficiencies in Defendants' Redaction Log. (*See* Bevan Decl., Ex. H at 1) (Email Correspondence Regarding DOC's Redactions Log). On September 23, 2026, DOC responded via email that "[d]efendants intend to produce some documents in an unredacted form" and that they would "also remove any HIPAA redactions as it pertains to Mr. Washington in documents already produced." (*Id.*) However, just two days later, DOC served a conferral letter stating that: (1) "there is no requirement that DOC Defendants need to go into extreme specificity regarding the redactions"; (2) "DOC Defendants stand by their redactions for most of the documents identified on the redaction log"; and (3) "DOC Defendants will not produce un-redacted copies of any documents that have been redacted for PII or for STG, safety and/or security concerns." (*See* Bevan Decl., Ex. I (September 25 Letter)). DOC Defendants have provided no support for their narrow interpretation of their duty to adequately justify their redactions. The Federal Rules make no distinction between a party's obligation to explain document withholdings and redactions.

Further, DOC Defendants' "PII," "STG," and "safety and/or security" objections are adequately addressed by the Protective Order, which includes an "Attorney Eyes Only" designation that DOC may use, to the extent necessary. (*See* ECF No. 130 at 6). Mr. Washington is no longer incarcerated at SBCC, so any remaining risks to the "safety and/or security" of third parties incarcerated or working at SBCC are minimal and speculative, at best.

Mr. Washington notes that DOC waived its privilege objections by failing to timely raise them. (*See* ECF No. 201 at 7 (Mr. Washington making this point in the Second Joint Discovery Dispute Statement and citing authority)). Because DOC failed to provide a proper log after the Court ordered it to and after Mr. Washington attempted to resolve the issue, Mr. Washington requests that the Court find waiver and order DOC to submit unredacted versions of all documents, subject to the Protective Order as needed.

### B. DOC's Position

DOC Defendants disagree with Plaintiff's assertion that DOC Defendants waived their privilege objections because of a timely failure to raise them. DOC Defendants have continually raised their objections from the very first discovery production until and including the present. DOC Defendants also complied with this Court's Order and provided Plaintiff with both a privilege log of withheld documents <u>and</u> a redaction log to identify the reactions made throughout documents. Their objections are not deemed "waived" just because Plaintiff disagrees with them.

DOC Defendants also assert that the redaction log produced in this matter complies with the Federal Rules of Civil Procedure regarding discovery. DOC Defendants do not agree that the redaction log needs to meet the same requirements as a privilege log. Plaintiff is in possession of the documents that are identified on the redaction log. Those documents have been produced by DOC Defendants with minimal contents redacted for the specific reasons listed on the redaction

log. There is no requirement that DOC Defendants go into extreme specificity regarding the redactions, especially since Plaintiff is in possession of the documents. DOC Defendants add that their privilege log entries are consistent with those utilized by the Attorney General's Office in litigation.

DOC Defendants stand by their redactions for the documents identified on the redaction log. The redaction for HIPAA and/or medical information is either of (1) other incarcerated individuals or (2) other DOC staff members and/or third parties. This information cannot be disclosed pursuant to both HIPAA and Massachusetts law absent these individuals providing consent and/or a release, which does not exist in this case. As such, rather than withhold the entire document, DOC Defendants simply redacted out portions of documents that pertain to health and medical information of anyone other than Plaintiff, as they are required to do by both federal and state law, since that information is sensitive information that is meant to be protected from disclosure absent authorization.

DOC Defendants also stand by their redactions of attorney /client communication. Again, as noted above, DOC Defendants could have withheld the entire document based on that privilege. However, DOC Defendants simply redacted the small portion of a handful of documents that include actual legal advice given by DOC Legal Counsel. This information is not discoverable and was appropriately redacted.

Additionally, DOC Defendants redacted intelligence information, which is prohibited from disclosure to the public pursuant to Massachusetts statute G.L. c. 4, § 7(26)(b), (f) and G.L. c. 6, §§ 167, as well as Department regulation at 103 CMR 157.07. These redactions include other confidential intelligence information, which if disclosed, would jeopardize institutional and operational safety and security, as well as public safety. DOC Defendants need not go into detail as to the myriad ways that the safe and orderly running of a correctional facility would be impacted should this information be disclosed. Moreover, this information is again irrelevant to Plaintiff's claims and allegations in this case and is not appropriately covered by the protective order.

