# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Derrick Washington,<br><br>Plaintiff,<br><br>v.<br><br>MASSACHUSETTS DEPARTMENT OF CORRECTIONS, WELLPATH LITIGATION TRUST, MATTHEW J. DUNSON AS TRUSTEE OF THE WELLPATH LITIGATION TRUST, SUPERINTENDENT STEVE KENNEWAY, LIEUTENANT ROBERT DESCHENE, LIEUTENANT ARTHUR FORGET, SERGEANT RYAN HELLIS, SERGEANT THOMAS TOCCI, OFFICER ANTHONY CATALANO, OFFICER JOSHUA GAGNON, SERGEANT ARTHUR BARNES, OFFICER JOSEPH CUMMINGS, OFFICER NICHOLAS DUMONT, OFFICER ZACHARY FONSECA, OFFICER DANIEL HOLLENBACH, OFFICER ERIC LAWSON, SERGEANT NATHAN OWEN, OFFICER CORY SHEPHERD, OFFICER JEFFREY PEPOLI, SERGEANT BRIAN RAYNER, OFFICER ROBERT BASHAW, OFFICER RAYMOND SIMULA, OFFICER SERGIO CACIOPPO, OFFICER THOMAS MEMBRINO, OFFICER DAVID GILMAN, OFFICER RYAN KALREISS, NURSE CHRISTIAN CAPOCCIA, MEDICAL DIRECTOR DOE, AND NURSE DOE,<br><br>Defendants. | Civ. Case No. 1:23-cv-10063 |

**<u>PLAINTIFF'S FIRST SET OF INTERROGATORIES</u>**
**<u>DIRECTED TO ALL DOC DEFENDANTS</u>**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Derrick

Washington, by and through undersigned counsel, hereby requests that the Defendants Massachusetts Department of Corrections, Superintendent Steve Kenneway, Lieutenant Robert Deschene, Lieutenant Arthur Forget, Sergeant Ryan Hellis, Sergeant Thomas Tocci, Officer Anthony Catalano, Officer Joshua Gagnon, Sergeant Arthur Barnes, Officer Joseph Cummings, Officer Nicholas Dumont, Officer Zachary Fonseca, Officer Daniel Hollenbach, Officer Eric Lawson, Sergeant Nathan Owen, Officer Cory Shepherd, Officer Jeffrey Pepoli, Sergeant Brian Rayner, Officer Robert Bashaw, Officer Raymond Simula, Officer Sergio Cacioppo, Officer Thomas Membrino, Officer David Gilman, and Officer Ryan Kalreiss (collectively "DOC Defendants") answer separately and fully in writing and under oath the following interrogatories and serve such answers upon Plaintiff within thirty (30) days of service in accordance with the definitions and instructions below.

## DEFINITIONS

In addition to the definitions set forth in the Federal Rules of Civil Procedure, the following definitions apply to each of the Interrogatories, and are deemed to be incorporated into each.

1. **"Person," "Persons," or "Individual"** means, unless otherwise specified, any natural Person, firm, corporation, labor organization, partnership association, joint venture, group or association, and any other form of business organization, entity, or arrangement.

2. **"You," "Your," or "Yourself"** means each of the DOC Defendants or any of their agents, servants, employees, or other Individuals acting on their behalf.

3. **"Plaintiff"** refers to Derrick Washington and any Person acting or purporting to act on behalf of Derrick Washington.

4. **"DOC Defendants"** refers to the Massachusetts Department of Correction, Superintendent Steve Kenneway, Lieutenant Robert Deschene, Lieutenant Arthur Forget, Sergeant Ryan Hellis, Sergeant Thomas Tocci, Officer Anthony Catalano, Officer Joshua Gagnon, Sergeant

Arthur Barnes, Officer Joseph Cummings, Officer Nicholas Dumont, Officer Zachary Fonseca, Officer Daniel Hollenbach, Officer Eric Lawson, Sergeant Nathan Owen, Officer Cory Shepherd, Officer Jeffrey Pepoli, Sergeant Brian Rayner, Officer Robert Bashaw, Officer Raymond Simula, Officer Sergio Cacioppo, Officer Thomas Membrino, Officer David Gilman, and Officer Ryan Kalriess, and any Defendants who have not yet been identified but worked for the Massachusetts Department of Correction.

