# EXHIBIT M

*The Commonwealth of Massachusetts*
*Executive Office of Public Safety & Security*
*Department of Correction*
*Legal Division*
*70 Franklin Street, Suite 600*
*Boston, MA 02110*
*Tel: (617) 727-3300*
*www.mass.gov/doc*

**MAURA T. HEALEY**
*Governor*

**KIMBERLEY DRISCOLL**
*Lieutenant Governor*

**GINA K. KWON**
*Secretary*

**SHAWN P. JENKINS**
*Commissioner*

Delivered via Email

September 14, 2026

Julia Bevan, Esq.
Sabina Mariella, Esq.
Jayden Rush, Esq.
Katherine Zhang, Esq.
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY 10001

Derrick Luster, Esq.
Sumayya Saleh, Esq.
Rights Behind Bars
1800 M Street NW
Front 1 #33821
Washington, DC 20033

RE: Washington v. Department of Correction, et. al.; USDC 1:23-cv-10063 (MRG); DOC Defendants' Response to Plaintiff's September 4, 2026 Correspondences

Attorneys Bevan, Mariella, Rush, Zhang, Luster, and Saleh,

DOC Defendants respond to your September 4, 2026 email and inquiries regarding the surveillance video inside the cell on March 5, 2020 and the "Kenneway plan" as follows:

**March 5, 2020 Cell Surveillance Video**

This surveillance video is from inside the holding cell on March 5, 2020. The grey boxes are for privacy masking to avoid cross gender viewing in accordance with 103 DOC 519.05(F), which

states in part that "Superintendents shall ensure procedures are maintained which enable incarcerated or civilly committed individuals to shower, perform bodily functions, and change clothing, without non-medical staff of the opposite gender viewing their breasts, buttocks or genitalia, except in exigent circumstances or when such viewing is incidental to routine cell checks in accordance with 103 DOC 750, Hygiene Standards." The privacy masking is configured by the camera installer. The installed privacy masking is visible on the live feed produced by the camera and is visible on any recordings captured from that camera. Accordingly, any recorded video would have the privacy masking present since the camera was configured that way on March 5, 2020. The camera itself imposes the privacy masking; therefore, no video would have existed without the grey box from that cell on March 5, 2020.

**"Kenneway Plan"**

As an initial matter, Defendants contend that Plaintiff, through counsel, continues to mischaracterize Defendant Kenneway's deposition testimony. The first mention of Mr. Kenneway's alleged plan was when he was asked, "and so within your plan what were the restrictions that inmates housed on the north side experienced that inmates on the south side did not?" to which he responded at length regarding the limitations of access to personal property for inmates housed on the north side. See Deposition of Kenneway, p. 79, lines 9-24; p. 80, lines 1-4. Mr. Kenneway later went on to testify that he does not recall the exact date, but he submitted the plan for review and it was approved in late January or early February. See Deposition of Kenneway, p. 83, lines 10-15. Further in his deposition, Mr. Kenneway testified that the "plan" was a written document typed up by him and sent to DOC Legal for feedback. When asked about the feedback, he was instructed not to answer on the basis of attorney-client privilege. See Deposition of Kenneway, p. 101, lines 19-23; p. 102, lines 1-16. Finally, towards the end of Mr. Kenneway's deposition, he was asked again if this "plan" was finalized and sent to anyone else to which he testified "I don't recall….I honestly don't recall…I honestly don't remember that part of the process." See Deposition of Kenneway, p. 148, lines 13-24, p. 149, lines 1-12. Mr. Kenneway then went on to testify that he "believed" he sent the plan to his boss, ADC James Ferreira. See Deposition of Kenneway, p. 149, lines 20-24; p. 150, lines 1-4.

After speaking with our client Mr. Kenneway, we as counsel of record, submitted to you and the Court in the Second Joint Discovery Dispute Statement that no other version of this document existed save the version we had with DOC Legal's comments included and thus we were withholding that document on the basis of attorney-client privilege and attorney-work product. That being said, we as counsel of record conducted a diligent search of Mr. Kenneway's emails as well as other documents previously produced in this matter and discovered that there was, in fact, a finalized version of this document signed by Mr. Kenneway, that was produced to you back on May 1, 2026 in response to Plaintiff's Request for Production of Documents Batestamp R31 P3-4.

Defendants disagree with Plaintiff's contentions that the attached memorandum does not match the "Kenneway plan" as described. The attached memorandum does indeed comport with Mr. Kenneway's deposition testimony for a number of reasons. As noted above, when Mr. Kenneway first discussed this plan, it was in response to a question regarding the restrictions of north side inmates. This memorandum focuses on the restrictions of north side inmates at SBCC especially

with regards to personal property. Mr. Kenneway also testified that the plan was approved in late January or early February, which as you can see in the attached document, the finalized memorandum is dated January 30, 2020. Moreover, as mentioned repeatedly, a version of this plan was sent to DOC Legal in which Mr. Kenneway received comments and feedback from DOC Legal. Moreover, at no point during his deposition testimony did Mr. Kenneway testify that the memorandum was directed to the Commissioner. At best, Mr. Kenneway testified that he ***believed*** he would have sent it to the Commissioner for approval or to his boss ADC James Ferreira and then clarified that James Ferreira would be the next person that he sent the memorandum to. See Deposition of Kenneway, p. 149, lines 20-24; p. 150, lines 1-4. Also, at no point did Mr. Kenneway testify that this plan included housing placements or criteria for those placements. Rather, his deposition testimony with regards to that was "we had a multidisciplinary team of classification investigations, deputies from security. We had counselors…and in terms of who made the final decision…I actually implemented the plan. . " See Deposition of Kenneway p. 83, lines 20-24; p. 84, line 1. As such, the attached January 30, 2020 memorandum that was produced to you on May 1, 2026 is what Mr. Kenneway was referring to and is consistent with his deposition testimony in this matter. No other "plan" drafted by Mr. Kenneway has been located or identified.

Defendants note that this document, along with his emails, were produced over a month before Mr. Kenneway's deposition. You also had the opportunity to show him the document during his deposition to seek clarification on what he was referring to when he referenced his plan, yet failed to do so. As indicated in the filing with the Court, without waiving attorney-client privilege, Mr. Kenneway has confirmed that the attached memorandum was the plan he described in his deposition.

We trust this clarifies and addresses your questions regarding the attached housing memorandum and Mr. Kenneway's testimony regarding the "Kenneway plan".

Sincerely,

Stephanie M. Caffrey
Brittni Wipper

Att.

CC: Matthew Holmes, Esq.
Matthew Medoff, Esq.
Lori Vaulding, Esq.
Adler, Cohen, Harvey, Wakeman, Guekguezian LLP
2 Oliver Street, Suite 1005
Boston, MA 02109