UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DERRICK WASHINGTON,
Plaintiff,

v.

MASSACHUSETTS DEPARTMENT OF CORRECTIONS, WELLPATH LIQUIDATING TRUST, MATTHEW J. DUNDON as Trustee of the Wellpath Liquidating Trust, SUPERINTENDENT STEVE KENNEWAY, LIEUTENANT ROBERT DESCHENE, LIEUTENANT ARTHUR FORGET, SERGEANT RYAN HILLIS, SERGEANT THOMAS TOCCI, OFFICER ANTHONY CATALANO, OFFICER JOSHUA GAGNON, NURSE CHRISTIAN CAPOCCIA, SERGEANT ARTHUR BARNES, OFFICER JOSEPH CUMMINGS, OFFICER NICHOLAS DUMONT, OFFICER ZACHARY FONSECA, OFFICER DANIEL HOLLENBACH, OFFICER ERIC LAWSON, SERGEANT NATHAN OWEN, OFFICER CORY SHEPHERD, OFFICER JEFFREY PEPOLI, SERGEANT BRIAN RAYNER, OFFICER ROBERT BASHAW, OFFICER RAYMOND SIMULA, OFFICER SERGIO CACIOPPO, OFFICER THOMAS MEMBRINO, OFFICER DAVID GILMAN, OFFICER RYAN KALRIESS, MEDICAL DIRECTOR DOE, AND NURSE DOE,

Defendants.

C.A. NO: 1:23-cv-10063-MRG

**MEMORANDUM OF LAW OF THE DEFENDANT, NURSE CHRISTIAN CAPOCCIA, <u>IN SUPPORT OF MOTION SUMMARY JUDGMENT</u>**

The Defendant, Christian Capoccia, R.N. (hereinafter "Defendant"), by and through counsel hereby submits the following Memorandum of Law in Support of his

Motion Summary Judgment pursuant to F.R.C.P. 56 as the Plaintiff's claim against the Defendant fails as a matter of law.

## I. UNDISPUTED MATERIAL FACTS

At the time of the filing of the Plaintiff's First Amended Complaint, Plaintiff Derrick Washington (hereinafter "Mr. Washington" or "Plaintiff") was a male in the custody of the Massachusetts Department of Correction (hereinafter "DOC") who was housed at the Souza Baranowski Correctional Center (hereinafter "SBCC") from September 2018 to June 2023. Exhibit A, Plaintiff's First Amended Complaint, at ¶ 3. Mr. Washington had a history of asthma since childhood. Exhibit B, at 31:1-4.

This is an action filed by Mr. Washington stemming from events at SBCC from January though March 2020. Exhibit A. The allegations as to R.N. Capoccia relate to a single interaction on the morning of January 24, 2020. Exhibit A, at Count VI. Specifically, as to R.N. Capoccia, Mr. Washington alleges that R.N. Capoccia violated his rights under the Eighth Amendment of the United States Constitution, under a theory of deliberate indifference. Exhibit A, at Count VI. Mr. Washington alleges that on the evening of January 23, 2020, oleoresin capsicum (hereinafter "OC") spay was deployed in his vicinity at approximately 10:45 A.M. Exhibit A, at ¶ 116. There is no dispute R.N. Capoccia was not involved in the deployment of the OC spray or the use of force. R.N. Capoccia was not asked until the following morning to perform a restraint check on Mr. Washington, though, again, it is undisputed, he did not know the identity of the individual he was asked to perform the check on when called to do so. Mr. Washington alleges that when R.N. Capoccia evaluated Mr. Washington at approximately 6:50 A.M. on January 24, 2020, R.N. Capoccia violated Mr. Washington's Eighth Amendment rights by failing to provide

him with his Keep on Person (hereinafter "KOP") inhaler or decontaminate Mr. Washington. Exhibit A, at ¶ 255. Mr. Washington alleges that as a result, he sustained injuries including chemical burns, dizziness, difficulty breathing, recurrent asthma attacks, and difficulty sleeping. Exhibit A, Count VI.

