**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DERRICK WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>MASSACHUSETTS DEPARTMENT OF CORRECTIONS, et al.,<br><br>Defendants. | Civ. Case No. 1:23-cv-10063 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**TABLE OF CONTENTS** .......... i

**INTRODUCTION** .......... 1

**RELEVANT FACTS** .......... 2

**LEGAL STANDARD** .......... 3

**ARGUMENT** .......... 3

A. Mr. Washington's asthma is a physical impairment. .......... 4

B. Mr. Washington's asthma substantially limited his breathing and sleeping at the time of the discriminatory conduct. .......... 5

C. Mr. Washington has a record of asthma substantially limiting his major life activities. .......... 7

**CONCLUSION** .......... 8

## INTRODUCTION

This case revolves around three incidents during which Massachusetts Department of Corrections ("MDOC") officers impermissibly used force against Plaintiff Derrick Washington. Relevant here, Mr. Washington sued MDOC under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA") for disability discrimination during two of those incidents, on January 23–24, and March 5, 2020. *See* ECF No. 126, First Amended Complaint ("FAC"), Counts VII & VIII. This is because MDOC used chemical agents despite knowing that Mr. Washington was asthmatic and contraindicated for their use.

Mr. Washington moves for partial summary judgment on those claims. The undisputed facts establish that Mr. Washington is a qualified individual with a disability under the ADA and RA. *See* 42 U.S.C. § 12132; 29 U.S.C. § 794. Mr. Washington has long been diagnosed with asthma, a physical impairment. His asthma interferes with his respiratory functions, as well as the major life activities of breathing and sleeping. Asthma causes shortness of breath, so Mr. Washington routinely uses an inhaler to help him breathe. After the March 5 incident, he received a nebulizer treatment to address his symptoms. The asthma also causes Mr. Washington to wheeze, frequently interrupting his sleep. These symptoms predate the use of chemical agents in this case, were exacerbated by them, and continue to this day. So under either of two tests for determining whether the impairment rises to the level of a disability, Mr. Washington wins: he had an "actual disability" at the time of the discrimination, and a "record of" disability long predating it, because his asthma substantially limited his major life activities. Mr. Washington is entitled to summary judgment on this discrete point.

## RELEVANT FACTS

Plaintiff Derrick Washington has had asthma since childhood, relying on daily access to an albuterol inhaler to manage his symptoms. Statement of Undisputed Material Facts ("SUMF") ¶¶ 7–8. For as long as he has been incarcerated at the Massachusetts Department of Correction ("MDOC") (since 2007), MDOC has documented and treated his asthma. *Id.* ¶¶ 5, 9. Mr. Washington's asthma hampers his respiratory function, causing shortness of breath and wheezing. *Id.* ¶¶ 18, 20-21. Mr. Washington uses a "Keep-On-Person" ("KOP") albuterol inhaler multiple times a day to help him breathe. *Id.* ¶¶ 11–12. The wheezing also disrupts Mr. Washington's sleep. *Id.* ¶ 19-20. At times, Mr. Washington's asthma symptoms (including the nighttime wheezing) disturb his sleep approximately five times per week. *Id.* ¶ 20.

Mr. Washington has had these experiences for years, including at the time of the Use of Force incidents at issue in this case (in January and March 2020). *Id.* ¶ 9–11, 14, 25-26, 29–31; *see also id.* ¶ 21 (relying medical records that document Mr. Washington's shortness of breath in 2019 and 2020). In fact, in early January 2020, Mr. Washington reported worsening asthma symptoms (requiring an inhaler five or six times per day) and MDOC medical staff prescribed a maintenance inhaled corticosteroid treatment. *Id.* ¶¶ 14–15; *see also id.* ¶ 13 (medical personnel's goal was to reduce Mr. Washington's asthma symptoms so he needed an inhaler only twice per day). On January 22, 2020, Mr. Washington requested his KOP inhaler after MDOC officers confiscated his property; medical staff told him that they would address any breathing difficulties with nebulizer treatments until his inhaler was replaced. *Id.* ¶¶ 16–17.

The next day, Defendant Deschene deployed OC spray, a chemical agent, into Mr. Washington's cell during a Use of Force incident, even though Mr. Washington warned him he was asthmatic. *Id.* ¶¶ 22, 24–25. Shortly afterward, Mr. Washington filed a grievance explaining

that he suffered consecutive asthma attacks after the January 23 incident. *Id.* ¶ 26. Still, during a planned Use of Force on March 5, 2020, Defendant Rayner sprayed OC into Mr. Washington's cell—even though Mr. Washington was contraindicated for chemical agent exposure and he warned MDOC officers about his asthma. *Id.* ¶¶ 27–29. And predictably, after this incident, Mr. Washington suffered from shortness of breath, necessitating a nebulizer treatment. *Id.* ¶ 30.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Penate v. Sullivan*, 73 F.4th 10, 17 (1st Cir. 2023). A "genuine" dispute exists only where "the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). While courts must consider the record and draw reasonable inferences in favor of the non-movant, they "need not credit 'conclusory allegations, improbable inferences, and unsupported speculation.'" *Dixon-Tribou v. McDonough*, 86 F.4th 453, 458 (1st Cir. 2023) (quoting *Lahens v. AT&T Mobility P.R., Inc.*, 28 F.4th 325, 333 (1st Cir. 2022) (quoting *Pruco Life Ins. Co. v. Wilmington Tr. Co.*, 721 F.3d 1, 6–7 (1st Cir. 2013))). The nonmoving party cannot "rest upon mere allegation or denials," but must instead "present affirmative evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986).

