# Exhibit 1

nsferring Cone

[redacted]

Title Bree Nicholson RN

PTION REEN MCI Cedar Junction

Current MH/ Ra h on face

Self report asthma; allergy to seafood/fish

Current ications Treatment Diet

albuterol (he has)

uires an immediate

✓ General Pop.

✓ Routine Sick C

answers questions appropriate

Rashes / Infestations Rash on face R/t use of razor

Deformities: Acute / Chronic none obvious/reported

T 98.8 P 77 R 16 B/P 144/82 Wt 185

reatment / Access Information Giv

A: Medically cleared at Huntonic

Gosswal 3.13.07 L. GOSSWAR MD

mmylian RN

Receiving N natu

CONFIDENTIAL SUBJECT TO
PROTECTIVE ORDER

# Exhibit 2

Department Corre[illegible]ion Management

| Inmate Name: Wuhington | Inmate # W89316 | | |
|---|---|---|---|

Circle

[redacted]

month 4 Discharged (disease)

| Provider Signature: William Kurzweil |
|---|

# Exhibit 3

**Type of Assessment:**

| | | |
|---|---|---|
| | | |

[redacted]

| Name: | Washington |
|---|---|

## 9. Assessment: *(As applicable, note adherence to treatment plan, medication profile, results of laboratory/diagnostic tests, and diagnoses.)*

[redacted]

## 10. Plan: *(As applicable: medication changes, laboratory/diagnostic test, immunizations, monitoring/treatment, specialty referrals, short-/long-term goals.)*

[redacted]

## 11. Education / Counseling: *(Check all that apply.)*

[redacted]

## 12. Chronic Disease: *(Check all that apply.)*

[redacted]

## 14. Next Visit: *(As applicable.)*

| | | Chro ic Care: |
|---|---|---|
| | | |

| Provider Signature: | Provider Name / Title: | Date: |
|---|---|---|
| | | |

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

# Exhibit 4

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

# Exhibit 5

EL

In Na : Derrick

Type of Assessment:

[redacted]

1. General Description / Chief Complaint:

[redacted]

2. Personal History: | 4. Review of Systems:

[redacted]

5. REA: (A periodic

[redacted]

ASSESSMENT FORM

D. Washington

**9. Assessm** *(As applicable, plan, profile, laboratory/diagnostic tests, diagnoses.)*

[redacted]

**10. Pla :** *(As applicable: changes, monitoring/treatment, specialty referrals, short-/long-term goals.)*

[redacted]

**12. Ch ni Dise se:** *(Check th t apply.)*

[redacted]

**14. Next Visit:** *(As applicable.)*

| | Chronic Care: |
|---|---|
| ☐ ☐ | |

| Provider Signature: | Provider N / Titl | Date: |
|---|---|---|
| | | |

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

# Exhibit 6

**Type of Assessment:**

**1. General Description / Chief Complaint:**

[redacted]

| 2. Personal History: | 3. Family History: | 4. Review of Systems: |
|---|---|---|
| [redacted] | | |

**5. PREA:** *(At initial and periodic health assessments.)*

[redacted]

[redacted]

Inmate Name: hington

**9. Assessment:** *(As applicable, note adherence to treatment plan, medication profile, results of laboratory/diagnostic tests, and diagnoses.)*

[redacted]

**10. Plan:** *(As applicable: medication changes, laboratory/diagnostic test, immunizations, monitoring/treatment, specialty referrals, short-/long-term goals.)*

[redacted]

**11. Education / Counseling:** *(Check all that apply.)*

[redacted]

**12. Chronic Disease:** *(Check all that apply.)*

[redacted]

| Provider Signature: | Provider Name / Title: | Date: |
|---|---|---|
| | | |

# Exhibit 7

Massachusetts Department of Corrections
*Souza-Baranowski Correctional*
*1 Harvard Road*
*Shirley, MA 01464*

## Medication Order

wellpath

| *Patient Name* | *Patient Number* | *Booking Number* | *Birth Date* | *Date Of Service* |
|---|---|---|---|---|
| WASHINGTON, DERRICK | 2670081 | W89316 | 11/18/1984 | 7/2/2018 |

### Order Overview

**Ordered By:** Kolchinsky, Sarah on 09/23/2018 09:26PM

[redacted]

E-Signed by HIE Services n 09/24/2018 12:24 AM EST



CONFIDENTIAL SUBJECT TO
PROTECTIVE ORDER

# Exhibit 8

**Attachment A**

# USE OF CHEMICAL AGENTS

**Inmate Name:______________________** **Commitment #:__________**

An affirmative response to any of the following shall constitute a contraindication for the use of chemical agents:

YES______ NO________ Asthma or Cardio Obstructive Pulmonary Disease

YES______ NO________ Current acute respiratory infection (i.e., bronchitis, pneumonia).

YES______ NO________ Significant heart disease manifested by frequent angina or recent Myocardial Infarction.

YES______ NO________ Recent hospitalization or medical condition that would preclude the use of force or chemical agent.

YES______ NO________ Open skin lesion or burns

YES______ NO________ Other, please specify below:

________________________

________________________

________________________

________________________

__________________________________________________________

Approving Medical Director's Name (PRINT)

__________________________________________________________

Director's Signature Date Time

******* **All questions must be answered.**

October 2018

# Exhibit 9

Massachusetts Department of Corrections
*Souza-Baranowski Correctional*
*1 Harvard Road*
*Shirley , MA01464*

**Assessment Form**
Massachusetts Department of Correction
Health Services

| Patient Name | Patient Number | Booking Number | Birth Date | Date Of Service |
|---|---|---|---|---|
| DERRICK A WASHINGTON | 2670081 | W89316 | 11/18/1984 | 1/14/2019 |

☐ *Patient refused Assessment*

Type of Health Assessment:
☐ *Initial*
☐ *Periodic*
☐ *Chronic Disease*
☐ ***Appropriate Refusal of Treatment paperwork completed***

Type of Health Assessment:
☐ *Initial*
☐ *Periodic*
☑ *Chronic Disease*
***Complete sections 1-11 and 14***
***Complete sections 1-4 and 6-14***

[redacted]

Orders:

No Applicable Data Found For Patient

**SUBJECTIVE**

[redacted]



CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Massachusetts Department of Corrections
*Souza-Baranowski Correctional*
*1 Harvard Road*
*Shirley , MA01464*

**Assessment Form**
Massachusetts Department of Correction
Health Services

| *Patient Name* | *Patient Number* | *Booking Number* | *Birth Date* | *Date Of Service* |
|---|---|---|---|---|
| DERRICK A WASHINGTON | 2670081 | W89316 | 11/18/1984 | 1/14/2019 |

[redacted]

**OBJECTIVE**

[redacted]

**Physical Examination: (Perform as indicated by personal history and/or chronic disease.)**

[redacted]

Massachusetts Department of Corrections
*Souza-Baranowski Correctional*
*1 Harvard Road*
*Shirley , MA01464*

**Assessment Form**
Massachusetts Department of Correction
Health Services

| Patient Name | Patient Number | Booking Number | Birth Date | Date Of Service |
|---|---|---|---|---|
| DERRICK A WASHINGTON | 2670081 | W89316 | 11/18/1984 | 1/14/2019 |

[redacted]

## ASSESSMENT

Assessment: (As applicable, note adherence to treatment plan, medication profile, results of laboratory/diagnostic tests, and diagnoses.)

[redacted]

## PLAN

Plan: (As applicable: medication changes, laboratory/diagnostic test, immunizations, monitoring/treatment, specialty referrals, short-/long-term goals.)



CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

**Massachusetts Department of Corrections**
*Souza-Baranowski Correctional*
*1 Harvard Road*
*Shirley , MA01464*

**Assessment Form**
**Massachusetts Department of Correction**
**Health Services**

| *Patient Name* | *Patient Number* | *Booking Number* | *Birth Date* | *Date Of Service* |
|---|---|---|---|---|
| DERRICK A WASHINGTON | 2670081 | W89316 | 11/18/1984 | 1/14/2019 |

**Plan: (As applicable: medication changes, laboratory/diagnostic test, immunizations, monitoring/treatment, specialty referrals, short-/long-term goals.)**

[redacted]

**Education / Counseling: (Check all that apply.)**

[redacted]

**Chronic Disease: (Check all that apply.)**

[redacted]

Degree of Control ( ) Good ( ) Fair ( ) Poor



CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Massachusetts Department of Corrections
*Souza-Baranowski Correctional*
*1 Harvard Road*
*Shirley , MA01464*

## Assessment Form

Massachusetts Department of Correction
Health Services

| Patient Name | Patient Number | Booking Number | Birth Date | Date Of Service |
|---|---|---|---|---|
| DERRICK A WASHINGTON | 2670081 | W89316 | 11/18/1984 | 1/14/2019 |

[redacted]

[redacted]

**Next Visit: (As applicable.)**

**Follow-Up:** ***If a follow-up visit is required, based on degree of control or clinical indicators, please note on provider order sheet.***



CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Massachusetts Department of Corrections
*Souza-Baranowski Correctional*
*1 Harvard Road*
*Shirley , MA01464*

**Assessment Form**
Massachusetts Department of Correction
Health Services

| Patient Name | Patient Number | Booking Number | Birth Date | Date Of Service |
|---|---|---|---|---|
| DERRICK A WASHINGTON | 2670081 | W89316 | 11/18/1984 | 1/14/2019 |

**Follow-Up:** ***If a follow-up visit is required, based on degree of control or clinical indicators, please note on provider order sheet.***

**Next Visit:**

Chronic Care:
- ☑ *6 Months*
- ☐ *Discontinue Chronic Care*

Health Assessment: ○ *1 year* ○ *3 years*



CONFIDENTIAL SUBJECT TO
PROTECTIVE ORDER

# Exhibit 10

Massachusetts Department of Corrections
*Souza-Baranowski Correctional*
*1 Harvard Road*
*Shirley, MA 01464*

**Medication Order**

wellpath

| Patient Name | Patient Number | Booking Number | Birth Date | Date Of Service |
|---|---|---|---|---|
| WASHINGTON, DERRICK | 2670081 | W89316 | 11/18/1984 | 10/15/2019 |

**Order Overview**

[redacted]

E-Signed by Deanna L Benjamin n 10/15/2019 04:46 PM EST



CONFIDENTIAL SUBJECT TO
PROTECTIVE ORDER

# Exhibit 11

Massachusetts Department of Corrections
Souza-Baranowski Correctional
1 Harvard Road
Shirley, MA 01464
xxx

**Keep On Person (KOP) Medication Distributed**
Massachusetts Department of Correction Health Services

Status: ☑ Adult ☐ Juvenile

| Patient Name | Patient Number | Booking Number | Date of Birth | Month |
|---|---|---|---|---|
| WASHINGTON, DERRICK A | 2670081 | W89316 | 11/18/1984 | December |

| | | Quantity | Date | Next Pick | | Nurse |
|---|---|---|---|---|---|---|
| [redacted] | | | | | | |
| 2 | | | | | | |
| 3 | | | | | | |
| 4 | | | | | | |
| 5 | | | | | | |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | | | | | | |
| 10 | | | | | | |

# Exhibit 12

Massachusetts Department of Corrections
*Souza-Baranowski Correctional*
*1 Harvard Road*
*Shirley , MA01464*

# Assessment Form
Massachusetts Department of Correction
Health Services

| Patient Name | Patient Number | Booking Number | Birth Date | Date Of Service |
|---|---|---|---|---|
| DERRICK A WASHINGTON | 2670081 | W89316 | 11/18/1984 | 1/7/2020 |

[redacted]

*Patient Problems:*

[redacted]

Orders:

| Medication | PRN Dose | Schedule | Start Date | End Date |
|---|---|---|---|---|
| [redacted] | | | | |



CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Massachusetts Department of Corrections
*Souza-Baranowski Correctional*
*1 Harvard Road*
*Shirley , MA01464*

**Assessment Form**
Massachusetts Department of Correction
Health Services

| Patient Name | Patient Number | Booking Number | Birth Date | Date Of Service |
|---|---|---|---|---|
| DERRICK A WASHINGTON | 2670081 | W89316 | 11/18/1984 | 1/7/2020 |

[redacted]

## OBJECTIVE

*Patient Vitals:*

[redacted]

**Physical Examination: (Perform as indicated by personal history and/or chronic disease.)**

[redacted]



CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Massachusetts Department of Corrections
*Souza-Baranowski Correctional*
*1 Harvard Road*
*Shirley , MA01464*

