UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DERRICK WASHINGTON, Plaintiff, | |
| v. | |
| MASSACHUSETTS DEPARTMENT OF CORRECTIONS, WELLPATH LIQUIDATING TRUST, MATTHEW J. DUNDON as Trustee of the Wellpath Liquidating Trust, SUPERINTENDENT STEVE KENNEWAY, LIEUTENANT ROBERT DESCHENE, LIEUTENANT ARTHUR FORGET, SERGEANT RYAN HILLIS, SERGEANT THOMAS TOCCI, OFFICER ANTHONY CATALANO, OFFICER JOSHUA GAGNON, NURSE CHRISTIAN CAPOCCIA, SERGEANT ARTHUR BARNES, OFFICER JOSEPH CUMMINGS, OFFICER NICHOLAS DUMONT, OFFICER ZACHARY FONSECA, OFFICER DANIEL HOLLENBACH, OFFICER ERIC LAWSON, SERGEANT NATHAN OWEN, OFFICER CORY SHEPHERD, OFFICER JEFFREY PEPOLI, SERGEANT BRIAN RAYNER, OFFICER ROBERT BASHAW, OFFICER RAYMOND SIMULA, OFFICER SERGIO CACIOPPO, OFFICER THOMAS MEMBRINO, OFFICER DAVID GILMAN, OFFICER RYAN KALRIESS, MEDICAL DIRECTOR DOE, AND NURSE DOE, Defendants. | C.A. NO: 1:23-cv-10063-MRG |

**DEFENDANT, NURSE CHRISTIAN CAPOCCIA'S LOCAL RULE 56.1 CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF HIS MOTION FOR <u>SUMMARY JUDGMENT</u>**

Pursuant to L.R. 56.1 of the Local Rules of the United States District Court for the District of Massachusetts, Christian Capoccia, R.N., submits the following concise

statement of material facts in support of his Motion for Summary Judgment. The Defendant submits these facts as undisputed for purposes of the Motion for Summary Judgment only:

1. Mr. Derrick Washington ("Mr. Washington" or "Plaintiff") is an incarcerated individual in the custody of the Massachusetts Department of Correction ("DOC") who was housed at the Souza Baranowski Correctional Center ("SBCC") from September 2018 to June 2023. See **Exhibit A**, Plaintiff's First Amended Complaint, at ¶ 3; **Exhibit B**, Excerpts of the Deposition of Derrick Washington, at 17:15-17; 19:2-4.
2. Mr. Washington has a history of asthma which predates his incarceration. **Exhibit B**, at 31:1-4.
3. Mr. Washington has been issued a Keep on Person ("KOP") during the time he has been incarcerated. **Exhibit B**, at 40:4-7.
4. There have been several occasions during Mr. Washington's incarceration when his KOP inhaler has been confiscated. **Exhibit B**, at 40:14-41:6.
5. This is a civil rights action filed by Mr. Washington against numerous individuals arising from incidents involving the uses of force on Mr. Washington from January to March 2020. See generally **Exhibit A**.
6. The only claim asserted against R.N. Capoccia is for deliberate indifference. Mr. Washington alleges that R.N. Capoccia violated his rights under the Eight Amendment, related to R.N. Capoccia's involvement in Mr. Washington's care on January 24, 2020, following a use of force incident occurring on January 23, 2020. Capoccia. **Exhibit A**, at Count VI.