### 2. DOC Redacts the Names of Persons with Knowledge.

#### A. Plaintiff's Position

Under Federal Rule 26, a party has a mandatory duty to provide, *inter alia*, the names of individuals likely to have discoverable information. Fed. R. Civ. P. 26(a)(1)(A)(i). In fact, Rule 26 explicitly notes that permissible discovery includes the identities and locations of persons having knowledge of any discoverable matter. *Id.* at 26(b)(1).

DOC's Redactions Log makes clear that DOC has redacted the names of numerous individuals with knowledge of facts that are directly relevant to Mr. Washington's claims. For example, DOC redacts the names of individuals Mr. Washington messaged about his retaliatory treatment and injuries, (*see, e.g.*, Bevan Decl. Ex. J at 2 (R27 P237)), individuals who can corroborate Mr. Washington's engagement in conduct protected by the First Amendment (*see*, *e.g.*, *id.* at 3 (R27 P359)), and individuals who directly witnessed or possess knowledge of the facts surrounding the alleged use of force incidents (*see, e.g.*, *id.* at 1 (R27 P231)).

The identities of individuals with knowledge are categorically discoverable, and courts in this district disfavor unilateral redaction of witness identities, generally requiring disclosure

subject to a protective order. *See, e.g.*, *Tyler v. Suffolk County*, 256 F.R.D. 34, 38 (D. Mass. 2009) (witness identities not protected by privilege or work product).

DOC's "STG" claims and safety concerns also do not justify withholding the identities of individuals with knowledge relevant to Mr. Washington's claims. *Id.* (requiring disclosure subject to the operative protective order, even where the court believed the prisoner-plaintiffs' fear of retaliation was valid). DOC's privacy, confidentiality, and security concerns are appropriately addressed by the Protective Order entered into by the parties. (*See* ECF No. 130).

Therefore, Mr. Washington requests that the Court order DOC to remove these redactions.

### B. DOC's Position

Contrary to Plaintiff's assertions, DOC Defendants are not improperly redacting names of potential witnesses. DOC Defendants stand by their redaction of personally identifying information ("PII") of third-party individuals as required by Massachusetts law. Massachusetts state law provides that personnel/personal information is not subject to public disclosure. G.L. c. 4, § 7(26)(a),(c); G.L. c. 66, § 10; G.L. c. 66A, § 2(c),(k); and G.L. c. 214, § 1B. PII of third parties is protected from disclosure, absent consent of the data subject, as "personal data" under the Fair Information Practices Act, G.L. c. 66A, and can only be provided through the process provided in that Act. G.L. c. 66A, §2. As such, DOC Defendants redacted this information as required by law.

Additionally, DOC Defendants redacted Security Threat Group ("STG") status of other incarcerated individuals. This information is completely irrelevant to the claims and allegations in this case. Plaintiff has the names of the incarcerated individuals, as that information was not redacted and is covered by the protective order. There is no need for Plaintiff to also receive the STG status of those individuals as it is completely irrelevant and could cause safety and security concerns should that information be disclosed. As such, this information was appropriately redacted and does not prevent Plaintiff from obtaining the names of potential witnesses.

## IV. DOC's Production of Obstructed Strip Cell Footage from the March 5th Use of Force Incident.

*Responsive to Request for Production Nos. 11, 12, 13, and 14.*

### A. Plaintiff's Position

On August 21, 2026, after considering the parties' Second Joint Discovery Statement, (*see* ECF No. 201), this Court ordered that DOC "ensure that the March 5, 2020 strip-cell footage is accessible and viewable." (ECF No. 211 at 2). Accordingly, on August 28, 2026, DOC produced March 5, 2020 strip-cell footage in a manner that permitted Plaintiff's counsel to access the video.

While Plaintiff's counsel can now play the video, its contents are largely obstructed by a gray box overlay covering nearly 50 percent of the screen throughout the recording. (*See* Bevan Decl. Ex. K (screenshot of video)). Most critically, the planned use of force incident captured by this video occurs in the exact corner of the cell obstructed by this gray box. The gray box overlay prevents meaningful review of the conduct inside the cell during this use of force incident.