5. **"Corrections Officer" or "Officer"** refers to any staff member or agent of the DOC regardless of rank or assignment and regardless of whether the staff member is a regular employee of the DOC or is working under a contract or by special arrangement from another agency.

6. **"Department of Correction(s)," "Department," and "DOC"** refer to the Massachusetts Department of Corrections and each and every one of its internal departments, divisions, units, or facilities; present or former employees, officers, partners, directors, agents, representatives, consultants, contractors, predecessors, attorneys, or consultants; any Persons acting or purporting to act on behalf of the foregoing; and any parents, subsidiaries, affiliates, segments, or divisions both presently existing and those that previously existed.

7. **"SBCC"** refers to the Souza-Baranowski Correctional Center and each and every one of its internal departments, divisions, units, or facilities; present or former employees, officers, partners, directors, agents, representatives, consultants, contractors, predecessors, attorneys, or consultants; any Persons acting or purporting to act on behalf of the foregoing; and any parents, subsidiaries, affiliates, segments, or divisions both presently existing and those that previously existed.

8. **"Document(s)" or "Record(s)"** means All writings, of any form, kind, character or description including, but not limited to: the original and All non-identical copies, whether different from the original by reason of any notation made on such copies or otherwise; correspondence; letters; memoranda; notes; diaries; statistics; telegrams; minutes; transcripts; contracts; agreements; reports; studies; checks; statements; receipts; returns; summaries; pamphlets; books; inter-office and intra-office communications; offers; notations of any sort of conversation, telephone calls, meetings or other communications; bulletins; printed matter; invoices; worksheets; pleadings; motions, legal memoranda; All drafts, alteration modifications, changes, and amendments of any of the foregoing; questionnaires; opinions; statements; graphic and oral representations of any kind, including, but not limited to photographs, charts, microfilm, and computer software; and electronic recordings, such as tapes, diskettes, cassettes, videos, or any tangible thing, however produced or reproduced, including any metadata.

9. **"Employed," "Employment," or "Employee"** means any worker, work, or services provided or performed in connection with any direct employment, indirect employment, contract employment, independent contractor relationship, outsourcing employment, temporary employment and/or staffing services employment with the DOC and/or any other state, local, or privately contracted agency. It also means any volunteer work and workers.

10. **"Communication"** means, without limitation, any oral, written or electronic transmission of information, including but not limited to: (1) any written letter, memorandum, handbill, leaflet, brochure, note, e-mail, telegram, telecopy, facsimile, text message, or other document, including in electronic form; (2) any telephone call by or with You, or between You and two or more Persons, or between You and any other Person, whether or not such call was by chance or prearranged, formal or informal; and (3) any meeting by or with You, or between You

and two or more Persons, or between You and any other Person, whether or not such contact was by chance or prearranged, formal or informal. The term "Communication" includes any Communication on Defendants' Personal devices, including but not limited to Defendants' Personal cellular phones, tablets, and computers.

11. **"Relate," "Related," "Relating to"** or any variation thereof are to be used in their broadest sense and shall mean to: concern, contain, embody, describe, explain, mention, refer to, discuss, involve, support, evidence, reflect, deal with, consist of, represent, constitute, emanate from, be directed at, or in any way pertain, in whole or in part, to the subject.

12. **"Complaint"** refers to the operative complaint filed in the above-captioned case.

13. **"The Incident(s)"** refers to the use(s) of force on Plaintiff Derrick Washington on January 21, 2020, January 23–24, 2020, and March 5, 2020, as alleged in the complaint, either collectively or individually, as specified in that interrogatory.

14. **"The Altercation"** refers to the altercation between prisoners and Officers in the N1 unit on January 10, 2020, as alleged in the complaint.

15. "**Special Operations Unit"** or **"Special Operations Division"** refers to the Special Operations Response Unit or similar unit by whatever name, and any or All teams, sub-units, or divisions thereof.