In the days following January 24, 2020, Mr. Washington submitted several Sick Call Request forms, including on January 25, 2020; January 27, 2020; and January 28, 2020. Exhibit F. None of these Sick Call Request forms mention the symptoms which Mr. Washington alleges were caused by R.N. Capoccia's acts or omissions, nor did Mr. Washington request treatment for these alleged injuries. Exhibit F.

On January 25, 2020, Mr. Washington submitted a Medical/Mental Inmate Grievance Form. Exhibit G. Mr. Washington reported being exposed to chemical agents by DOC security staff on January 23, 2020 and being told by security staff that he could not keep his asthma inhaler on his person. Exhibit G. In the Medical/Mental Inmate Grievance Form, Mr. Washington did not refer to R.N. Capoccia. Exhibit G. Mr. Washington did not refer to any interaction with R.N. Capoccia, nor any injuries he allegedly sustained as a result of R.N. Capoccia's acts or omissions. Exhibit G. Mr. Washington did not state he asked R.N. Capoccia for his inhaler. Mr. Washington did not state he was experiencing respiratory distress. Mr. Washington did not state he suffered from chemical burns, dizziness, difficulty breathing or any asthma related symptoms. He is simply complaining that security staff took his inhaler during a use of force.

On January 30, 2020, Mr. Washington submitted an Institutional Grievance related to the January 23, 2020 spontaneous use of force. Exhibit H. Mr. Washington did not refer to R.N. Capoccia, including any interaction with R.N. Capoccia or injuries

allegedly caused by R.N. Capoccia in this grievance. Exhibit H. Mr. Washington did not state that he suffered from chemical burns, dizziness, or recurrent asthma attacks as a result of R.N. Capoccia's care.

## II. PROCEDURAL HISTORY

On January 10, 2023 Mr. Washington filed his original complaint. Dkt. No. 1. On January 28, 2026 Mr. Washington filed his First Amended Complaint. Dkt. No. 126. On February 19, 2026 counsel for R.N. Capoccia filed a Motion to Dismiss the claims against him (Eighth Amendment violation sounding in a theory of deliberate indifference), which was opposed. Dkt. Nos. 143 and 162. Following hearing, this Honorable Court denied R.N. Capoccia's Motion to Dismiss, without prejudice to the Defendant raising appropriate arguments at summary judgment. Dkt. No. 192.

## III. STANDARD OF REVIEW

The purpose of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Rojas-Ithier v. Sociedad Espanola de Auxillo Mutuo y Beneficiencia de Puerto Rico*, 394 F.3d 40, 42 (1st Cir. 2005). Summary judgment should be granted if the pleadings, the discovery and disclosure of materials on file, and any affidavits show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

The party moving for summary judgment bears the initial burden of asserting the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335

F.3d 15, 19 (1st Cir. 2003). A “material fact” is “one which might affect the outcome of the suit under the governing law.” *Poulis-Minott v. Smith*, 388 F.3d 354, 363 (1st Cir. 2004).

Once the moving party avers the absence of genuine issues of material fact, the non-movant must show, through materials of evidentiary quality, that such a dispute exists, *Cordero-Soto v. Island Finance, Inc.*, 418 F.3d 114, 119 (1st Cir. 2005), by setting forth specific facts “to deflect the swing of the summary judgment scythe.” *Mulvihill*, 335 F.3d at 19. When that party fails to make a showing sufficient to establish the existence of an element essential to that party’s case, and on which that party will bear the burden of proof at trial, summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As to issues on which the nonmovant has the burden of proof, the movant need to do no more than aver “an absence of evidence to support the nonmoving party’s care.” *Id.*, at 325.

In determining whether summary judgment is proper, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor; however, the court need not afford any weight to “conclusory allegations, improbable inferences, and unsupported speculation.” *Pedicini v. United States*, 480 F. Supp.2d 438, 450 (D. Mass. 2007). The Court should ignore bald assertions and mere speculation as well as allegations “which have been conclusively contradicted by … concessions or otherwise.” *Chongris v. Bd. Of Appeals of Andover*, 811 F.2d 36, 37 (1st Cir. 1987).