## ARGUMENT

As a threshold matter, a plaintiff seeking relief under Title II of the ADA and Section 504 of the RA must establish that he is a "qualified individual with a disability." *See* 42 U.S.C. § 12132;

29 U.S.C. § 794.[1] The definition of disability must be "construed in favor of broad coverage of individuals," "to the maximum extent permitted by the terms" of the statute. *Mancini v. City of Providence by & through Lombardi*, 909 F.3d 32, 40 (1st Cir. 2018) (quoting 42 U.S.C. § 12102(4)(A)).

Relevant here, there are two ways to prove a disability: by showing that a physical or mental impairment substantially limited "one or more major life activities at the time of the allegedly discriminatory action ('actual disability') or some time prior to that ('record of disability')." *Mancini*, 909 F.3d at 45; *see also Washington v. Massachusetts Dep't of Corr.*, No. 1:23-CV-10063-MRG, 2026 WL 2030849, at *2 (D. Mass. July 14, 2026). Under either test, the undisputed facts establish Mr. Washington's qualifying disability. The facts show that Mr. Washington's asthma impaired his respiratory function and substantially limited his ability to breathe and sleep, both at the time of the challenged Uses of Force (January to March 2020) and for years preceding those incidents.

**A. Mr. Washington's asthma is a physical impairment.**

Mr. Washington was diagnosed with asthma as a child, had asthma at the time of the challenged Uses of Force, and still has asthma today. SUMF ¶¶ 7, 9, 13-14, 25–26, 28–29, 31. Asthma is a physical impairment under the ADA and RA. A physical impairment includes "[a]ny physiological disorder or condition, . . . affecting one or more body systems, such as: . . . respiratory." 28 C.F.R. § 35.108(b)(1)(i). Courts routinely find that asthma qualifies as a physical impairment. *See Peeples v. Clinical Support Options, Inc.,* 487 F. Supp. 3d 56, 62 (D. Mass. 2020) (finding that "[p]laintiff's moderate asthma, as described in the complaint, qualifies as an

[1] The ADA and RA claims are "subject to the same analysis." *Smith v. Pub. Schs. of Northborough-Southborough*, 133 F. Supp. 3d 289, 295 (D. Mass. 2015) (citing *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004)).

impairment"); *Lima v. Middlesex Sheriff's Office*, No. CV 19-11372-RGS, 2020 WL 823088, at *5 (D. Mass. Feb. 19, 2020) (finding that the plaintiff's occupational asthma "suffices to allege an impairment"); *see also Abernathy v. TriHealth G LLC*, No. 1:22-CV-624, 2025 WL 689333, at *12 (S.D. Ohio Mar. 4, 2025) (finding, at summary judgment, that "[a]sthma constitutes a physical impairment.")

Here, too, Mr. Washington's asthma qualifies: it negatively impacts his respiratory functioning by causing wheezing and shortness of breath. SUMF ¶ 18, 20-21. *See also Washington*, 2026 WL 2030849, at *3 (concluding at the pleading stage that, "[a]s alleged in the FAC, Plaintiff's asthma qualifies as an impairment").

**B. Mr. Washington's asthma substantially limited his breathing and sleeping at the time of the discriminatory conduct.**

The real question at summary judgment is whether "the evidence ultimately establishe[d] that [Mr. Washington's] asthma substantially limits a major life activity," *Washington*, 2026 WL 2030849, at *3, at the time of the discriminatory incidents (January to March 2020), *Mancini*, 909 F.3d at 45. It did.

The term "substantially limits" is not demanding and simply asks for "a comparison between the plaintiff's limitations and those of the majority of people in the general population." *Mancini*, 909 F.3d at 42. Major life activities include "sleeping" and "breathing," § 12102(2)(A), as well as the operation of "major bodily function[s]" like "respiratory . . . functions," *id.* § 12102(2)(B). And where, as with asthma, the physical impairment may be episodic, it "is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D); 28 C.F.R. § 35.108(d)(1)(iv). "The Court should also consider the impairment in its untreated form (e.g., an asthma attack without an inhaler)." *Abernathy*, 2025 WL 689333, at *12 (citing 42 U.S.C § 12102(4)(E)(i)).