**Assessment Form**
Massachusetts Department of Correction
Health Services

| *Patient Name* | *Patient Number* | *Booking Number* | *Birth Date* | *Date Of Service* |
|---|---|---|---|---|
| DERRICK A WASHINGTON | 2670081 | W89316 | 11/18/1984 | 1/7/2020 |

[redacted]

## ASSESSMENT

[redacted]



CONFIDENTIAL SUBJECT TO
PROTECTIVE ORDER

Massachusetts Department of Corrections
*Souza-Baranowski Correctional*
*1 Harvard Road*
*Shirley , MA01464*

**Assessment Form**
Massachusetts Department of Correction
Health Services

| *Patient Name* | *Patient Number* | *Booking Number* | *Birth Date* | *Date Of Service* |
|---|---|---|---|---|
| DERRICK A WASHINGTON | 2670081 | W89316 | 11/18/1984 | 1/7/2020 |

[redacted]



CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Massachusetts Department of Corrections
*Souza-Baranowski Correctional*
*1 Harvard Road*
*Shirley , MA01464*

**Assessment Form**
Massachusetts Department of Correction
Health Services

| Patient Name | Patient Number | Booking Number | Birth Date | Date Of Service |
|---|---|---|---|---|
| DERRICK A WASHINGTON | 2670081 | W89316 | 11/18/1984 | 1/7/2020 |

[redacted]

**Most Recent Results: (As applicable.)**

[redacted]



CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Massachusetts Department of Corrections
*Souza-Baranowski Correctional*
*1 Harvard Road*
*Shirley , MA01464*

**Assessment Form**
Massachusetts Department of Correction
Health Services

| Patient Name | Patient Number | Booking Number | Birth Date | Date Of Service |
|---|---|---|---|---|
| DERRICK A WASHINGTON | 2670081 | W89316 | 11/18/1984 | 1/7/2020 |

☐ LIPIDS:

**Next Visit: (As applicable.)**

**Follow-Up:** ***If a follow-up visit is required, based on degree of control or clinical indicators, please note on provider order sheet.***

**Next Visit:**

Chronic Care: ☑ *6 Months*
☐ *Discontinue Chronic Care*

Health Assessment: ○ *1 year* ○ *3 years*

# Exhibit 13

**Massachusetts Department of Corrections**
***Souza-Baranowski Correctional***
***1 Harvard Road***
***Shirley, MA 01464***

## Medication Order

| *Patient Name* | *Patient Number* | *Booking Number* | *Birth Date* | *Date Of Service* |
|---|---|---|---|---|
| **WASHINGTON, DERRICK** | **2670081** | **W89316** | **11/18/1984** | **1/7/2020** |

### Order Overview

**Ordered By:** Ribeiro, Marco Felipe on 01/07/2020 03:32PM

[redacted]

E-Signed by Marco Felipe Antunes Ribeiro n 01/07/2020 03:32 PM EST



CONFIDENTIAL SUBJECT TO
PROTECTIVE ORDER

# Exhibit 14

Massachusetts Department of Corrections
*Souza-Baranowski Correctional*
*1 Harvard Road*
*Shirley , MA01464*

**Infirmary Progress Note**
**Massachusetts Department of Correction**
**Health Services**

wellpath

| Patient Name | Patient Number | Booking Number | Birth Date | Date Of Service |
|---|---|---|---|---|
| DERRICK A WASHINGTON | 2670081 | W89316 | 11/18/1984 | 1/22/2020 |

[redacted]

Orders:

| Medication | PRN | Dose | Schedule | Start Date | End Date |
|---|---|---|---|---|---|
| [redacted] | | | | | |

| Note Type | ◉ *Free Text* ○ *DAP* ○ *SOAPE* |
|---|---|

[redacted]

E-Signed by Katie E Langone, RN on 01/22/2020 01:50 PM EST



CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

# Exhibit 15

Massachusetts Department of Corrections
Souza-Baranowski Correctional
1 Harvard Road
Shirley, MA 01464
xxx

**Keep On Person (KOP) Medication Distributed**
**Massachusetts Department of Correction Health Services**

Status: ☑ Adult ☐ Juvenile

| Patient Name | Patient Number | Booking Number | Date of Birth | Month |
|---|---|---|---|---|
| WASHINGTON, DERRICK A | 2670081 | W89316 | 11/18/1984 | January |

| | Medication Name & Strength | Quantity [redacted] | Date [redacted] | Next Pick [redacted] | | Nurse |
|---|---|---|---|---|---|---|
| [redacted] | | | | | | |
| 2 | | | | | | |
| 3 | | | | | | |
| 4 | | | | | | |
| 5 | | | | | | |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | | | | | | |
| 10 | | | | | | |

# Exhibit 16

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION

INMATE GRIEVANCE FORM

FORWARD TO INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

Name WASHINGTON DERRICK A Grievance# 106977 Institution SOUZA-BARANOWSKI CORRECTIONAL

Commit No. W89316 Housing M2 Date Of Incident 20200123 Date Of Grievance 20200130

Informal filed No

Complaint [redacted]

Remedy Requested

Staff Recipient Olihovik Kristen L CPO I

Staff Involved
Forget Arthur D CO III
Logan Davell E CO I
Tocci Thomas M CO II
Hillis Ryan W CO II
Deschene Robert J CO III

Signature

CONFIDENTIAL ORDER

# Exhibit 17

# COMMONWEALTH OF MASSACHUSETTS

## DEPARTMENT OF CORRECTION

### SOUZA-BARANOWSKI CORRECTIONAL

### INCIDENT REPORT

**Incident Report # :** 1902279 **Incident Time :** 16:06 **Date:** 03/05/2020 **Place Occurred:** *K3

**Codes & Subject :** INMATE RELATED Medical Issues

**Reported By :** Hinds Frank LPN **Department:** HSU **Reported Date:** 03/05/2020

**Description :** On 3/5/20 at approximately 1606 I Frank Hinds LPN saw inmate W89316 Washington, Derrick for an assessment post a use of force where inmate was sprayed with a chemical agent - his eyes were flushed - he complained of SOB and he was transferred to trauma room via gurney - on site NP notified , neb. treatment was given per order of Deanna Benjamin NP. - EOR

| Person Type | Commit No | Name | Housing Unit |
|---|---|---|---|
| Inmate | W89316 | WASHINGTON DERRICK A | HSU |

**Entered By:** Hinds Frank LPN

**Supervisor :** Rayner Brian K CO II **Date:** 03/05/2020

**Comments :**

**Shift Commander:** Reniere David A **Date:** 03/05/2020

**Comments :**

20230714 13:44:07

# Exhibit 18

Massachusetts Department of Corrections
*Souza-Baranowski Correctional*
*1 Harvard Road*
*Shirley , MA01464*

## Use of Chemical Agents

Massachusetts Department of Correction
Health Services

| Patient Name | Patient Number | Booking Number | Birth Date | Date Of Service |
|---|---|---|---|---|
| DERRICK A WASHINGTON | 2670081 | W89316 | 11/18/1984 | 3/5/2020 |

**An affirmative response to any of the following shall constitute a Contraindication for the use of chemical agents**

| | |
|---|---|
| Asthma or COPD | [redacted] |
| Current acute respiratory infection (i.e., bronchitis, pneumonia). | |
| Significant heart disease manifested by frequent angina or recent MI | |
| Recent hospitalization or medical condition that would preclude the use of force or chemical agent. | |
| Open skin lesion or burns | |
| Other, please specify below: | |

E-Signed by Colleen Dunham Rayne, LPN on 03/05/2020 02:56 PM EST

E-Signed by Deanna L Benjamin, Nurse Practitioner on 03/11/2020 07:56 AM EST



CONFIDENTIAL SUBJECT TO
PROTECTIVE ORDER

# Exhibit 19

Video of March 5, 2020

Use of Force

(filed under seal)

# Exhibit 20

# The Commonwealth of Massachusetts
## Executive Office of Public Safety and Security
## Department of Correction
## Souza-Baranowski Correctional Center
Harvard Road, P.O. Box 8000
Shirley, MA 01464
Tel: 978-514-6500
Fax: 978-514-6529
www.mass.gov/doc

**MAURA T. HEALEY**
*Governor*

**KIMBERLEY DRISCOLL**
*Lieutenant Governor*

**GINA K. KWON**
*Secretary*

**SHAWN P. JENKINS**
*Commissioner*


**TO:** Charles Primack, Director, Special Operations Division

**FROM:** Superintendent Steven Kenneway

**DATE:** March 30, 2020

**RE:** USE OF FORCE - INMATE DERRICK WASHINGTON, W89316

On March 5, 2020 at approximately 1520hrs a Planned use of force with chemical agent took place at the Souza-Baranowski Correctional center involving inmate #W89316 Washington, Derick.

On March 5, 2020 at approximately 1520hrs inmate Washington was issued direct orders to move to an RHU cell and did refuse. The inmate became argumentative with staff, demanding that camera footage be taken of the escort. The inmate was ordered to submit to a strip search and refused. I authorized a planned use of force to gain compliance of the inmate. I wanted the inmate searched, and removed from the search cell, then placed in RHU.

A move team was assembled, and third party contact was made in an effort to gain voluntary compliance of the inmate. It was reported that the inmate was not willing to comply, and the shift commander briefed his move team leader as to the situation. Upon completion of the briefing, the move team leader had his team introduced, briefed them as to what was intended, and moved his team to the search cell holding inmate Washington.

Inmate Washington refused all orders from staff, and chemical agent was introduced to the cell. Appropriate orders were issued again, and the inmate again refused commands. After a third iterations of orders and refusals, the inmate was issued a third burst of agent. The inmate then fell to the floor, reportedly striking his head, and continuing to refuse orders to cuff up.

The move team entered the cell, placed the inmate in restraints, and stood him up in the cell facing the wall. The inmate was searched via shears, and the inmate was then ordered to exit the cell, which he refused. The inmate refused to walk, and a gurney was provided. The inmate was escorted to the protocol room, and then transferred to the HSU for a nebulizer treatment. The inmate was offered a shower to decontaminate, but refused. Once complete, the inmate was escorted to the cell in RHU he was assigned to.

Upon arriving at the cell, inmate Washington refused to walk from the gurney, and was four man carried again. Once in the cell, the inmate refused to comply with staff directive to place his hands outside the wicket to be un-cuffed, and instead, dropped to the floor again. The team entered the cell again, and removed the restraints from this inmate while he laid on the bed. Inmate Washington was removed from restraints at approximately 1713hrs, ending the use of force.

It should be noted that inmate Washington is heard attempting to incite the tier of inmates yelling that he was being punched. In my review of the film footage, I could not decipher or detect any furtive movements by staff to support this claim, and no marks were found on the inmate.

As a result of the four man carry into the cell, I had medical staff attempt to screen the inmate again, and he refused. He also did not state to the nurse that he had been assaulted.

A post incident debrief was conducted noting no major issues to address, but one minor injury to report (C.O. Bashaw Thigh). Also raised was the issue relative to the Attachment A; contraindication. Alternate agent, (OC) was suggested and used predicated upon the advice of medical.

I have reviewed the film footage and reports relative to this incident and find the force used to be reasonable, necessary, and compliant with the 103 CMR 505 Use of Force policy. I found no evidence of excessive force used.

# Exhibit 21

Massachusetts Department of Corrections
*Souza-Baranowski Correctional*
*1 Harvard Road*
*Shirley, MA 01464*

## Medication Order

WellPath

| Patient Name | Patient Number | Booking Number | Birth Date | Date Of Service |
|---|---|---|---|---|
| WASHINGTON, DERRICK | 2670081 | W89316 | 11/18/1984 | 4/6/2020 |

### Order Overview

**Ordered By:** Ribeiro, Marco Felipe on 04/06/2020 10:16AM

[redacted]

E-Signed by Marco Felipe Antunes Ribeiro n 04/06/2020 10:16 AM EST



CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

# Exhibit 22

[redacted]

E-Signed by Marco Felipe Antunes Ribeiro n 09/18/2020 03:12 PM EST



CONFIDENTIAL SUBJECT TO
PROTECTIVE ORDER

# Exhibit 23

Massachusetts Department of Corrections
*Souza-Baranowski Correctional*
*1 Harvard Road*
*Shirley , MA01464*

**Assessment Form**
**Massachusetts Department of Correction**
**Health Services**

wellpath

| *Patient Name* | *Patient Number* | *Booking Number* | *Birth Date* | *Date Of Service* |
|---|---|---|---|---|
| DERRICK A WASHINGTON | 2670081 | W89316 | 11/18/1984 | 9/18/2020 |

☐ *Patient refused Assessment*

Type of Health Assessment:
- ☐ *Initial*
- ☐ *Periodic*
- ☐ *Chronic Disease*
- ☐ ***Appropriate Refusal of Treatment paperwork completed***

[redacted]

*Patient Problems:*

| *Observed Date* | *Category* | *Type* | *Problem* | *Confirmed By* |
|---|---|---|---|---|
| [redacted] | | | | |

*Patient Allergies:*

| *Observed Date* | *Type* | *Allergy* | *Reaction* |
|---|---|---|---|
| [redacted] | | | |

Orders:

| Medication | PRN | Dose | Schedule | Start Date | End Date |
|---|---|---|---|---|---|
| [redacted] | | | | | |

**SUBJECTIVE**



CONFIDENTIAL SUBJECT TO
PROTECTIVE ORDER

**Massachusetts Department of Corrections**
***Souza-Baranowski Correctional***
***1 Harvard Road***
***Shirley , MA01464***

**Assessment Form**
**Massachusetts Department of Correction**
**Health Services**

wellpath

| *Patient Name* | *Patient Number* | *Booking Number* | *Birth Date* | *Date Of Service* |
|---|---|---|---|---|
| DERRICK A WASHINGTON | 2670081 | W89316 | 11/18/1984 | 9/18/2020 |

[redacted]

**PREA: (At initial and periodic health assessments.)**

Prior to/during incarceration, were you ever sexually abused? [redacted]

Prior to/during incarceration, were you ever sexually abusive?