7. Plaintiff alleges that he was the subject of a use of force on the evening of January 23, 2020 where oleoresin capsicum spray ("OC spray") was deployed in his vicinity at approximately 10:45 P.M. **Exhibit A**, ¶ 116.
8. R.N. Capoccia was not involved in the use of force on January 23, 2020, nor the deployment of OC spray in Mr. Washington's vicinity. **Exhibit C**, Excerpt of Use of Force Package #7701.
9. The use of force on January 23, 2020 was spontaneous, rather than planned. **Exhibit C**.
10. The use of force on January 23, 2020, including the use of OC spray, was directed at Mr. Washington's cellmate. **Exhibit C**, at pgs. 3-10.
11. Mr. Washington remained on the top bunk during the use of force, including when OC spray was deployed on Mr. Washington's cellmate. **Exhibit C**, at pgs. 3, 6, and 7.
12. R.N. Capoccia is a registered nurse licensed to practice in the Commonwealth of Massachusetts, having first obtained his nursing license in August of 2019. **Exhibit D**, Excerpts of the Deposition of Christian Capoccia, R.N., at 16:12-17.
13. Prior to becoming a registered nurse, R.N. Capoccia worked as an Emergency Medical Technician, as well as a medic in the United States Army. **Exhibit D**, at 21:14-16.
14. During nursing school, R.N. Capoccia received training in the management of respiratory conditions and asthma. **Exhibit D**, at 17:14-18.
15. R.N. Capoccia treated and evaluated Mr. Washington on the morning of January 24, 2020. **Exhibit E**, January 24, 2020 Nursing Progress Note.

16. At the time of his involvement in Mr. Washington's medical care on January 24, 2020, R.N. Capoccia was a nurse providing services through the entity that contracted with DOC to provide medical services at SBCC. **Exhibit D**, at 20:7-21:5.

17. In his role at Souza- Baranowski Correctional Center ("SBCC"), R.N. Capoccia worked 16-hour shifts, and, from 3:00P.M. to 11:00 P.M. was staffed in the infirmary unit, an area separate from inmate housing cell blocks. **Exhibit D**, at 26:5-15; 87:1-5.

18. R.N. Capoccia did not receive briefings regarding use of force incidents that had occurred on previous shifts. Nor was he briefed on uses of force that occurred during his shifts. **Exhibit D**, at 97:14-22.

19. R.N. Capoccia was not briefed on the use of force performed on Mr. Washington's cellmate on January 23, 2020. See **Exhibit D**, at 97:14-22.

20. If an inmate's Keep on Person ("KOP") inhaler was confiscated from security staff, R.N. Capoccia did not have authority to return the KOP inhaler as determinations regarding inmate property were in the discretion of Department of Correction ("DOC") staff. However, he could provide an inhaler for an as needed use, if indicated. **Exhibit D**, at 49:4-19.

21. On the morning of January 24, 2020, R.N. Capoccia evaluated Mr. Washington in his assigned cell block for a restraint check. **Exhibit D**, 122:1-7; **Exhibit E**.

22. Prior to responding to the cell block to perform the restraint check, R.N. Capoccia was not informed of the identify of the individual to be examined. **Exhibit D**, at 133:4-11; 140:11-16.

23. It is not standard practice to obtain vital signs during a restraint check. During a restraint check the inmate is assessed, including an assessment of capillary refill, blood flow, color, and circulation. Exhibit D, at 135:8-8; 135:22-136:12.

24. During the January 24, 2020 restraint check, Mr. Washington came to the cell door where R.N. Capoccia was able to observe him and check the restraints. Mr. Washington had the opportunity to voice any medical complaints to R.N. Capoccia, but did not do so. Mr. Washington was arguing with security staff present during this interaction. **Exhibit D**, at 135:9-15.

25. At the time of the January 24, 2020 restraint check, R.N. Capoccia was not aware that Mr. Washington had been exposed to OC spray the night prior, nor did Mr. Washington inform R.N. Capoccia that he had been exposed to OC spray the evening prior. **Exhibit D**, at 143:4-7; 144:8-10.

26. When R.N. Capoccia was called to the housing unit on the morning of January 24, 2020 he was only aware that he was being summoned to perform a restraint check on an unknown individual. **Exhibit D**, at 133:4-11; 140:11-16.

27. R.N. Capoccia did not perceive any chemical agent taste or smell when he encountered Mr. Washington on January 24, 2020 **Exhibit D**, at 144:5-7.

28. As Mr. Washington was speaking with the security staff clearly and in complete sentences, R.N. Capoccia assessed that Mr. Washington was not in respiratory distress. **Exhibit D**, at 138:1-9.

29. R.N. Capoccia did not perceive any signs of distress during this interaction that led him to believe that obtaining Mr. Washington's vital signs was clinically indicated. **Exhibit D**, at 134:22-135:2; **Exhibit E**.