Mr. Washington's excessive force claim largely turns on what the officers did inside the cell. DOC's other videos of the March 5 incident were filmed from outside the cell doors, over the officers' shoulders. This is the sole video of the cell's interior, and it is severely obstructed. (*See id.*)

Counsel for DOC represented via email that "the cameras apply the gray box to afford as much privacy as possible, therefore there is no version of the video without the gray box." *See* Bevan Decl., Ex. L at 2 (Email Correspondence Regarding DOC's March 5, 2020 Strip Cell Footage). On September 4, 2026, Mr. Washington's counsel requested from counsel for DOC by September 10, 2026, "a written certification from a records custodian with personal knowledge addressing:

1. Whether there exists a version of the March 5, 2020 video footage that does not contain the superimposed grey box;
2. Whether there has ever existed a version of the March 5, 2020 video footage that did not contain the superimposed grey box, and, if so, why and when it was destroyed;
3. The purpose of the grey box, including identification of any policy, procedure, or practice governing its placement; and
4. The method by which the grey box is added to the footage, including whether it is generated by the recording equipment itself or applied after recording."

(*Id.* at 1).

Instead, on September 14, 2026, Counsel for DOC served a conferral letter providing their own explanation for the gray box. (*See* Bevan Decl. Ex. M (September 14 Letter)). Defendants directed Mr. Washington to DOC Policy 103 DOC 519.05(F), a policy addressing sexual-abuse prevention and a superintendent's obligation to ensure privacy. (*Id.* at 1–2).

The cited policy does not answer Mr. Washington's questions about the gray box. The policy does not specifically address strip-cell surveillance footage or require the privacy masking reflected in the March 5 video. For example, DOC's identified administrative policies address measures in place to prevent "staff of the opposite gender [from] viewing their... genitalia."[1] (*Id.* at 2). This rationale did not apply to Mr. Washington, who was fully clothed on March 5 when DOC executed its planned use of force on him. (*See* Bevan Decl. Ex. K).

On September 28, 2026, Mr. Washington again requested a certification regarding when privacy masking was first implemented, who determined the box's size, and whether the practice remains in effect. (*See* Bevan Decl. Ex. N). DOC again refused. (*See* Bevan Decl. Ex. O at 2). When the masking was implemented, and by whom, matters: if DOC adopted a policy that obscured the camera view of the cell shortly before Mr. Washington was assaulted in it, Mr. Washington is entitled to know.

DOC's administrative privacy policies do not supersede Mr. Washington's right to discovery under the Federal Rules. The current state of the video strips it of almost all utility and deprives Mr. Washington of objective, contemporaneous evidence corroborating his allegations of

---

[1] 103 DOC 519.05 is available here: https://www.mass.gov/doc/doc-519-sexual-harassmentabuse-response-and-prevention-policy/download

excessive force, evidence that is especially important where prisoner testimony is weighed against the uniform reports of correctional officers.

To remedy this evidentiary deficiency, Mr. Washington respectfully requests that the Court order DOC to provide a written certification from a records custodian with personal knowledge answering the following questions:

1. Whether there exists a version of the March 5, 2020 video footage that does not contain the superimposed grey box;
2. Whether there has ever existed a version of the March 5, 2020 video footage that did not contain the superimposed grey box, and, if so, why and when it was destroyed;
3. The purpose of the grey box, including identification of any policy, procedure, or practice governing its placement;
4. The method by which the grey box is added to the footage, including whether it is generated by the recording equipment itself or applied after recording; and
5. On what date DOC implemented the gray-box feature on the camera in the strip cell in which Mr. Washington was assaulted and who was responsible for the decision.

If DOC fails to respond appropriately, Mr. Washington requests leave to depose DOC's designated representative on whether the gray box is an irreversible hardware feature or a software overlay that can be removed.

If the certification or deposition confirms that DOC can remove the gray box, or that the gray box was added after DOC knew of Mr. Washington's claims, Mr. Washington reserves the right to seek sanctions as authorized by law.

### B. DOC Defendants' Position

DOC Defendants contend that the issues regarding the March 5, 2020 Strip Cell Video were properly briefed by the parties in its Second Joint Discovery Statement and that this matter was already addressed by this Court. As such, DOC Defendants again emphatically reassert their position that Plaintiff should not be permitted to continue to relitigate discovery issues that have already been addressed by this Court.