16. **"Use of Force"** refers to any application of force, including but not limited to take-downs, control-techniques, blows to the body, beatings, assaults, use of Electric Control Devices, chemical agents, weapons, batons, or any other equipment.

17. **"Taser"** refers to any Electronic Control Device (ECD) regardless of manufacturer or brand as described in 103 DOC 509. Taser, ECD, Stun Guns, and Probe Cartridges may be used interchangeably.

18. **"Chemical Agent"** refers to any chemical compound as referenced in 103 DOC 509 that may cause tearing of the eyes, involuntary eye closure, and respiratory issues. It includes any chemical compound referred to as Oleoresin Capsicum (OC) spray, chlorobenzylidene malononitrile (tear gas), mace, or pepper balls, and these terms may be used interchangeably with "Chemical Agent."

19. **"Disability"** refers to any physical or mental impairment, which substantially limits one or more major life activities as defined in 103 DOC 206.

20. **"Contraindication" or "Previous Medical Issue"** refers to a documented medical condition which may present an unreasonable hazard for certain activities.

21. **"Restraints"** refers to any equipment or device that restricts the movement of a prisoner. This encompasses any and All types of restraints including but not limited to flex cuffs, handcuffs, leg irons, waist chains, and four-point restraints.

22. **"Tactical Team Member(s)"** refers to DOC Employees who serve on a Special Operations Response Unit as referenced in 103 DOC 561.

23. **"Institutional Search"** refers to the SBCC-wide search and reassignment conducted by the SBCC staff, members of the Special Operations Unit, and other DOC staff, between about January 21, 2020 and January 24, 2020 in which SBCC divided the facility into a "North Side" and "South Side" as alleged in the Complaint.

24. **"Procedure"** shall include any formal or informal process or practice used by DOC, SBCC, or contracting agencies/companies and its Employees for a particular purpose.

**INSTRUCTIONS**

The following instructions apply to each of the Interrogatories and are deemed to be incorporated in each of them:

1. These interrogatories are continuing in nature to the extent provided in Federal Rule of Civil Procedure 26(e) and require that supplemental responses be filed in the event that You learn of any additional information that would indicate that any previous response is erroneous or incomplete.

2. Each interrogatory, and each portion of each interrogatory, is to be responded to separately, but response to one interrogatory, or portions thereof, may be incorporated by reference in responses to other interrogatories, or portions thereof.

3. You shall supply information responsive to these interrogatories, whether such information is in Your direct or indirect possession, custody, or control. If You cannot answer any interrogatory fully, answer the interrogatory to the extent possible and explain the reason for Your inability to answer the remainder of the question.

4. Where a claim of privilege is asserted, and information is withheld on that basis, You shall furnish sufficient facts for Plaintiff to evaluate the merits of that claim as required by Local Civil Rule 33.1, which is incorporated herein by reference.

5. If You object to a part of a Request and refuse to respond to that part, state Your objections and provide the information or Documents requested in the remaining portion of the interrogatory. If You object to the scope or time period of an interrogatory and refuse to respond for that scope or time period, state Your objection and respond to the interrogatory for the scope and time period You believe is appropriate.

6. If any document or information that would be responsive to All or any part of any interrogatory is not currently available, include a statement to that effect and furnish whatever documents and information are available. Include in Your statement when such document(s) or information was most recently in Your possession or subject to Your control and what disposition was made of it, and identify each Person currently in possession or control of such document(s) or

information. If any of such documents have been destroyed, state when and where such documents were destroyed, identify each Person(s) who directed that the documents be destroyed, the Person(s) actually destroying the documents, and state the reason(s) the documents were destroyed.

7. Each document produced for inspection or copying shall be identified by the interrogatory, or portion thereof, to which it relates.

8. When documents, data, knowledge, or information in possession of a party are requested, such request includes documents, data, knowledge, or information of the party's agents, representatives, predecessors in interest, successors, subsidiaries, parents, experts, Persons consulted concerning any factual matters or matters of opinion relating to any of the facts or issues involved in this case, and, unless privileged, the party's attorney(s).