## IV. <u>ARGUMENT</u>

### a. **Plaintiff has failed to Exhaust Administrative Remedies Under the Prison Litigation Reform Act, as He Did Not File Any Clinical Grievances Related to Nurse Capoccia’s Care.**

Prior to pursuing a claim under 42 U.S.C. §1983, a prisoner must exhaust administrative remedies. The Prison Litigation Reform Act (hereinafter "PLRA"), provides in pertinent part:

> "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

42 U.S.C. § 1997e(a) (1996). The exhaustion requirement set forth in the PLRA is mandatory. *Casanova v. Dubois*, 289 F.3d 142, 147 (2002). "If the court determines based on the available evidence, and after plaintiff has had an opportunity to respond, that a prisoner-plaintiff has failed to exhaust the administrative remedies available to him, then the court must dismiss the suit without prejudice." *Lawrence v. Virginia Department of Corrections*, 308 F.Supp.2d 709, 716-17 (E.D. Virginia, 2004)(Emphasis added). *See also Wyatt v. Terhune*, 315 F.3d 1108, 119-20 (9th Cir. 2003)("If the district court concluded that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice"); *Booth v. Churner*, 532 U.S. 731, 741 (2001)(holding that § 1983 suit cannot be brought until administrative remedies are exhausted, even if those processes do not allow for the awarding of the particular remedy plaintiff seeks). The exhaustion requirement "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being hauled into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007). Proper exhaustion demands completion of the prison's administrative review process, including all levels thereof, in accordance with the deadlines and other procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

In *Lawrence*, a state inmate/plaintiff filed a § 1983 claim against Virginia Department of Correction officials, as well as prison medical staff, for alleged Eighth Amendment violations. *Id.*, at 712. The court dismissed the claims of both the DOC officials, as well as the prison medical staff because, in both instances, the plaintiff failed to exhaust his administrative remedies. Cases of similar circumstance can be found through the federal circuits. [1]

Mr. Washington was, at all relevant times, an inmate in the custody of the Massachusetts DOC residing at SBCC and thus was bound to comply with the requirements set forth in the PLRA. The medical clinical grievance system is the appropriate mechanism by which an inmate can express concern related to health services provided within SBCC.

Here, there is no evidence to support that Mr. Washington exhausted all of his administrative remedies related to the care and treatment provided by R.N. Capoccia on

[1]In *Patel v. Fleming*, 415 Fed. 1105 (2005), (the inmate/plaintiff's suit changing conditions of confinement under section 1983 was dismissed under § 1997e(a) because the inmate did not submit an administrative remedy request within 20 days of the incident and therefore did not exhaust administrative remedies); (Inmate's § 1983 claim dismissed for failure to exhaust administrative remedies, where he alleges he was denied necessary medical treatment, but did not first challenge this alleged deprivation through administrative means, as required by § 1997e(a), *Overton v. Claussen*, 65 F. Supp. 2d, 1165, (1999)); (Inmate's § 1983 abuse claim against prison mental health counselor and others is dismissed without prejudice pursuant to § 1997e(a), even though it appears that he filed some sort of complaint with legal services office, where he was not shown any compliance with grievance procedure outlined in standard operating procedures, *Dillard v. Jones*, 89 F. Supp. 2d, (2002)); (Dismissal was mandatory, where prisoner failed to exhaust available administrative remedies, even though the prisoner attempted to overcome exhaustion requirement by insisting that prisoner never received copy of handbook and, therefore, was unaware of procedure set forth for filing grievance – however, there was no indication that prisoner had made any effort to submit any form of written complaint, *Floyd v. Shelby County*, 197 F. Supp. 2d 1101 (2001)); (As inmate made no attempt to initiate and follow to end prescribed grievance procedures, and inmate was obliged to exhaust administrative procedures under § 1997e(a) and did not, the Eighth Amendment claim should have been dismissed due to failure to satisfy exhaustion requirement, *Hock v. Thipedeau*, 245 F. Supp. 2d 451 (2003)); (Claim against prison warden for violation of Eighth Amendment was subject to dismissal because prisoner failed to file grievance pursuant to procedures set forth by the prison and, thus, he failed to exhaust his administrative remedies as required by § 1997e(a), *McCray v. Williams*, 357 F. Supp. 2d 774 (2005).