The undisputed facts show that Mr. Washington's asthma interfered with his breathing during the relevant time. On January 7, 2020, Souza-Baranowski Correctional Center ("SBCC") medical personnel evaluated Mr. Washington for worsening asthma; he had been using his inhaler five or six times per day to help him breathe. SUMF ¶ 14. As a result, medical staff escalated his treatment and prescribed a maintenance inhaled corticosteroid. *Id.* ¶ 15. Later that month, MDOC officers took Mr. Washington's inhaler from him, and on January 22, medical staff told him that until his inhaler was replaced, they would give him nebulizer treatments to address his breathing difficulties as needed. *Id.* ¶¶ 16–17. During that time, Mr. Washington no longer had access to any inhaler to treat his worsening symptoms, which had been managed with five to six inhalations per day until that point. Before MDOC officers used chemical agents (on January 23 and March 5, 2020), Mr. Washington told them that he was asthmatic. *Id.* ¶¶ 25, 29. And during both incidents, the chemical agents triggered or exacerbated Mr. Washington's asthma symptoms. *Id.* ¶ 26 (discussing January 30, 2020 grievance where Mr. Washington complained of "consecutive asthma attacks" after the January 23 incident); *id.* ¶ 30 (describing shortness of breath during March 5 incident). Mr. Washington needed a nebulizer treatment to manage his symptoms after the March 5 incident. *Id.*

Courts faced with similar facts have found that asthmatic plaintiffs were entitled to judgment as a matter of law. The Sixth Circuit affirmed a jury finding that the plaintiff's asthma "constitutes a disability under the ADA's individualized-assessment framework." *Edwards v. Shelby Cnty., Tenn.*, 159 F.4th 489, 505 (6th Cir. 2025). It found that there was enough evidence to support the finding that the plaintiff's asthma "imposes real limitations" on her "ability to breathe [and] sleep," including that "exposure to common irritants . . . predictably provoke[] asthma attacks, forcing her to rely on her rescue inhaler." *Id.* Likewise, in *Abernathy*, the court

granted summary judgment for the plaintiff where she explained that when an asthma attack hits, it "significantly impacts her ability to breathe." *Abernathy*, 2025 WL 689333, at *12 (cleaned up). The same things are true for Mr. Washington: his asthma is so severe that he relies on an inhaler several times a day to help him breathe, and exposure to OC spray (like exposure to other "common irritants") "predictably" triggers asthma attacks. This is enough to show that Mr. Washington's asthma substantially limits his breathing as compared to the general population, entitling him to ADA and RA protection. *Edwards*, 159 F.4th at 505; *Abernathy*, 2025 WL 689333, at *12. Summary judgment is appropriate.

**C. Mr. Washington has a record of asthma substantially limiting his major life activities.**

"Actual disability" and "record of" disability are "two sides of the same coin." *Sutherland v. Peterson's Oil Serv., Inc.*, 126 F.4th 728, 739–40 (1st Cir. 2025) (quoting *Mancini*, 909 F.3d at 40). The "record of" test "may be satisfied by a showing that the plaintiff had a disability in the past," regardless of whether he suffered from that disability at the time of the discriminatory conduct. *Id.* In other words, Mr. Washington can additionally satisfy his burden by showing a historical record of asthma substantially limiting his major life activities.

Again, these facts are not in dispute. Mr. Washington's asthma has substantially limited his breathing and sleeping for years. MDOC has documented and treated Mr. Washington's asthma since the beginning of his incarceration. SUMF ¶¶ 9–10. Mr. Washington's asthma causes intermittent shortness of breath throughout the day. *Id.* ¶ 21. As part of his ongoing asthma management, Mr. Washington has relied on an albuterol rescue inhaler, which he used multiple times per day to manage his symptoms. *Id.* ¶ 11–13. Because Mr. Washington needs the inhaler multiple times a day to help him breathe, MDOC medical personnel gave him a KOP inhaler so that he always has immediate access to it. *Id.* ¶ 12. Mr. Washington's asthma also caused him to wheeze, which regularly interrupted his sleep, sometimes up to five nights a week. *Id.* ¶¶ 18–20.

As with "actual disability," these facts show as a matter of law that Mr. Washington has a "record of" a disability entitling him to summary judgment. *See Edwards*, 159 F.4th at 505; *Abernathy*, 2025 WL 689333, at *12.

**CONCLUSION**

For these reasons, this Court should find that Mr. Washington's asthma renders him a qualified individual with a disability and grant partial summary judgment on that point.

Dated: November 13, 2026

*/s/ Sumayya Saleh*
Derrick Luster (*pro hac vice*)
Sumayya Saleh (*pro hac vice*)
RIGHTS BEHIND BARS
1800 M Street NW FNT 1 #33821
Washington, D.C. 20033
(t) +1 (202) 455-4399
derrick@rightsbehindbars.org
sumayya@rightsbehindbars.org

Sabina Mariella (*pro hac vice*)
John Lyons (BBO No. 569500)
Katherine Zhang (*pro hac vice*)
Julia Bevins (*pro hac vice*)
Jayden Rush (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
(t) +1 (212) 446 2300
(f) +1 (212) 446 2380
smariella@bsfllp.com
jlyons@bsfllp.com
kzhang@bsfllp.com
jrush@bsfllp.com

*Counsel for Plaintiff Derrick Washington*