**OBJECTIVE**

*Patient Vitals:*

[redacted]

**Physical Examination: (Perform as indicated by personal history and/or chronic disease.)**

[redacted]



CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Massachusetts Department of Corrections
*Souza-Baranowski Correctional*
*1 Harvard Road*
*Shirley , MA01464*

**Assessment Form**
Massachusetts Department of Correction
Health Services

wellpath

| Patient Name | Patient Number | Booking Number | Birth Date | Date Of Service |
|---|---|---|---|---|
| DERRICK A WASHINGTON | 2670081 | W89316 | 11/18/1984 | 9/18/2020 |

[redacted]



CONFIDENTIAL SUBJECT TO
PROTECTIVE ORDER

Massachusetts Department of Corrections
*Souza-Baranowski Correctional*
*1 Harvard Road*
*Shirley , MA01464*

**Assessment Form**
Massachusetts Department of Correction
Health Services

wellpath

| Patient Name | Patient Number | Booking Number | Birth Date | Date Of Service |
|---|---|---|---|---|
| DERRICK A WASHINGTON | 2670081 | W89316 | 11/18/1984 | 9/18/2020 |

[redacted]

## ASSESSMENT

**Assessment: (As applicable, note adherence to treatment plan, medication profile, results of laboratory/diagnostic tests, and diagnoses.)**

[redacted]

## PLAN

***Plan: (As applicable: medication changes, laboratory/diagnostic test, immunizations, monitoring/treatment, specialty referrals, patient specific goals.)***

[redacted]

**Education / Counseling: (Check all that apply.)**

[redacted]

**Chronic Disease: (Check all that apply.)**

[redacted]

☐ Seizures



CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Massachusetts Department of Corrections
*Souza-Baranowski Correctional*
*1 Harvard Road*
*Shirley , MA01464*

**Assessment Form**
Massachusetts Department of Correction
Health Services

wellpath

| Patient Name | Patient Number | Booking Number | Birth Date | Date Of Service |
|---|---|---|---|---|
| DERRICK A WASHINGTON | 2670081 | W89316 | 11/18/1984 | 9/18/2020 |

[redacted]



CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Massachusetts Department of Corrections
*Souza-Baranowski Correctional*
*1 Harvard Road*
*Shirley, MA01464*

**Assessment Form**
**Massachusetts Department of Correction**
**Health Services**

wellpath

| *Patient Name* | *Patient Number* | *Booking Number* | *Birth Date* | *Date Of Service* |
|---|---|---|---|---|
| DERRICK A WASHINGTON | 2670081 | W89316 | 11/18/1984 | 9/18/2020 |

[redacted]

**Next Visit: (As applicable.)**

**Follow-Up:** ***If a follow-up visit is required, based on degree of control or clinical indicators, please note on provider order sheet.***

**Next Visit:**

Chronic Care: ☑ *6 Months*
☐ *Discontinue Chronic Care*

Health Assessment: ○ *1 year* ○ *3 years*



CONFIDENTIAL SUBJECT TO
PROTECTIVE ORDER

# Exhibit 24

2021 WL 3709815
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

Leonard BRIGGS, George Skinder, Louis Markham, Francis McGowan, Eric Roldan, Rolando S. Jimenez, and Jennifer Ward, on behalf of themselves and all others similarly situated, Plaintiffs,
v.
MASSACHUSETTS DEPARTMENT OF CORRECTION; Carol A. Mici,[1] Commissioner of the Massachusetts Department of Correction; Jennifer Gaffney, Deputy Commissioner of Classification, Programs, and Reentry Division; Suzanne Thibault, Superintendent of MCI-Shirley; Steven Silva, Superintendent of MCI-Norfolk; Lisa Mitchell, Superintendent of the Massachusetts Treatment Center; Kyle Pelletier, Acting Superintendent of MCI-Framingham; and Massachusetts Partnership for Correctional Healthcare, LLC, Defendants.

CIVIL ACTION NO. 15-40162-GAO
|
Filed 08/20/2021

**Attorneys and Law Firms**

Deborah Golden, Pro Hac Vice, Emily Gunston, Pro Hac Vice, Washington Lawyers Committee for Civil Rights & Urban Affair, Washington, DC, Katherine V. Mackey, Alexandra B. Lavin, Jessica L. Lewis, Lindsay Kosan, Lisa J. Pirozzolo, Jocelyn M. Keider, Wilmer Cutler Pickering Hale and Dorr LLP, Elizabeth D. Matos, James R. Pingeon, Tatum A. Pritchard, Prisoners' Legal Services, Boston, MA, for Plaintiffs Leonard Briggs, George Skinder, Louis Markham, Francis McGowan, Eric Roldan, Rolando Jimenez, Jennifer Ward.

Timothy M. Pomarole, Massachusetts Department of Correction, Legal Division, Anna Rachel Dray-Siegel, James A. Sweeney, Office of the Attorney General, Administrative Law Division, Boston, MA, for Defendants Massachusetts Department of Correction, Commissioner Carol Higgins O'Brien, Deputy Commissioner Katherine A. Chmiel, Superintendent Kelly Ryan, Acting Super. Paul Henderson, Superintendent Steven O'Brien, Superintendent Sean Medeiros.

OPINION AND ORDER

O'TOOLE, S.D.J.

***1** The plaintiffs are seven deaf and hard-of-hearing persons who are or were in the custody of the Massachusetts Department of Correction ("DOC"). The parties have settled most of the plaintiffs' claims through a comprehensive settlement agreement. The plaintiffs' remaining claims are that DOC facilities lack effective systems for notifying deaf and hard of hearing prisoners of emergency alarms and announcements, thus placing them at risk of serious physical injury and other harms. The claimed deficiencies are alleged to be in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, the Rehabilitation Act, 29 U.S.C. § 794(a), et seq., and the Eighth and the Fourteenth Amendments. Currently pending are the defendants' motion for summary judgment (dkt. no. 224), defendants' motion to exclude expert evidence (dkt. no. 227), and plaintiffs' motion to strike portions of the affidavit of Jeffrey Quick (dkt. no. 247).

## I. Brief Factual Background

The following factual summary is not disputed unless otherwise noted:

Each DOC facility has written fire safety procedures which include an emergency evacuation plan. Each plan also must be certified by an independent inspector trained in the applicable fire codes.

There are sixteen DOC facilities, and each has smoke detectors and alarms, carbon monoxide detectors and alarms, fire extinguishers, fire blankets, and smoke/fire evacuation hoods. Visual alarms may not be in place for each deaf or hard of hearing inmate. According to a formal DOC procedure, if an inmate has been identified as deaf or hearing impaired, a red dot is to be placed on the lower right corner of his or her bed book card that is used by the housing unit office. The bed book is a folder stored at the particular unit's control

center that contains the names, commitment numbers, and photographs of all inmates in a particular unit. The purpose of the red dot is to alert staff that the inmate has a hearing or visual impairment and may need personal assistance during an evacuation. The red dot written procedure is set out in the DOC Fire Prevention and Safety procedures policy:

> If an inmate has been identified as deaf and/or hearing impaired, blind, and/or visually impaired in the Medical Restrictions screen in IMS, a red dot shall be placed on the lower right corner of his/her bed book card for use by the housing unit officer. This will alert staff that the inmate has impairment, and may need additional assistance during an evacuation.

(Commonwealth of Mass. Dept. of Correction, 103 DOC 730, Fire Prevention & Safety, 730.04(A) Ex. F (dkt. no. 246-6).) The red dot procedures depend on individual correction officers and staff to take appropriate steps during an evacuation to assist inmates who may need assistance because of an impairment. Whether the red dot procedures and other plans are appropriately implemented to alert staff properly to inmates who require assistance during evacuation is sharply disputed. The plaintiffs cite instances of inmates being left behind without assistance during emergency evacuation drills that are periodically conducted.

## II. Discussion

### A. Summary Judgment

***2** "Summary judgment is appropriate where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " Audette v. Town of Plymouth, 858 F.3d 13, 19 (1st Cir. 2017) (quoting Mulloy v. Acushnet Co., 460 F.3d 141, 145 (1st Cir. 2006)). Although the summary judgment record is to be construed in a light most favorable to the non-moving party, the Court need not consider "conclusory allegations, improbable inferences, [or] unsupported speculation." Mulloy, 460 F.3d at 145 (quotation omitted).

"The ADA is a federal civil rights statute designed to provide comprehensive protection for disabled individuals against discrimination based on their disabilities." Theriault v. Flynn, 162 F.3d 46, 47–48 (1st Cir. 1998). The Rehabilitation Act, the precursor to the ADA, prohibits federal programs and recipients of federal financial assistance from discriminating on the basis of disability. See Calero-Cerezo v. U.S. Dep't of Just., 355 F.3d 6, 19 (1st Cir. 2004). "[T]he case law construing the ADA generally pertains equally to claims under the Rehabilitation Act." Id.

To establish a violation of either Title II of the ADA or Section 504 of the Rehabilitation Act, a plaintiff must show that (1) he or she "is a qualified individual with a disability;" (2) he or she "was either excluded from participation in or denied the benefits of [a] public entity's services, programs, or activities or was otherwise discriminated against;" and (3) that such denial was because of his or her disability. Gray v. Cummings, 917 F.3d 1, 15 (1st Cir. 2019); 42 U.S.C. § 12132.[2] The plaintiffs must show that they were denied " 'meaningful access' to government benefits and programs" and that the defendants did not take "reasonable steps to ensure that individuals with disabilities can take advantage of" the DOC's benefits and programs. Theriault, 162 F.3d at 48. To obtain injunctive relief, plaintiffs must "establish a real and immediate threat" with "a sufficient likelihood that [the plaintiffs] will again be wronged in a similar way." Gray, 917 F.3d at 19.

The defendants contend that the summary judgment record here fails to show that as a matter of law the plaintiffs' claims that they either have been denied meaningful access to emergency notifications in the past or that there is a sufficient likelihood that they will be deprived of meaningful access in the future. The plaintiffs argue that the red dot procedures and the DOC's procedures during emergency situations and drills are insufficient, and accordingly do not amount to a reasonable accommodation under ADA standards.

After a careful review of the record, the Court concludes that the defendants are not entitled to summary judgment. There are disputed issues of material fact regarding the adequacy, utility, and implementation of the red dot procedures and other DOC policies and practices regarding the emergency evacuation of deaf and hard of hearing inmates. See Chisolm v. McManimon, 275 F.3d 315, 327 (3d Cir. 2001) ("Generally, the effectiveness of auxiliary aids and/or services is a question of fact precluding summary judgment."). For example, there is an evaluative dispute between the parties about what constitutes "meaningful access" to emergency notifications.[3]

***3** The defendants also argue that summary judgment should be granted on the plaintiffs' Eighth and Fourteenth Amendment claims because the record does not support a "deliberate indifference" on the part of DOC officials, which is crucial to satisfy an Eighth Amendment claim. "A prison

official's ‘deliberate indifference’ to a substantial risk of serious harm to an inmate violates the Eighth Amendment.” Farmer v. Brennan, 511 U.S. 825, 828 (1994). To succeed on such a claim, plaintiffs “must satisfy both a subjective and objective inquiry: [they] must show first, ‘that prison officials possessed a sufficiently culpable state of mind, namely one of “deliberate indifference” to an inmate's health or safety,’ and second, that the deprivation alleged was ‘objectively, sufficiently serious.’ ” Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 497 (1st Cir. 2011) (quoting Burrell v. Hampshire Cnty., 307 F.3d 1, 8 (1st Cir. 2002)).