30. R.N. Capoccia did not observe Mr. Washington to have labored breathing, coughing or wheezing during the January 24, 2020 interaction. **Exhibit D**, at 143:23-144:4; **Exhibit E**.
31. Mr. Washington did not communicate to R.N. Capoccia that he had not been given the opportunity to decontaminate prior to the January 24, 2020 interaction. **Exhibit D**, at 143:12-15.
32. Mr. Washington testified that his interaction with R.N. Capoccia on January 24, 2020 lasted approximately six to eight minutes. **Exhibit B**, at 45:2-5.
33. Regarding this interaction, R.N. Capoccia documented that he assessed Mr. Washington's circulation, sensory function, and motor function. He further documented that Mr. Washington was in no acute distress. **Exhibit D**, at 122:12-123:5; **Exhibit E**.
34. Pursuant to his custom and practice, had R.N. Capoccia had any concerns regarding Mr. Washington's health, if he observed any signs of distress, or if Mr. Washington voiced any concerns or medical complaints, R.N. Capoccia would have performed a further assessment of Mr. Washington. **Exhibit D**, at 146:12-18.
35. R.N. Capoccia was unaware that Mr. Washington's Keep on Person inhaler had been confiscated by DOC security staff on January 23, 2020. **Exhibit D**, at 154:9-12.
36. Mr. Washington did not tell R.N. Capoccia that his KOP inhaler had been confiscated. **Exhibit D**, at 143:16-19.
37. After January 24, 2020, Mr. Washington had no further contact with R.N. Capoccia. **Exhibit B**, at 55:10-12.

38. During the time Mr. Washington was without his Keep on Person inhaler, treatment for his asthma, including access to an inhaler or nebulizer, remained available through medical staff. **Exhibit D**, at 156:1-6.

39. During Mr. Washington's incarceration, he has utilized a nebulizer for treatment of his asthma when he does not have access to his asthma inhaler. **Exhibit B**, at 32:2-5.

40. Mr. Washington is familiar with the Sick Call Request process, and has routinely utilized the healthcare system within the prison. Mr. Washington has submitted Sick Call Requests both before and after R.N. Capoccia's involvement in his care on January 24, 2020. **Exhibit B**, at 61:12-15, **Exhibit F**, Sick Call Request forms.

41. In the days following R.N. Capoccia's involvement in Mr. Washington's care, the Plaintiff submitted numerous Sick Call Request forms. The included requests on January 25, 2020; January 27, 2020; and January 28, 2020. None of these requests contained any complaints related to respiratory symptoms, asthma exacerbation, difficulty breathing, loss of sleep, headache, or lacerations. **Exhibit F**.

42. On January 25, 2020, Mr. Washington submitted a Sick Call Request Form related to his anxiousness resulting from a facility lockdown. **Exhibit F**, at p. 1.

43. On January 27, 2020, Mr. Washington submitted a Sick Call Request Form requesting access to his eyeglasses. **Exhibit F**, at p. 2.

44. On January 28, 2020, Mr. Washington submitted a Sick Call Request Form related to numbness on his left side since being tased on January 21, 2020. **Exhibit F**, at p. 3.

45. Mr. Washington is aware that he could have requested access to an inhaler via the Sick Call Request process. **Exhibit B**, at 42:4-7.

46. Despite being aware of the fact that he could request access to an inhaler via the Sick Call Request process, he did not do so in the days following January 24, 2020. **Exhibit F**.

47. Mr. Washington submitted a Medical/Mental Inmate Grievance From on January 25, 2020. **Exhibit G**, January 25, 2020 Medical/Mental Inmate Grievance Form.

48. Via the January 25, 2020 Medical/Mental Inmate Grievance Form, Mr. Washington did not submit any complaints regarding the medical care rendered to him on January 24, 2020, nor any complaints related to the evaluation performed by R.N. Capoccia. **Exhibit G**.

49. Mr. Washington's January 25, 2020 Medical/Mental Inmate Grievance was partially denied on February 10, 2020. **Exhibit G**.