DOC Defendants provided a converted format of the March 5, 2020 video to Plaintiff's Counsel on September 2, 2026 via a OneDrive link. On September 14, 2026, Counsel for DOC Defendants informed Plaintiff of the reasoning for the grey box that exists in the video. The grey boxes are for privacy masking to avoid cross gender viewing in accordance with 103 DOC 519.05(F), which states in part that "Superintendents shall ensure procedures are maintained which enable incarcerated or civilly committed individuals to shower, perform bodily functions, and change clothing, without non-medical staff of the opposite gender viewing their breasts, buttocks or genitalia, except in exigent circumstances or when such viewing is incidental to routine cell checks in accordance with 103 DOC 750, Hygiene Standards." The privacy masking is configured by the camera installer. The installed privacy masking is visible on the live feed produced by the camera and is visible on any and all recordings captured from that camera. Accordingly, any recorded video would necessarily have the privacy masking present since the camera was

configured that way on March 5, 2020. The camera itself imposes the privacy masking; therefore, no video would have existed without the grey box from that cell on March 5, 2020.

This Court in its August 21, 2026 Order did not direct DOC Defendants to file any such written certification that Plaintiff now seeks. DOC Defendants assert that Plaintiff's written request for a certification is unnecessary and only seeks to continue to cause unnecessary delays in this case. This request goes above and beyond the discovery requests propounded by Plaintiff in this action, and beyond what the Court ordered DOC Defendants to do with regard to the March 5, 2020 strip cell footage. As such, Plaintiff's insistence on such certification is completely unreasonable and irrational and beyond any plausible discovery requirements.

## V. Methodologies for Locating Responsive Professional Communications in the Personal Emails and Devices of DOC Defendants.

*Responsive to Request for Production Nos. 27, 28, 29, 30, and 33*

### A. Plaintiff's Position

On August 21, 2026, the Court ordered DOC to conduct "a counsel-supervised search of personal email and personal cell phone data, including messaging applications, for Dumont, Catalano, Barnes, Pepoli, Fonseca, and Hillis" using identified search terms. (ECF No. 211). Counsel for DOC was expressly instructed to conduct the search, themselves, or to directly oversee the search. (*Id.* at 1). For the remaining individual Defendants, the Court instructed them to each "file on the docket a sworn affidavit by September 16, 2026 attesting that, after conducting a diligent search consistent with the parameters above, Defendants do not have any communications responsive to the above search terms." (ECF No. 211).

However, DOC admits that they did not comply with these instructions. (*See* Bevan Decl. Ex. O at 2-3). On September 28, 2026, Mr. Washington's counsel expressed to DOC that they were concerned, based on the contents of the affidavits DOC submitted to the Court, that the searches were not completed under the supervision of counsel, as required. (*See* Bevan Decl. Ex. N at 2). DOC responded on September 30 that "[n]owhere in the second part of [the Court's Order] does the Court order the remaining DOC Defendants to conduct counsel-supervised searches." (*See* Bevan Decl. Ex. O at 2). Despite this Court's Order requiring "a diligent search consistent with the parameters above," (ECF No. 211 at 2), i.e., including a search conducted or directly overseen by counsel, DOC permitted individual Defendants to unilaterally make responsiveness determinations regarding the discovery on their personal devices.

Extended fact discovery is closed. Mr. Washington understood DOC's searches were compliant with the Court's order. They were not. Accordingly, Mr. Washington requests that the Court again order the individual Defendants to conduct *counsel-supervised* review of their personal devices. Further, Mr. Washington requests that each individual Defendant be required to submit a declaration attesting to any auto-delete functions enabled on their personal devices, including, but not limited to, text messages, email, and social media platforms.

The Court has been clear that this case is set for trial and discovery must proceed promptly. Mr. Washington has now been forced to brief personal device searches a third time, and DOC's noncompliance will require additional searches that push fact discovery beyond the extended deadline. Together with DOC's deficient ROG and RFA responses, its late production of

obstructed footage, and its deficient Redactions Log, this pattern prejudices Mr. Washington and increases costs for his *pro bono* counsel.

Accordingly, for DOC's failure to comply with Court orders, Mr. Washington reserves his right to request appropriate sanctions, including but not limited to attorneys' fees for the time required to prepare Mr. Washington's third joint discovery request.