9. For the purposes of reading, interpreting, or construing the scope of these Interrogatories, the terms used shall be given their most expansive and inclusive interpretation. This includes, without limitation, the following:

a. The terms "all," "any," and "each" shall each be construed as encompassing any and all;

b. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to make the interrogatory inclusive rather than exclusive;

c. The singular shall be construed to include the plural, and vice versa, to make the request inclusive rather than exclusive;

d. The masculine, feminine or neuter pronoun shall not exclude other genders;

e. The past tense shall be construed to include the present tense, and vice versa, to make the request inclusive rather than exclusive;

f. References to Employees, officers, directors or agents shall include both current and former Employees, officers, directors and agents; and

g. Wherever the word "including" appears, it shall mean "including, but not limited to."

10. Unless words or terms have been given a specific definition herein, each word or term used herein shall be given its usual and customary dictionary definition except where such words have a usual custom and usage definition in Your trade or industry, in which case they shall be interpreted in accordance with such usual custom and usage definition of which You are aware.

11. Any reference to a Person that is a business entity and is not otherwise defined includes that Person's predecessors (including any preexisting Person that at any time became part of that entity after merger or acquisition), successors, parents, divisions, subsidiaries, affiliates, franchisors and franchisees; each other Person directly or indirectly owned or controlled by any of them; each partnership or joint venture to which any of them is a party; All present and former directors, officers, Employees, agents, consultants, controlling shareholders (and any entity owned by any such controlling shareholder), and attorneys of any of them; and any other Person acting for or on behalf of any of them.

## INTERROGATORIES

### I. Interrogatories Directed Towards DOC:

1. Identify each current or former DOC employee, agent and/or contractor, or any other Person with knowledge of the Incidents. For each such Person, state their (i) full name, (ii) badge number or employee ID number, (iii) job title on the relevant date below, (iv) job function being performed by that Person at the time of each Incident subject to this complaint; identify (v)

the Incident(s) of which that Person has knowledge; (vi) their last known address, (vii) their current place of employment, and (viii) current job title; and (ix) provide a summary of the Person's knowledge of the Incident.

2. Identify each DOC Defendant who did not have a DOC-issued email address and/or phone between September 2019 and August 2020. For each Person, state their (i) full name, (ii) whether they used their personal email address and/or instant messaging platform, including but not limited to Facebook messages and Instagram direct messages, to send and receive correspondences related to DOC matters, and (iii) if applicable, the personal email address and/or instant messaging platform, including but not limited to Facebook messages and Instagram direct messages, they used to communicate about DOC matters.

3. State each affirmative defense You assert in this action and All facts and legal arguments in support of those defenses.

4. If any Person(s) investigated this matter for You including, but not limited to, medical experts, private investigators, or insurance adjusters, state (i) their full name; (ii) their last known address; (iii) whether such investigation was reduced to writing; and (iv) the substance of their investigation and findings. If said Person(s) obtained any signed, recorded, written or oral statement from any individual, (v) identify the Person who gave the statement and (vi) the present custodian of such statement.

5. Describe Your efforts to locate Documents and Communications responsive to Plaintiff's Second Requests for Production.

6. Describe All Policies and Procedures in place between June 1, 2019 and the present relating to the maintenance and destruction of handheld camera footage, video surveillance footage, and All other forms of video evidence captured at SBCC. For each Policy and/or

Procedure, state: (i) the first known date the Policy or Procedure was known to be in effect; (ii) the last known date the Policy and/or Procedure was known to be in effect; (iii) the categories of video evidence governed by that Policy and/or Procedure; and (iv) whether the Policy and/or Procedure is memorialized in writing, including but not limited to the Policy or Procedure number, and where that Policy and/or Procedure may be located.