January 24, 2020. Mr. Washington failed to submit any grievances regarding the medical assessment and care provided to him on the morning of January 24, 2020, Mr. Washington has failed to comply with the requirements of the PLRA, and his claims against R.N. Capoccia fail as a matter of law. Mr. Washington's failure to comply with the requirements of the PLRA were addressed in R.N. Capoccia's Motion to Dismiss, which this Honorable Court denied without prejudice and specifically noted that appropriate arguments could be raised again at summary judgement on a more fully developed factual record. Dkt. No. 192. Discovery is now complete, and there remains no evidence that Mr. Washington exhausted his administrative remedies related to R.N. Capoccia's care and treatment of Mr. Washington on January 24, 2020. Mr. Washington's failure to comply with the PLRA is dispositive, and his claim against R.N. Capoccia fails as a matter of law.

While Mr. Washington filed a Medical/Mental Inmate Grievance Form on January 25, 2020, said grievance form makes no mention of R.N. Capoccia, Mr. Washington's interaction with R.N. Capoccia on January 24, 2020, or R.N. Capoccia's assessment of Mr. Washington on that date. Furthermore, Mr. Washington submitted a DOC institutional grievance form on January 30, 2020, which did not reference or contain any complaints regarding R.N. Capoccia's care of Mr. Washington on the morning of January 24, 2020. While Mr. Washington submitted grievances pertaining to other aspects of his allegations contained in the Amended Complaint, there is no evidence that he submitted grievances pertaining to the allegedly deficient care rendered to Mr. Washington on January 24, 2020. It is undisputed that Mr. Washington was aware of the grievance process, as he availed himself to both the health system grievance process and the DOC institutional

grievance process in the days following January 24, 2020. Yet, as noted above, the grievances submitted by Mr. Washington make no reference to R.N. Capoccia, any assessment with R.N. Capoccia, or any complaints regarding the adequacy of any medical assessment and care.

Even had Mr. Washington's January 25, 2020 grievance addressed the care rendered by R.N. Capoccia, which the Defendant denies, Mr. Washington did not fully exhaust his administrative remedies as required by the PLRA. Mr. Washington's January 25, 2020 grievance was partially denied on February 10, 2020. As clearly and unequivocally stated on the grievance decision, Mr. Washington had 10 working days to file an appeal. However, Mr. Washington did not file an appeal. As such, Mr. Washington failed to exhaust administrative remedies as required by the PLRA, and his claim against R.N. Capoccia fails as a matter of law.

### b. Plaintiff's Claims Against R.N. Capoccia Under the 8th Amendment of the United States Constitution Fail as a Matter of Law.

To establish that medical mistreatment constitutes a constitutional violation, a plaintiff must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Miranda v. Munoz*, 770 F.2d 255, 259 (1st Cir. 1985), quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In *Estelle*, the Supreme Court articulated the standard to be applied to a claim by a prisoner that his constitutional rights were violated due to a failure to provide adequate medical services:

> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an 'unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.' Thus, a complaint, that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts of omissions

> sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards' of decency in violation of the Eighth Amendment.
>
> *Estelle*, 429 U.S. at 105-106.

The Supreme Court later emphasized that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). *Farmer* thus equates deliberate indifference with criminal recklessness.

As illustrated by both the holding in *Farmer* as well as the principal case law, in the context of §1983 claims, courts have applied the standard enunciated in *Estelle* strictly and have defined "deliberate indifference" narrowly. *See e.g., Ferranti v. Moran*, 618 F.2d 888 (1st Cir. 1980); *Layne v. Vinzant*, 657 F.2d 468 (1st Cir. 1980). In *Ferranti*, the Court held that where medical attention was given to an inmate, disagreement as to the appropriate course of medical treatment or the source of treatment did not constitute "deliberate indifference" and as such was not actionable as a constitutional violation. *Ferranti*, 618 F.2d at 890. Similarly, in *Layne*, the Court held that even substandard medical attention would not constitute a cognizable claim absent a showing of "deliberate indifference" to the serious medical needs of an inmate. *Layne*, 657 F.2d at 474. To prove "deliberate indifference" to a "serious medical need,", a plaintiff must show "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more

than [gross] negligence." *Townsend v. Jefferson Cnty*., 601 F.3d 1152, 1158 (11th Cir. 2010).