As noted, the factual disputes between the parties do not simply concern specific provable facts, such as whether relevant historical events occurred as alleged or not, as is often the case on summary judgment motions, but rather they involve what could be termed evaluative facts: whether there was shown a *substantial risk* of the predicted harm, or whether the defendants were in their attitude toward the plaintiffs *deliberately indifferent* to the concerns raised by the plaintiffs. Judgments about such matters will depend not simply on the plaintiffs’ proof of accurate historical facts, but on the factfinder's evaluation of the adequacy of the defendants’ relevant policies and procedures. Accordingly, summary judgment on the Eighth and Fourteenth Amendment claims is also inappropriate.

### B. Motions to Strike

The plaintiffs have disclosed three experts: Gina G. Hilberry, an architect; Judy Anne Shepard-Kegl, a professor in the linguistics department at University of Maine who among other roles serves as the director of the University's Signed Language Research Laboratory; and Richard Lorenzo Ray, an ADA Technology Access Coordinator for the City of Los Angeles. The defendants move to exclude the following testimony: (1) opinion testimony by the proposed witnesses to the effect that DOC's policies and procedures for notifying deaf and hard-of-hearing inmates of emergencies are inadequate; and (2) Hilberry's proposed testimony concerning the meaning of certain safety-related regulations and standards and her opinions concerning DOC's financial estimates for installing in DOC facilities certain visual alarm systems proposed by the plaintiffs.

On the other hand, the plaintiffs move to strike paragraphs of the affidavit of Jeffrey Quick filed in support of the defendants’ motion for summary judgment on the grounds that: (1) statements in the Quick affidavit fail to meet the requirements of Fed. R. Civ. P. 56(c)(4); (2) Quick lacks necessary personal knowledge required by Fed. R. Evid. 602; (3) statements in the affidavit are improper lay opinion testimony under Fed. R. Evid. 701; and/or (4) Statements in Quick's affidavit regarding the content of certain documents are not the best evidence, as required by Fed. R. Evid. 1002. The plaintiffs therefore request that the Court strike as inadmissible for purposes of summary judgment Paragraphs 5–9, 12, 17, 23–32, 35–36, 38–40, 42, and 43 of Mr. Quick's affidavit.

In light of the denial of the summary judgment motion, it is not necessary to rule on the evidentiary objections by either side. Those issues are preserved for trial. Accordingly, at this time both plaintiffs’ and defendants’ motions to strike are denied without prejudice.

## III. Conclusion

The defendants’ motion for summary judgment (dkt. no. 224) is DENIED, and the defendants’ motion to strike expert evidence (dkt. no. 227) and plaintiffs’ motion to strike portions of affidavit of Jeffrey Quick (dkt. no. 247) are both DENIED without prejudice.

***4** It is SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2021 WL 3709815

## Footnotes

1 These parties, named in their official capacities, have been substituted as successors in office, under Fed. R. Civ. P. 25(d).

2 Plaintiffs and defendants agree that the Rehabilitation Act applies to entities that receive federal financial assistance. DOC does not dispute that it receives federal funds. Furthermore, “Title II of the ADA was expressly modeled after Section 504 of the Rehabilitation Act and is to be interpreted consistently with that provision.” Theriault, 162 F.3d at 48 n.3. Additionally, the DOC for purposes of their motion for summary judgment agree that the plaintiffs are qualified individuals with disabilities entitled to “meaningful access.”

3 Since this genuine disagreement is itself sufficient to deny the motion, the Court at this stage need not address the defendants' other arguments in support of their motion.

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit 25

Massachusetts Department of Correction - Orientation Check List - W_ADM_ORI Report on Tuesday June 6, 2023 11:09

| Select Inmate Commitment Number | | | Name | Comm # | Status | Unit, Cell, Bed | Comm | Sec Level | PE | Release Date |
|---|---|---|---|---|---|---|---|---|---|---|
| W89316 | DERRICK | A | WASHINGTON | W89316 | ACTIVE | A-1,57,57T | 20070226 | Medium | | |

| Orientation Date | Institution | Orientation Type | | | | |
|---|---|---|---|---|---|---|
| 20230606 | MCI SHIRLEY (MEDIUM) | DOC/Video/Verb | Duest | Erin | | |
| 20230606 | MCI SHIRLEY (MEDIUM) | PREA Orientation | Duest | Erin | | |
| 20230601 | MCI SHIRLEY (MEDIUM) | DOC/Writ/Verb | Brown | J | | |
| 20181017 | SOUZA-BARANOWSKI CORRECTIONAL | DOC/Writ/Verb | Derderian | Jaymie | | |
| 20181017 | SOUZA-BARANOWSKI CORRECTIONAL | DOC/Video/Writ/Verb | Derderian | Jaymie | | orien |
| 20120824 | MCI NORFOLK | DOC/Video/Verb | MULVEY | BRIAN | | |
| 20120817 | MCI NORFOLK | DOC/Written | Michael | McCue | | |
| 20091203 | SOUZA-BARANOWSKI CORRECTIONAL | DOC/Video/Verb | Gallagher | Kathleen | | |
| 20090507 | SOUZA-BARANOWSKI CORRECTIONAL | DOC/Video/Verb | Arpano | Sheila | | |
| 20090202 | MCI CEDAR JUNCTION | PREA Orientation | Hallett | Allison | | |
| 20070307 | MCI CEDAR JUNCTION | DOC/Video/Writ/Verb | Bailey | Michael | | |
| 20070226 | MCI CONCORD | DOC/Written | CASSIDY | T | | |

# Exhibit 26

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Case No. 1:23-cv-10063

-----------------------------------x

DERRICK WASHINGTON,

Plaintiff,

v.

MASSACHUSETTS DEPARTMENT OF CORRECTIONS, WELLPATH LIQUIDATING TRUST, MATTHEW J. DUNDON AS TRUSTEE OF THE WELLPATH LIQUIDATING TRUST, SUPERINTENDENT STEVE KENNEWAY, LIEUTENANT ROBERT DESCHENE, LIEUTENANT ARTHUR FORGET, SERGEANT RYAN HILLIS, SERGEANT THOMAS TOCCI, OFFICER ANTHONY CATALANO, OFFICER JOSHUA GAGNON, NURSE CHRISTIAN CAPOCCIA, SERGEANT ARTHUR BARNES, OFFICER JOSEPH CUMMINGS, OFFICER NICHOLAS DUMONT, OFFICER ZACHARY FONSECA, OFFICER DANIEL HOLLENBACH, OFFICER ERIC LAWSON, SERGEANT NATHAN OWEN, OFFICER CORY SHEPHERD, OFFICER JEFFREY PEPOLI, SERGEANT BRIAN RAYNER, OFFICER ROBERT BASHAW, OFFICER RAYMOND SIMULA, OFFICER SERGIO CACIOPPO, OFFICER THOMAS MEMBRINO, OFFICER DAVID GILMAN, OFFICER RYAN KALRIESS, MEDICAL DIRECTOR DOE, AND NURSE DOE,

Defendants.

-----------------------------------x

VIDEOTAPED DEPOSITION OF ROBERT DESCHENE
June 9, 2026

VIDEOTAPED DEPOSITION OF ROBERT DESCHENE

Conducted Remotely

70 Franklin Street

Boston, Massachusetts

June 9, 2026

9:17 a.m. to 3:43 p.m.

Reporter: Laurie J. Berg, LCR, RPR, CRR

A P P E A R A N C E S

Derrick Luster, Esquire
RIGHTS BEHIND BARS
1800 M Street NW FNT 1 #33821
Washington, DC 20033
202.455.4399
derrick@rightsbehindbars.org
(Present via video conference.)
-and-
Katherine Zhang, Esquire
Jayden Rush, Esquire
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
20th Floor
New York, New York 10001
212.446.2300
kzhang@bsfllp.com
jrush@bsfllp.com
(Present via video conference.)
COUNSEL FOR PLAINTIFF

A P P E A R A N C E S

(continued)

Stephanie M. Caffrey, Esquire
Yasmine D. Bailey, Esquire
Brittni Wipper, Esquire
Sean P. Riley, Esquire
MASSACHUSETTS DEPARTMENT OF CORRECTION
70 Franklin Street
Suite 600
Boston, Massachusetts 02110
617.727.3300
stephanie.m.caffrey@doc.state.ma.us
yasmine.d.bailey@doc.state.ma.us
brittni.wipper@doc.state.ma.us
sean.p.riley@doc.state.ma.us
(Present via video conference.)
COUNSEL FOR MASSACHUSETTS DEPARTMENT OF CORRECTION DEFENDANTS

Also Present:

Peter Berg, Legal Video Specialist
(Present via video conference.)

I N D E X

WITNESS: ROBERT DESCHENE

(Present via video conference.)


| EXAMINATION | PAGE |
|---|---|
| (BY ATTORNEY LUSTER) | 10 |


E X H I B I T S


| NO. | | PAGE |
|---|---|---|
| Exhibit 1 | Black, Latino, Asian Cultural Coalition Materials (ten pages) | 84 |
| Exhibit 2 | Shift Briefing, Thursday, January 23, 2020, Confidential - Subject to Protective Order (three pages) | 89 |
| Exhibit 3 | Use of Force Package, 01/23/2020, Confidential - Subject to Protective Order (nine pages) | 92 |
| Exhibit 4 | Disciplinary Report, 1/23/2020, Confidential - Subject to Protective Order (one page) | 118 |

institution by interfering with a major standing count, blocking/tampering with a locking device, refusing a direct order, assaulting staff and manufacturing a weapon.

Q. And do you see above this D-Report Text where it says Author Username: RJDESCHENE?

A. (Witness viewing exhibit.) Yes.

Q. After reviewing this report, can we agree that the event that we were discussing earlier occurred on January 23rd of 2020?

A. Yes.

Q. You testified earlier that this incident occurred in the M-2 unit in a cell occupied by Mr. Washington and his cellmate and that your view of the door was obstructed by a mattress that was standing upright on the inside of the door.

How did you determine that the object blocking your view inside the cell was a mattress?

MS. CAFFREY: Objection.

You can answer.

A. Because I could see it.

Q. You could see it through the window of the cell door?

A. Correct.

Q. And earlier, you identified three scenarios -- three likely scenarios based on the mattress being placed against the door.

Can you tell us step by step how you determined that you needed to use force rather than some other method to identify what was going on on the other side of that door?

MS. CAFFREY: Objection.

You can answer.

A. Was the question how I determined that it was necessary to use force?

Q. Yes.

A. When we opened the door, the inmate, Damante Burrell, was holding the mattress. Upon opening the door to do a wellness check on the inmates inside, we generally open the door six to 12 inches to gain access to get a visual, clear obstructions. At that point in time, Inmate Burrell tried to charge out of the cell, he had a weapon in hand that -- he assaulted the -- the team of officers that were standing at the doorway. At that point, I deployed OC because there was a threat to the staff.

Q. When you say he was "holding the mattress," how was he holding the mattress?

A. If I recall correctly, there was -- and this is how it's done frequently, the -- they'll pull the mattress like a shield, the -- the -- the sheets that are wrapped around it, so he could hold it up with one hand and he had a weapon that was coming over the top, hitting officers in the -- the head, the shoulders.

Q. And you said he hit officers in the head and on the shoulders with this weapon?

A. Yes.

Q. Where was Mr. Washington while this was happening?

A. He was on the top bunk.

Q. And where was that -- where was the top bunk placed relative to where you entered the cell?

A. Directly inside of the cell. If -- if you a -- walk in the cell and walk straight, you encounter the bed. The top bunk is on top of that bed.

Q. Was that bed to the right, left or behind Mr. Burrell?

A. Behind him. Directly behind him.

Q. So when you entered the cell, Mr. Burrell was holding a mattress like a shield and you had a visual of both Burrell and Mr. Washington; is that correct?

MS. CAFFREY: Objection.

BY MR. LUSTER:

Q. And did you, at some point, remove Mr. Washington from that cell?

A. It's my recollection, yes.

Q. Can you explain to me step by step how you removed Mr. Washington from that cell from the moment Burrell was restrained and removed while Mr. Washington was still on the top of the bunk bed to the moment that Mr. Washington was removed from the cell?