50. The Medical/ Mental Inmate Grievance decision indicates that "An appeal must be filled out withing 10 working days from receipt of the decision by the HSA or designee." **Exhibit G.**

51. Mr. Washington did not appeal the decision on the January 25, 2020 Medical/Mental Inmate Grievance.

52. Mr. Washington did not fully exhaust the administrative remedies available to him as required by the Prison Litigation Reform Act.

53. On January 30, 2020, Mr. Washington submitted a DOC Inmate Grievance Form related to the January 23, 2020 use of force. **Exhibit H**, January 30, 2020 Inmate Grievance Form.

54. Via the January 30, 2020, Inmate Grievance Form, Mr. Washington did not submit any complaints regarding the medical care rendered to him on January 24, 2020, nor any complaints related to the evaluation performed by R.N. Capoccia. **Exhibit H**.

55. Plaintiff's Internal Medicine expert, Dr. Sondra Crosby, testified that she cannot opine that any of Mr. Washington's alleged injuries are attributable to R.N. Capoccia.

56. In her expert reports, Dr. Crosby does not specifically opine that R.N. Capoccia deviated from the applicable standard of care. *See* **Exhibit I**, Expert Reports of Sondra Crosby, M.D.

57. Dr. Crosby does not opine that R.N. Capoccia acted with deliberate indifference. **Exhibit I**.

58. R.N. Capoccia was not deliberately indifferent to Mr. Washington's medical needs as he was not informed of the individual he was being summoned to perform the restraint check on and upon assessing Mr. Washington did not assess him to be in any distress, including respiratory distress.

59. R.N. Capoccia appropriately assessed Mr. Washington on January 24, 2020, and had no further involvement in his care and treatment.

60. Mr. Washington submitted several Sick Call Requests in the days after January 24, 2020, none of which related to his asthma, respiratory distress, or any respiratory symptoms.

61. There is no evidence that R.N. Capoccia was deliberately indifferent to Mr. Washington's needs.

The Defendant,
CHRISTIAN CAPOCCIA, R.N.,
By His Attorneys,

*/s/ Matthew D. Medoff*

Lori K. Vaulding, BBO #678404
Matthew D. Medoff, BBO #706871
Adler│Cohen│Harvey│Wakeman│Guekguezian, LLP
2 Oliver Street, 10th Floor, Suite 1005
Boston, MA 02109
(617) 423-6674
lvaulding@adlercohen.com
mmedoff@adlercohen.com

Dated: November 13, 2026

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DERRICK WASHINGTON,<br>Plaintiff,<br><br>v.<br><br>NURSE CHRISTIAN CAPOCCIA, et al.,<br><br>Defendants. | C.A. NO: 1:23-cv-10063-MRG |

**DEFENDANT'S RULE 7.1**
**CERTIFICATION**

Pursuant to Local Rule 7.1(a)(2), I hereby certify that I, Matthew D. Medoff, Counsel for the Defendant, Christian Capoccia, R.N., conferred with counsel for the plaintiff and counsel for the Department of Corrections prior to the filing and service of this Statement and were unable to resolve the issues within. Specifically, on November 13, 2026, I conferred with counsel for the plaintiff and Counsel for the Department of Corrections regarding the instant Defendant, Nurse Christian Capoccia's Local Rule 56.1 Concise Statement of Material Facts in Support of His Motion for Summary Judgment.

Respectfully submitted,
The Defendant,
CHRISTIAN CAPOCCIA, R.N.,
By His Attorneys,

*/s/ Matthew D. Medoff*

Lori K. Vaulding, BBO #678404
Matthew D. Medoff, BBO #706871
Adler│Cohen│Harvey│Wakeman│Guekguezian, LLP
2 Oliver Street, 10th Floor, Suite 1005
Boston, MA 02109
(617) 423-6674
lvaulding@adlercohen.com
mmedoff@adlercohen.com

**CERTIFICATE OF SERVICE**

I, Matthew D. Medoff, counsel for the defendant, Christian Capoccia, hereby certify a copy of the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 13, 2026.

*/s/ Matthew D. Medoff*

Matthew D. Medoff, BBO #706871
mmedoff@adlercohen.com