### B. DOC Defendants' Position

DOC Defendants wholeheartedly disagree with Plaintiff's interpretation of this Court's August 21, 2026 Order. Additionally, Plaintiff's repeated efforts at creating needless and unfounded discovery disputes concerning matters already addressed previously by this Court has caused undue delays in moving this litigation forwardDOC Defendants contend that any undue delay in this case is due to Plaintiff and not DOC Defendants.

As an initial matter, this issue was thoroughly briefed in the parties Second Joint Discovery Dispute Statement (ECF No. 201), and this Court issued an Order on this matter. As such, DOC Defendants contend that it is not appropriate for Plaintiff to relitigate this issue. Moreover, Plaintiff had ample time to seek clarification from the Court regarding its Order on this matter. Yet, Plaintiff chose not to do so and instead waited until September 28, 2026, twelve (12) days after individual affidavits were filed on the docket in this matter, to once again create a needless dispute with discovery DOC Defendants were ordered to produce.

This Court's Order specifically states, "The Court **ORDERS** a counsel-supervised search of personal email and personal cell phone data, including messaging applications, for **Dumont, Catalano, Barnes, Pepoli, Fonseca, and Hillis**." The Court took the time to identify six (6) of the 23 DOC Defendants in Section 1 of its Order, for whom the Court ordered a counsel-supervised search. The Order then further states in a separate paragraph relevant part, "**As to the remaining individual Defendants,** each shall file on the docket a sworn affidavit by September 16, 2026 attesting that, after conducting a diligent search consistent with the parameters above, Defendants do not have any communications responsive to the above search terms." Nowhere in the second part of this Order does the Court order the remaining DOC Defendants to conduct searches under counsel supervision. Rather, DOC Defendants' reasonable interpretation of this Court's August 21, 2026 Order is that only for those first six (6) DOC Defendants expressly identified by the Court was a counsel-supervised search required. Such counsel-supervised searches were conducted for the six (6) named Defendants within the timeframe ordered by the Court, and responses were produced to Plaintiff's counsel accordingly. Furthermore, the Court did not direct counsel for DOC Defendants to file any confirmation or description of the process used, including the nature and extent of counsel's involvement regarding these six (6) DOC Defendants. For the remaining DOC Defendants, the affidavits filed on the court docket satisfy the Court's Order. As such, DOC Defendants have complied in good faith with the Court's Order on this matter.

Dated: October 14, 2026

Respectfully submitted,

/s/ Stephanie Caffrey
Stephanie M. Caffrey (BBO No. 697075)
Brittni Wipper (BBO No. 696783)
Department of Correction
Legal Division
70 Franklin Street, Suite 600
Boston, MA 02110-1300
(t) +1 617 727 3300 x1154
stephanie.m.caffrey@doc.state.ma.us
brittni.wipper@doc.state.ma.us

*Attorneys for DOC Defendants*

/s/ Julia Alison Bevan
Boies Schiller Flexner LLP
Sabina Mariella (*pro hac vice*)
John Lyons (BBO No. 569500)
Katherine Zhang (*pro hac vice*)
Julia Alison Bevan (*pro hac vice*)
Jayden Rush (*pro hac vice*)
55 Hudson Yards
New York, NY 10001
(t) +1 212 446 2300
(f) +1 212 446 2380
smariella@bsfllp.com
jlyons@bsfllp.com
kzhang@bsfllp.com
jbevan@bsfllp.com
jrush@bsfllp.com

Rights Behind Bars
Sumayya Saleh (*pro hac vice*)
Derrick Luster (*pro hac vice*)
1800 M Street NW FNT 1 #33821
Washington, DC 20033
(t) +1 202 455 4399
sumayya@rightsbehindbars.org
derrick@rightsbehindbars.org

*Attorneys for Plaintiff*

**L.R. 7.1(a)(2) AND L.R. 37.1(b) CERTIFICATION**

In accordance with L.R. 7.1(a)(2) and L.R. 37.1(b), the undersigned counsel certifies that they had multiple conferences to attempt to resolve these issues, including the parties' last meet and confer on the outstanding discovery disputes on September 15, 2026 and follow-up written correspondences, including but not limited to those exchanged on August 27, 2026, September 14, 2026, September 21, 2026, September 25, 2026, September 29, 2026, and September 30, 2026.

Dated: October 14, 2026

COUNSEL FOR PLAINTIFF
/s/ Julia Alison Bevan

COUNSEL FOR DOC DEFENDANTS
/s/ Stephanie Caffrey