7. Identify All handheld camera footage, video surveillance footage, and All other forms of video evidence captured at SBCC relating to the Incidents, whether presently available, destroyed, or withheld. For each video identified, identify: (i) the category of video evidence (for example, handheld camera footage, video surveillance footage, etc.); (ii) the Person(s) who captured the video; (iii) All Persons known to have accessed the video, including but not limited to, the date it was accessed, the Person who accessed it on each identified date, and the purpose for which the video was accessed, to the extent known; and (iv) whether the video was produced, destroyed, or withheld. If the video evidence was destroyed, identify: (v) why the video was destroyed; (vi) the Person(s) destroyed the video; (vii) the date the video was destroyed; and (viii) the purpose for which the video was destroyed. If the video was withheld, state (ix) the basis for withholding the video.

8. Identify All Documents and Communications, including but not limited to counseling memos, disciplinary hearing notes and transcripts, and performance evaluations, prepared at any time, concerning any allegation that any DOC Defendant used force unnecessarily, excessively, or contrary to any DOC Policy or Procedure governing the Use of Force.

9. Identify All Documents and Communications, including but not limited to counseling memos, disciplinary hearing notes and transcripts, and performance evaluations,

prepared at any time, concerning any allegation that any DOC Defendant prepared or filed a false report, including but not limited to disciplinary reports, incident reports, and Use of Force reports.

10. Do You dispute that Mr. Washington suffered injuries as a result of DOC's use of Chemical Agents during the Incidents? If so, state All facts and legal arguments upon which You base Your contention.

11. Do You dispute that Mr. Washington suffered injuries as a result of the Incidents? If so, state All facts and legal arguments upon which You base Your contention.

12. Identify All DOC employees, agents and/or contractors who participated in the approval, administration, or supervision of, or attended any meeting related to the Black, Latino, Asian Cultural Coalition ("BLACC") group at SBCC between June 1, 2019 and December 31, 2020. For each such individual, state the (i) full name, (ii) badge number or employee ID number, (iii) job title on the relevant date, (iv) the date and purpose of any meetings they attended related to BLACC; (v) a summary of the witness's participation in BLACC; (vi) last known address, (vii) current place of employment, and (viii) current job title.

13. Describe in detail any and All procedures in place at SBCC between January 1, 2020 and August 31, 2020 for screening for contraindications prior to using force on inmates.

14. Describe each instance between January 1, 2015 and March 5, 2020 in which Mr. Washington was screened for contraindications for use of Chemical Agents at SBCC. For each instance, state: (i) the date of the screening; (ii) the name of the Officer that requested authorization for use of Chemical Agents and/or the name of the Officer that initiated the screening; (iii) the name of the medical professional that conducted the screening; (iv) the methods used to screen for contraindications; (v) the documents relied upon when screening for contraindication(s); (vi) the purpose of the screening, including but not limited to for a planned or spontaneous Use of Force;

(v) whether Mr. Washington was contraindicated for the Use of Chemical Agents; (vi) whether Mr. Washington was approved for an alternative Chemical Agent, despite his Contraindication, (vii) All policies supporting the decision to approve the use of an alternative Chemical Agent, if applicable; (viii) whether Chemical Agents were ultimately used on Mr. Washington, and (ix) which Chemical Agents were used on Mr. Washington, if applicable.

15. Describe in detail All criteria, procedures, and decision-making processes used to assign Mr. Washington to the "North Side" of SBCC during the Institutional Search in January 2020, including the basis on which Mr. Washington was assigned to the North Side.

16. Describe All actions taken by Defendant Tocci relating to Mr. Washington's prisoner grievances between June 1, 2019 and December 31, 2020, including but not limited to: (i) whether Sgt. Tocci shared or disclosed Mr. Washington's grievances with any other staff members; (ii) if so, the identity of each Person with whom Mr. Washington's grievances were shared; (iii) the date(s) on which any such disclosure was made; (iv) whether Sgt. Tocci had authorization to share confidential grievances under DOC policy 103 CMR 491.23; and (v) whether DOC investigated or took any disciplinary action in response to Sgt. Tocci's disclosure of Mr. Washington's grievances.