Even if a Plaintiff satisfied the first prong of the *Estelle* standard by showing a "serious medical need," something more than negligent treatment must then be proven to sustain Plaintiff's burden to establish a denial of due process under a deliberate indifference theory. To establish deliberate indifference, the Plaintiff must also prove that the Defendant had a culpable state of mind and intended to wantonly inflict pain. *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991).

i. **Plaintiff Cannot Meet His Burden of Proof in Establishing that a Serious Medical Need Went Unmet.**

In order to succeed on his deliberate indifference claim, Mr. Washington must show "[f]irst, the deprivation alleged must be, objectively, sufficiently serious…" *Burell v. Hampshire Cnty*., 307 F.3d 1, 8 (1st Cir. 2002). Courts have been historically reluctant to second guess medical decisions in the context of cases alleging constitutional violations. "Where, as here, 'a prisoner received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *See also Layne v. Vinzant*, 657 F.2d 468, 473 (1st Cir. 1981) ("The right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice.").

Clinical medical decisions, such as whether or not further assessment and evaluation are warranted, do not represent cruel and unusual punishment. *Estelle*, 429 U.S. at 107-108. Allegations of disagreement over the appropriate course of treatment,

such as a dispute over an exercise of professional judgment, fall short of evidencing a constitutional violation. *Id*. at 106. A "serious medical need" does not necessitate that an inmate receive the best possible treatment. *United States v. DeCologero*, 821 F.2d 39, 42 (1st Cir. 1987). Nor does a delay in treatment, where there is no evidence that an inmate's injuries were exacerbated amount to a constitutional violation. *See Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990). Rather, a serious medical need is "one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Perry v. Roy*, 782 F.3d 73, 78-79 (1st Cir. 2015).

In analyzing whether a defendant acted with deliberate indifference in the context of the deployment of a chemical agent, the Court may consider whether the inmate appeared to be in distress after the application, whether the inmate sought medical treatment for irritation from the agent, and whether the inmate complained about the care in submitting his grievance. *See Schultz v. Doher*, 335 F.Supp. 3d 177 (D. Mass 2018). Further, when an inmate is examined by medical staff, his needs inquired of, and the conclusion that no further care is required, the Plaintiff cannot meet the high burden of proving deliberate indifference. *See Perry v. Dickhaut*, 125 F.Supp. 3d 285, 300(D. Mass 2015). The same is true when the Plaintiff presents no evidence that any of his complaints worsened over time or caused long-lasting injuries. *See id*.

Here, Mr. Washington cannot establish that a serious medical need went unmet. R.N. Capoccia was called to the housing unit on the morning of January 24, 2020 to conduct a restraint check on Mr. Washington. At the time R.N. Capoccia evaluated Mr. Washington on January 24, 2020, he was a fully licensed registered nurse who had previously worked as a paramedic and a medic in the United States Army. R.N. Capoccia

had been trained in the assessment of respiratory function, and provided treatment to those demonstrating respiratory distress. On the morning of January 24, 2020, R.N. Capoccia was called to the housing block to conduct a restraint check on an unidentified inmate. R.N. Capoccia was not informed that he was being summoned to perform a restraint check specifically on Mr. Washington, nor was he informed of the use of force the night prior in Mr. Washington's vicinity. R.N. Capoccia did not perceive the scent of OC spray in Mr. Washington's vicinity when he performed the assessment, nor did Mr. Washington inform him OC spray was used in his vicinity.

Upon arrival in the housing unit, R.N. Capoccia conducted an assessment of Mr. Washington, documenting that Mr. Washington was in no acute distress and that Mr. Washington had no medical complaints at that time. Mr. Washington was able to converse in a clear voice and in complete sentences, further factoring into R.N. Capoccia's assessment related to Mr. Washington's respiratory function.