A. So when we first went into the cell, as I said, the officers who were handling Damante Burrell were on the bottom bunk, because he got pushed into the cell and ended up -- restraints were applied, to my recollection, on the bottom bunk.

Inmate Derrick Washington remained on the top bunk. At that period of time, I was standing on top of the bench or the table, I can't recall exactly which one, but they're both at the back of the cell, as to be in a position to maintain an observation of Derrick Washington.

At that point in time, he verbalized that he was an asthmatic. That was reported to medical by myself. The inmate remained on the top bunk

unrestrained until Damante Burrell was out of the cell. We told him to get off the bunk. He got off the bunk compliantly. He was restrained and removed from the cell.

Where he went beyond that, without referencing reports, I can't really definitively answer, but that's my recollection of what happened inside of the cell as it concerns Derrick Washington.

(Pause.)

BY MR. LUSTER:

Q. Do you recall whether you went with Mr. Burrell or Mr. Washington to wherever their next location was?

A. I'm sorry?

Q. Do you recall whether you --

A. Can you plea --

Q. -- followed or participated in relocating Mr. Burrell?

A. I don't specifically recall my involvement after they exited the cell.

Q. Is that true for Mr. Washington as well, you don't recall your involvement after they exited the cell?

A. I don't recall.

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

I, Laurie J. Berg, Licensed Court Reporter, Registered Professional Reporter, Certified Realtime Reporter, and Notary Public, in and for the Commonwealth of Massachusetts, do hereby certify that pursuant to appropriate notice of taking deposition, there remotely appeared before me the following named person, to wit: ROBERT DESCHENE, who was by me duly sworn; that he was thereupon examined upon his oath and his examination reduced to writing by me; and that the deposition is a true record of the testimony given by the witness.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 18th day of June, 2026.

My commission expires:
August 30, 2030

Laurie J. Berg
_______________________________
Notary Public

# Exhibit 27

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Case No. 1:23-cv-10063

-----------------------------------x

DERRICK WASHINGTON,

Plaintiff,

v.

MASSACHUSETTS DEPARTMENT OF CORRECTIONS, WELLPATH LIQUIDATING TRUST, MATTHEW J. DUNDON AS TRUSTEE OF THE WELLPATH LIQUIDATING TRUST, SUPERINTENDENT STEVE KENNEWAY, LIEUTENANT ROBERT DESCHENE, LIEUTENANT ARTHUR FORGET, SERGEANT RYAN HILLIS, SERGEANT THOMAS TOCCI, OFFICER ANTHONY CATALANO, OFFICER JOSHUA GAGNON, NURSE CHRISTIAN CAPOCCIA, SERGEANT ARTHUR BARNES, OFFICER JOSEPH CUMMINGS, OFFICER NICHOLAS DUMONT, OFFICER ZACHARY FONSECA, OFFICER DANIEL HOLLENBACH, OFFICER ERIC LAWSON, SERGEANT NATHAN OWEN, OFFICER CORY SHEPHERD, OFFICER JEFFREY PEPOLI, SERGEANT BRIAN RAYNER, OFFICER ROBERT BASHAW, OFFICER RAYMOND SIMULA, OFFICER SERGIO CACIOPPO, OFFICER THOMAS MEMBRINO, OFFICER DAVID GILMAN, OFFICER RYAN KALRIESS, MEDICAL DIRECTOR DOE, AND NURSE DOE,

Defendants.

-----------------------------------x

VIDEOTAPED DEPOSITION OF CHRISTIAN CAPOCCIA
August 13, 2026

VIDEOTAPED DEPOSITION OF CHRISTIAN CAPOCCIA

Conducted Remotely

2 Oliver Street

Suite 1005

Boston, Massachusetts

August 13, 2026

10:06 a.m. to 2:57 p.m.

Reporter: Laurie J. Berg, LCR, RPR, CRR

A P P E A R A N C E S

Katherine Zhang, Esquire
Jayden Rush, Esquire
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, New York 10001
212.446.2300
kzhang@bsfllp.com
jrush@bsfllp.com
(Present via video conference.)
-and-
Derrick Luster, Esquire
RIGHTS BEHIND BARS
1800 M Street NW FNT 1 #33821
Washington, DC 20033
202.455.4399
derrick@rightsbehindbars.org
(Present via video conference.)
COUNSEL FOR PLAINTIFF

A P P E A R A N C E S

(continued)

Brittni Wipper, Esquire
MASSACHUSETTS DEPARTMENT OF CORRECTION
70 Franklin Street
Suite 600
Boston, Massachusetts 02110
617.727.3300
brittni.wipper@doc.state.ma.us
(Present via video conference.)
COUNSEL FOR MASSACHUSETTS DEPARTMENT OF CORRECTION DEFENDANTS

Matthew D. Medoff, Esquire
ADLER COHEN HARVEY WAKEMAN GUEKGUEZIAN, LLP
2 Oliver Street
Suite 1005
Boston, Massachusetts 02109
617.423.6674
mmedoff@adlercohen.com
(Present via video conference.)
COUNSEL FOR DEFENDANT NURSE CHRISTIAN CAPOCCIA

A P P E A R A N C E S

(continued)

Also Present:

Robert Wynn, Legal Video Specialist

(Present via video conference.)

MR. MEDOFF: Objection.
Go ahead.
A. I -- I don't recall if it was specific to Wellpath as well.
Q. But there were DOC policies that applied to you as a Wellpath employee provider practicing at a DOC facility?
A. Yes.
Q. Okay. So is it fair to say that as a Wellpath provider, seeing patients at a DOC facility, you had to comply with both Wellpath policies and protocols and DOC policies and protocols?
MR. MEDOFF: Objection.
Go ahead.
A. Yes.
Q. Okay. Do you recall other DOC policies and protocols that you were required to comply with other than the ones about the periodic restraint checks?
A. There was a lot of specific protocols.
Q. Okay. Can you recall several that were relevant to your duties?
A. Well, one that was brought to my mind by one of the note reviews was that, after four missed meals, a hunger strike was officially initiated and medical

surveillance was applied at that point, so we'd have to check on the -- the patient with each missed meal. Other than that, I can't recall any specific policies. It's been a long time.

Q. Got it.

And the policy you just referenced about missing meals, do you know if that's a DOC policy or a Wellpath policy?

A. I know it was DOC. I don't recall if Wellpath had a specific policy regarding that.

Q. Okay. Do you recall the -- the numbers or names of any DOC or Wellpath policies that you were required to comply with?

A. No.

Q. Okay. Who made sure that Wellpath providers were complying with DOC policy?

MR. MEDOFF: Objection.

A. It was usually the higher-ranking officers. I don't recall specific ranks, but usually, like, the lieutenants and above.

Q. Mmm. So, for instance, with the restraint check policy, which, I take, is a DOC policy, the higher-ranking DOC officers would communicate with you about complying with that DOC policy?

A. Correct. They would -- I'd have to fill out documentation regarding a continued restraint check if it was going on through, like, the night or the day. If it was just, like, a one-time restraint check, it was just a report that I'd have to put in.

Q. I see.

So if there -- is it your understanding that there was a two-hour restraint check interval by -- as dictated by DOC policy?

MR. MEDOFF: Objection.

Go ahead.

A. Yes. I -- I might be off on the timeline -- on the timing of it being every two hours, but I do remember it was a -- a specific policy that every so -- such amount of time, you'd have to check the restraints in the same way each time.

Q. Right.

And then, as a medical provider, you would fill out some documentation that you had complied with that policy?

A. Yes, it was -- it was DOC documentation.

Q. Got it. I see. Okay. That's helpful.

I am going to share my screen to show the Exhibit 2, which we saw right before the break,

COMMONWEALTH OF MASSACHUSETTS
MIDDLESEX, SS.

I, Laurie J. Berg, Licensed Court Reporter, Registered Professional Reporter, Certified Realtime Reporter, and Notary Public, in and for the Commonwealth of Massachusetts, do hereby certify that pursuant to appropriate notice of taking deposition, there remotely appeared before me the following named person, to wit: CHRISTIAN CAPOCCIA, who was by me duly sworn; that he was thereupon examined upon his oath and his examination was reduced to writing by me; and that the deposition is a true record of the testimony given by the witness.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 24th day of August, 2026.

My commission expires:
August 30, 2030

Laurie Berg
Notary Public

# Exhibit 28

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION No. 1:23-cv-10063

DERRICK WASHINGTON,

Plaintiff,

V.

MASSACHUSETTS DEPARTMENT OF CORRECTION, WELLPATH LIQUIDATING TRUST, MATTHEW J. DUNDON as Trustee of the Wellpath Liquidating Trust, SUPERINTENDENT STEVE KENNEWAY, LIEUTENANT ROBERT DESCHENE, LIEUTENANT ARTHUR FORGET, SERGEANT RYAN HILLIS, SERGEANT THOOMAS TOCCI, OFFICER ANTHONY CATALANO, OFFICER JOSHUA GAGNON, NURSE CHRISTIAN CAPOCCIA, SERGEANT ARTHUR BARNES, OFFICER JOSEPH CUMMINGS, OFFICER NICHOLAS DUMONT, OFFICER ZACHARY FONSECA, OFFICER DANIEL HOLLENBACH, OFFICER ERIC LAWSON, SERGEANT NATHAN OWEN, OFFICER CORY SHEPHERD, OFFICER JEFFREY PEPOLI, SERGEANT BRIAN RAYNER, OFFICER ROBERT BASHAW, OFFICER RAYMOND SIMULA, OFFICER SERGIO CACIOPPO, OFFICER THOMAS MEMBRINO, OFFICER DAVID GILMAN, OFFICER RYAN KALRIESS, MEDICAL DIRECTOR DOE, AND NURSE DOE.

Defendants.

## **DOC DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

### **GENERAL OBJECTIONS AND RESERVATIONS**

1. Defendant objects to these interrogatories to the extent that they seek information protected from disclosure by the attorney-client privilege, the work product doctrine, or other

applicable privileges or protections.

2. Defendant objects to these interrogatories to the extent they seek the disclosure of information not required under the Federal Rules of Civil Procedures.
3. Defendant objects to these interrogatories as unduly burdensome and oppressive insofar as they seek information in the Plaintiff's possession, custody or control.
4. Defendant's responses to these interrogatories shall not be deemed to constitute an admission that any particular document exists, is relevant, or is admissible as evidence or that the subject matter of the request is relevant to the litigation.
5. Defendant objects to the definitions contained in Plaintiff's First Set of Interrogatories to the extent that they seek to mischaracterize phrases or policies.
6. Subject to and without waiving any of his objections, Defendant reserves the right to supplement these responses, as needed, should he later obtain additional, responsive information.

**INTERROGATORY ANSWERS**

**Interrogatory No. 1**

Identify each current or former DOC employee, agent and/or contractor, or any other Person with knowledge of the Incidents. For each such Person, state their (i) full name, (ii) badge number or employee ID number, (iii) job title on the relevant date below, (iv) job function being performed by that Person at the time of each Incident subject to this complaint; identify (v) the Incident(s) of which that Person has knowledge; (vi) their last known address, (vii) their current place of employment, and (viii) current job title; and (ix) provide a summary of the Person's knowledge of the Incident.

**Answer No. 1**

Defendant objects to this interrogatory in that it is overly broad, unduly burdensome, not limited in time and scope, unlikely to lead to admissible evidence, and beyond the scope of the Amended Complaint. Defendant further objects to the extent that it seeks personal information that is prohibited from dissemination by state statute. Massachusetts General Laws chapter 66A, § 2(C) and (K) prohibits an agency from disclosing personal information about its employees. Notwithstanding and subject to these objections, Defendant refers Plaintiff to documents produced in response to Plaintiff's Second Request for Production of Documents.

**Interrogatory No. 2**

Identify each DOC Defendant who did not have a DOC-issued email address and/or phone between September 2019 and August 2020. For each Person, state their (i) full name, (ii) whether they used their personal email address and/or instant messaging platform, including but not limited to Facebook messages and Instagram direct messages, to send and receive correspondences related to DOC matters, and (iii) if applicable, the personal email address and/or instant messaging platform, including but not limited to Facebook messages and Instagram direct messages, they used to communicate about DOC matters.

**Answer No. 2**

Defendant objects to this interrogatory in that it is overly broad, unduly burdensome, not limited in time and scope, unlikely to lead to admissible evidence, and beyond the scope of the Amended Complaint. Defendant further objects to the extent that it seeks personal information that is prohibited from dissemination by state statute. Massachusetts General Laws chapter 66A, § 2(C) and (K) prohibits an agency from disclosing personal information about its employees. Notwithstanding and subject to these objections, Defendant states that no DOC mailboxes were found for DOC Defendants Nicholas Dumont, Robert Bashaw, or Zachary Fonseca as these individuals did not have DOC email addresses during the relevant time period.