17. Describe All policies and procedures in place at SBCC between June 1, 2019 and December 31, 2020 governing the monitoring of prisoner emails, letters, and other communications. For each policy, state: (i) who was authorized to access and review prisoner communications; (ii) what was done with the content of prisoner communications once reviewed; (iii) whether the content of prisoner communications could be shared with corrections officers or supervisors, and under what circumstances; and (iv) identify All DOC employees who accessed or

reviewed any communication sent or received by Mr. Washington between June 1, 2019 and December 31, 2020.

18. Describe in detail the process by which disciplinary tickets are issued, including but not limited to: (i) All Policies or Procedures identifying All Persons authorized to determine whether to issue a disciplinary report; (ii) the review process, if any, before issuing a disciplinary report; (iii) the process by which Officers identify the specific Policy or rule violations forming the basis for a disciplinary report; (iv) the process by which a particular disciplinary action is categorized as 1, 2, 3, or 4; (v) All Persons responsible for reviewing the merits of a disciplinary report; and (vi) All Policies and Procedures governing the length of time an Officer has, from the time of the infraction, to issue a disciplinary report.

19. Identify all disciplinary reports or tickets issued against Mr. Washington between November 1, 2019 and March 31, 2020. For each ticket, state: (i) the date issued; (ii) the officer who issued it; (iii) the alleged conduct underlying the ticket; (iv) whether the ticket was investigated; (v) the outcome of any hearing or review; and (vi) whether the ticket was ultimately dismissed or expunged.

20. Identify All Documents and Communications exchanged between any DOC Defendants between June 1, 2019 and December 31, 2020, relating to Mr. Washington, including but not limited to: his participation in BLACC, his grievances, his email correspondences, his housing assignment(s), or any of the Incidents. For each Communication, state: (i) the date of the Communication(s); (ii) All participants and recipients of the Communication(s); (iii) the medium (email, text, radio, in-Person, etc.) by which the Communication(s) was shared; and (iv) the substance of the Communication(s).

21. Identify All Documents and Communications, including but not limited to complaints, grievances, and/or investigatory records, alleging that any DOC Defendant engaged in racially discriminatory, racially biased, and/or racially motivated conduct, including but not limited to using racial terms, slurs, stereotypes, or derogatory language, against any incarcerated person between June 1, 2019 and December 31, 2020. For each Document and/or Communication, state: (i) the date of the alleged conduct; (ii) the perpetrator of the alleged conduct; (iii) any DOC action to investigate the alleged conduct, if any; and (iv) whether any disciplinary action was imposed on that DOC Defendant.

22. Identify All Documents and Communications exchanged between any DOC Defendant(s) with any DOC employee regarding the misconduct alleged in Mr. Washington's Grievances. For each instance, state (i) the date of the Communication, (ii) the names of All Persons involved in the Communications, (iii) the content of the Communication, (iv) and the Grievance to which the Communication(s) relates. If Your answer includes reference to Documents, please provide the corresponding Bates number.

## II. Interrogatories Directed Towards Defendants Gilman, Hollenbach, Cummings, Gagnon, Pepoli, Dumont, Simula, Caccioppo, Membrino, and Fonseca:

23. If Your response to any Request for Admission was not an unqualified admission, state all facts upon which You base Your response, identify All documents that support Your response, and identify All Persons with knowledge of the facts supporting Your response.

Dated: July 15, 2026

*/s/ Sabina Mariella*
Sabina Mariella (*pro hac vice*)
John Lyons (BBO No. 569500)
Katherine Zhang (*pro hac vice*)
Julia A. Bevan (*pro hac vice*)
Jayden Rush (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
(t) +1 212 446 2300

(f) +1 212 446 2380
smariella@bsfllp.com
jlyons@bsfllp.com
kzhang@bsfllp.com
jbevan@bsfllp.com
jrush@bsfllp.com

Derrick Luster (*pro hac vice*)
Sumayya Saleh (*pro hac vice*)
RIGHTS BEHIND BARS
416 Florida Ave NW #26152
Washington, DC 20001
(t) + 1 202 455 4399
derrick@rightsbehindbars.org
sumayya@rightsbehindbars.org

*Attorneys for Plaintiff*