Here, the record reflects that R.N. Capoccia assessed and evaluated Mr. Washington on the morning of January 24, 2020, and based on his education, training, and clinical experience, exercised his clinical judgment in determining that Mr. Washington did not require further care for any respiratory related symptoms or otherwise.

Furthermore, Mr. Washington's claims that R.N. Capoccia was deliberately indifferent in failing to provide him with his KOP inhaler fail. Access to inmate property, such as a KOP inhaler, is a function of DOC security staff, and was not within the purview of R.N. Capoccia's responsibilities or capabilities. Nonetheless, even though Mr. Washington's KOP inhaler had been taken from him, he was never denied access to

alternative forms of treatment for his asthma. Had Mr. Washington demonstrated symptoms indicating that further asthma treatment was necessary, such treatment could have been provided via a one-time use inhaler or nebulizer treatment. The use of force on January 23, 2020 was directed at another inmate, Mr. Washington's cellmate. Mr. Washington remained on the top bunk, during the extraction of his cellmate, including when the OC spray was deployed directly onto cellmate. *See* Exhibit C. However, in the event that Mr. Washington experienced an asthma exacerbation as a result of being in the vicinity of OC spray, other treatment modalities were available to him should he have requested them, or had they been deemed clinically necessary. Mr. Washington had made use of such alternatives when his KOP inhaler had been confiscated on prior occasions. Most importantly, R.N. Capoccia knew none of this information. He was requested to complete a restraint check on an unknown individual. When he appeared at Mr. Washington's cell, he was in no distress and he did not advise R.N. Capoccia he was in distress, needed his inhaler or any medical complaint whatsoever. There can be no deliberate indifference when there is no complaint by which someone ignored.

Additionally, Mr. Washington is familiar with and has utilized the Sick Call Request system for requesting medical care. In fact, Mr. Washington submitted several such requests on the days following January 24, 2020. These requests include Sick Call Request submissions on January 25, 2020; January 27, 2020; and January 28, 2020. Mr. Washington's January 25, 2020 Sick Call Request reported anxiousness due to the facility lockdown. The January 27, 2020 Sick Call Request pertained to Mr. Washington's eyeglasses. Via the January 28, 2020 Sick Call Request Mr. Washington reported left-sided numbness as a result of being tased on January 21, 2020. None of these requests

made any mention of R.N. Capoccia, or any of the symptoms that Mr. Washington alleges resulted from R.N. Capoccia's care on January 24, 2020, including respiratory symptoms, asthma exacerbation, difficulty breathing, loss of sleep, headache, or laceration. None of these Sick Call Requests state that Mr. Washington advised R.N. Capoccia he was in respiratory distress, needed his inhaler, or any complaint whatsoever. There is no evidence whatsoever that Mr. Washington was in respiratory distress, needed his inhaler or that he advised R.N. Capoccia of the same.

The record compiled is clear; R.N. Capoccia evaluated Mr. Washington on the morning of January 24, 2020, and did not observe any indicia that Mr. Washington required additional evaluation or care. R.N. Capoccia provided medical attention to Mr. Washington and used his clinical judgment in determining that further evaluation or treatment was not necessary. As stated in *Layne* and *Ferranti*, when there is evidence that a prisoner received some medical attention, Courts are hesitant to second guess the clinical judgements of those involved in the care at issue, and the Court should decline to do so in this matter. Here, R.N. Capoccia determined Mr. Washington needed no further treatment and Mr. Washington disagrees. As has been done in prior cases, the Court should not second guess R.N. Capoccia's nursing judgment.