**Interrogatory No. 3**

State each affirmative defense You assert in this action and All facts and legal arguments in support of those defenses.

**Answer No. 3**

Defendant objects to this interrogatory in that it is overly broad, unduly burdensome, not limited in time and scope, unlikely to lead to admissible evidence, and beyond the scope of the Amended Complaint. Defendant further objects in that it seeks legal analysis, case evaluation, mental impressions, or confidential communications prepared in anticipation of litigation.

**Interrogatory No. 4**

If any Person(s) investigated this matter for You including, but not limited to, medical experts, private investigators, or insurance adjusters, state (i) their full name; (ii) their last known address; (iii) whether such investigation was reduced to writing; and (iv) the substance of their investigation and findings. If said Person(s) obtained any signed, recorded, written or oral statement from any individual, (v) identify the Person who gave the statement and (vi) the present custodian of such statement.

**Answer No. 4**

Defendant objects to this interrogatory in that it is overly broad, unduly burdensome, not limited in time and scope, unlikely to lead to admissible evidence, and beyond the scope of the Amended Complaint. Defendant further objects in that it seeks legal analysis, case evaluation, mental impressions, or confidential communications prepared in anticipation of litigation.

**Interrogatory No. 5**

Describe Your efforts to locate Documents and Communications responsive to Plaintiff's Second Requests for Production.

**Answer No. 5**

Defendant objects to this interrogatory in that it is overly broad, unduly burdensome, not limited in time and scope, unlikely to lead to admissible evidence, and beyond the scope of the Amended Complaint. Defendant further objects in that it seeks legal analysis, case evaluation, mental impressions, or confidential communications prepared in anticipation of litigation. Defendant also objects to the extent that this interrogatory seeks information protected from disclosure by the attorney-client privilege and the work product doctrine.

**Interrogatory No. 6**

Describe All Policies and Procedures in place between June 1, 2019 and the present relating to the maintenance and destruction of handheld camera footage, video surveillance footage, and All other forms of video evidence captured at SBCC. For each Policy and/or Procedure, state: (i) the first known date the Policy or Procedure was known to be in effect; (ii) the last known date the Policy and/or Procedure was known to be in effect; (iii) the categories of video evidence governed by that Policy and/or Procedure; and (iv) whether the Policy and/or Procedure is memorialized in writing, including but not limited to the Policy or Procedure number, and where that Policy and/or Procedure may be located.

**Answer No. 6**

Defendant objects to this interrogatory in that it is overly broad, unduly burdensome, not limited in time and scope, unlikely to lead to admissible evidence, and beyond the scope of the Amended Complaint. Notwithstanding and subject to these objections, Defendant states that pursuant to 103 DOC 158, Disposal of Outdated Documents, DOC follows the Commonwealth's Statewide Retention Schedule. The Statewide Records Retention Schedule provides that "[s]ecurity and surveillance tapes" are to be retained "until no longer used or needed; permission not needed for destruction." Accordingly, DOC does not maintain a separate policy establishing a fixed retention period for correctional surveillance video recordings. A copy of 103 DOC 158 and the application portion of the Commonwealth's Statewide Records Retention Schedule were produced on July 20, 2026.

**Interrogatory No. 7**

Identify All handheld camera footage, video surveillance footage, and All other forms of video evidence captured at SBCC relating to the Incidents, whether presently available, destroyed, or withheld. For each video identified, identify: (i) the category of video evidence (for example, handheld camera footage, video surveillance footage, etc.); (ii) the Person(s) who captured the video; (iii) All Persons known to have accessed the video, including but not limited to, the date it was accessed, the Person who accessed it on each identified date, and the purpose for which the video was accessed, to the extent known; and (iv) whether the video was produced, destroyed, or withheld. If the video evidence was destroyed, identify: (v) why the video was destroyed; (vi) the Person(s) destroyed the video; (vii) the date the video was destroyed; and (viii) the purpose for which the video was destroyed. If the video was withheld, state (ix) the basis for withholding the video.

**Answer No. 7**

Defendant objects to this interrogatory in that it is overly broad, unduly burdensome, not limited in time and scope, and unlikely to lead to admissible evidence. Notwithstanding and subject to these objections, Defendant states that the video footage that was captured at SBCC relating to the Incidents has been produced to Plaintiff. Answering further, Defendant states that all video evidence captured at SBCC relating to the Incidents have been produced. There has been no video footage withheld. At relevant times in the Amended Complaint, the video recording system at SBCC had approximately 383 analog cameras and 26 digital video recorders. The analog cameras recorded 24 hour live video onto the digital recorders. The digital recorders had hard drives and video was kept on the hard drives for a limited time. As the memory of a hard drive reached capacity, it automatically recorded over the earliest footage. The number of days preserved in the court of the ordinary operation of the camera system depended on how much data was contained in the footage, which in turn depended on factors such as location and the amount of movement recorded. If a request was made and video was to be preserved, it would have been downloaded from a network computer to a digital file (i.e. DVD). There was no way to preserve video on the system itself.

**Interrogatory No. 8**

Identify All Documents and Communications, including but not limited to counseling memos, disciplinary hearing notes and transcripts, and performance evaluations, prepared at any time, concerning any allegation that any DOC Defendant used force unnecessarily, excessively, or contrary to any DOC Policy or Procedure governing the Use of Force.

**Answer No. 8**

Defendant objects to this interrogatory in that it is overly broad, unduly burdensome, not limited in time and scope, unlikely to lead to admissible evidence, and beyond the scope of the Amended Complaint.

**Interrogatory No. 9**

Identify All Documents and Communications, including but not limited to counseling memos, disciplinary hearing notes and transcripts, and performance evaluations, prepared at any time, concerning any allegation that any DOC Defendant prepared or filed a false report, including but not limited to disciplinary reports, incident reports, and Use of Force reports.

**Answer No. 9**

Defendant objects to this interrogatory in that it is overly broad, unduly burdensome, not limited in time and scope, unlikely to lead to admissible evidence, and beyond the scope of the Amended Complaint.

**Interrogatory No. 10**

Do You dispute that Mr. Washington suffered injuries as a result of DOC's use of Chemical Agents during the Incidents? If so, state All facts and legal arguments upon which You base Your contention.

**Answer No. 10**

Defendant objects to this interrogatory in that it seeks legal analysis, case evaluation, mental impressions, or confidential communications prepared in anticipation of litigation. Answering further, Defendant directs Plaintiff to the Defendants' Answer to Plaintiff's Amended Complaint.

**Interrogatory No. 11**

Do You dispute that Mr. Washington suffered injuries as a result of the Incidents? If so, state All facts and legal arguments upon which You base Your contention.

**Answer No. 11**

Defendant further objects to this interrogatory in that it seeks legal analysis, case evaluation, mental impressions, or confidential communications prepared in anticipation of litigation. Answering further, Defendant directs Plaintiff to the Defendants' Answer to Plaintiff's Amended Complaint.

**Interrogatory No. 12**

Identify All DOC employees, agents and/or contractors who participated in the approval, administration, or supervision of, or attended any meeting related to the Black, Latino, Asian Cultural Coalition ("BLACC") group at SBCC between June 1, 2019 and December 31, 2020. For each such individual, state the (i) full name, (ii) badge number or employee ID number, (iii) job title on the relevant date, (iv) the date and purpose of any meetings they attended related to BLACC; (v) a summary of the witness's participation in BLACC; (vi) last known address, (vii) current place of employment, and (viii) current job title.

**Answer No. 12**

Defendant objects to this interrogatory in that it is overly broad, unduly burdensome, not limited in time and scope, unlikely to lead to admissible evidence, and beyond the scope of the Amended Complaint. Defendant further objects to the extent that it seeks personal information that is prohibited from dissemination by state statute. Massachusetts General Laws chapter 66A, § 2(C) and (K) prohibits an agency from disclosing personal information about its employees. Answering further, Defendant states that former Superintendent Steven Kenneway was involved in the approval of BLACC as indicated in his deposition in this civil action. Security staff would have been present for any gathering of incarcerated individuals.

**Interrogatory No. 13**

Describe in detail any and All procedures in place at SBCC between January 1, 2020 and August 31, 2020 for screening for contraindications prior to using force on inmates.

**Answer No. 13**

Defendant states that pursuant to 103 CMR 505.10(3)[1], "[w]hen time and circumstances permit, before the use of chemical agents, the Medical Director or designee, shall review the inmate's medical file to determine if any medical contraindications exist in using chemical agents. After the review, the Medical Director shall complete and sign the 'Use of Chemical Agents' form."

**Interrogatory No. 14**

Describe each instance between January 1, 2015 and March 5, 2020 in which Mr. Washington was screened for contraindications for use of Chemical Agents at SBCC. For each instance, state: (i) the date of the screening; (ii) the name of the Officer that requested authorization for use of Chemical Agents and/or the name of the Officer that initiated the screening; (iii) the name of the medical professional that conducted the screening; (iv) the methods used to screen for contraindications; (v) the documents relied upon when screening for contraindication(s); (vi) the purpose of the screening, including but not limited to for a planned or spontaneous Use of Force; (v) whether Mr. Washington was contraindicated for the Use of Chemical Agents; (vi) whether Mr. Washington was approved for an alternative Chemical Agent, despite his Contraindication, (vii) All policies supporting the decision to approve the use of an alternative Chemical Agent, if applicable; (viii) whether Chemical Agents were ultimately used on Mr. Washington, and (ix) which Chemical Agents were used on Mr. Washington, if applicable.

**Answer No. 14**

Defendant objects to this interrogatory in that it is overly broad, unduly burdensome, not limited in time and scope, unlikely to lead to admissible evidence, and beyond the scope of the Amended Complaint. It is the Medical Director or designee that reviews an inmate's medical file when time permits, therefore, the information would be contained in Plaintiff's medical file.

---

[1] Defendant refers to the regulation in effect during the relevant time period in 2020. The regulation has since been updated.

Answering further, there were no other uses of force involving chemical agent involving Plaintiff between 2015 and 2020.

**Interrogatory No. 15**

Describe in detail All criteria, procedures, and decision-making processes used to assign Mr. Washington to the "North Side" of SBCC during the Institutional Search in January 2020, including the basis on which Mr. Washington was assigned to the North Side.

**Answer No. 15**

Internal classification staff determined who should be classified to what facility and who should be housed with whom based on the internal risk assessment.

**Interrogatory No. 16**

Describe All actions taken by Defendant Tocci relating to Mr. Washington's prisoner grievances between June 1, 2019 and December 31, 2020, including but not limited to: (i) whether Sgt. Tocci shared or disclosed Mr. Washington's grievances with any other staff members; (ii) if so, the identity of each Person with whom Mr. Washington's grievances were shared; (iii) the date(s) on which any such disclosure was made; (iv) whether Sgt. Tocci had authorization to share confidential grievances under DOC policy 103 CMR 491.23; and (v) whether DOC investigated or took any disciplinary action in response to Sgt. Tocci's disclosure of Mr. Washington's grievances.

**Answer No. 16**

Defendant objects to this interrogatory in that it is overly broad, unduly burdensome, not limited in time and scope, unlikely to lead to admissible evidence, and beyond the scope of the Amended Complaint. Answering further, Defendant refers Plaintiff to the deposition conducted of Defendant Tocci in this action.

**Interrogatory No. 17**

Describe All policies and procedures in place at SBCC between June 1, 2019 and December 31, 2020 governing the monitoring of prisoner emails, letters, and other communications. For each policy, state: (i) who was authorized to access and review prisoner communications; (ii) what was done with the content of prisoner communications once reviewed; (iii) whether the content of prisoner communications could be shared with corrections officers or supervisors, and under what circumstances; and (iv) identify All DOC employees who accessed or reviewed any communication sent or received by Mr. Washington between June 1, 2019 and December 31, 2020.

**Answer No. 17**

Defendant objects to this interrogatory in that it is overly broad, unduly burdensome, not limited in time and scope, unlikely to lead to admissible evidence, and beyond the scope of the Amended Complaint. Defendant refers Plaintiff to discovery responses provided in this civil action, including 103 CMR 481, Inmate Mail, specifically 103 CMR 481.13(2) which indicates that the Superintendent may authorize the reading, censoring or disapproval of incoming non-privileged correspondence only to prevent interference with institutional goals of security, order, discipline, or if the correspondence might facilitate, encourage, or instruct in, criminal activity, and 103 CMR 481.14(1) which indicates that the Superintendent may authorize the reading of outgoing non-privileged correspondence when in his or her opinion such action is necessary to prevent the transmission of materials and/or information which represents a threat to security, order, rehabilitation or to the public safety. Defendant also refers Plaintiff to the service agreements of CorrLinks and Securus, which indicate communications may be monitored.