Although Mr. Washington may not agree with R.N. Capoccia's clinical decisions, the evidence is clear, R.N. Capoccia gave Mr. Washington medical attention and performed an assessment that included an assessment of Mr. Washington's level of distress, medical complaints (none), and respiratory status, and his decision that Mr. Washington did not require further care was based on sound clinical judgment. While Mr. Washington's claims, if accepted by a jury, *may* make out a claim of negligence, which

R.N. Capoccia expressly does not concede, they cannot sustain Mr. Washington's claims sounding in a deliberate indifference theory as Mr. Washington has failed to produce factual evidence to establish that an objectively serious medical need went unmet. Certainly, the evidence in the record could not support a finding that R.N. Capoccia's conduct rose above the level of criminal recklessness, as required to sustain a claim sounding in deliberate indifference. Therefore, Plaintiff's claim under 42 U.S.C. §1983 against R.N. Capoccia fails as a matter of law.

**ii. Plaintiff Cannot Meet His Burden in Establishing that R.N. Capoccia Disregarded a Serious Medical Need with a Culpable Mental State.**

Even if Mr. Washington were able to establish that an objectively serious medical need went unmet, he is unable to meet his burden with respect to the second prong required to succeed on a claim alleging deliberate indifference. "[S]econd, the plaintiff must show that prisons officials possessed a sufficiently culpable state of mind, namely one of 'deliberate indifference' to an inmates health or safety." *Burrell*, 307 F.3d, at 8. This prong has two further subparts. "The 'deliberate' part of 'deliberate indifference' was defined by the Supreme Court as requiring that a prison official subjectively 'must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S., at 837. Regarding "indifference," "[p]rison officials cannot be indifferent, of course, if they are unaware of the risk. But even if they are aware, they cannot be deliberately indifferent if they responded reasonably to the risk, even if the harm ultimately was not avoided. *Id.*, at 845.

As such, to prevail on a claim of deliberate indifference based on allegedly insufficient medical care, "a plaintiff must satisfy both a subjective and objective inquiry."

*Leavitt v. Corr. Med. Servs., Inc.*, 645 F.3d 484, 497 (1st Cir. 2011) ("To succeed on an Eighth Amendment claim based on inadequate or delayed medical care, a plaintiff must satisfy both a subjective and objective inquiry: he must show first, 'that prison officials possessed a sufficiently culpable state of mind, namely one of 'deliberate indifference' to an inmate's health or safety," and second, that the deprivation alleged was 'objectively, sufficiently serious."). Notably, *Farmer* thus equates deliberate indifference with criminal recklessness. Similarly, in *Layne*, the court held that even substandard medical treatment would not constitute a cognizable claim absent a showing of "deliberate indifference" to the serious medical needs of an inmate. *Layne,* 657 F.2d at 474. "Where there is no evidence of treatment so inadequate as to shock the conscience, let alone that any deficiency was intentional or evidence of acts or omissions so dangerous (with respect to health or safety) that a defendant's knowledge of a large risk can be inferred" summary judgment is appropriate. *Torraco v. Maloney*, 923 F.2d 231, 234 (1st Cir. 1991).

Plaintiff cannot meet the extremely high burden to establish that the Defendant, R.N. Capoccia acted with the requisite culpable mental state in order to sustain a claim sounding in deliberate indifference. Plaintiff must establish that the specific acts or omissions of each Defendant, relative to Mr. Washington's medical treatment, constituted "an unnecessary and wanton infliction of pain" or were "repugnant to the conscience of mankind." *Estelle*, 429 U.S. at 106. Unless Plaintiff proves that R.N. Capoccia acted with a "culpable state of mind and intended to inflict pain" he cannot meet his burden under a deliberate indifference theory. *DesRosiers*, 949 F.2d at 19. As such, Plaintiff's claim under 42 U.S.C. §1983 against R.N. Capoccia fails as a matter of law.

Here, the record is clear as to the lack of any evidence that R.N. Capoccia acted with the requisite culpable mental state. Plaintiff cannot produce any evidence showing that R.N. Capoccia knew of and subsequently disregarded an allegedly serious medical need in order to inflict pain and suffering. As Plaintiff cannot meet this burden based on the evidence produced, summary judgment is appropriate.

R.N. Capoccia was not advised of who he was being called to perform the restraint check on when he was summonsed on the morning of January 24, 2020. He was not advised that a use of force had occurred the evening prior, where Mr. Washington was in the proximity to OC spay. R.N. Capoccia did not discern an odor of OC spray when he conducted the restraint check on Mr. Washington. Further, in his assessment of Mr. Washington, Mr. Washinton was able to speak in a clear voice and in clear sentences, did not report any medical concerns, did not report that OC spray was used in the vicinity, and did not appear to be in acute distress.