**Interrogatory No. 18**

Describe in detail the process by which disciplinary tickets are issued, including but not limited to: (i) All Policies or Procedures identifying All Persons authorized to determine whether to issue a disciplinary report; (ii) the review process, if any, before issuing a disciplinary report; (iii) the process by which Officers identify the specific Policy or rule violations forming the basis for a disciplinary report; (iv) the process by which a particular disciplinary action is categorized as 1, 2, 3, or 4; (v) All Persons responsible for reviewing the merits of a disciplinary report; and (vi) All Policies and Procedures governing the length of time an Officer has, from the time of the infraction, to issue a disciplinary report.

**Answer No. 18**

Defendant objects to this interrogatory in that it is overly broad, unduly burdensome, not limited in time and scope, unlikely to lead to admissible evidence, and beyond the scope of the Amended Complaint. Defendant states that inmate discipline is governed by 103 CMR 430, Inmate Discipline, which outlines the detection and reporting of disciplinary offenses, informal handling of lesser offenses where an employee reasonably believes that formal disciplinary action is not necessary and formal handling of disciplinary offenses. An employee who has reason to believe that a disciplinary offense has been committed by an inmate shall write a disciplinary report and submit it to the employee's supervisor for review within 24 hours. Upon receipt of the disciplinary report, a supervisor shall further investigate the matter if deemed necessary, within 24 hours, and recommend that the matter be handled informally in consultation with the reporting staff person, the matter be dismissed if further investigation, facts or mitigating circumstances change the facts as originally presented, or formal action be taken and forward the report to the Shift Commander. Upon receipt of the disciplinary report the Shift Commander shall, within 24 hours, recommend further investigation, the matter be handled informally in consultation with the reporting staff person's supervisor, the matter be dismissed if further investigation, facts or mitigating circumstances change the facts as originally presented, or formal action be taken and forward the report to the Disciplinary Officer. At all levels of review, the disciplinary report shall be reviewed for accuracy, while ensuring adherence to applicable time frames.

**Interrogatory No. 19**

Identify all disciplinary reports or tickets issued against Mr. Washington between November 1, 2019 and March 31, 2020. For each ticket, state: (i) the date issued; (ii) the officer who issued it; (iii) the alleged conduct underlying the ticket; (iv) whether the ticket was investigated; (v) the outcome of any hearing or review; and (vi) whether the ticket was ultimately dismissed or expunged.

**Answer No. 19**

Defendant objects to this interrogatory to the extent that it seeks information already provided in Defendants' Response to Plaintiff's Request for Production of Documents.

**Interrogatory No. 20**

Identify All Documents and Communications exchanged between any DOC Defendants between June 1, 2019 and December 31, 2020, relating to Mr. Washington, including but not limited to: his participation in BLACC, his grievances, his email correspondences, his housing assignment(s), or any of the Incidents. For each Communication, state: (i) the date of the Communication(s); (ii) All participants and recipients of the Communication(s); (iii) the medium (email, text, radio, in-Person, etc.) by which the Communication(s) was shared; and (iv) the substance of the Communication(s).

**Answer No. 20**

Defendant objects to this interrogatory in that it is overly broad, unduly burdensome, not limited in time and scope, unlikely to lead to admissible evidence, and beyond the scope of the Amended Complaint. Defendant further objecst to the extent it seeks information already provided in Defendants' Response to Plaintiff's Request for Production of Documents.

**Interrogatory No. 21**

Identify All Documents and Communications, including but not limited to complaints, grievances, and/or investigatory records, alleging that any DOC Defendant engaged in racially discriminatory, racially biased, and/or racially motivated conduct, including but not limited to using racial terms, slurs, stereotypes, or derogatory language, against any incarcerated person between June 1, 2019 and December 31, 2020. For each Document and/or Communication, state: (i) the date of the alleged conduct; (ii) the perpetrator of the alleged conduct; (iii) any DOC action to investigate the alleged conduct, if any; and (iv) whether any disciplinary action was imposed on that DOC Defendant.

**Answer No. 21**

Defendant objects to this interrogatory in that it is overly broad, unduly burdensome, not limited in time and scope, unlikely to lead to admissible evidence, and beyond the scope of the Amended Complaint.

**Interrogatory No. 22**

Identify All Documents and Communications exchanged between any DOC Defendant(s) with any DOC employee regarding the misconduct alleged in Mr. Washington's Grievances. For each instance, state (i) the date of the Communication, (ii) the names of All Persons involved in the Communications, (iii) the content of the Communication, (iv) and the Grievance to which the Communication(s) relates. If Your answer includes reference to Documents, please provide the corresponding Bates number.

**Answer No. 22**

Defendant objects to this interrogatory in that it is overly broad, unduly burdensome, not limited in time and scope, unlikely to lead to admissible evidence, and beyond the scope of the Amended Complaint. Defendant further objects to the extent it seeks information already provided in Defendants' Response to Plaintiff's Request for Production of Documents.

**Interrogatory No. 22**

Identify All Documents and Communications exchanged between any DOC Defendant(s) with any DOC employee regarding the misconduct alleged in Mr. Washington's Grievances. For each instance, state (i) the date of the Communication, (ii) the names of All Persons involved in the Communications, (iii) the content of the Communication, (iv) and the Grievance to which the Communication(s) relates. If Your answer includes reference to Documents, please provide the corresponding Bates number.

**Answer No. 22**

Defendant objects to this interrogatory in that it is overly broad, unduly burdensome, not limited in time and scope, unlikely to lead to admissible evidence, and beyond the scope of the Amended Complaint. Defendant further objects to the extent it seeks information already provided in Defendants' Response to Plaintiff's Request for Production of Documents.

**Certification**

On behalf of the Defendant, Massachusetts Department of Correction, I have read the responses to the above interrogatories. The responses were prepared by or with the assistance of agents, employees, representatives or attorneys of the Defendant, the Massachusetts Department of Correction, or others believed to have relevant information and with the assistance and advice of counsel, upon which I have relied. The responses set forth herein, subject to inadvertent or undiscovered errors or omissions, are based on and therefore necessarily limited by the records and information still in existence, presently recollected, thus far discovered in the course of the preparation of these responses, and currently available to the Defendant. Consequently, I reserve the right to make any changes or additions to any of these responses at any time that errors or omissions have been made therein or that accurate or complete information has become available. Subject to the limitations set forth herein, said responses are true to the best of my present knowledge, information and belief.

Signed under the pains and penalties of perjury this 13 day of August, 2026.

David Shaw
Assistant Deputy Commissioner, Northern Sector

**AS TO OBJECTIONS:**

Dated:

Respectfully submitted,

NANCY ANKERS WHITE

**AS TO OBJECTIONS:**

Dated: August 14, 2026

Respectfully submitted,

NANCY ANKERS WHITE
Special Asst. Attorney General

______________________________
Stephanie M. Caffrey, Counsel
BBO No. 697075
Legal Division
Department of Correction
70 Franklin Street, Suite 600
Boston, MA 02110
(617) 727-3300 ext. 1154
Stephanie.M.Caffrey@doc.state.ma.us

# Exhibit 29

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - x

DERRICK WASHINGTON,
Plaintiff,
v.
Civil Action
No. 1:23-cv-10063

MASSACHUSETTS DEPARTMENT OF CORRECTIONS, WELLPATH LIQUIDATING TRUST, MATTHEW J. DUNDON AS TRUSTEE OF THE WELLPATH LIQUIDATING TRUST, SUPERINTENDENT STEVE KENNEWAY, LIEUTENANT ROBERT DESCHENE, LIEUTENANT ARTHUR FORGET, SERGEANT RYAN HILLIS, SERGEANT THOMAS TOCCI, OFFICER ANTHONY CATALANO, OFFICER JOSHUA GAGNON, NURSE CHRISTIAN CAPOCCIA, SERGEANT ARTHUR BARNES, OFFICER JOSEPH CUMMINGS, OFFICER NICHOLAS DUMONT, OFFICER ZACHARY FONSECA, OFFICER DANIEL HOLLENBACH, OFFICER ERIC LAWSON, SERGEANT NATHAN OWEN, OFFICER CORY SHEPHERD, OFFICER JEFFREY PEPOLI, SERGEANT BRIAN RAYNER, OFFICER ROBERT BASHAW, OFFICER RAYMOND SIMULA, OFFICER SERGIO CACIOPPO, OFFICER THOMAS MEMBRINO, OFFICER DAVID GILMAN, OFFICER RYAN KALRIESS, MEDICAL DIRECTOR DOE, AND NURSE DOE,
Defendants.
- - - - - - - - - - - - - - - - - - - - x

DEPOSITION OF DERRICK WASHINGTON
MCI-Shirley
104 Harvard Road
Shirley, Massachusetts
August 20, 2026
10:15 a.m.

Julie A. Mercier, RPR and Notary Public

APPEARANCES:

RIGHTS BEHIND BARS
By Derrick Luster, Esq.
1800 M Street NW FNT 1 #33821
Washington, DC 20033
(202) 455-4399
derrick@rightsbehindbars.org
Counsel for Plaintiff

MASSACHUSETTS DEPARTMENT OF CORRECTION
By Stephanie Caffrey, Esq.
70 Franklin Street
Suite 600
Boston, Massachusetts 02110
(617) 727-3300
stephanie.m.caffrey@doc.state.ma.us
Counsel for Massachusetts Department of Correction Defendants.

ADLER COHEN HARVEY WAKEMAN GUEKGUEZIAN, LLP
By Matthew Medoff, Esq.
2 Oliver Street, Suite 1005
Boston, Massachusetts 02109
(617) 423-6674
mmedoff@adlercohen.com
Counsel for Christian Capoccia, RN.

I N D E X


| Deposition of: | Examination |
|---|---|
| DERRICK WASHINGTON | |
| By Mr. Medoff | 4 |


E X H I B I T S


| No. | | Page |
|---|---|---|
| Exhibit 1 | Plaintiff's Responses and Objections to Defendant Capoccia's First Set of Interrogatories | 10 |
| Exhibit 2 | Massachusetts Correctional Healy Intrasystem Transfer Form | 34 |
| Exhibit 3 | Assessment Form Massachusetts DOC Health Services | 37 |
| Exhibit 4 | Massachusetts DOC Health Services - Sick Call Request Form | 66 |
| Exhibit 5 | Massachusetts DOC Health Services - Sick Call Request Form | 69 |
| Exhibit 6 | Massachusetts DOC Health Services - Sick Call Request Form | 71 |

Q. Do you recall when you were diagnosed with asthma?
A. As long as I can remember. I was born with asthma.
Q. Beyond asthma, do you have any recollection of other medical conditions you had prior to January of 2020?
A. I can't recall right now.
Q. Is it fair to say that you had asthma prior to being incarcerated?
A. Yes.
Q. Prior to being incarcerated, did you receive any treatment for your asthma?
A. Yes.
Q. What treatment did you receive for your asthma prior to being incarcerated?
A. A nebulizer and an as asthma inhaler, albuterol asthma inhaler.
Q. And the nebulizer, can you describe that for me?
A. It's, like, a machine with a facemask.
Q. Do you remember how long you had that nebulizer for?
A. I can't remember how long I had that

for.

Q. At any point since being incarcerated, have you used a nebulizer?

A. Yeah, I use it if I don't have my asthma inhaler.

Q. And the asthma inhaler that you had prior to being incarcerated, was that an inhaler that you used at scheduled times?

A. So can you clarify the question?

Q. Do you remember the inhaler you had prior to being incarcerated?

A. I carry an inhaler with me.

Q. So prior to being incarcerated back in 2005, did you have an inhaler to treat your asthma?

A. Yes.

Q. Do you remember the type of inhaler you had?

A. Albuterol.

Q. And was that albuterol inhaler, did you take it when you had symptoms or did you take it every day routinely at a particular time?

A. Just when I had symptoms.

Q. Like as needed, is that a fair word to

describe it?
A. Well, yeah, as needed.
Q. Have you been issued an inhaler at various times since being incarcerated?
A. Yeah. I just got a new inhaler last week, actually.
Q. Currently what type of inhaler do you have?
A. Albuterol.
Q. Is that an inhaler that you take -- you use when you have a flare-up or symptoms?
A. Yeah. I usually carry it with me when I'm exercising or I leave it in the cell.
Q. Is it a keep-on-person inhaler?
A. Yes.
Q. Is that the only asthma inhaler that you currently use?
A. Yeah.
Q. So in the year prior to January of 2020, from January of 2019 to January of 2020, how frequently were you using an inhaler?
A. I can't recall.
Q. Prior to January of 2020, was there anything in particular that would trigger an

entire life, so it's definitely highly possible that that was happening.