Additionally, Mr. Washington has not established with any evidence, that he experienced any serious injuries which required further treatment. Indeed, the Sick Call Requests forms submitted by Mr. Washington in the days after January 24, 2020 are silent as to any respiratory symptoms or asthma exacerbations.

Mr. Washington offers no evidence to support the claims that R.N. Capoccia acted with the subjectively culpable mental state required to maintain a claim for deliberate indifference. Nowhere in the record is there any evidence that R.N. Capoccia intended to wantonly inflict pain during his involvement in Mr. Washington's care. Rather, as demonstrated by the medical records and deposition testimony, R.N. Capoccia responded to Mr. Washington's cell, observed and assessed his condition, and came to

the clinical decision that there was no need for further care. While Plaintiff may perceive R.N. Capoccia's care as deficient, such perceived deficiencies do not implicate a culpable mental state by R.N. Capoccia. At most, Plaintiff makes out claims sounding in ordinary negligence, which the Defendant adamantly denies. This is supported by the fact that Plaintiff's own internal medicine expert has not opined that R.N. Capoccia acted with deliberate indifference. Notably absent from the record is any evidence that R.N. Capoccia intended to cause harm to Mr. Washington or acted in a manner equivalent to criminal recklessness. As such, Plaintiff's claims sounding in a deliberate indifference theory as to R.N. Capoccia fail as a matter of law.

## VI. CONCLUSION

The Defendant, Christian Capoccia, R.N., is entitled to summary judgment as the Plaintiff, Derrick Washington, is unable to show that R.N. Capoccia was deliberately indifferent to a serious medical need in violation of Mr. Washington's Eighth Amendment Rights.

Respectfully submitted,
The Defendant,
CHRISTIAN CAPOCCIA, R.N.,
By His Attorneys,

*/s/ Matthew D. Medoff*

Lori K. Vaulding, BBO #678404
Matthew D. Medoff, BBO #706871
Adler│Cohen│Harvey│Wakeman│Guekguezian, LLP
2 Oliver Street, 10th Floor, Suite 1005
Boston, MA 02109
(617) 423-6674
lvaulding@adlercohen.com
mmedoff@adlercohen.com

Dated: November 13, 2026

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DERRICK WASHINGTON,<br>Plaintiff,<br><br>v.<br><br>NURSE CHRISTIAN CAPOCCIA, et al.,<br><br>Defendants. | C.A. NO: 1:23-cv-10063-MRG |

**DEFENDANT'S RULE 7.1**
**CERTIFICATION**

Pursuant to Local Rule 7.1(a)(2), I hereby certify that I, Matthew D. Medoff, Counsel for the Defendant, Christian Capoccia, R.N., conferred with counsel for the plaintiff and counsel for the Department of Corrections prior to the filing and service of this Memorandum and were unable to resolve the issues within. Specifically, on November 13, 2026, I conferred with counsel for the plaintiff and Counsel for the Department of Corrections regarding the instant Memorandum of Law of the Defendant, Nurse Christian Capoccia, in support of Motion Summary Judgment.

Respectfully submitted,
The Defendant,
CHRISTIAN CAPOCCIA, R.N.,
By His Attorneys,

*/s/ Matthew D. Medoff*

Lori K. Vaulding, BBO #678404
Matthew D. Medoff, BBO #706871
Adler│Cohen│Harvey│Wakeman│Guekguezian, LLP
2 Oliver Street, 10th Floor, Suite 1005
Boston, MA 02109
(617) 423-6674
lvaulding@adlercohen.com
mmedoff@adlercohen.com

**CERTIFICATE OF SERVICE**

I, Matthew D. Medoff, counsel for the defendant, Christian Capoccia, hereby certify a copy of the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 13, 2026.

*/s/ Matthew D. Medoff*
Matthew D. Medoff, BBO #706871
mmedoff@adlercohen.com