Q. But you just don't have a specific memory; is that fair?

A. The time sort of conflates. It sort of blurs into each other.

Q. Has there been a time where you remember experiencing asthma symptoms five nights a week?

A. Yeah, definitely.

Q. So this document isn't necessarily inconsistent with your memory, you just don't remember the time frame; is that fair?

A. Yeah.

Q. In January of 2020, were you issued an inhaler?

A. I'm not sure.

Q. So recognizing you're not sure about the January 2020 time frame, there were time periods when you've had a keep-on-person inhaler; is that correct?

A. Every time -- yes.

Q. And was that inhaler, did you have to request access to it or did you have access to the

keep-on-person inhaler because it was on your person?

A. Yeah, when it was on my person.

Q. Do you remember when you were first issued a keep-on-person inhaler?

A. I've had it throughout my entire incarceration.

Q. Years; is that fair?

A. Yes.

Q. Have you ever been told the circumstances under which the keep-on-person inhaler could be confiscated?

A. No.

Q. Have you had your keep-on-person inhaler confiscated at any time between when you were first issued it and January of 2020?

A. Yes.

Q. For what time period was it confiscated?

A. Can you add on to what you mean by "confiscated"?

Q. Sure. I can back up and rephrase it.

Have there been time periods during incarceration when the keep-on-person inhaler has

CERTIFICATE

Commonwealth of Massachusetts
Suffolk ss.

I, Julie A. Mercier, Registered Professional Reporter and Notary Public in and for the Commonwealth of Massachusetts, do hereby certify that DERRICK WASHINGTON, the witness whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is transcribed to the best of my skill and ability.

I further certify that I am neither related to or employed by any of the parties in or counsel to this action, nor am I financially interested in the outcome of this action.

In witness whereof, I have hereunto set my hand and seal this _____ day of _______________, 2026.

Julie A. Mercier
Notary Public

My commission expires:
August 17, 2029

# Exhibit 30

OFFERED BY Massachusetts Department of Correction

# Souza-Baranowski Correctional Center

## Address

Physical Address

1671 Shirley Road, Lancaster, MA 01523

**Directions** (https://maps.google.com/?q=1671+Shirley+Road%2C+Lancaster%2C+MA+01523)

Mailing Address

Harvard Rd., P.O. Box 8000, Shirley, MA 01464

**Directions** (https://maps.google.com/?q=Harvard+Rd.%2C+P.O.+Box+8000%2C+Shirley%2C+MA+01464)

## Phone

(978) 514-6500

TRANSIT FRIENDLY

WHEELCHAIR ACCESSIBLE

## Visiting someone in a Massachusetts Prison

(/guides/visiting-someone-in-a-massachusetts-prison)

## 483 Visiting Procedures

(/lists/specific-visiting-procedures)

## Additional Info
(/lists/additional-info)



**DETAILS**

# Overview

Souza Baranowski Correctional Center (SBCC) is a maximum security facility where the Department's reception and diagnostic center is located for all newly incarcerated men that enter DOC custody.

# Hours

Please note: All visits must be scheduled no less than 24 hours in advance, but no more than 10 days in advance. Visits can be scheduled by calling the VR Sergeant between 1pm and 8pm, seven days a week.

For B.A.U. / S.A.U. / S.T.P. contacts for scheduling please see below.

For holiday visiting schedules and to verify normal visiting schedules, which are subject to change, please call the facility to verify at the phone number at the top of the page.

## Visiting Hours - Units H1, J1, and K1

Tuesday:
1:00 pm-3:30 pm

Wednesday:
5:30 pm-8:30 pm

Saturday:
1:00 pm-3:30 pm

Please note: Unit K1 has additional visiting hours on Tuesday and Saturday from 4pm to 5pm.

## Visiting Hours - Units G2, H2, J2, and K2 (Low Sector)

Sunday:
5:30 pm-8:30 pm

Tuesday:
5:30 pm-8:30 pm

Thursday:
1:00 pm-4:00 pm

## Visiting Hours - Units G2, H2, J2, and K2 (High Sector)

Sunday:
1:00 pm-4:00 pm

Thursday:
5:30 pm-8:30 pm

Friday:
1:00 pm-4:00 pm

## Visiting Hours - Unit G1 (Wednesday)

Wednesday:
1:00 pm-4:00 pm

Low Sector contact visits and High Sector non-contact visits.

## Visiting Hours - Unit G1 (Friday & Saturday)

Friday - Saturday:
5:30 pm-8:30 pm

High Sector contact visits and Low Sector non-contact visits.

## Visiting Hours (Non-Contact) - Units L1, N1, and P1

Sunday:
5:30 pm-8:30 pm

Tuesday:
1:00 pm-4:00 pm

Thursday:
5:30 pm-8:30 pm

## Visiting Hours (Non-Contact) - Units L2, M2, N2, and P2

Sunday:
1:00 pm-4:00 pm

Wednesday:
5:30 pm-8:30 pm

Saturday:
1:00 pm-4:00 pm

## Visiting Hours (Non-Contact) - Secure Treatment Program (S.T.P.)

Sunday:
8:00 am-11:00 am

Wednesday:
1:00 pm-4:00 pm

Friday:
5:30 pm-8:30 pm

## Visiting Hours (Contact) - Secure Treatment Program (S.T.P.)

Sunday:
8:00 am-11:00 am

Visits for the S.T.P. can be scheduled by calling the S.T.P. Sergeant at Ext. 6069 between 8am - 10am or 6pm - 8pm, seven days a week.

## Visiting Hours (Non-Contact) - Behavior Assessment Unit (B.A.U.)

Sunday:
8:00 am-11:00 am

Tuesday:
5:30 pm-8:30 pm

Thursday:
1:00 pm-4:00 pm

Visits for the B.A.U. can be scheduled by calling the B.A.U. Sergeant at Ext. 6030 between 8am - 10am or 6pm - 8pm, seven days a week.

## Visiting Hours (Non-Contact) - Secure Adjustment Unit (S.A.U.)

Sunday:
8:00 am-11:00 am

Tuesday:
5:30 pm-8:30 pm

Thursday:
1:00 pm-4:00 pm

Visits for the S.A.U. can be scheduled by calling the South S.A.U. Sergeant at Ext. 6445 or North S.A.U. at Ext. 6067 between 8am - 10am or 6pm - 8pm, seven days a week.

# Parking

All vehicles on state property are subject to search and must be locked while unattended. Handicapped parking is available and all vehicles parked in these spaces must have a handicapped vehicle placard.

**CONTACTS**

## Stacey Butkowski, Superintendent

### Phone

**978-514-6500**

Ext. 6106 or Ext. 6109

# More locations

**Massachusetts Department of Correction Locations** (/orgs/massachusetts-department-of-correction/locations)

State Organizations (/massachusetts-state-organizations)

**© 2026 Commonwealth of Massachusetts.**
Mass.gov® is a registered service mark of the Commonwealth of Massachusetts.

# Exhibit 31

# Massachusetts Department of Correction (MADOC)

The Department of Correction oversees the state prison system, managing 13 institutions across the state. We provide custody, care, and programming for those under our supervision to prepare them for safe and successful reentry into the community.

## Contact Us

### Online

Division and Staff Directory (/lists/department-of-correction-division-and-staff-directory)

### Phone

Headquarters (508) 422-3300

DOC offices and divisions located in Milford only

Human Resources (508) 850-7888

Monday through Friday 9 a.m.–5 p.m.

## Address

DOC Headquarters
50 Maple Street Milford, MA 01757
**Directions** (https://maps.google.com/?q=50+Maple+Street%2C+Milford%2C+MA+01757)

- **DOC Facebook** (https://www.facebook.com/macorrections)
- **DOC Instagram** (https://www.instagram.com/macorrections/)
- **DOC Twitter** (https://www.twitter.com/MACorrections/)
- **DOC YouTube** (https://www.youtube.com/user/MACorrections)

# Featured Items




### Become a Correction Officer



### Visiting someone in a Massachusetts Prison

### Find someone with Vinelink



### Find a prison




### Submit a public records request to the Department . . .

# Resources for Family and Friends of Incarcerated Individuals

### Deposit money to an incarcerated individual's personal account (https://www.mass.gov/how-to/deposit-money-to-an-incarcerated-individuals-personal-account)

### Contact someone in a Massachusetts prison (https://www.mass.gov/how-to/contact-someone-in-a-massachusetts-prison)

### Report a PREA Allegation (https://www.mass.gov/how-to/report-a-prea-allegation)

### Programming (https://www.mass.gov/info-details/programming)

### Reentry Planning (https://www.mass.gov/info-details/reentry-planning)

### Resources for Family and Friends of Incarcerated Individuals Homepage (https://www.mass.gov/resources-for-family-and-friends-of-incarcerated-individuals)

## Additional Services

### Public Records for the Department of Correction (https://www.mass.gov/public-records-for-the-department-of-correction)

### Reports (https://www.mass.gov/report/department-of-correction-reports)

### DOC Data Dashboards (https://www.mass.gov/doc-data-dashboards)

### Assistance for Department of Correction Employees, Retirees, and their Families (https://www.mass.gov/assistance-for-department-of-correction-employees-retirees-and-their-families)

### Careers, Internships, Volunteering, and Guardianships (https://www.mass.gov/careers-internships-volunteering-and-guardianships)

**COVID - 19 Information** (https://www.mass.gov/guides/doc-coronavirus-information-guide)

Collapse all

## Services Continued

*(6)*

**Reimagining MCI-Framingham** (https://www.mass.gov/reimagining-mci-framingham)

**Attorney Verification System for Privileged Mail** (https://www.mass.gov/info-details/attorney-verification-system-for-privileged-mail)

**Research Statistics and Reports** (https://www.mass.gov/research-statistics-and-reports)

**Resources for Victims** (https://www.mass.gov/resources-for-victims)

**Massachusetts Correctional Industries (MassCor)** (https://www.mass.gov/massachusetts-correctional-industries-masscor)

**Commonwealth of Massachusetts | Criminal Justice Cross-Tracking System** (https://www.mass.gov/info-details/commonwealth-of-massachusetts-criminal-justice-cross-tracking-system)

# Recent news & announcements

PRESS RELEASE

## Massachusetts Department of Correction Reports More Than 1,500 Educational Program Completions, Marking Third Consecutive Year of Growth (/news/massachusetts-department-of-correction-reports-more-than-1500-educational-program-completions-marking-third-consecutive-year-of-growth)

***11/05/2026*** | ***Massachusetts Department of Correction***

College Course Offerings Reach Record High as Incarcerated Individuals Log More Than 672,000 Hours in Educational Programming

---

PRESS RELEASE

## Massachusetts Department of Correction Launches Pilot Remote Work Program for Incarcerated Individuals (/news/massachusetts-department-of-correction-launches-pilot-remote-work-program-for-incarcerated-individuals)

***9/17/2026*** | ***Massachusetts Department of Correction***

Partnership with the Alliance for Higher Education in Prison will provide professional experience and support successful reentry

---

PRESS RELEASE

## Massachusetts Department of Correction Launches New Digital Patient Portal to Enhance Access to Clinical Services and Health Information (/news/massachusetts-department-of-correction-launches-new-digital-patient-portal-to-enhance-access-to-clinical-services-and-health-information)

***8/21/2026*** | ***Massachusetts Department of Correction***

Portal will be available on educational tablets making it easier for individuals to request medical care and access health information

# Upcoming Events

*No upcoming events scheduled*

# Related organizations

**Executive Office of Public Safety and Security** (/orgs/executive-office-of-public-safety-and-security)

Click or tap INSIDE map to move the map




+
–

| Source: **MassGIS** (https://www.mass.gov/service-details/about-massgis)

FACILITY LOCATIONS & INFORMATION (/ORGS/MASSACHUSETTS-DEPARTMENT-OF-CORRECTION/LOCATIONS)

# Sign in

## Employee Email Portal (https://outlook.office.com/owa)

## Employee Self Service - HRCMS (https://hrcms-prod.mass.gov/)

Image credits: George Headley

State Organizations (/massachusetts-state-organizations)

**© 2026 Commonwealth of Massachusetts.**
Mass.gov® is a registered service mark of the Commonwealth of Massachusetts.